UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORDAN ROY, ANGEL SULLIVAN-BLAKE, and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 3:17-cv-30116-KAR |
| | ) | |
| v. | ) | |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC., | ) ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT FEDEX GROUND'S MOTION TO DISMISS
(Dkt. No. 15)

ROBERTSON, U.S.M.J.

## I.     Introduction

In this putative collective action, the plaintiffs, Jordan Roy ("Roy"), Angel Sullivan-Blake ("Sullivan-Blake"), and Justin Trumbull ("Trumbull") (collectively, "Plaintiffs"), each assert a single claim against the defendant, FedEx Ground Package System, Inc. ("Defendant" or "FedEx Ground"), for unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1) (Dkt. No. 1).  Defendant has filed a motion to dismiss for want of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Dkt. No. 15).  For the following reasons, the court grants FedEx Ground's motion to dismiss as to Sullivan-Blake's claim, but denies it as to Roy's and Trumbull's claims.[1]

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes (Dkt. No. 9).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

II.     **Standard of Review**

"It is axiomatic that, '[t]o hear a case, a court must have personal jurisdiction over the parties, "that is, the power to require the parties to obey its decrees."'" *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008) (alteration in original) (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002)).  When faced with a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff bears the burden of proving that the defendant is subject to the jurisdiction of the court.  *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) (citing *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)); *Daynard*, 290 F.3d at 50 (citing *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992)).  While a "district court 'may choose from among several methods for determining whether the plaintiff has met [its] burden,'" *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) (alteration in original) (quoting *Adelson*, 510 F.3d at 48), when no evidentiary hearing is held, as in this case, the "prima facie" standard applies.  *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (*Swiss Am. Bank II*) (citing *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43 (1st Cir. 1993) (*Pleasant St. II*); *Boit*, 967 F.2d at 675).  "Under the prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Phillips*, 530 F.3d at 26 (citing *Daynard*, 290 F.3d at 51).  "It is not enough for [a plaintiff] to 'rely on unsupported allegations in [its] pleadings.'" *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (second alteration in original) (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)).  "Rather, [the plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists."

*Id.* (quoting *Platten*, 437 F.3d at 134).  The court "must accept [the plaintiff's] properly documented evidentiary proffers as true and construe them in the light most favorable to [the plaintiff's] jurisdictional claim."[2]  *Id.* (citing *Phillips*, 530 F.3d at 26).  Applying this standard to the instant case, the relevant facts are as follows.

### III.    Facts

FedEx Ground, a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania, is a business engaged in business and residential ground package delivery services.  FedEx Ground provides ground service to 100% of the continental United States population.  In 2016, FedEx Ground had revenues in excess of $16 billion.

Plaintiffs Roy and Trumbull are both residents of Massachusetts, while Sullivan-Blake is a resident of Texas.  FedEx Ground employed Plaintiffs as full-time delivery drivers through intermediary entities that FedEx Ground calls "independent service providers," or "ISPs."[3]  Roy worked for FedEx Ground from February 2015 to January 2017.  Trumbull worked for FedEx Ground from late 2015 to February 2017.  Sullivan-Blake began working for FedEx Ground in November 2015 and continues to do so.

As delivery drivers for FedEx Ground, Plaintiffs had to report each morning to a FedEx Ground terminal to pick up the packages that they would be responsible for delivering that day. Roy and Trumbull both reported to a FedEx Ground terminal located in Chicopee,

---

[2] The court also may take into account undisputed facts put forth by the defendant.  *Baskin-Robbins*, 825 F.3d at 34 (citing *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014)).  However, FedEx Ground did not put forward any evidence in connection with its motion to dismiss.

[3] Plaintiffs claim that FedEx Ground employed them through ISPs in an attempt to avoid liability to them under wage laws, including the FLSA.  However, Plaintiffs allege that, based on the economic realities of the relationship between FedEx Ground and the delivery drivers, the delivery drivers are also FedEx Ground employees under the FLSA.

Massachusetts, while Sullivan-Blake reported at different periods to FedEx Ground terminals located in Webster, Sugar Land, and North Houston, Texas.  Between thirty and sixty other delivery drivers reported to the Chicopee terminal each day.  The Texas terminals are significantly larger, with at least 1,000 other delivery drivers reporting each day.

At each of the FedEx Ground terminals to which Plaintiffs reported, package handlers employed by FedEx Ground would set out the FedEx Ground packages that each driver was assigned to deliver that day.  FedEx Ground required Plaintiffs to use a special scanner to scan each package as they loaded it onto their respective trucks.  While loading packages in the mornings at the Chicopee facility, Trumbull observed a FedEx Ground manager regularly walk the floor to supervise his and the other delivery drivers' work to ensure that they were properly loading FedEx Ground packages and that they met FedEx Ground's uniform and appearance requirements.  Some mornings, FedEx Ground packages that were assigned to a particular Plaintiff for delivery would be missing and could not be scanned.  When this occurred, the Plaintiff in question was not permitted to leave the FedEx Ground terminal until a FedEx Ground manager either found the missing package or gave the Plaintiff permission to leave without it.  FedEx Ground required Plaintiffs to scan each package upon delivery as well and to enter a code for each type of delivery.  FedEx Ground required that certain packages only be delivered with the customer's signature.  Roy and Trumbull frequently received calls from FedEx Ground managers while they were out making deliveries with changes to delivery instructions, such as to deliver a package to a different address.  At times, a FedEx Ground manager would require Roy or Trumbull to return to the FedEx Ground terminal in Chicopee to pick up an extra package for delivery.

Plaintiffs were eligible to receive overtime and regularly worked over forty hours per week delivering packages for FedEx Ground.  Yet, Plaintiffs were not paid time-and-a-half their regular rate for those hours.

## IV.    Analysis

In a federal question case, "the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment."  *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) (*Pleasant St. I*) (citing *Lorelei Corp. v. Cty. of Guadalupe*, 940 F.2d 717, 719 (1st Cir. 1991); *Whistler Corp. v. Solar Elecs., Inc.*, 684 F. Supp. 1126, 1128 (D. Mass. 1988)).  "[U]nder the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state."  *Swiss Am. Bank II*, 274 F.3d at 618 (citing *Pleasant St. I*, 960 F.2d at 1085).  Because FedEx Ground is incorporated and maintains its principal place of business in the United States, it cannot be gainsaid that FedEx Ground has sufficient minimum contacts with the United States to satisfy the due process standard of the Fifth Amendment.

The inquiry does not end there, however.  "The next step is to determine whether the nationwide scope of personal jurisdiction in a federal question case is limited by Rule 4 of the Federal Rules of Civil Procedure."  *Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162, 166 (D. Mass. 2001).  This is so because, "[b]efore a federal court may exercise personal jurisdiction over a defendant in a federal question case, there must be authorization for service of summons on the defendant."  *Id.* (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)).  *See also Swiss Am. Bank II*, 274 F.3d at 618 (noting that "the plaintiff must still ground its service of process in a federal statute or civil rule" (citing *Pleasant St. I*, 960 F.2d at

1085)).  "In other words, though personal jurisdiction and service of process are distinguishable,

they are inextricably intertwined, since service of process constitutes the vehicle by which the

court obtains jurisdiction."  *Pleasant St. I*, 960 F.2d at 1085 (citing *Lorelei*, 940 F.2d at 719 n.1;

*cf. Robertson v. R.R. Labor Bd.*, 268 U.S. 619, 622 (1925) (a federal court cannot acquire

personal jurisdiction over a defendant unless the defendant is properly served with process)).

"Pursuant to Fed. R. Civ. P. 4(k)(1), service of process establishes personal jurisdiction

over a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state

where the district court is located,' or 'when authorized by federal statute.'"  *Medici v. Lifespan*

*Corp.*, 239 F. Supp. 3d 355, 367 (D. Mass. 2017) (quoting Fed. R. Civ. P. 4(k)(1)(A), (C)).

Accordingly, this court can only exercise jurisdiction over FedEx Ground if it would be subject

to the jurisdiction of Massachusetts courts or if the federal statute conferring subject matter

jurisdiction provides for nationwide service of process.  *Id.* (citing *Lorelei*, 940 F.2d at 719-20

(discussing former language of Rule 4(e) and (f), which imposed the same limitations relevant

here)).  The FLSA does not authorize nationwide service of process.[4]  *Aviles v. Kunkle*, 978 F.2d

201, 203-04 (5th Cir. 1992); *Nicks v. Koch Meat Co., Inc.*, No. 16-cv-6446, 2016 WL 6277489,

at *3 (N.D. Ill. Oct. 27, 2016); *McCarthy v. Waxy's Keene, LLC*, No. 16-cv-122-JD, 2016 WL

4250290, at *2 n.1 (D.N.H. Aug. 10, 2016); *Senne v. Kansas City Royals Baseball Corp.*, 105 F.

Supp. 3d 981, 1014 (N.D. Cal. 2015); *Blume v. Int'l Servs., Inc.*, No. 4:12 CV 165 DDN, 2012

WL 1957419, at *8 (E.D. Mo. May 31, 2012); *Wang v. Schroeter*, No. 11-10009-RWZ, 2011

---

[4] The many cases Plaintiffs cite in which courts have conditionally certified nationwide classes in
FLSA cases (or denied motions to decertify nationwide classes) do not indicate otherwise.  In
those cases, the defendants did not raise lack of personal jurisdiction as a defense, and personal
jurisdiction, unlike subject matter jurisdiction, is a waivable defense.  *McBee v. Delica Co., Ltd.*,
417 F.3d 107, 127 (1st Cir. 2005) (citing *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694, 702-05 (1982)).

WL 6148579, at *4 n.12 (D. Mass. Dec. 9, 2011); *Kouba v. Renzenberger, Inc.*, No. CIV 10-159 TUC FRZ (GEE), 2010 WL 5342964, at *1 (D. Ariz. May 14, 2010); *Langlois v. Déjà Vu, Inc.*, 984 F. Supp. 1327, 1333 (W.D. Wash. 1997); *Astorga v. Connleaf, Inc.*, 962 F. Supp. 93, 95 (W.D. Tex. 1996). Accordingly, notwithstanding that this is a federal question case, the court must look to the law of Massachusetts to determine whether the court may assert jurisdiction over FedEx Ground. *See Medici*, 239 F. Supp. 3d at 367 (citing *Pleasant St. I*, 960 F.2d at 1086); *Pike*, 143 F. Supp. 2d at 166. *See also Baskin-Robbins*, 825 F.3d at 34 n.2 (noting that, for purposes of analyzing personal jurisdiction, through operation of Fed. R. Civ. P. 4(k)(1)(A), the role of a federal court in a federal question case is the same as in a diversity case).

"In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute *and* its exercise does not offend the Due Process Clause of the Fourteenth Amendment." *Pike*, 143 F. Supp. 2d at 166 (citing *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 551 (Mass. 1994)). *See also Pleasant St. I*, 960 F.2d at 1086 ("[B]ecause state law is subject to Fourteenth Amendment limitations, the minimum contacts doctrine, while imposing no direct state-by-state constraint on a federal court in a federal question case, acts indirectly as a governing mechanism for the exercise of personal jurisdiction." (citing *Lorelei*, 940 F.2d at 720)). The First Circuit has "sometimes treated the limits of Massachusetts's long-arm statute [Mass. Gen. Laws ch. 223A, § 3] as coextensive with those of the Due Process Clause," *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (citing *Daynard*, 290 F.3d at 52), and, therefore, has sidestepped the statutory inquiry and proceeded directly to the constitutional analysis. *Daynard*, 290 F.3d at 52. More recently, however, the court has "suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution," thereby

creating a "possible tension" in its precedent.  *Copia Commc'ns*, 812 F.3d at 4 (citing *Cossart v.
United Excel Corp.*, 804 F.3d 13, 18-19 (1st Cir. 2015)).  The Supreme Judicial Court of
Massachusetts resolved this tension in *SCVNGR, Inc. v. Punchh, Inc.*, 85 N.E.3d 50 (Mass.
2017), declaring that the long-arm statute's reach is not coextensive with what due process
allows.  *Id.* at 56 n.9.  Moreover, "[b]ecause the long-arm statute imposes specific constraints on
the exercise of personal jurisdiction that are not coextensive with the parameters of due process,
and in order to avoid unnecessary consideration of constitutional questions, a determination
under the long-arm statute is to precede consideration of the constitutional question."  *Id.* at 52
(citing *Morrill v. Tong*, 453 N.E.2d 1221, 1230 (Mass. 1983)).  Thus, following *SCVNGR*, to
establish personal jurisdiction, a plaintiff must first show that the Massachusetts long-arm statute
grants jurisdiction, and then, if it does, that the exercise of jurisdiction under the statute is
consistent with the Constitution.  *See Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d
287, 291 (D. Mass. 2017) (rejecting plaintiff's argument that the reach of the Massachusetts
long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment and
beginning the personal jurisdiction analysis by considering whether the requirements of the long-
arm statute were satisfied).  *See also Bearse v. Main Street Invs.*, 170 F. Supp. 2d 107, 113 (D.
Mass. 2001) ("'Where a plaintiff is clearly unable to establish jurisdiction as a matter of state
law, it is the better practice to end the inquiry without addressing constitutional concerns.'"
(quoting *Noonan v. Winston Co.,* 902 F. Supp. 298, 306 n. 12 (D. Mass. 1995)); *Boyd v. Ariz.
State Bd. of Dental Examiners*, Civ. A. No. 88-1560-MA, 1989 WL 37309, at *2 (D. Mass. Apr.
4, 1989) ("Only after it is determined that the long-arm statute is satisfied does a court consider
whether the second obstacle has been overcome; that is, whether the plaintiffs have demonstrated
that the exercise of personal jurisdiction is consistent with the basic constitutional requirement of

8

due process." (citing *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 983 (1st Cir. 1986); *Gray v. O'Brien*, 777 F.2d 864, 866-67 (1st Cir. 1985); *Carlson Corp. v. Univ. of Vt.*, 402 N.E.2d 483, 485 (Mass. 1980); *Good Hope Indus., Inc. v. Ryder Scott Co.*, 389 N.E.2d 76, 79 (Mass. 1979)). This is in keeping with the "'long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 511 (1st Cir. 2011) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)). *See also SCVNGR*, 85 N.E.3d at 56 ("[I]t is canonical that courts should, where possible, avoid unnecessary constitutional decisions." (citing *Commonwealth v. Guzman*, 14 N.E.3d 946, 954 (Mass. 2014)). Thus, while neither Plaintiffs nor Defendant has addressed the applicability of the Massachusetts long-arm statute, the court must assess whether the exercise of personal jurisdiction meets the statutory requirements before reaching the constitutional dimension of the analysis.

A. The Massachusetts Long-Arm Statute

"The Massachusetts long-arm statute enumerates eight specific grounds on which a nonresident defendant may be subjected to personal jurisdiction by a court of the Commonwealth." *SCVNGR*, 85 N.E.3d at 55 (citing Mass. Gen. Laws ch. 223A, § 3). Only three of those grounds bear any possible applicability to the facts presented. In relevant part, the Massachusetts long-arm statute provides that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth;
>     . . .
>
> (c) causing tortious injury by an act or omission in this commonwealth; [or]

> (d) causing tortious injury in this commonwealth by an act or
> omission outside this commonwealth if he regularly does or
> solicits business, or engages in any other persistent course
> of conduct, or derives substantial revenue from goods used
> or consumed or services rendered, in this commonwealth[.]

Mass. Gen. Laws, ch. 223A, § 3 (a), (c), (d).  Thus, the question under the long-arm statute is

whether Plaintiffs' causes of action are ones "arising from" either Defendant's "transacting any

business" in Massachusetts or "causing tortious injury by act or omission" in Massachusetts, or

Defendant's "causing tortious injury" in Massachusetts "by an act or omission outside"

Massachusetts, but then only if Defendant regularly does or solicits business, engages in any

other persistent course of conduct, or derives substantial revenue in Massachusetts.  The court

addresses each subsection of the long-arm statute in turn.

##### 1.  Section 3(a)

Section 3(a) provides that "[a] court may exercise personal jurisdiction over a person,

who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in [Massachusetts.]"  Mass. Gen. Laws ch. 223A, § 3(a).  "The

'transacting business' test under section 3(a) is designed to identify deliberate, as distinguished

from fortuitous, contacts with the forum by the nonresident party, *see, e.g., Good Hope Indus.*,

389 N.E.2d at 82, with a view to determining whether '"the possible need to invoke the benefits

and protections of the forum's laws was reasonably foreseeable . . . ."'"  *Lyle Richards Int'l, Ltd.*

*v. Ashworth, Inc.*, 132 F.3d 111, 112-13 (1st Cir. 1997) (alteration in original) (quoting *Good*

*Hope Indus.*, 389 N.E.2d at 82)).  "For jurisdiction to exist under § 3(a), the facts must satisfy

two requirements – the defendant must have transacted business in Massachusetts, and the

plaintiff's claim must have arisen from the transaction of business by the defendant."  *Tatro*, 625

N.E.2d at 551 (citing *Good Hope Indus.*, 389 N.E.2d at 82 n.17).  The "transacting any business"

language is regularly construed in a generous manner. *Pleasant St. I*, 960 F.2d at 1087 (citing

*Hahn v. Vt. Law Sch.*, 698 F.2d 48, 50 (1st Cir. 1983); *Nova Biomedical Corp. v. Moller*, 629

F.2d 190, 193 (1st Cir. 1980); *Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co.*, 522

N.E.2d 989, 991 (Mass. App. Ct. 1988), *rev. denied*, 525 N.E.2d 678 (Mass. 1988)).  "The test

focuses . . .  upon whether the defendant attempted to participate in the commonwealth's

economic life." *Id*. (citing *Hahn*, 698 F.2d at 52; *Nova*, 629 F.2d at 195).  The "arising from"

language is also to be generously construed in favor of asserting personal jurisdiction. *Lyle

Richards*, 132 F.3d at 114.  "In deciding whether a claim 'aris[es] from' a defendant's

'transacting business,' . . . [the court] look[s] to see whether the transacted business was a 'but

for' cause of the harm alleged in the claim." *Cossart*, 804 F.3d at 18 (first alteration in original)

(citing *Tatro*, 625 N.E.2d at 551).  Under the "but-for" test, the inquiry is whether the

defendant's contacts with the Commonwealth constitute the "first step in a train of events" that

results in injury to the plaintiff. *Tatro*, 625 N.E.2d at 553.

   Based on the factual record before the court, it is clear that FedEx Ground transacted

business in Massachusetts.  FedEx Ground operates a terminal in Chicopee, Massachusetts, from

which it provides ground shipping services to Massachusetts businesses and residents.  FedEx

Ground employs in excess of thirty individuals, at least some of whom are Massachusetts

residents, to work out of that terminal, including delivery drivers, package handlers, and

managerial employees.  By these activities, FedEx Ground attempted to and did participate in the

state's economic life.

   The factual record also supports a finding that Roy's and Trumbull's claims arise from

FedEx Ground's transaction of business in Massachusetts.  Roy and Trumbull allege that they

were not paid time-and-a-half their regular rate for hours they worked in excess of forty each

week delivering FedEx Ground packages to Massachusetts businesses and residents, at the direction and under the supervision of FedEx Ground managerial employees.  In other words, the cause of action stems from activities by FedEx occurring in Massachusetts.  But for FedEx Ground's transaction of business in Massachusetts, Plaintiffs Roy and Trumbull would not have suffered the harm alleged.

In contrast, the record does not support a finding that Sullivan-Blake's claims arise from FedEx Ground's transaction of business in Massachusetts.  Sullivan Blake worked out of FedEx Ground terminals in Texas, not Massachusetts, delivering FedEx Ground packages to Texas businesses and residents, not Massachusetts businesses and residents.  The overtime hours for which FedEx Ground failed to pay Sullivan-Blake were performed in Texas, not Massachusetts, at the direction of FedEx Ground managerial employees in Texas, not Massachusetts.  Sullivan-Blake's injury did not occur as a result of FedEx Ground's business transactions in Massachusetts, but rather stems from FedEx Ground's out-of-state (i.e. Texas) activities.  There is no "but for" causal relationship between FedEx Ground's transaction of business in Massachusetts and Sullivan-Blake's injuries.

Thus, the court finds that its exercise of personal jurisdiction over FedEx Ground with respect to Roy's and Trumbull's claims is authorized by section 3(a) of the Massachusetts long-arm statute.  However, Plaintiffs have not met the requirements for long-arm jurisdiction over FedEx Ground under section 3(a) with respect to Sullivan-Blake's claim.  Therefore, the court goes on to consider whether Sullivan-Blake can avail herself of sections 3(c) or (d) for this court to assert personal jurisdiction over FedEx Ground with respect to her claim.

2. *Section 3(c)*

Section 3(c) provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by act or omission in [Massachusetts.]"  Mass. Gen. Laws ch. 223A, § 3(c).  "Section 3(c) is intended to apply only when the act [or omission] causing the [tortious] injury occurs within the Commonwealth."  *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972) (citations omitted).  The court will assume without deciding that a violation of the FLSA causes a tortious injury.  Notwithstanding this assumption, Sullivan-Blake has not made out a prima facie case for the applicability of section 3(c) where there are no facts before the court that FedEx Ground took any action with respect to Sullivan-Blake in Massachusetts.

3. *Section 3(d)*

Section 3(d) provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [Massachusetts.]"  Mass. Gen. Laws ch. 223A, § 3(d).  The threshold showing for a cause of action brought under section 3(d) is that the plaintiff's in-state harm be caused by the defendant's out-of-state act.  *Noonan v. Winston Co.*, 135 F.3d 85, 92 (1st Cir. 1998).  Sullivan-Blake has not met even this threshold showing, insofar as she has presented no evidence that she suffered an injury in Massachusetts.

13

Having determined that the assertion of jurisdiction over FedEx Ground with respect to Sullivan-Blake's claim is not authorized by the Massachusetts long-arm statute, the court ends its inquiry as to Sullivan-Blake.  *See Gray*, 777 F.2d at 867 ("Since we find that Gray did not establish facts which would support the valid exercise of personal jurisdiction under the state long-arm statute, it is unnecessary to reach the question of whether the exercise of jurisdiction under Massachusetts law is consistent with basic constitutional due process requirements." (citing *Am. Freedom Train Found. v. Spurney*, 747 F.2d 1069, 1075 (1st Cir. 1984)).  FedEx Ground is entitled to dismissal of her claim as a named plaintiff.  On the other hand, jurisdiction over FedEx Ground with respect to Roy's and Trumbull's claims is statutorily authorized, and the court proceeds to address the question of whether the assertion of such jurisdiction comports with the requirements of due process.

B.  <u>Due Process</u>

Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  "Since [the] seminal decision in *International Shoe*, [the Court's] decisions have recognized two types of personal jurisdiction:  'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779-80 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Id.* at 1780 (citing *Goodyear*,

564 U.S. at 919).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).  "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Id*. (quoting *Goodyear*, 564 U.S. at 924).  A corporation is "at home" where it is incorporated and where it maintains its principal place of business.  *Id*. at 760.  In an "exceptional case," a corporation may have "operations in a forum other than its formal place of incorporation or principal place of business [that are] so substantial and of such a nature as to render the corporation at home in that State," as well.  *Id*. at 761 n.19.  However, merely engaging in a "substantial, continuous, and systematic course of business" in a forum is insufficient.  *Id*. at 761.  Here, there is no dispute that FedEx Ground is not incorporated under the laws of Massachusetts and does not have a principal place of business here, and Plaintiffs do not argue that this is an exceptional case.  Therefore, the record does not support the assertion of general jurisdiction over FedEx Ground in Massachusetts.

"In order for a state court to exercise specific jurisdiction, [on the other hand,] 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*."  *Bristol-Myers*, 137 S. Ct. at 1780 (second and third alterations in original) (quoting *Daimler*, 134 S. Ct. at 754).  *See also Baskin-Robbins*, 825 F.3d at 35 ("Specific jurisdiction allows a court to hear a particular case as long as 'that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum.'" (quoting *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999))).  Thus, "[i]n contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Goodyear*, 564 U.S. at 919 (citation omitted).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation."'"  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

> The existence vel non of specific jurisdiction depends on the results of a tripartite inquiry.  [The court] evaluate[s]: "(1) whether the claim 'directly arise[s] out of, or relate[s] to, the defendant's forum state activities;' (2) whether the defendant's in-state contacts 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;' and (3) whether the exercise of jurisdiction is reasonable."  *C.W. Downer*, 771 F.3d at 65 (quoting *Daynard*, 290 F.3d at 60).  All three of these elements must be present for specific jurisdiction to attach.  *See Phillips Exeter*, 196 F.3d at 288.

*Baskin-Robbins*, 825 F.3d at 35 (third and fourth alterations in original).  FedEx Ground has focused its lack of jurisdiction argument on the relatedness prong of the due process inquiry, relying primarily on the recent Supreme Court decision in *Bristol-Myers*, 137 S. Ct. at 1773.  For the sake of completeness, the court nonetheless considers each element of the tripartite inquiry in turn.

### 1.  Relatedness

"The first prong of the test, regarding 'relatedness,' 'serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum.'"  *Cossart*, 804 F.3d at 20 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995)).  It "requires that 'the action . . . directly arise out of the specific contacts between the defendant and the forum state.'"  *Baskin-Robbins*, 825 F.3d at 35 (alteration in original) (quoting *Sawtelle*, 70 F.3d at 1389).  "Relatively speaking, the relatedness inquiry is to

be resolved under 'a flexible, relaxed standard.'"  *Id.* (quoting *Pritzker v. Yari*, 42 F.3d 53, 61

(1st Cir. 1994)).

FedEx Ground premises its argument for dismissal based on lack of personal jurisdiction

– focused most forcefully on Sullivan-Blake's claim – on *Bristol-Myers*, 137 S. Ct. at 1773, a

case which addressed the relatedness requirement of the specific jurisdiction analysis.  In *Bristol-*

*Myers*, a group of more than 600 plaintiffs, the majority of whom were not California residents,

brought a products liability action against Bristol-Myers Squibb ("BMS"), a large

pharmaceutical company incorporated in Delaware and headquartered in New York, in

California state court.  The plaintiffs sought to recover under California law for personal injuries

allegedly resulting from the plaintiffs' use of Plavix, a drug manufactured by BMS.  Reversing

the California Supreme Court, the Court held that California courts did not have specific

jurisdiction to entertain the nonresidents' claims against BMS.  The Court noted that, under

"settled principles" of specific jurisdiction, "for a court to exercise specific jurisdiction over a

claim, there must be an 'affiliation between the forum and the underlying controversy,

principally, [an] activity or occurrence that takes place in the forum State.'"  *Id.* at 1781

(alteration in original) (quoting *Goodyear*, 564 U.S. at 919).  The Court found that connection to

be lacking with respect to the nonresidents' claims where the nonresidents were not prescribed

Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California,

and were not injured by Plavix in California.  *Id.*  "The mere fact that *other* plaintiffs were

prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same

injuries as did the nonresidents – does not allow the State to assert specific jurisdiction over the

nonresidents' claims."  *Id.*  What was needed – and what was missing – was a "connection

between the forum and the specific claims at issue."  *Id.*

According to FedEx Ground, Roy and Trumbull are like the nonresident plaintiffs in *Bristol-Myers* in that they are asserting claims that lack the requisite connection with the forum state, here Massachusetts.  The court disagrees.  Indeed, the court has little difficulty in finding the relatedness prong satisfied given the substantial Massachusetts contacts Plaintiffs have shown here.  Roy and Trumbull have introduced evidence that FedEx Ground maintains a facility in Chicopee, Massachusetts, where it employs in excess of thirty individuals, at least some of whom are Massachusetts residents, to work in Massachusetts, delivering packages to Massachusetts businesses and residents, at the direction and under the supervision of FedEx Ground managerial employees also working in Massachusetts.  Roy's and Trumbull's claims – that they were not paid overtime for the hours they worked in excess of forty each week delivering those packages – directly arise out of these Massachusetts contacts.  Thus, Roy and Trumbull are not like the non-resident plaintiffs in *Bristol-Myers*, whose claims bore no connection to the forum.

FedEx Ground ignores these substantial Massachusetts contacts and instead points to an absence of allegations that FedEx Ground "(1) determined any of Plaintiffs' designation as exempt or non-exempt under the FLSA; (2) determined the method or amount of their pay; or (3) paid them and kept records of doing so" (Dkt. No. 15 at 4).  These arguments are more appropriately addressed to a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) than a motion to dismiss on jurisdictional grounds pursuant to Fed. R. Civ. P. 12(b)(2).  While the absence of allegations on these points might have some bearing on the issue of whether Roy and Trumbull have alleged a plausible FLSA employment relationship (an issue on which the court expresses no view), they do not detract from the conclusion that Roy's and Trumbull's FLSA claims directly arise out of FedEx Ground's substantial contacts with

Massachusetts.  To the extent that FedEx Ground is arguing that Roy's and Trumbull's claims

are not related to FedEx Ground's activities in Massachusetts because Roy and Trumbull are

each employed by an ISP that is responsible for paying any overtime that is owed, FedEx

Ground did not put forward evidence on this point in support of its motion to dismiss.  Moreover,

in *Hodzic v. FedEx Package Sys., Inc.*, Civil Action No. 15-956, 2016 WL 6248078 (W.D. Pa.

Oct. 26, 2016), also an FLSA action, the court was presented with a similar argument by FedEx

Package System, Inc. in its opposition to the plaintiff's motion for conditional certification of a

proposed nationwide collective action.  On the question of whether there was an employer-

employee relationship between FedEx Package System, Inc. and the drivers who delivered

packages for it, the court stated as follows:  "It is this Court's opinion that FedEx's arguments

opposing conditional certification generally raise merits-based defenses that are best resolved at

step-two, including, FedEx's position that it has no employees under the 'economic realities test'

. . .."  *Id.*, at *7.  This court agrees.

The district court cases on which FedEx Ground relies for persuasive authority that

relatedness is lacking are all distinguishable.  In *Rodkey v. 1-800 Flowers Team Services, Inc.*,

No. 3:16-cv-311, 2017 WL 318473, at *3-5 (S.D. Oh. Jan. 23, 2017), the court applied Ohio's

long-arm statute to dismiss FLSA and related state law claims against an out-of-state defendant.

However, that defendant's only connection to Ohio was its issuance of paychecks to one named

plaintiff in Ohio on behalf of another defendant; the defendant being dismissed did not have an

office or mailing address in Ohio, did not own, lease, manage, or maintain any property in Ohio,

and did not have any employees in Ohio.  In *Mendez v. Pure Foods Management Group, Inc.*,

No. 3:14-cv-1515 (SRU), 2016 WL 183473, at *6-7 (D. Conn. Jan. 14, 2016), the court

dismissed FLSA and related-state law claims against two out-of-state individuals where the

complaint contained only generic allegations that the two defendants owned property in the forum and that they "overs[aw]" or "assist[ed]" in the operation or management of the Connecticut restaurants at which the plaintiffs worked.  Finally, in *Cardenas v. McLane FoodService, Inc.*, SACV 10-473 DOC (FFMx), 2010 WL 11465450, at *4-6 (C.D. Cal. Oct. 25, 2010), the court dismissed state law claims against a foreign parent company where the uncontroverted evidence showed that the parent company did not control the employees' work, but merely received payroll data from the in-state subsidiary.  Here, in contrast, the Massachusetts named Plaintiffs have proffered evidence that they worked exclusively as FedEx Ground drivers, delivering FedEx Ground packages to FedEx Ground customers, working out of a FedEx Ground-owned and managed terminal in Massachusetts, where FedEx Ground employees oversaw, managed, and directed their daily package delivery operations.

In opposing FedEx Ground's motion to dismiss, Plaintiffs take the position that *Bristol-Myers* does not apply to this case at all because the case is pending in federal court, not state court and raises federal law claims, not state law claims.  For support, they rely on the *Bristol-Myers* Court's statement that, "since [its] decision concern[ed] the due process limits on the exercise of specific jurisdiction by a State," it was "leav[ing] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."  *Id*. at 1783-84 (citing *Omni Capital*, 484 U.S. at 102 n.5).  While it is true that *Bristol-Myers* brought the issue of personal jurisdiction into sharp focus, there can be no doubt that the "settled principles" of specific jurisdiction on which the *Bristol-Myers* Court relied apply here, notwithstanding that this case is pending in federal and not state court.  As set forth above, in order to exercise personal jurisdiction over FedEx, not only must the Fifth Amendment be satisfied, but so, too, must the requirements of Fed. R. Civ. P. 4, which indirectly bring the

strictures of the Fourteenth Amendment into play.  Given that the Fourteenth Amendment must be satisfied, the "settled principles" of Fourteenth Amendment jurisprudence as articulated in *Bristol-Myers* apply.  *See, e.g., Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021, at *16 (N.D. Ill. Mar. 12, 2018) (holding that *Bristol-Myers* applied to the exercise of personal jurisdiction by a federal court in a case involving claims under the federal Telephone Consumer Protection Act (TCPA); "Because the TCPA does not authorize nationwide service of process, the court . . . look[s] to Illinois law for the limitation on the exercise of personal jurisdiction." (citation omitted)).  Other federal courts have reached similar conclusions.  *See, e.g., Horowitz v. AT&T, Inc.*, Civil Action No. 3:17-cv-4827-BRM-LHG, 2018 WL 1942525, at *14-15 (D.N.J. Apr. 25, 2018) (citing *Bristol-Myers*, the court held that it lacked personal jurisdiction in a putative class action over the ADEA claims of named nonresident plaintiffs whose claims had no connection to the forum state); *Molock v. Whole Foods Market, Inc.*, Case No. 16-cv-02483 (APM), 2018 WL 1342470, at *5 (D.D.C. Mar. 15, 2018) (applying *Bristol-Myers* and "settled principles regarding specific jurisdiction" was fatal to the state law claims of two nonresident plaintiffs who had not alleged that the defendant conducted any activity related to their claims in the District of Columbia); *Maclin v. Reliable Reports of Tex., Inc.*, Case No. 1:17 CV 2612, 2018 WL 1468821, at *4 (N.D. Ohio Mar. 26, 2018) (rejecting the position that *Bristol-Myers* did not apply in a putative nationwide FLSA action and dismissing the FLSA claims of non-Ohio plaintiffs for lack of personal jurisdiction); *In re Dental Supplies Antitrust Litig.*, 16 Civ. 696 (BMC)(GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (rejecting the argument that *Bristol-Myers* does not limit the exercise of personal jurisdiction in a federal question class action because "[t]he constitutional

requirement[] of due process does not wax and wane when the complaint is individual or on behalf of a class").

As stated, however, applying "settled principles" of specific jurisdiction to the facts proffered by Plaintiffs show that Roy's and Trumbull's claims are sufficiently connected with the forum to satisfy Due Process.

### 2. *Purposeful Availment*

"The purposeful availment inquiry asks whether a defendant has 'deliberately target[ed] its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior.'" *Baskin-Robbins*, 825 F.3d at 36 (alterations in original) (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011)). Application of this requirement "guarantees that a defendant will not be subjected to the exercise of jurisdiction based solely on '"random, isolated or fortuitous" contacts with the forum state.'" *Id*. (quoting *Adelson*, 510 F.3d at 50). Additionally, it "ensures that a defendant will not be swept within a state's jurisdictional reach due solely to the 'unilateral activity of another party or a third person.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "In determining whether the purposeful availment condition is satisfied, [the court's] 'key focal points' are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." *Copia Commc'ns*, 812 F.3d at 5 (citing *Adelson*, 510 F.3d at 50). "Voluntariness requires that 'the defendant's contacts with the forum state "proximately result from actions by the defendant himself."'" *Baskin-Robbins*, 825 F.3d at 36 (quoting *Phillips*, 530 F.3d at 28). "Foreseeability requires that a defendant's contacts with the forum state are 'such that [the defendant] could

"reasonably anticipate being haled into court there."'" *Id*. (alteration in original) (quoting *Adelson*, 510 F.3d at 50).

Again, both requirements are easily met here with respect to Roy's and Trumbull's claims. FedEx Ground's voluntary connections with Massachusetts include its operation of the Chicopee facility and its employment of a number of supervisory employees, as well as between thirty and sixty delivery drivers to work out of that facility, delivering packages to Massachusetts businesses and residents. Given these significant connections, it was foreseeable that FedEx Ground could be haled into court here should those delivery drivers not be paid their lawfully due overtime wages.

3. *Reasonableness*

The reasonableness inquiry entails an assessment of five factors, which the First Circuit refers to as the Gestalt factors. *Baskin-Robbins*, 825 F.3d at 40 (citing *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994)). "They comprise '(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in promoting substantive social policies.'" *Id*. (alteration in original) (quoting *C.W. Downer*, 771 F.3d at 69). "These gestalt factors are designed to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations." *Pritzker*, 42 F.3d at 64 (citing *Ticketmaster*, 26 F.3d at 210). "The gestalt factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance." *Ticketmaster*, 26 F.3d at 209 (citing *Burger King*, 471 U.S. at 477-78). The court's "appraisal of these factors operates on a sliding

scale: 'the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" *Baskin-Robbins*, 825 F.3d at 40 (quoting *Ticketmaster*, 26 F.3d at 210).

Turning to the first factor, the burden on the defendant of appearing in the forum state, the First Circuit has held that, because it is "almost always inconvenient and/or costly" for a foreign defendant to appear in a foreign jurisdiction, a defendant must "demonstrate some kind of special or unusual burden." *Pritzker*, 42 F.3d at 64. Here, FedEx Ground did not advance any argument as to why it would be unconstitutionally unfair to compel it to litigate in Massachusetts. Moreover, the facts overwhelmingly counsel against a finding of unfairness. FedEx Ground is a multi-billion dollar company with a significant presence in Massachusetts. As such, this factor weighs in favor of Roy and Trumbull.

The second factor – Massachusetts's interest in adjudicating the dispute – also weighs in favor of Roy and Trumbull. Roy and Trumbull are both Massachusetts residents and, "[a]s the Supreme Court has explained, '[a] State generally has a "manifest interest" in providing its resident[s] with a convenient forum for redressing injuries inflicted by out-of-state actors.'" *Baskin-Robbins*, 825 F.3d at 40 (second alteration in original) (quoting *Burger King*, 471 U.S. at 473)).

The third factor is the plaintiff's interest in obtaining convenient and effective relief. Under this factor, the court must "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." *Ticketmaster*, 26 F.3d at 211 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). Moreover, the court "must take note of the enormous inconvenience that might result from forcing [Roy and Trumbull] to sue elsewhere." *Pritzker*, 42 F.3d at 64. Thus, the third factor also weighs in favor of Roy and Trumbull.

"The fourth Gestalt factor, which examines the judicial system's interest in obtaining the most effective resolution of the case is 'generally considered a "wash."'" *Katz v. Spiniello Cos.*, 244 F. Supp. 3d 237, 249 (D. Mass. 2017) (quoting *Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V.*, No. 09-10138-DJC, 2011 WL 2413792, at *11 (D. Mass. June 16, 2011)). "Even though Massachusetts courts can effectively administer justice in this dispute, they have no corner on the market." *Baskin-Robbins*, 825 F.3d at 41. Thus, this factor is neutral.

"Finally, under the fifth factor, the Court evaluates the common interests of all sovereigns in promoting substantive social policies." *Katz*, 244 F. Supp. 3d at 249. A prominent policy consideration for this factor is Massachusetts's ability to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors. *Sawtelle*, 70 F.3d at 1395 (citing *Burger King*, 471 U.S. at 473). This interest is best served by the exercise of jurisdiction in Massachusetts.

In sum, the balance of the Gestalt factors supports the reasonableness of the court exercising jurisdiction over FedEx Ground. Thus, the exercise of jurisdiction in Massachusetts as to Roy's and Trumbull's claims is reasonable and does not offend the notions of fair play and substantial justice. Therefore, FedEx Ground's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction as to Roy's and Trumbull's claims should be denied.

## V.      Conclusion

For the reasons stated, the court grants FedEx Ground's motion to dismiss as to Sullivan-Blake's claim, but denies it as to Roy's and Trumbull's claims. In so ruling, the court notes that this memorandum and order only addresses the court's personal jurisdiction over FedEx Ground as to the claims of the three named Plaintiffs, to whose claims Defendant's motion was directed. It does not address whether the same personal jurisdiction analysis would apply as to the claims

of opt-in plaintiffs.  The court declines to issue a ruling that would encompass those claims in the absence of full briefing by the parties on the issue, where district courts in other jurisdictions are divided on the question as to whether the court must assess personal jurisdiction as to opt-in plaintiffs or whether it is sufficient that FedEx Ground is subject to personal jurisdiction in Massachusetts as to the claims brought by named plaintiffs Roy and Trumbull.  *See Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (holding that all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action is that the defendant be subject to personal jurisdiction in the forum state as to the claims brought by the named plaintiff); *but see Maclin*, 2018 WL 1468821, at *4 (granting the defendant's motion to dismiss the FLSA claims of non-resident opt-in plaintiffs for lack of personal jurisdiction).

The Clerk's Office is directed to set a status conference in this matter at the parties' earliest convenience.

So ordered.

May 22, 2018                                    /s Katherine A. Robertson
                                               KATHERINE A. ROBERTSON
                                               UNITED STATES MAGISTRATE JUDGE