**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated, | : : : : : | |
| | : | CIVIL ACTION NO. 3:17-cv-30116 |
| Plaintiffs, | : : | |
| v. | : : | |
| FEDEX GROUND PACKAGE SYSTEM, INC., | : : : | |
| Defendant | : : : | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED INDIVIDUALS PURSUANT TO 29 U.S.C. § 216(b)**
**[leave to file granted June 27, 2018, Dkt. 51]**

In opposing Plaintiffs' Motion for Issuance of Notice, FedEx Ground asks this Court to deny notice to non-Massachusetts FedEx Ground drivers, arguing that the Court lacks personal jurisdiction over these unnamed putative collective action members and that Plaintiffs have failed to satisfy the lenient evidentiary standard required to obtain conditional collective action certification.  However, the Court previously specifically declined to address the impact of <u>Bristol-Myers Squibb v. Co. v. Superior Court of California, San Francisco Cty.</u>, 137 S. Ct. 1773, 1781 (2017), on potential opt-in plaintiffs, and, as shown below, the vast majority of other federal district courts that have confronted this question have not applied that case to class and collective action members.  This Court should follow the lead of those courts around the nation that have held that federal Rule 23 class and Fair Labor Standards Act (FLSA) collective actions are sufficiently distinct from the mass tort state court case at issue in <u>Bristol-Myers Squibb</u> to render its rationale inapplicable to non-lead plaintiffs.

Moreover, notwithstanding FedEx Ground's protestations to the contrary, Plaintiffs have more than satisfied their lenient evidentiary burden in establishing that there exists a class of similarly situated FedEx drivers nationwide who nominally work under "ISPs" but are nonetheless subject to FedEx Ground's policies and management (and thus have a common argument that FedEx Ground jointly employs them) and do not receive overtime pay for hours worked beyond 40 per week (even though they are eligible for it because they have driven trucks weighing under 10,001 pounds) – and that this is a proper group to whom notice can be issued.  In deciding whether to authorize the issuance of notice, the Court should reject FedEx Ground's premature merits arguments that it is not a joint employer of these drivers, as well as its argument that it can be predicted in advance that too many differences among opt-ins will preclude this case from being able to be tried on a collective basis.

Thus, for the reasons set out in Plaintiffs' motion and further herein, the Court should grant Plaintiffs' motion.

## I.  THIS COURT WILL HAVE PERSONAL JURISDICTION OVER FEDEX GROUND FOR CLAIMS OF OPT-INS OUTSIDE MASSACHUSETTS

In its opposition, FedEx Ground asks the Court to further extend the holding of its May 22, 2018, Order to find that the Court lacks personal jurisdiction over any putative opt-in collective action members who work outside Massachusetts.  However, the Court specifically declined to go so far, expressly limiting its ruling to named plaintiffs.  The Court should now reject FedEx's attempt to extend that ruling further, since the vast majority of courts to have addressed this issue have rejected the argument that the Supreme Court's decision in Bristol-Myers Squibb, a *state law* mass tort case, mandates that, even in a class or collective action, a federal court must have personal

jurisdiction over each and every class member.[1]  Yet numerous federal district courts have rejected this argument in both the Rule 23 class action and the federal FLSA collective action contexts.  Plaintiffs respectfully urge this Court to adopt the rationale of the majority of its sister courts around the country in rejecting FedEx's attempt to subvert the rights of employees seeking to vindicate their federal wage rights.[2]

---

[1]       It would be most appropriate for the Court to defer this question until after notice has been issued and potential opt-ins have been allowed to join the case, at which time the Court will then know the parameters of the case.  Courts have regularly held that, in an FLSA case, courts should allow the opt-in process to proceed before considering defendants' requests to dismiss the claims of opt-ins.  See, e.g., Varghese v. JP Morgan Chase Bank, N.A., 2016 WL 4718413, *9 (S.D.N.Y., Sep. 8, 2016) ("[T]he interest of judicial economy and, perhaps most importantly, of ensuring that all eligible workers receive notice outweigh the possible negative effect that some receiving the notice might not have valid claims.") (quoting Walston v. Edward J. Young, Inc., 2016 WL 3906522, *6 (E.D.N.Y. Feb. 22, 2016)); Guy v. Casal of Nevada, LLC, 2014 WL 1899006, *6 (D. Nev. May 12, 2014) ("The Court also finds no basis to defer authorizing the sending of notice until the Court rules on Defendants" pending motion to dismiss."); Lewis v. Nevada Property 1, LLC, 2013 WL 237098, *14 (D. Nev. Jan. 22, 2013) (stating that the "Court is reluctant . . . to deny or defer a decision on Plaintiff's Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) . . . pending a decision on Defendant's Motion to Dismiss . . ."); Ali v. Sugarland Petroleum, 2009 WL 5173508 (S.D. Tex. Dec. 22, 2009) ("[T]he Court finds it unnecessary and unwise to reach the fact-intensive "enterprise" question at the notice stage. Defendants may properly raise the issue in a subsequent motion to decertify or in a motion for summary judgment, when the record is fully developed and the Court may analyze the issue."); see also Nieto v. Pizzati Enterprises, Inc., 2017 WL 1153375, *7 (E.D. La. March 27, 2017) (declining to stay a motion for conditional certification despite the pendency of a motion to dismiss); Burdine v. Covidien, Inc., 2011 WL 2976929, *2, 4 (E.D. Ten. June 22, 2011) (where defendants argued that judicial economy and efficiency counseled deferring conditional certification pending the resolution of a dispositive motion regarding the outside sales exemption, court nonetheless ordered notice to issue); Green v. Plantation of Louisiana, LLC, 2010 WL 5256348, *1 (W.D. La. Dec. 15, 2010) (ordering notice to plaintiffs whom defendants argued were barred from the suit because they had signed arbitration agreements, since "the court refuses to consider a merits-based argument until discovery is complete).

       Following the opt-in process, were the Court to conclude that it does not have jurisdiction over the claims of all the opt-ins, it could consider transferring those claims to a venue where there would be jurisdiction.  Although Plaintiffs have suggested that procedure, FedEx has refused to agree, making clear that its motive is not to ensure these claims are heard where the Court would undoubtedly have jurisdiction, but instead to try to stop these claims from being heard at all.  FedEx would prefer to have these claims simply dismissed (and then opt-ins here would not have the benefit of tolling that has already been established in this case).

[2]       FedEx's contention that Plaintiffs have waived "the issue" of "FedEx's arguments based on Bristol-Myers Squibb" is specious.  In its May 22, 2018 Order, Dkt. 41, the Court declined to

### A. Nothing in the Supreme Court's decision suggests that it was intended to usher in a massive change to class and collective action cases

As an initial matter, the Supreme Court did not discuss, even in *dicta*, the impact of its decision in <u>Bristol-Myers Squibb</u> on class or collective action cases, and it would be truly remarkable to extend its logic to overturn decades of jurisprudence in these areas without the Supreme Court's direct command – or even suggestion – to do so. Nor did the Court perceive itself to be ushering in a watershed change; to the contrary, it noted that, "[o]ur settled principles regarding specific jurisdiction control this case." <u>Bristol-Myers Squibb</u>, 137 S.Ct. at 1781.  As one district court noted in rejecting the argument FedEx Ground is making here:

> This Court has doubts that [<u>Bristol-Myers Squibb</u>] changed the entire
> class action landscape. The Supreme Court has long followed a rule
> that it will not determine questions "not pressed or passed upon
> below," either as a jurisdictional restriction or a prudential matter,
> because the "framing of broad rules, seemingly sensible on one set of
> facts, which may prove ill-considered in other circumstances" and
> restricting its decisions to narrow, necessary rulings promotes "respect
> for the procedures by which our decisions are rendered, as well as
> confidence in the stability of prior decisions." See <u>Illinois v. Gates</u>, 462
> U.S. 213, 222-24 (1983). Because class actions and [the Class Action
> Fairness Act] were not at issue in [<u>Bristol-Myers Squibb</u>], the Court did
> not address them, even in dicta, as they were "not pressed or passed
> upon below." *Id.*

<u>In Re Chinese-Manufactured Drywall Prod. Liab. Litig.</u>, 2017 WL 5971622, at *16 n.9 (E.D. La. Nov. 28, 2017).  Indeed, Justice Sotomayor noted in her <u>Bristol-Myers Squibb</u> dissent that the Court did not reach the question of whether its opinion would also apply to a class action "in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."  <u>Bristol-Myers Squibb</u>, 137 S.Ct. at 1789 n.4 (Sotomayor, J., dissenting).  This Court should decline FedEx

---

reach the question of <u>Bristol-Myers Squibb</u>'s application to opt-in plaintiffs and expressly noted that it would require additional briefing before rendering a decision on that question.

Ground's invitation to expand <u>Bristol-Myers Squibb</u> well beyond "settled principles regarding personal jurisdiction" to disallow non-resident class members in a federal collective action case.

### B. The nature of class and collective actions renders <u>Bristol-Myers Squibb</u> inapplicable to unnamed opt-ins

Moreover, the differences between the mass tort action at issue in <u>Bristol-Myers Squibb</u> and an FLSA or Rule 23 case render the Supreme Court's logic in <u>Bristol-Myers Squibb</u> inapplicable to unnamed plaintiffs in class and collective action cases. <u>Bristol-Myers Squibb</u> held that a state court needs specific personal jurisdiction over individual plaintiffs in a mass tort suit because specific jurisdiction is grounded in the requirement that "the *suit* must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." 37 S. Ct. at 1780 (citing <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127 (2014) (emphasis added)).

A court in the Western District of Virginia recently found this rationale inapplicable to unnamed class members in a federal class case. In <u>Morgan v. U.S. Xpress Inc.</u>, 2018 WL 3580775, at *5 (W.D. Va. July 25, 2018), the court distinguished between a mass tort action, in which "independent suits with independent parties in interest are joined for trial," <u>id</u>., and a putative class action, where "one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the named plaintiffs are the only plaintiffs actually named in the complaint." <u>Id</u>. (quoting <u>Molock v. Whole Foods Mkt., Inc.</u>, 297 F. Supp. 3d 114,126 (D.D.C. 2018)). Courts have recognized that, unlike mass tort cases, in class actions, "the citizenship of the unnamed plaintiffs is not taken into account for personal jurisdiction purposes," which "materially distinguishes [class actions] from <u>Bristol-Myers</u>." <u>In Re Chinese-Manufactured Drywall</u>, 2017 WL 5971622,

at *12.  And unlike a mass tort case, there is just one suit in a class or collective action case: between named plaintiffs and the defendant.  In the instant case, the suit "arises out of or relates to" the named plaintiffs' contacts with FedEx Ground in Massachusetts. Under Bristol-Myers Squibb, it thus satisfies the requirements for this Court to exercise personal jurisdiction over *the suit*.  See also Garcia v. Peterson, 2018 WL 3496740, at *8 (S.D. Tex. July 20, 2018) (finding there is "extra [procedural] protection provided in certifying a class under either Rule 23 or the FLSA" and declining to extend Bristol-Myers Squibb to require personal jurisdiction analysis of each plaintiff in an FLSA collective action); Weisheit v. Rosenberg & Assoc., LLC, 2018 WL 1942196, at *5 (D. Md. Apr. 25, 2018) (collecting cases).

Not only are federal class and collective actions distinct procedurally from the type of action in Bristol-Myers Squibb, but so, too, is the nature of the claims at issue. Bristol-Myers Squibb involved state tort claims, whereas this case involves federal claims of wage law violations under the FLSA.  Other cases have found the nature of FLSA claims dispositive in declining to infer from Bristol-Myers Squibb that the Supreme Court intended to obviate congressionally created rights in the cursory manner FedEx Ground suggests here.  As a court in the Northern District of California noted, the FLSA is intended to allow employees to bring their claims on behalf of other employees who are "similarly situated," and Congress in no way limited those claims to in-state plaintiffs. Swamy v. Title Source, Inc., 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (citing 29 U.S.C. § 216(b)).  The Swamy court held that if Bristol-Myers Squibb applied to unnamed opt-in plaintiffs, the result would be "that each putative collective member not residing in either the state where the suit is brought, or a state where the defendant is

domiciled, could not be part of the collective action. This would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." Id. See also Hickman v. TL Trans. LLC, 2018 WL 3388307, at *7 n.2 (E.D. Pa. July 12, 2018) (not deciding the issue, but distinguishing an FLSA collective action by noting that "unlike the mass tort action arising under state law in Bristol-Myers Squibb, this is an opt-in class action arising under a federal statute that applies to all fifty states.").[3]

---

[3]      Indeed, the vast majority of courts have now declined to extend Bristol-Myers Squibb to unnamed class members in the Rule 23 class action context.  See Chernus v. Logitech, Inc., 2018 WL 1981481, at *7 (D.N.J. April 27, 2018) (collecting cases and finding that "most of the courts that have encountered this issue have found that Bristol-Myers [Squibb] does not apply in the federal class action context. *But more importantly, these cases universally held that in a putative class action 1) courts are only concerned with the jurisdictional obligations of the named plaintiffs; and 2) unnamed class members are irrelevant to the question of specific jurisdiction.*") (emphasis added).

These courts have largely reasoned that because the named plaintiffs are the only parties named in the complaint, the residency of the unnamed class members is irrelevant to the question of whether specific jurisdiction exists over a defendant.  See Molock, 297 F. Supp. 3d at 114 ("in a putative class action, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the named plaintiffs' are the only plaintiffs actually named in the complaint," and thus, it is only the named plaintiffs that are considered in the jurisdictional analysis); Day v. Air Methods Corp., 2017 WL 4781863, at *4 (E.D. Ky. Oct. 23, 2017); Sanchez v. Launch Tech. Workforce Sols, LLC,  2018 WL 1875615, at *1, at *8-9 (N.D. Ga. Jan. 26, 2018) (finding that "claims asserted in a class action ... are prosecuted through representatives on behalf of absent class members"); In re Morning Song Bird Food Litig., 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) ("claims of unnamed class members are irrelevant to the question of specific jurisdiction"); Fitzhenry-Russell v. Dr. Pepper Snapple Grp., 2017 WL 4224723, at *5 (N.D. Cal. Sep. 22, 2017) ("[i]n a putative class action ... one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint[,]" and in a mass tort action "like the one in Bristol-Myers, each plaintiff was a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints"); Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018) ("[u]nlike Bristol-Myers, which involved a mass tort action where each plaintiff was a named plaintiff, in a putative class action, the plaintiff seeking to represent the class is the only plaintiff named in the complaint, and his claims—not the unnamed non-resident members—are relevant to the personal jurisdiction inquiry"); Alvarez v. NBTY, Inc., 2017 WL 6059159 (S.D. Cal. Dec. 6, 2017).

Though this case is a collective action under the FLSA, the weight of authority in Rule 23 class action cases strongly indicates that the Court should reach the same result here.  Indeed,

This Court should decline to extend the rationale of <u>Bristol-Myers Squibb</u> to require personal jurisdiction over out-of-state class members in an FLSA collective action.  Such a holding would extend the Supreme Court's rationale farther even than the Supreme Court apparently intended and upend decades of FLSA jurisprudence, in which plaintiffs have been permitted to bring federal wage claims on behalf of themselves and others who may choose to opt-in to their action, wherever the named plaintiffs have worked and chosen to bring suit (and without limiting opt-ins to that same geographical region).  Moreover, the procedural and substantive differences between this case and the state-court mass-tort action in <u>Bristol-Myers Squibb</u> strongly counsel against applying its personal jurisdiction rationale to the non-resident class members in this case.[4]

---

FedEx itself notes that the First Circuit and courts in this district have applied similar standards in approving Rule 23 class certification and §216(b) conditional certification.  <u>See</u> Dkt. 55 at p.7 n.5.  In both types of cases, the named plaintiffs serve as representatives of the unnamed class members.

Plaintiffs recognize that this result has not been unanimous, as courts in the Northern District of Illinois appear to have applied <u>Bristol-Myers Squibb</u> to collective actions, <u>see, e.g.</u>, <u>Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.</u>, 301 F. Supp. 3d 840, 861-862 (N.D. Ill. 2018); <u>DeBernardis v. NBTY, Inc.</u>, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018), and other courts have applied it to class actions, <u>see Maclin v. Reliable Reports of Tex., Inc.</u>, 2018 WL 1468821, at *4 (N.D. Ohio Mar. 26, 2018); <u>Wenokur v. AXA Equitable Life Ins. Co.</u>, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017); <u>In re Dental Supplies Antitrust Litig.</u>, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017).

[4]    For additional argument as to why <u>Bristol-Myers Squibb</u> should not apply to cases brought under the FLSA, Plaintiffs incorporate by reference their earlier argument set forth in their Opposition to Defendant's Motion to Dismiss (Dkt. 19).

## II. PLAINTIFFS ARE ENTITLED TO THE ISSUANCE OF NOTICE TO SIMILARLY SITUATED DRIVERS

### A. Plaintiffs Have Made a Sufficient Showing that a Group of Similarly Situated Individuals Exist Who Have Been Who Have Been Deprived of Overtime Pay Who May Choose to Opt In to This Action

FedEx Ground contends that it would be improper to authorize the issuance of notice in this case because Plaintiffs have not met the "modest factual showing of similar factual and legal characteristics" necessary to satisfy the Court that "there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case." Trezvant v. Fid. Employer Services Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006). Citing Hodzic v. FedEx Package Sys., Inc., 2016 WL 6248078 (W.D. Pa. Oct. 26, 2016), FedEx Ground argues that because the remaining named Plaintiffs who submitted affidavits both work at the same facility, issuance of notice on a nationwide basis would be improper. But unlike in Hodzic, where the Court limited the issuance of notice to a single facility -- because Plaintiffs in that case only had evidence from that one facility -- here Plaintiffs have provided evidence showing that the challenged practice is much broader in scope than just at this one facility.[5]

---

[5]      Given the lenient standard for issuance of notice, courts routinely grant conditional certification, authorizing notice, even based on far more limited evidence.  Courts often grant nationwide notice even based on limited evidence from one location, where the evidence shows the practice at issue is in effect beyond that location.  See, e.g. Landry v. Swire Oilfield Servs., L.L.C., 252 F. Supp. 3d 1079, 1126 (D.N.M. 2017) ("Even allegations of company-wide pay practices stemming from employees' first-hand experiences at a single location may be sufficient to support company-wide notice."); Wilson v. Maxim Healthcare Servs., 2014 U.S. Dist. LEXIS 177072, at *21 (W.D. Wash., Dec. 22, 2014) (conditionally certifying a nationwide class of staffing recruiters despite the court's concern that the "plaintiffs' declarations are few and brief, are limited to employees from two offices in two states, and mostly if not entirely come from employees in the same business line[.]"); Hose v. Henry Industries, 49 F. Supp. 3d 906, 909-19 (D. Kan. Sept. 24, 2014) (conditionally certifying class in eleven states where the plaintiffs only worked at one terminal but alleged the existence of a company-wide policy); Schroeder v. Humana Inc., 2012 WL 5931886, *6 (E.D. Wisc. Nov. 27, 2012) ("[E]ven though

Indeed, here, Plaintiffs have evidence from *seven* facilities in *four* states Texas, Virginia, North Carolina, and Massachusetts – as well as evidence of the same practices in Washington state.  First, in her sworn affidavit, former Plaintiff Angel Sullivan-Blake described the practices she experienced at *three* different facilities in Texas. Dkt. 6-8.[6]  Second, attached here is a declaration from an additional out-of-state driver who has already opted in to this case, Horace Claiborne (see Dkt. 31).  See Declaration of Horace Claiborne (attached here as Exhibit A).  In his declaration, Mr. Claiborne describes his work for FedEx as a delivery driver under three different ISPs, one in Virginia and two in North Carolina.  Mr. Claiborne provides further evidence supporting Plaintiffs' position that drivers across the country are, in fact, subject to FedEx policies and supervised by FedEx managers, even though they nominally work under different ISPs. (Claiborne Decl. ¶ 9).  Similarly, Mr. Claiborne describes widespread failures in these three different Fed-Ex terminals for drivers who drive trucks weighing less than 10,001 pounds to receive overtime pay, even though they work more than 40 hours per week.  (Claiborne Decl. ¶ 19).

---

plaintiffs physically worked in the Green Bay office, there is no reason to limit notice to that location."); Kelly v. Bluegreen Corp., 256 F.R.D. 626, 631 (W.D. Wis. 2009) ("Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations.").  In order to obtain notice for locations outside where the named plaintiffs worked, it is simply *not* necessary to submit evidence from every such location.  Instead, "[f]or a class to extend beyond the named plaintiffs' own work location, they must demonstrate that employees outside of the work location for which the employee has provided evidence were similarly affected by the employer's policies."  Travers v. JetBlue Airways Corp., 2010 WL 3835029, at *2 (D. Mass. Sept. 30, 2010) (internal quotation omitted).

[6]      Though Ms. Sullivan-Blake is no longer a named plaintiff in this case, see Dkt. 41, her affidavit, which was submitted with Plaintiffs' Motion for Issuance of Notice remains part of the record before the Court (and she can opt-in now to the case, assuming the Court agrees with Plaintiffs' argument that this Court may have jurisdiction over out-of-state opt-ins.)

Furthermore, as Plaintiffs noted in their Motion, at least one court has certified a Rule 23 class of FedEx drivers who similarly worked under intermediary entities, where the plaintiffs raised similar claims on behalf of all such drivers (that they were not paid overtime) throughout the state of Washington. See Spencer v. FedEx Ground Package System, Inc., C.A. No. 14-2-30110-3 (Wash. Super. Ct. Jan. 14, 2016) (order granting class certification) (Dkt. 6-4).

Moreover, Plaintiffs also submitted evidence of FedEx Ground's own advertisements (Dkt. 6-5), Securities and Exchange Commission filing (Dkt. 6-6), and contracting requirements (Dkt. 6-12), which establish that FedEx Ground uses its ISP model across the nation, and which Plaintiffs here allege FedEx has done in order to insulate itself from potential liability for wage violations, such as the overtime violations alleged here, suffered by these drivers.

Taken together, Ms. Sullivan-Blake's affidavit regarding three different facilities in Texas, Mr. Claiborne's declaration regarding three different facilities in Virginia and North Carolina, Mr. Roy and Mr. Trumbull's affidavits regarding their experience at the Chicopee, Massachusetts, facility (Dkts. 6-8, 6-10), as well as the existence of the national FedEx Ground ISP model, and one court's determination that policies similar to those alleged by Plaintiffs warranted Rule 23 class certification in Washington state more than satisfy Plaintiffs' lenient evidentiary burden for the Court to order nationwide notice.

FedEx Ground's suggestion that, in order for the Court to authorize the issuance of notice, the opt-in plaintiffs' claims must be identical and the employer's defenses cannot differ, is simply incorrect.  FLSA opt-ins need only be "similarly situated" and do

not generally need to meet all of the Rule 23 requirements.  In this case, the proposed

class is similarly situated because Plaintiffs have met their lenient burden of presenting

evidence that FedEx Ground manages these drivers across the country (despite its use

of an ISP model to distance itself from the drivers on paper), which allows these drivers

to claim that FedEx actually employs them, and that such drivers across the country

have not received overtime pay despite being eligible to do so (since they drive trucks

weighing less than 10,001 pounds).  Whether different defenses to overtime liability that

FedEx may later raise is irrelevant at this stage.  See, e.g. Torrezani v. VIP Auto

Detailing, Inc., 318 F.R.D. 548, 557 (D. Mass. 2017) (noting that the different defenses

to which plaintiffs may be subject should be properly considered at the second stage of

a collective action, after discovery and after the employer has filed a motion for de-

certification); Pendlebury v. Starbucks Coffee Co.,  2005 WL 84500, at *3 (S.D. Fla.

Jan. 3, 2005) (factual matters regarding the employer's defenses not appropriate at

notice stage).

### B. FedEx Ground's Argument That the Determination of Opt-Ins' Eligibility for Overtime Would Ultimately Be Too Disparate to Be Tried on a Collective Basis Is Premature

FedEx Ground also argues that notice should not be issued in this case because

there would be many different defenses to the overtime claims for the opt-ins, and that

their situations would vary by the individual ISPs they work under.  In order to

emphasize the alleged variability of these claims, FedEx Ground lists a litany of factors

that it claims may impact whether a driver properly received overtime pay, such as

whether the drivers would even be subject to the FLSA's overtime requirements due to

various statutory exemptions and whether the drivers are paid based on a guaranteed

salary, a piece-rate, a piece-rate with a guaranteed minimum, or some other compensation arrangement. (Dkt. 55. at 11-15.) But courts routinely authorize notice to individuals who Plaintiffs contend are eligible for overtime pay and did not receive it, regardless of whether the defendant may have somewhat varying defenses for different opt-ins. See, e.g. Vondriska v. Premier Mortg. Funding, Inc., 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) (granting conditional certification despite variations in plaintiffs' job descriptions because "variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage") (quoting Scott v. Heartland Home Finance, Inc., 2006 WL 1209813, *3 (N.D. Ga. May 3, 2006)); see also Jones v. Cretic Energy Servs., LLC, 149 F. Supp. 3d 761, 772 (S.D. Tex. 2015) (conditionally certifying class including groups of workers who were paid differently, including salaried and non-salaried workers). Again, Plaintiffs have alleged that a group of individuals exist who have not received overtime pay and share similar characteristics, in that they worked under FedEx Ground's supervision but were nominally classified as employees of "ISPs", that they drove trucks weighing under 10,001 pounds (and were thus eligible for overtime under the FLSA), and that they consistently worked more than 40 hours per week. That is sufficient for notice purposes. Then, after discovery, FedEx Ground would be entitled to move for decertification if discovery were to reveal that their claims are too disparate to be tried collectively in one action.[7]

---

[7]     However, Plaintiffs expect that discovery will confirm that their claims are not too disparate (and that, for instance, whether they were paid on a salary, daily, or piece-rate basis is immaterial to the question of whether they were improperly denied overtime pay). Of course, the failure of an employer to keep consistent pay records for its employees is not a basis to deny the employees overtime pay, and thus it should not be material to this analysis whether it was FedEx Ground, or the ISPs, who kept those specific payroll records. Given that the drivers

In short, FedEx Ground's argument misses the point of Plaintiffs' complaint: *Plaintiffs have alleged that drivers are employed by FedEx, and thus, FedEx Ground is responsible for the FLSA overtime violations committed against the drivers (even if the payments themselves were made through the ISPs).* Effectively, FedEx Ground is asking this Court to weigh in now on the merits of this claim that FedEx Ground employed them, which is of course not appropriate at the FLSA initial notice stage.  "At this stage, courts do not need "to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented." Trezvant v. Fid. Employer Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006) (citing Kalish v. High Tech Inst.,  2005 WL 1073645, at *2, (D. Minn. Apr. 22, 2005)).

Courts routinely authorize the issuance of notice based on a complaint's allegations of joint employer status – as Plaintiffs have alleged here – and save any challenge to such allegations until after discovery has been conducted.  See, e.g. Kis v. Covelli Enterprises Inc., Case 2018 WL 2227782, at *2 (N.D. Ohio May 16, 2018) (allowing conditional certification based on plaintiffs' allegations of joint employer status, where plaintiffs' claims were "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct"); Ward v. Express Messenger Sys., Inc., 2018 WL 1604622, at *5 (D. Colo. Apr. 3, 2018) (joint employment "determination is a fact-intensive and individualized inquiry, and this court agrees with those that find this inquiry better suited for the decertification stage");

---

had to deliver packages assigned to them at the FedEx Ground terminals, and use the FedEx Ground scanners to track when various packages are delivered, Plaintiffs expect to show that the amount of time they worked will indeed be ascertainable in any event from FedEx Ground's records.

Burns v. Chesapeake Energy, Inc., 2017 WL 1842937 at *2 (W.D. Tex. Mar. 14, 2017) (conditionally certifying FLSA overtime claims brought by oil workers alleging joint employer theory and noting "[e]mployees need not be similarly situated in each and every aspect of their employment, but rather there must be simply some identifiable facts or legal nexus binding together the claims so that hearing the cases together promotes judicial efficiency."); Cruz v. Ham N Eggery Inc., 2016 WL 4186967, *3 (E.D.N.Y. Aug. 8, 2016) (rejecting defendant's contention that it was not a joint employer as a basis for denial of plaintiffs' motion for conditional certification); Flores v. Five Star Carting, LLC, 2015 WL 6625899, *4 (E.D.N.Y. 2015) (issue of joint employer status cannot be determined at preliminary stage of certification); Johnson v. VCG Holding Corp., 802 F. Supp. 2d 227, 239 (D. Me. 2011) (reserving the question of whether an alleged joint employer was liable for its subsidiary's FLSA violations for dispositive motions or the second stage of class certification).

The Court should not be deceived by FedEx Ground's attempt to complicate the notice issue by introducing factfinding and contradictory evidence related to FedEx Ground's potential liability and joint employer status at this early stage in the case.

### C. Plaintiffs Have Properly Proposed That Notice Be Issued to a Group of Similarly Situated Individuals

FedEx Ground next argues that certification should be denied because Plaintiffs seek certification of what it calls "an improper fail-safe class," which is "defined in terms of the legal injury." In re Nexium Antitrust Litig., 777 F.3d 9, 22 (1st Cir. 2015). In other words, a fail-safe class is "cannot be defined until the case is resolved on the merits." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012). Such classes are

problematic because "it would allow putative class members to seek a remedy but not be bound by an adverse judgment" if they are not in the class. Id.

As an initial matter, courts' concern about a "fail-safe class" generally arise in Rule 23 class action cases, not FLSA collective action cases, and FedEx Ground has not pointed the Court to a single case in this Circuit or judicial district holding that a "fail-safe class" is a basis for denying notice in the FLSA context. Instead, in FLSA cases, courts routinely authorize the issuance of notice when there is a group of similarly situated individuals who contend they are entitled to overtime but have not received it, and the adjudication of which will entail common questions (even if not all the questions are common.)

In any event, FedEx Ground's concerns should be disregarded, as Plaintiffs have proposed notice to a proper group of similarly situated individuals. Plaintiffs proposed issuance of notice to "all similarly situated FedEx delivery drivers around the country who, at any time in the last three years, have been employed to deliver FedEx's packages using vehicles under 10,001 pounds gross vehicle weight, and were paid through an ISP, but were not paid overtime for their hours worked beyond 40 per week." (Dkt. 6 at 3.) This is an objectively defined class, and only those drivers who meet the definition should opt in. See Byrd v. Aaron's Inc., 784 F.3d 154, 167 (3d Cir. 2015), as amended (Apr. 28, 2015) (a proper class is defined "with reference to objective criteria.").

Indeed, FLSA cases alleging non-payment of overtime are typically brought on behalf of individuals who worked in a particular job category, worked more than 40 hours a week, and were not paid overtime. In this case, drivers who do not meet the

class definition, such as those who did not drive trucks weighing less than 10,001 pounds, would not be permitted to opt in (and Plaintiffs have specifically limited their request to have drivers opt in who meet this definition).  See Perry v. Krieger Beard Servs., LLC, 2018 WL 3218413, at *3 (S.D. Ohio July 2, 2018) (finding notice to all technicians who worked for defendant and were not paid one-and-a-half times their regular rate of pay for all hours worked in excess of 40 per workweek and/or the minimum wage for each hour worked was proper because "[t]he facts that define an individual as a class member are knowable without any determination of liability.")[8]

## III. CONCLUSION

For the foregoing reasons, and the reasons explained in Plaintiffs' Motion for Issuance of Notice, this Court should grant Plaintiffs' motion and authorize the issuance of notice to FedEx drivers across the country who have worked under ISPs, driven trucks weighing less than 10,001 pounds, and have not received overtime pay for their hours worked beyond 40 per week.[9]

---

[8]     Near the end of its opposition, FedEx weaves into its argument a baseless suggestion that Plaintiffs' counsel could not represent the drivers who may opt in because, in other litigation, Plaintiffs' counsel previously represented FedEx drivers who have become "ISPs." FedEx implies that Plaintiffs' decision not to name ISPs themselves as defendants was influenced by Plaintiffs' counsel's past representation of drivers who became ISPs.  FedEx's argument is speculative and incorrect, and FedEx cannot demonstrate that any actual conflict exists.  Plaintiffs' counsel has indeed in the past represented FedEx drivers in other actions, including some who later became ISPs and some who later became drivers working under ISPs.  This does not disqualify Plaintiffs' counsel from representing here drivers who continue to contend they have been subjected to wage violations by FedEx.  Plaintiffs' counsel is not currently representing any ISPs, and moreover, ISPs are not parties to this action.  Moreover, in joint employment cases, it is routine for plaintiffs to sue only the top-level employer with the most financial resources, and limiting a suit to the top-level employer is obviously the most effective way to obtain overtime payment for the entire class, rather than limiting the claims to less well funded intermediaries who are not the ultimate employer and may only unnecessarily complicate the litigation.  This argument is simply an attempt by FedEx to avoid these claims, and FedEx has not offered any evidence that Plaintiffs' counsel are "materially limited" by any responsibilities they still owe to former clients.  S.J.C. Rule 3:07 RPC 1.7(a)(2).

Dated: September 24, 2018   Respectfully submitted,

           JORDAN ROY and JUSTIN TRUMBULL, on
           behalf of themselves and others similarly
           situated,

           By their attorneys

           /s/ Shannon Liss-Riordan
           Shannon Liss-Riordan (BBO #640716)
           Michelle Cassorla (BBO #688429)
           LICHTEN & LISS-RIORDAN, P.C.
           729 Boylston Street, Suite 2000
           Boston, Massachusetts 02116
           (617) 994-5800
           sliss@llrlaw.com
           mcassorla@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2018, a true and accurate copy of the foregoing Motion was served upon counsel for Defendant FedEx Ground Package System, Inc. via this Court's CM/ECF system.

           /s/ Shannon Liss-Riordan
           Shannon Liss-Riordan

---

[9] In a footnote to the Conclusion of its Opposition, FedEx Ground argues that Plaintiffs' proposed notice form is improper and that the Court should therefore deny issuance of notice. For the reasons explained in detail in their Motion (Dkt. 6 at 17-20), Plaintiffs contend that their proposed notice, which was based on notice that has been regularly granted in other cases, is proper. If the Court has any concerns about the proposed notice form, such concerns would not be a reason to deny the issuance of notice. Rather, the Court could simply order the parties to confer on any proposed revisions to the notice and to bring any issues they cannot resolve to the Court's attention.