UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORDAN ROY, ANGEL SULLIVAN-BLAKE, and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 3:17-cv-30116-KAR |
| | ) | |
| v. | ) | |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC. | ) ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTION FOR ISSUANCE OF NOTICE TO SIMILARLY SITUATED
INDIVIDUALS PURSUANT TO 29 U.S.C. § 216(b)
(Dkt. No. 6)

ROBERTSON, U.S.M.J.

## I.      Introduction

In this proposed nationwide collective action, the remaining plaintiffs, Jordan Roy

("Roy") and Justin Trumbull ("Trumbull") (collectively, "Plaintiffs"), each assert a single claim

against the defendant, FedEx Ground Package System, Inc. ("Defendant" or "FedEx Ground"),

for unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1)

(Dkt. No. 1).[1]  Presently before the court is Plaintiffs' contested motion for conditional class

certification pursuant to 29 U.S.C. § 216(b) (Dkt. No. 6).  Specifically, Plaintiffs seek to notify

"all similarly situated FedEx delivery drivers around the country" concerning their right to opt

into the suit (*id.*).  *See* 29 U.S.C. § 216(b).  After consideration of the parties' submissions and

---

[1] On May 22, 2018, this court granted Defendant's motion to dismiss the third named plaintiff, Angel Sullivan-Blake, for lack of personal jurisdiction (Dkt. No. 41).

hearing on October 2, 2018,  the court grants Plaintiffs' motion for conditional certification in

part, and denies it in part for the reasons that follow.[2]

## II.    Background

The background facts are stated in the court's earlier decision:

> FedEx Ground, a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania, is a business engaged in business and residential ground package delivery services.  FedEx Ground provides ground service to 100% of the continental United States population.  In 2016, FedEx Ground had revenues in excess of $16 billion.

> Plaintiffs Roy and Trumbull are both residents of Massachusetts . . . . FedEx Ground employed Plaintiffs as full-time delivery drivers through intermediary entities that FedEx Ground calls "independent service providers," or "ISPs."  Roy worked for FedEx Ground from February 2015 to January 2017.  Trumbull worked for FedEx Ground from late 2015 to February 2017.
> . . .

> Plaintiffs were eligible to receive overtime and regularly worked over forty hours per week delivering packages for FedEx Ground.  Yet, Plaintiffs were not paid time-and-a-half their regular rate for those hours.

(Dkt. No. 41) (footnote omitted).  Additional details will be provided in the analysis of the

issues.

Plaintiffs allege that they are entitled to conditional certification because all drivers to

whom they seek to issue notice are similarly situated (Dkt. No. 6).  FedEx Ground opposes the

motion on two grounds:  (1) the court lacks personal jurisdiction over non-Massachusetts drivers;

and (2) only Roy, Trumbull, and other drivers employed by the same ISP are similarly situated.

Each of Defendant's objections will be addressed in turn.

## III.    Analysis

### A.    The court lacks personal jurisdiction over non-Massachusetts plaintiffs.

---

[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes (Dkt. No. 9).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

Relying on *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.,* 137 S. Ct. 1773 (2017) (hereinafter *Bristol-Myers*), FedEx Ground argues that Plaintiffs are barred from asserting claims on behalf of putative collective action members who worked outside Massachusetts because those claims do not relate to FedEx Grounds' contacts with Massachusetts (Dkt. No. 55 at 2-6).  Plaintiffs maintain that *Bristol-Myers'* holding does not apply to opt-in plaintiffs in FLSA collective actions (Dkt. No. 57 at 2-8).  The court concludes that the claims of potential opt-in out-of-state employees do not provide the court with a basis to exercise personal jurisdiction over FedEx Ground as to such claims.[3]

"It is axiomatic that, '[t]o hear a case, a court must have personal jurisdiction over the parties, "that is, the power to require the parties to obey its decrees."'"  *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008) (alteration in original) (quoting *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.,* 290 F.3d 42, 50 (1st Cir. 2002)).  Consequently, the question of personal jurisdiction must be decided before the court "reach[es] the merits of a case . . . ."  *United States v. Swiss Am. Bank, Ltd.,* 191 F.3d 30, 46 (1st Cir. 1999) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 101 (1998)).

"When a court's power to exercise personal jurisdiction over a defendant is challenged, the plaintiff bears the burden of establishing that the exercise of such jurisdiction is proper."  *Gulf Oil Ltd. P'ship v. Petroleum Mktg. Grp., Inc.*, 308 F. Supp. 3d 453, 457 (D. Mass. 2018) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016)).  "Under the

---

[3] FedEx Ground contends that Plaintiffs have waived the issue of personal jurisdiction due to their alleged failure to raise it in their motion for issuance of notice and their sur-reply to FedEx Ground's earlier motion to dismiss for lack of jurisdiction (Dkt. No. 55 at 3-4 n.2).  Setting aside the fact that FedEx Ground presented its argument in a footnote, the lack of personal jurisdiction is an affirmative defense.  *See, e.g., Pruco Life Ins. Co. v. Wilmington Tr. Co.,* 616 F. Supp. 2d 210, 214 (D.R.I. 2009); *McDermott v. FedEx Ground Sys., Inc.,* 520 F. Supp. 2d 254, 256 (D. Mass. 2007).

commonly used 'prima facie' approach, a court considers 'whether [plaintiff] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction.'" *Id.* (quoting *A Corp.,* 812 F.3d at 58). "A court 'must accept [plaintiff's] properly documented evidentiary proffers as true and construe them in the light most favorable to [its] jurisdictional claim.'" *Id.* (second alteration in original) (quoting *A Corp.,* 812 F.3d at 58). "However, the plaintiff is only entitled to credit for assertions that are supported by specific evidence, not for conclusory or unsupported allegations from its pleadings." *Id.* (citing *Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)). "Allegations in legal memoranda alone are 'insufficient . . . to establish jurisdictional facts.'" *Id.* (alteration in original) (quoting *Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001)).

"Personal jurisdiction over defendants in federal question cases [such as this] depends on meeting the due process requirements of the Fifth Amendment and making service of process under Federal Rule of Civil Procedure 4(k)." *McCarthy v. Waxy's Keene, LLC,* Civil No. 16-cv-122-JD, 2016 WL 4250290, at *2 (D.N.H. Aug. 10, 2016) (citing *Swiss Am. Bank, Ltd.*, 274 F.3d at 618). *See BNSF Ry. Co. v. Tyrrell,* 137 S. Ct. 1549, 1556 (2017) ("[A]bsent consent, a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction."). "[S]ervice of process must . . . be grounded in a federal statute or rule." *Wang v. Schroeter*, Civil Action No. 11-10009-RWZ, 2011 WL 6148579, at *4 (D. Mass. Dec. 9, 2011) (citing *Swiss Am. Bank*, *Ltd.,* 274 F.3d at 618). Where, as here, nationwide service of process is not authorized by the statute -- the FLSA -- "service is effective only if the defendant is subject to jurisdiction in the forum state." *McCarthy,* 2016 WL 4250290, at *2 (citing Fed. R. Civ. P. 4(k)(1)). *See Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (if Congress did not provide for nationwide service of process, it cannot be inferred) (citing *Omni Capital Int'l, Ltd. v. Rudolf*

*Wolff & Co.,* 484 U.S. 97, 106 (1987)).  "To make that showing, the plaintiffs must establish that

the defendants meet the requirements of the forum state's long-arm statute."  *McCarthy,* 2016

WL 4250290, at *2 (citing Fed. R. Civ. P. 4(k)(1)(A)).  Because the Massachusetts long-arm

statute "imposes constraints on personal jurisdiction that go beyond those imposed by the

Constitution[,] [the court] must . . . find sufficient contacts between the defendant and the forum

state to satisfy both the Massachusetts long-arm statute and the Constitution."  *Nowak v. Tak*

*How Invs, Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996) (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1387

(1st Cir. 1995)); *see also SCVNGR, Inc. v. Punchh, Inc.* 85 N.E.3d 50, 56 n.9 (Mass. 2017)

(clarifying that Massachusetts' long-arm statute's reach is not coextensive with what due process

allows).  This court previously analyzed the Massachusetts long-arm statute and the Due Process

clause and determined that it had personal jurisdiction over the named plaintiffs Roy and

Trumbull, who lived and worked in Massachusetts at the relevant time, but did not have personal

jurisdiction over Plaintiff Sullivan-Blake, who resided and worked in Texas (Dkt. No. 41).

Because FedEx Ground is a Delaware corporation with its principal place of business in

Pennsylvania, there is no dispute that Massachusetts courts do not have general jurisdiction.  *See*

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  The court's analysis addresses specific

jurisdiction over the claims of potential nonresident opt-in plaintiffs.  "In order for a . . . court to

exercise specific jurisdiction, 'the *suit* ' must 'aris[e] out of or relat[e] to the defendant's contacts

with the *forum*.'"  *Bristol-Myers,* 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127)

(alterations in original) (internal quotation marks omitted).  *See Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 472–73 (1985) (specific jurisdiction may be established over a defendant who "has

'purposefully directed' his activities at residents of the forum and the litigation results from

alleged injuries that 'arise out of or relate to' those activities.") (citation omitted) (quoting

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation."'"  *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984)).  "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being hauled into court there."  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Bristol-Myers,* 137 S. Ct. at 1780 (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

To establish specific personal jurisdiction over a defendant that complies with due process, a plaintiff is required to show that:

> (1) its claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable.

*Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018) (citing *A Corp.*, 812 F.3d at 59).  All three minimum contact requirements must be met in order for plaintiff to establish specific jurisdiction over a defendant.  *See id; Pushor v. Mount Washington Observatory, Inc.*, Docket No. 2:17-cv-354-NT, 2018 WL 3487579, at *3 (D. Me. May 17, 2018), *reconsideration denied,* Docket No. 2:17-cv-354-NT, 2018 WL 3478892 (D. Me. July 19, 2018) ("If the plaintiff proceeds under a specific jurisdiction theory, the court must be satisfied that all three prongs are met.").

In *Bristol-Myers*, the Court addressed the relatedness requirement in the context of whether the California state courts had specific jurisdiction over the tort claims of nonresident plaintiffs.

> [A] group of more than 600 plaintiffs, the majority of whom were not California residents, brought a products liability action against Bristol-Myers Squibb ("BMS"), a large pharmaceutical company incorporated in Delaware and headquartered in New York, in California state court.  The plaintiffs sought to recover under California law for personal injuries allegedly resulting from the plaintiffs' use of Plavix, a drug manufactured by BMS.  Reversing the California Supreme Court, the Court held that California courts did not have specific jurisdiction to entertain the nonresidents' claims against BMS.  The Court noted that, under "settled principles" of specific jurisdiction, "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State [and is therefore subject to the State's regulation].'"  [*Bristol-Myers*,] 137 S. Ct. at 1781 [first alteration in original] (quoting *Goodyear*, 564 U.S. at 919).  The Court found that connection to be lacking with respect to the nonresidents' claims where the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California.  *Id.*  "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims."  *Id.*  What was needed — and what was missing — was a "connection between the forum and the specific claims at issue."  *Id.*

(Dkt. No. 41).

FedEx Ground contends that *Bristol-Myers* precludes the court from exercising specific jurisdiction over the FLSA claims of unnamed plaintiffs employed outside Massachusetts because "opt-ins in an FLSA case are individually joined party plaintiffs, consistent with the nature of [FLSA] actions as procedurally more akin to mass actions than class actions" (Dkt. No. 55 at 2, 4).  Plaintiffs, on the other hand, ask the court to adopt the reasoning of the "majority of its sister courts around the country" that have rejected the application of *Bristol-Myers* to class or collective actions (Dkt. No. 57 at 3).  Plaintiffs' argument is two-pronged.  First, they rely on the language in the Court's majority opinion stating that it left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal

court" as apply to a state court. *Bristol-Myers*, 137 S. Ct. at 1784.  In addition, Plaintiffs

distinguish *Bristol-Myers* on procedural grounds:  it was a mass tort suit brought in state court

asserting state law claims, as opposed to a federal action filed in federal court asserting federal

claims (Dkt. No. 57 at 2-8).  Notwithstanding these distinctions, the court concludes that

"*Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the

FLSA claims of non-[Massachusetts employed] plaintiffs against [FedEx Ground]." *Maclin v.*

*Reliable Reports of Tex., Inc.,* 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018).

Although *Bristol-Myers* addressed constraints on personal jurisdiction imposed by the

Due Process Clause of the Fourteenth Amendment, *see Bristol-Myers*, 137 S. Ct. at 1779,

Plaintiffs' reliance on Fifth Amendment Due Process is unavailing.  Plaintiffs correctly point out

that personal jurisdiction in federal question cases is governed by the Fifth Amendment's Due

Process Clause, which "requires only that defendants have minimum contacts with the United

States as a whole rather than with a particular state." *Wang v. Schroeter*, Civil Action No. 11-

10009-RWZ, 2011 WL 6148579, at \*4 (D. Mass. Dec. 9, 2011) (citing *Swiss Am. Bank, Ltd.,* 274

F.3d at 618).  However, because the FLSA does not authorize nationwide service of process, *see*

*id.* at \*4 n.12*,* "this [c]ourt looks to [Massachusetts] law and the Due Process Clause of the

Fourteenth Amendment for the applicable limits on its exercise of personal jurisdiction." *Mussat*

*v. IQVIA, Inc.,* Case No. 17 C 8841, 2018 WL 5311903, at \*4 (N.D. Ill. Oct. 26, 2018) (citing

*Walden*, 571 U.S. at 283). *See Crowe v. Harvey Klinger, Inc.,* 277 F. Supp. 3d 182, 189 (D.

Mass. 2017) (citing *Sawtelle,* 70 F.3d at 1387).  Consequently, the Fifth Amendment does not

dictate the parameters of due process in this case. *See Maclin*, 314 F. Supp. 3d at 850-51 ("[T]he

court cannot envisage that the Fifth Amendment Due Process Clause would have any more or

less effect on the outcome respecting FLSA claims than the Fourteenth Amendment Due Process

Clause, and this district court will not limit the holding in *Bristol-Myers* to mass tort claims or state courts.").

Although at least one other court has accepted the argument, this court ultimately does not find persuasive Plaintiffs' attempt to distinguish this case from *Bristol-Myers* on the basis that it is an FLSA collective action in federal court. *See, e.g., Swamy v. Title Source, Inc.,* No. C 17-01175 WHA, 2017 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (distinguishing *Bristol-Myers* as "a mass tort action against the defendant pharmaceutical company in California state court, alleging state claims" and declining to apply it to an FLSA collective action). As another court confronting the application of *Bristol-Myers* to a class action observed: "[t]he constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litig.,* 16 Civ. 696 (BMC)(GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). "Nothing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions; 'rather, the Court announced a general principle – that due process requires a "connection between the forum and the specific claims at issue."'" *Chavez v. Church & Dwight Co.,* No. 17 C 1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018) (quoting *Greene v. Mizuho Bank, Ltd.,* 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017)). "That principle applies with equal force whether or not the plaintiff is a putative class representative." *Greene,* 289 F. Supp. 3d at 874. Rather, in this court's view, "the Court's concerns about federalism suggest that it seeks to bar nationwide class actions in forums where the defendant is not subject to general jurisdiction." *Chavez,* 2018 WL 2238191, at *10 (citing *DeBernardis v. NBTY, Inc.,* Case No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018)). *See Practice*

*Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 861 (N.D. Ill. 2018) (a defendant's due process interest is the same in a mass tort action as in a class action).[4]

District courts generally have extended the specific jurisdiction principles articulated in *Bristol-Myers* to the analysis of personal jurisdiction over named plaintiffs in federal class actions.  "It appears that those courts agree that *Bristol-Myers* generally applies to bar nationwide class actions in federal court where the defendant allegedly injured the *named plaintiff* outside the forum." *Mussat,* 2018 WL 5311903, at *4 (emphasis added).  *See, e.g., Lee v. Branch Banking & Tr. Co.,* Civil Action No. 18-21876-Civ-Scola, 2018 WL 5633995, at *4 & n.1 (S.D. Fla. Oct. 31, 2018) (Florida's long-arm statute and *Bristol-Myers* were fatal to the claims of the nonresident named plaintiffs in a class action); *Chernus v. Logitech, Inc.,* Civil Action No.:  17-673(FLW), 2018 WL 1981481, at *6 (D.N.J. Apr. 27, 2018) (the court did not have personal jurisdiction over a nonresident named plaintiff in a putative nationwide class action where the named plaintiff's injury lacked a connection to the forum state); *Greene,* 289 F. Supp. 3d at 874 (citing *Bristol-Myers*, the court dismissed the claims of a named plaintiff in a putative class action who was a nonresident of the forum state, was not injured there, and whose claims were unrelated to the defendant's contacts with the forum state notwithstanding the similarity between the nonresident named plaintiff's claims and those of the resident named plaintiff); *Spratley v. FCA US LLC*, 3:17-CV-0062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (applying *Bristol-Myers* and finding that the court lacked specific jurisdiction over the claims of out-of-state named plaintiffs who showed "no connection between their claims and Chrysler's contacts

---

[4] One district court has certified the question of *Bristol-Myers'* application to the unnamed, nonresident putative class members in a nationwide class action.  *See Molock v. Whole Foods Mkt., Inc.,* 297 F. Supp. 3d 114 (D.D.C.), *motion to certify appeal granted by* 317 F. Supp. 3d 1 (D.D.C. 2018), *appeal docketed*, No. 18-7162 (D.C. Cir. Oct. 31, 2018).

with [the forum state]").  Similarly, in the instant case, the court determined that it did not have

specific jurisdiction over FedEx Ground as to the claims of the nonresident named plaintiff,

Sullivan-Blake (Dkt. No. 41).

    In support of their position that *Bristol-Myers* does not bar personal jurisdiction over

FedEx Ground as to the absent collective action members, Plaintiffs rely on the dissent's

observation that "[t]he Court [did] not confront the question whether its opinion here would also

apply to a class action in which a plaintiff injured in the forum state seeks to represent a

nationwide class of plaintiffs, not all of whom were injured there."  *Bristol-Myers,* 137 S. Ct. at

1789 n.4 (Sotomayor, J., dissenting).  Since *Bristol-Myers*, the district courts that have addressed

the question posed by Justice Sotomayor disagree on whether *Bristol-Myers* extends to

nonresident unnamed class or collective action members in cases where the defendant injured the

named plaintiff in the forum state.  *See Chavez,* 2018 WL 2238191, at *10 ("Whether *Bristol-*

*Myers* extends to class [and collective] actions is a question that has divided [district] courts

across the country.").[5]  "No Court of Appeals has engaged the question of whether [*Bristol-*

---

[5] One court has concluded that the principles set forth in *Bristol-Myers* preclude personal
jurisdiction over out-of-state unnamed plaintiffs in an FLSA collective action.  *See Maclin*, 314
F. Supp. 3d at 850-51.  Several other courts have held otherwise.  *See Garcia v. Peterson*, 319 F.
Supp. 3d 863, 880 (S.D. Tex. 2018); *Swamy*, 2017 WL 5196780, at *2; *Thomas v. Kellogg Co.,*
CASE NO. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017); *see also*
*Hickman v. TL Transp., LLC,* 317 F. Supp. 3d 890, 899 n.2 (E.D. Pa. 2018) (in dicta, the court
said, "[t]here are also compelling reasons to doubt that the reasoning in *Bristol-Myers* applies to
the claims of putative class members who worked for TLT in Maryland.  Unlike the mass tort
action arising under state law in *Bristol-Myers*, this is an opt-in class action arising under a
federal statute that applies to all fifty states.").  There is a similar divergence of opinions
regarding the implications of *Bristol-Myers* in the class action context.  *See Knotts v. Nissan N.*
*Am., Inc.,* File No. 17-cv05049 (SRN/SER), 2018 WL 4922360, at *14 & nn. 7-14 (D. Minn.
Oct. 10, 2018) ("Outside of Illinois, district courts have largely declined to extend [*Bristol-*
*Myers*] to the class action context. . . . District courts in California, Louisiana, Florida, Georgia,
Virginia, Texas, the District of Columbia, and even Illinois have concluded that there are valid
reasons for limiting [*Bristol-Myers*] to named parties – particularly due to the material

*Myers*] requires a finding of specific personal jurisdiction with respect to unnamed members of a putative class [or collective] action suit." *Knotts,* 2018 WL 4922360, at *13.  In the court's view, an analysis of the similarities between the nonresident party plaintiffs in *Bristol-Myers,* the out-of-forum named plaintiffs in Rule 23 class actions, and the nonresident opt-in plaintiffs in FLSA suits supports FedEx Ground's position that, even if the principles stated in *Bristol-Myers* do not extend to class members in class actions, they preclude this court from asserting personal jurisdiction over the claims of potential opt-in plaintiffs who do not work for FedEx Ground in Massachusetts.  FedEx Ground drivers would potentially be able to bring a nationwide collective action in Delaware and Pennsylvania, "the States that have general jurisdiction" over FedEx Ground.  *Bristol-Myers*, 137 S. Ct. at 1783.  "Alternatively, the [potential opt-in] plaintiffs who are residents of a particular state . . . could probably sue together in their home States." *Id.*  One commentator has viewed the Court's comment concerning a safe forum for nationwide class actions as signaling that its recent jurisdictional decisions, including *Bristol-Myers,* effectively point towards an intent to limit nationwide class actions to forums with general jurisdiction over defendants.  *See* 2 William B. Rubenstein, Newberg on Class Actions § 6.26 (5th ed. 2011-2018).

To the extent Plaintiffs rely on cases indicating that *Bristol-Myers* does not apply to nationwide class actions brought pursuant to Fed. R. Civ. P. 23 because personal jurisdiction over a defendant is gauged by personal jurisdiction over named plaintiffs (Dkt. No. 57 at 2-8), *see, e.g., Morgan v. U.S. Xpress, Inc.,* Case No. 3:17-cv-00085, 2018 WL 3580775, at *5-6

---

distinctions between mass tort actions and class actions . . . ."); *Al Haj v. Pfizer, Inc.,* 17 C 6730, 2018 WL 3707561, at *1 (N.D. Ill. Aug. 3, 2018) (collecting cases).

(W.D. Va. July 25, 2018); *In re:  Chinese-Manufactured Drywall Prods. Liab. Litig.,* CIVIL

ACTION MDL NO. 09-2047, 2017 WL 5971622, at *12 (E.D. La. Nov. 30, 2017), there are

meaningful distinctions between Rule 23 class actions and FLSA collective actions.  *See Prescott*

*v. Prudential Ins. Co.,* 729 F. Supp. 2d 357, 359 (D. Me. 2010).  "Rule 23 provides for 'opt out'

class actions.  FLSA [§ 216(b)] allows as class members only those who 'opt in.'  These two

types of class actions are mutually exclusive and irreconcilable."  *LaChapelle v. Owens-Illinois,*

*Inc.*, 513 F.2d 286, 289 (5th Cir. 1975).  *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66,

73 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA .

. . .").

The consequences of certification highlight the distinctions between the class actions

under Rule 23 and collective actions under 29 U.S.C. § 216(b).  In a Rule 23 proceeding in

which the class has been certified under Fed. R. Civ. P. 23(c)(1), the class is described and has

independent legal status.  *See LaChapelle,* 513 F.2d at 288; *Bucceri v. Cumberland Farms, Inc.*,

Civil Action No. 15-cv-13955-IT, 2017 WL 3495693, at *2 (D. Mass. Aug. 14, 2017); Fed. R.

Civ. P. 23(c)(1)(B).  "[I]f the action is maintainable as a class action, each person within the

description is considered to be a class member and, as such, is bound by judgment, whether

favorable or unfavorable, unless he has 'opted out' of the suit."[6]  *LaChapelle*, 513 F.2d at 288.

By contrast, under the FLSA:

[a]n action to recover the liability . . . may be maintained against any employer . . . in any
Federal or State court of competent jurisdiction by any one or more employees for and in
behalf of himself or themselves and other employees similarly situated.  No employee
shall be a party plaintiff to any such action unless he gives his consent in writing to

---

[6] To be more precise, under Fed. R. Civ. P. 23(b)(1) and (b)(2), membership in the class is
"mandatory" and "[t]he Rule provides no opportunity for (b)(1) or (b)(2) members to opt out . . .
."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).  In a Rule 23(b)(3) action, class
members are required to take affirmative action if they want to withdraw from the class.  *See id.*

become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  "The sole consequence of conditional certification [under § 216(b)] is the sending of court-approved written notice to employees who in turn *become parties* to a collective action only by filing written consent with the court, § 216(b)."  *Bucceri,* 2017 WL 3495693, at *2 (emphasis added) (citation omitted) (citing *Genesis Healthcare Corp.,* 569 U.S. at 75).[7]  Put another way, only the employees who affirmatively opt into the suit by filing their written consent are parties who are "bound or may benefit from judgment."  *LaChapelle*, 513 F.2d at 288.  "'A collective action is thus "a fundamentally different creature than the Rule 23 class action" because "the existence of a collective action under § 216(b) [depends] on the active participation of other plaintiffs."'"  *Lichy v. Centerline Commc'ns LLC*, Civil Action No. 15-cv-13339-ADB, 2018 WL 1524534, at *2 (D. Mass. Mar. 28, 2018) (quoting *Prescott,* 729 F. Supp. 2d at 362).  *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) ("When a named plaintiff files a complaint containing FLSA collective action allegations, the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in Rule 23.  Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs.") (citing *Smith v. T–Mobile USA, Inc.*, 570 F.3d 1119, 1121 (9th Cir. 2009); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)); *Cunha v. Avis Budget Car Rental, LLC,* 221 F. Supp. 3d 178, 181 (D. Mass. 2016)

---

[7] In attempting to distinguish *Bristol-Myers* from class actions, some courts have relied on *Devlin v. Scardeletti,* 536 U.S. 1, 9-10 (2002), which states that "[n]onnamed . . . class members may be parties for some purposes and not for others."  *Id.* at 9-10.  *See, e.g., Al Haj,* 2018 WL 3707561, at *2-3; *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,* Case No. 17-cv-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).  However, the court has not found authority that equates the status of an opt-in plaintiff in an FLSA collective action with that of a class member in a Rule 23 case.

("'Unlike [Rule] 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt in and be bound by any judgment.'") (citation omitted).  "In other words, 29 U.S.C. § 216(b) does not truly authorize a class action:  it is properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees."  *Anjum v. J.C. Penney Co.*, No. 13 CV 0460(RJD)(RER), 2014 WL 5090018, at *8 (E.D.N.Y. Oct. 9, 2014)   Therefore, the opt-in plaintiffs in an FLSA collective action are more analogous to the individual plaintiffs who were joined as parties in *Bristol-Myers* and the named plaintiffs in putative class actions than to members of a Rule 23 certified class. *See Bristol-Myers*, 137 S. Ct. at 1778, 1781; *Chernus*, 2018 WL 1981481, at *6; *Maclin*, 314 F. Supp. 3d at 850-51; *Greene*, 289 F. Supp. 3d at 874; *Spratley*, 2017 WL 4023348, at *7.  By extension, *Bristol-Myers* requires that the defendant be subject to specific jurisdiction as to the claims of FLSA opt-in plaintiffs in putative collective actions.  Similarity of claims, alone, is not sufficient to extend personal jurisdiction to out-of-state opt-in plaintiffs.  *See Bristol-Myers*, 137 S. Ct. at 1781; *Greene*, 289 F. Supp. 3d at 875.

In addition, some courts have declined to extend *Bristol-Myers* to nationwide class actions on the ground that "a class action suit must satisfy due process procedural safeguards that do not exist in mass tort actions."  *See Knotts*, 2018 WL 4922360, at *15.[8]  Here, too, there are relevant distinctions between Rule 23 class actions and FLSA collective actions.  Specifically, "for a case to qualify for class action treatment, it needs to meet the additional due process standards for class certification under Rule 23 – numerosity, commonality, typicality, adequacy

---

[8] Plaintiffs cite *Garcia*, 319 F. Supp. 3d at 863, an FLSA case, in support of their position that the procedural protections inherent in Rule 23 class actions and FLSA suits distinguish them from *Bristol-Myers*.  However, relying on cases discussing the "'additional due process safeguards'" under Rule 23, *Garcia* summarily declined to extend *Bristol-Myers'* holding to the FLSA collective action context.  *Id.* at 880.

of representation, predominance and superiority." *In re:  Chinese-Manufactured Drywall Prod. Liab. Litig.,* 2017 WL 5971622, at *14 (citing Fed. R. Civ. P. 23(a) & (b)).  *See Torrezani v. VIP Auto Detailing, Inc.,* 318 F.R.D. 548, 553 (D. Mass. 2017) (stating the four requirements of a proposed class under Fed. R. Civ. P. 23(a):  numerosity, commonality, typicality, and adequacy). Courts have found that Rule 23's "stringent" class action standard provides adequate due process protection to defendants and that the same "due process safeguards" are not present in the mass tort action context.  *Molock,* 297 F. Supp. 3d at 126.  By contrast to Rule 23, most courts do not require a party seeking conditional certification of a collective action under § 216(b) to demonstrate the Rule 23 requirements.  *See Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014); *Prescott,* 729 F. Supp. 2d at 365 n.8 ("A few trial courts have employed Rule 23's criteria and procedures in determining whether to certify an FLSA collective action, but the vast majority of courts have concluded that Congress did not intend the FLSA to incorporate all the requirements of Rule 23 . . . .") (citation omitted) (collecting cases).  Instead, the representative plaintiff must show only that other employees are "similarly situated."  29 U.S.C. § 216(b).  At least one court in this district has indicated that this is "a lesser showing than that required by Rule 23."  *Prescott*, 729 F. Supp. 2d at 359.  *See Yayo v. Museum of Fine Arts,* Civil Action No. 13-11318-RGS, 2014 WL 2895447, at *3 (D. Mass. June 26, 2014) (same, quoting *Prescott*).  Because the FLSA standard for certification of a collective action has been held to be less stringent than that of Rule 23, the due process protections for defendants are dissimilar.  *See Molock*, 297 F. Supp. 3d at 126; *In re:  Chinese-Manufactured Drywall Prods. Liab. Litig.,* 2017 WL 5971622, at *14-16; *Prescott*, 729 F. Supp. 2d at 359.  Therefore, the cases that have declined to extend *Bristol-Myers* to class actions on the basis of the due process safeguards inherent in Rule 23's requirements are distinguishable.

16

Here, under the "settled principles regarding specific jurisdiction" articulated in *Bristol-Myers,* Plaintiffs are required to demonstrate that FedEx Ground has sufficient minimum contacts with Massachusetts to satisfy the constitutional guarantee of due process regarding the claims of non-Massachusetts opt-in plaintiffs. *Bristol-Myers*, 137 S. Ct. at 1781. *See Plixer Int'l, Inc.*, 905 F.3d at 7 (citing *A Corp.*, 812 F.3d at 59). As noted earlier, personal jurisdiction is wanting if one of the three minimum contact criteria is not satisfied. *See id.* (citing *A Corp.,* 812 F.3d at 59). Because Plaintiffs cannot satisfy the relatedness requirement for the claims of the FedEx Ground drivers who did not work in Massachusetts, due process does not permit the court to exercise specific jurisdiction over Defendant regarding their claims.[9]

"The first prong of the [due process] test, regarding 'relatedness,' 'serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum.'" *Cossart v. United Excel Corp.,* 804 F.3d 13, 20 (1st Cir. 2015) (quoting *Sawtelle,* 70 F.3d at 1389). "The relatedness inquiry 'is to be resolved under "a flexible, relaxed standard."'" *Crowe*, 277 F. Supp. 3d at 190 (quoting *Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016)). "In evaluating relatedness, the court is mindful that '[q]uestions of specific jurisdiction are always tied to the particular claims asserted.'" *Id.* (quoting *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999)). "'[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case.'" *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) (second alteration in original) (quoting *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005)).

---

[9] Plaintiffs do not make a relatedness argument regarding out-of-state employees. Instead, their specific jurisdiction argument relies on their contention that *Bristol-Myers* does not apply to the claims of absent class and collective action members.

In the instant case, Plaintiffs have asserted a single claim for FedEx Ground's alleged violation of the FLSA by its failure to pay overtime to drivers of vehicles with gross weights of less than 10,001 pounds who were hired and paid by ISPs and worked in excess of forty hours per week (Dkt. No. 1).  Under FedEx Ground's operational structure, drivers reported to one local terminal to pick-up the packages that they were responsible for delivering that day (Dkt. No. 6-5).  For example, Plaintiffs Roy and Trumbull picked up packages at FedEx Ground's Springfield Terminal in Chicopee, Massachusetts (Dkt. No. 6-8 ¶ 4; Dkt. No. 6-10 ¶ 4; Dkt. No. 55-5 ¶ 2).  Angel Sullivan-Blake retrieved packages from three FedEx terminals in Texas during the periods of her employment as a FedEx Ground driver:  Webster (November 2015 to June 2016); Sugar Land (November 2016 to February 2017); and North Houston (beginning in July 2017) (Dkt. No. 6-9 ¶¶ 3-5).  Similarly, Horace Claiborne's deliveries were limited to the areas surrounding the terminals in Virginia and North Carolina to which he reported (Dkt. No. 57-1 ¶¶ 2, 4, 12, 13).  Because Plaintiffs cannot demonstrate a nexus between FedEx Ground's activities in Massachusetts and the payment of drivers who picked up packages from terminals outside Massachusetts, Plaintiffs cannot satisfy the relatedness requirement necessary to establish personal jurisdiction.  *See Bristol-Myers,* 137 S. Ct. at 1780-81; *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir. 1992) (to satisfy the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.").  Thus, permitting Plaintiffs to bring a nationwide action in Massachusetts would violate Defendant's due process rights.[10]  *See Mussat*, 2018 WL

---

[10] Plaintiffs suggest that the court should defer determination of personal jurisdiction until after nationwide notice is issued and potential opt-in plaintiffs have joined the case (Dkt. No. 57 at 3 n.1).  Leaving aside the practical problems raised by this approach, postponing determination of specific jurisdiction does not comport with the court's view of *Bristol-Myers*.  For the reasons previously discussed, if the court lacks personal jurisdiction as to out-of-state opt-in plaintiffs,

5311903, at *5 (where nonresident class members' claims did not relate to the defendant's

contacts with the forum state, "exercising specific jurisdiction over [the defendant] with respect

to the nonresidents' claims would violate [the defendant's] due process rights"); *Maclin*, 314 F.

Supp. 3d at 850 (finding that *Bristol-Myers* divested the court of specific jurisdiction over the

FLSA claims of nonresident plaintiffs due to their lack of a connection to the forum state).

 The failure to meet the relatedness requirement dooms Plaintiffs' request to issue notice

of an FLSA collective action to FedEx Ground drivers who did not work in Massachusetts.

Accordingly, to the extent Plaintiffs seek to issue notice of the collective action to FedEx Ground

drivers who worked outside Massachusetts, the motion is denied.

### B. The Massachusetts FedEx Ground drivers are similarly situated.

 In view of the determination that the court's personal jurisdiction over FedEx Ground is

limited to the claims of potential plaintiffs who were employed as drivers in Massachusetts, the

remaining question posed by Plaintiffs' motion is whether notice of the FLSA collective action

should be issued to all similarly situated FedEx delivery drivers in Massachusetts. Under the

lenient standard applied to a motion for conditional certification, Plaintiffs have made the

required showing that they are similarly situated to the members of the putative class of delivery

drivers hired and paid by ISPs in Massachusetts. The evidence before the court is sufficient at

this stage of the litigation to demonstrate the possibility that delivery drivers were subjected to

FedEx Ground's policy of contracting with ISPs to provide delivery services while maintaining

---

the court does not have the authority to issue notice of a suit against Defendant to putative
collective action members who do not work in Massachusetts. *See Foster-Miller, Inc. v.
Babcock & Wilcox Canada*, 46 F.3d 138, 143 (1st Cir. 1995) ("Personal jurisdiction implicates
the power of a court over a defendant.").

control of the drivers' work schedules and employment conditions and failing to pay overtime compensation to drivers who worked in excess of forty hours per week.

      1.     FedEx Ground's Operations and Business Model

Descriptions of FedEx Ground's two prior business models and its current ISP model are useful in analyzing the question of whether notice should be issued to putative collective action members who are employed in Massachusetts.  By way of background, one court observed: "FedEx has changed its business model vis-à-vis . . . delivery drivers several times over the past decade in response to numerous lawsuits alleging that FedEx committed violations of federal and state wage and hour laws by misclassifying the drivers as independent contractors." *Hodzic v. Fedex Package Sys., Inc.*, Civil Action No. 15-956, 2016 WL 6248078, at *1 (W.D. Pa. Oct. 26, 2016).

FedEx Ground's "independent contractor" model is described in *Scovil v. FedEx Ground Package Sys., Inc.*, 811 F. Supp. 2d 516 (D. Me. 2011).  According to the affidavits of six drivers who delivered FedEx Ground's packages in Maine using trucks weighing less than 10,001 pounds, the drivers were "required to own a vehicle that prominently display[ed] the FedEx logo, to wear FedEx uniforms, and to report to a FedEx terminal each morning to pick up their packages." *Id.* at 519.  "Each driver was required to comply with numerous rules and specifications governing the truck, the signage on the truck, uniform standards, grooming standards, and other such matters." *Id.* at n.7.  The drivers reported to FedEx Ground's terminal managers. *Id.* at 520.  At the terminal, FedEx Ground's employees or drivers loaded the trucks of the alleged independent contractor-delivery drivers. *Id.* at 519.  "After the drivers' trucks were loaded with packages for the day, the drivers would scan each package into a FedEx tracking system, and FedEx would also utilize a scanner to keep track of each package and the

whereabouts of each driver. . . .   The deliveries had to be made according to FedEx specifications . . . ."  *Id.* at 520 n.8.  "Each driver was required to deliver all the packages FedEx put on the truck on a given day . . . with no discretion by the driver over whether or not to deliver a package on a particular day."  *Id.* at n. 9.  According to the Operator Agreements that covered all delivery drivers, they were paid "per package delivered" and had "no ability to negotiate the package delivery rates with the customers to whom the packages were being delivered, or the individuals who were sending the packages."  *Id.* at 520 & n.9.  Finding that the plaintiff-drivers "were subject to a common FedEx policy, namely alleged misclassification of employment status," the court granted the drivers' motion for conditional certification of the FLSA collective action.  *Id.* at 520.

According to the *Hodzic* case, in May 2010, FedEx Ground began replacing its independent contractor business model with an "all-incorporated" model, which was the subject of the court's decision in *Hodzic.*  Under this model, FedEx entered into detailed Standard Operating Agreements with "authorized representatives of incorporated businesses, i.e. 'contracted service providers,' to provide delivery driver services for its Ground and Home Delivery division."  *Hodzic,* 2016 WL 6248078, at *1-2.  The contracted service providers were "effectively owner/operators with a single work area or delivery route serviced by a single employee-driver."  *Id.* at *1.  Some contractors were not delivery drivers.  *Id.*  Instead, they managed the businesses and hired others to drive.  *Id.*  FedEx considered all delivery drivers to be employees of the contracted service providers, not its employees.  *Id.* at *1, *3.  According to the Standard Operating Agreements, which were the same nationwide, the contracted service providers were responsible for paying overtime compensation to their employees.  *Id.* at *1-2, *3.

21

The plaintiffs in *Hodzic* signed Standard Operating Agreements on behalf of their respective companies, were assigned service areas that were served by the FedEx terminal in Sewickley, Pennsylvania, and provided FedEx package delivery services. *See id.* at *2-3. In compliance with the Standard Operating Agreements,

> [plaintiffs] purchased trucks with gross vehicle weights below 10,001 pounds; affixed the required FedEx logos on same; wore FedEx uniforms that they were required to purchase while making deliveries; carried FedEx scanners to track packages; picked up and delivered packages in accordance with their respective agreements during the relevant time-frame; and uploaded scanner data to FedEx's system as required.

*Id.* at *3.

The plaintiffs alleged that FedEx terminal employees controlled their day-to-day operations, including their work hours. *See id.* The drivers worked five or six days a week and had to arrive at the terminal at around 6:00 A.M. or 7:00 A.M. *See id.* FedEx employees "squeeze[d] numerous packages" onto one plaintiff's fully loaded truck and required him to wait for late packages before permitting him to leave the terminal. *Id.* Plaintiffs "were not able to decline to deliver packages or to negotiate the delivery fee for such parcels." *Id.* According to plaintiffs, they worked fifty hours per week, were paid on a per delivery basis, and were not paid overtime for hours worked in excess of forty. *See id.* Finding that plaintiffs demonstrated that drivers at the Sewickley terminal were subject to a FedEx policy requiring them to work in excess of forty hours per week without being compensated for overtime, the court approved the issuance of notice to drivers who delivered packages from that terminal. *See id.* at *7, *9.

More recently, the ISP model has apparently replaced the all-incorporated model. *See id.* at *2. In its Securities and Exchange Commission ("SEC") filing for the fiscal year ending May 31, 2016 submitted by Plaintiffs in support of their conditional certification motion, "FedEx Ground announced plans to implement the . . . ISP agreement throughout the entire U.S. pickup

and delivery network" (Dkt. No. 6-6 at 19). The transition to the ISP model has taken place on a state-by-state basis. *See Hodzic*, 2016 WL 6248078, at *2. As of May 31, 2016, service providers in twenty-four states were operating under, or transitioning to, the ISP agreement (Dkt. No. 6-6 at 19). Under the ISP model, "FedEx contracts with ISPs who act as corporate entities and employers (i.e. 'John Smith, Inc.'). The contractors hire and supervise employees to meet the service objectives. FedEx also offers an 'optional brand promotion program' through which ISPs can get FedEx logos on their trucks and uniforms." *Gennell v. FedEx Ground Package Sys., Inc.,* No. 05-cv-145-PB, 2013 WL 4854362, at *7 n.5 (D.N.H. Sept. 10, 2013).

Defendant included in the court's record the agreement between FedEx and the ISP that hired and paid Roy and Trumbull (Dkt. No. 55-7). According to this contract, the ISP's personnel were not "treated as or considered to be [FedEx Ground's] employees, directly, indirectly, or jointly for any purpose . . ." (Dkt. No. 55-7 at 6). The ISP agreed to

> assume sole responsibility for payroll deductions and maintenance of payroll and employment records, and for compliance with Applicable Law, including, without limitation, wage payment, final payment of wages, required withholdings from wages, deductions, overtime, and rest and meal periods, and, at the request of [FedEx Ground], provide evidence of such compliance.

(Dkt. No. 55-7 at 6).

### 2.   Affidavits of Massachusetts Delivery Drivers

Plaintiffs support their motion for conditional certification with the affidavits of named Plaintiffs Roy (Dkt. No. 6-8) and Trumbull (Dkt. No. 6-10), who were full-time delivery drivers assigned to the Springfield Terminal (Dkt. No. 6-8 ¶¶ 2, 4; Dkt. No. 6-10 ¶¶ 2, 4; Dkt. No. 55-5 ¶ 2). The affiants indicated that they "had to be hired by an ISP" in order to deliver FedEx packages (Dkt. No. 6-8 ¶ 2; Dkt. No. 6-10 ¶ 2). According to the affidavit of Thomas Pierce, a FedEx Ground Senior Manager in Contractor Relations, eighty ISPs contracted to deliver FedEx

Ground's packages in Massachusetts and eight ISPs contracted with FedEx Ground to provide package delivery service at the Springfield Terminal (Dkt. No. 55-1 at ¶ 21).

In their affidavits, Roy and Trumbull averred that all delivery drivers who they observed at the Springfield Terminal were paid by various ISPs, but all shared similar working conditions and responsibilities irrespective of which ISP paid them (Dkt. 6-8 ¶¶ 7, 8; Dkt. No. 6-10 ¶¶ 6, 7, 8).[11] Roy and Trumbull stated that they and most other drivers drove vehicles with gross weights of less than 10,001 pounds that bore the FedEx Ground color scheme and logo (Dkt. No. 6-8 ¶¶ 3, 8; Dkt. No. 6-10 ¶¶ 3, 7).[12] The affiants were required to wear FedEx Ground uniforms and all other drivers wore them (Dkt. No. 6-8 ¶¶ 3, 8; Dkt. No. 6-10 ¶¶ 3, 6, 7). FedEx Ground's terminal manager ensured that all drivers met FedEx Ground's uniform and appearance standards (Dkt. No. 6-10 ¶¶ 19-21).

Roy and Trumbull reported to the Springfield Terminal between 6:00 A.M. and 7:00 A.M. (Dkt. No. 6-8 ¶ 4; Dkt. No. 6-10 ¶ 4). FedEx Ground package handlers set out the packages each driver was responsible for delivering each day (Dkt. No. 6-8 ¶ 9; Dkt. No. 6-10 ¶ 9). At times, Roy, Trumbull, and the other drivers they observed had to wait up to two hours for the FedEx package handlers to finish unloading tractor-trailers, sorting packages, and assigning them to delivery drivers (Dkt. No. 6-8 ¶ 10; Dkt. No. 6-10 ¶ 10). FedEx Ground managers oversaw the drivers' loading of their vehicles (Dkt. No. 6-10 ¶ 19). Trumbull witnessed an ISP

---

[11] There were thirty to forty drivers at the Springfield Terminal when Roy worked there between February 2015 and January 2017 and there were fifty to sixty drivers when Trumbull worked there between late 2015 and February 2017 (Dkt. No. 6-8 ¶¶ 2, 7; Dkt. No. 6-10 ¶¶ 2, 6).

[12] Rented trucks may have weighed in excess of 10,000 pounds and did not exhibit the FedEx logo and colors (Dkt. No. 6 ¶¶ 3, 8; Dkt. No. 6-10 ¶ 7).

employee fire a driver "on the spot" after a FedEx Ground manager observed the driver throw a package (Dkt. No. 6-10 ¶¶ 20, 21).

FedEx Ground provided scanners that drivers were required to use while loading their vehicles and making deliveries (Dkt. No. 6-8 ¶¶ 11, 15; Dkt. No. 6-10 ¶¶ 11, 15).  When the drivers finished loading their assigned packages into their vehicles, they were required to "close out" the scanners to confirm that they had loaded all their assigned packages (Dkt. No. 6-8 ¶ 12; Dkt. No. 6-10 ¶ 12).  If a driver had not loaded an assigned package, he was required to report the missing package to the FedEx Ground manager and wait until the manager either located the package or approved the driver's departure from the terminal without it (Dkt. No. 6-8 ¶¶ 12, 13; Dkt. No. 6-10 ¶¶ 12, 13).

FedEx Ground provided a printed delivery manifest to each driver after he "closed out" the scanner for the loaded packages (Dkt. No. 6-8 ¶ 14; Dkt. No. 6-10 ¶ 14).  When a driver delivered a package, he scanned it with the FedEx Ground-issued scanner and entered a code in order to track the delivery time and the type of delivery (Dkt. No. 6-8 ¶ 15; Dkt. No. 6-10 ¶ 15). The scanner indicated whether a signature was required for delivery of the package (Dkt. No. 6-8 ¶ 16; Dkt. No. 6-10 ¶ 16).  If a signature was required and the customer was not at home, the driver was not permitted to deliver the package (*id.*).  After Roy and Trumbull left the terminal, FedEx Ground employees "frequently" called them with changes to delivery instructions or directions to return to the terminal to pick up another package for delivery (Dkt. No. 6-8 ¶ 17; Dkt. No. 6-10 ¶ 17).  FedEx Ground, not the ISP, received customers' complaints or comments about drivers' service (Dkt. No. 6-8 ¶ 18; Dkt. No. 6-10 ¶ 18).

Roy and Trumbull indicated that many of the drivers at the Springfield Terminal were hired and paid by ISPs different from the ISP that hired and paid them (Dkt. No. 6-8 ¶ 8; Dkt.

No. 6-10 ¶ 7).  The various ISPs for whom the drivers worked paid them either a flat per-stop rate or a flat daily rate (Dkt. No. 6-8 ¶ 20; Dkt. No. 6-10 ¶ 23).  Roy, Trumbull, and "many" drivers they observed at the Springfield Terminal usually worked more than forty hours per week (Dkt. No. 6-8 ¶¶ 4, 5; Dkt. No. 6-10 ¶ 4).  However, Plaintiffs and the drivers to whom they spoke were not compensated for overtime (Dkt. No. 6-8 ¶¶ 19, 20; Dkt. No. 6-10 ¶¶ 22, 23).

       3.    Legal Standard

The FLSA regulates the payment of wages and overtime compensation between an employer and its employees.  *See* 29 U.S.C. §§ 206, 207.  The statute "requires employers to pay their employees at least 'one and one-half times the regular rate' for any hours worked in excess of a forty-hour workweek."  *Marzuq v. Cadete Enters., Inc.*, 807 F.3d 431, 435 (1st Cir. 2015) (quoting 29 U.S.C. § 207(a)(1)).  Under the FLSA, "an 'employer' is defined as 'any person acting directly or indirectly in the interest of an employer in relation to an employee . . . .'" *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998) (quoting 29 U.S.C. § 203(d)).  "The Act defines an 'employee' as 'any individual employed by an employer.'" *Id.* (quoting 29 U.S.C. § 203(e)(1)).  "The Act further states that the term 'employ' includes 'to suffer or permit to work.'"  *Id.* (quoting § 203(g)).  The FLSA's definition of "employer" "has been interpreted expansively," *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983), to include "several simultaneous employers, each responsible for compliance with the Act." *Baystate Alternative Staffing, Inc.,* 163 F.3d at 675 (citing *Falk v. Brennan,* 414 U.S. 190, 195 (1973); *Bonnette v. Cal. Health & Welfare Agency,* 704 F.2d 1465, 1469–70 (9th Cir. 1983)); *see also* 29 C.F.R. § 791.2(a) ("[I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers

during the workweek is considered as one employment for purposes of the Act.  In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.").  Plaintiffs seeking certification of a putative class "must demonstrate that 'employees outside of the work location for which the employee has provided evidence' were similarly affected by the employer's policies." *Travers v. JetBlue Airways Corp.,* Civil Action No. 08–10730–GAO, 2010 WL 3835029, at *2 (D. Mass. Sept. 30, 2010).

As discussed earlier, § 216(b) of the FLSA "permits individuals to bring a lawsuit for lost wages 'either individually or as part of a collective action comprising "other employees similarly situated."'" *Lichy,* 2018 WL 1524534, at *2 (quoting *Prescott,* 729 F. Supp. 2d at 362). "Although the FLSA does not provide for court-ordered notice of a pending collective action, the Supreme Court has held that 'district courts have discretion . . . to implement 29 U.S.C. 216(b) . . . by facilitating notice to potential plaintiffs.'" *Prescott,* 729 F. Supp. 2d at 362–63 (quoting *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989)).  "The court may also facilitate notice by allowing or ordering discovery designed to identify employees within the similarly situated class." *Rosselló v. Avon Prods., Inc.*, Civil No. 14-1815(JAG/BJM), 2015 WL 3890403, at *3 (D.P.R. June 24, 2015), *report and recommendation adopted,* Civil No. 14-1815(JAG), 2015 WL 5693018 (D.P.R. Sept. 28, 2015) (citing *Hoffmann–La Roche,* 493 U.S. at 170).

"The general practice of district courts within the First Circuit . . . has been to adopt a 'two-tiered' approach to certification of collective actions under the FLSA." *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011).  *See Prescott,* 729 F. Supp. 2d at 363–64 ("[T]he certification of a collective action 'typically proceed[s] in two stages'"); *O'Donnell v.*

*Robert Half Int'l, Inc.,* 429 F. Supp. 2d 246, 249 (D. Mass. 2006) (applying "a 'two-tiered' approach to determining whether named plaintiffs and putative class members are similarly situated"); *Wise v. Patriot Resorts Corp.,* C.A. No. 04–30091–MAP, 2006 WL 6110885, at *1 (D. Mass. Feb. 15, 2006) (using the "two-step process"); *Kane v. Gage Merch. Servs., Inc.,* 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (same).  "Under the two-tiered framework, '[t]he first stage determines whether notice should be given to potential collective action members and usually occurs earlier in a case, before substantial discovery, "based only on the pleadings and any affidavits which have been submitted."'" *Johnson*, 802 F. Supp. 2d at 233-34 (alteration in original) (quoting *Prescott,* 729 F. Supp. 2d at 363–64).  Courts also "regularly consider additional evidence, such as job descriptions [and] recorded corporate policies . . . ." *Rosselló,* 2015 WL 3890403, at *3 n.5.  "The second stage occurs at the completion of discovery when the employer may move to decertify the class action." *Johnson,* 802 F. Supp. 2d at 234.  "At the second stage, the [c]ourt is tasked with making 'a factual determination as to whether there are similarly-situated employees who have opted in.'" *Id.* (quoting *Prescott*, 729 F. Supp. 2d at 363-64).  To make this determination, "'courts consider factors such as: 1) the disparate factual and employment settings — e.g. whether plaintiffs were employed in the same corporate department, division, and location; 2) the various defenses available to defendant which appear to be individual to each plaintiff; and 3) fairness and procedural considerations.'" *Roberts v. TJX Cos.*, Civil Action No. 13-cv-13142-ADB, 2017 WL 1217114, at *3 (D. Mass. Mar. 31, 2017) (quoting *Trezvant v. Fid. Emp'r. Servs. Corp.*, 434 F. Supp. 2d 40, 45 (D. Mass. 2006)).  "Thus, the two-stage process allows the [c]ourt to have the benefit of knowing who has opted in when determining whether the plaintiffs are actually similarly situated and if the named plaintiffs are representative." *Id.*

4.      Discussion

"At the first stage, the plaintiff 'has the burden of showing a "reasonable basis" for [his or her] claim that there are other similarly situated employees.'" *Prescott*, 729 F. Supp. 2d at 364 (quoting *Morgan*, 551 F.3d at 1260).  "'At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411, 420 (D. Mass. 2018) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).  "[T]his means . . . that the court must be satisfied 'not that there has been an actual violation of law but rather [that] the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'" *McKnight v. Honeywell Safety Prods. USA, Inc.*, C.A. No. 16-132 S, 2017 WL 3447894, at *7 (D.R.I. Aug. 11, 2017) (quoting *Roberts,* 2017 WL 1217114, at *6).  The standard for making the initial determination as to whether the proposed class members should receive notice "is 'fairly lenient' and 'typically results in conditional certification of the representative class.'" *Cunha,* 221 F. Supp. 3d at 182 (quoting *Trezvant*, 434 F. Supp. 2d at 43); *see also Lichy*, 2018 WL 1524534, at *3 ("The standard of review has been described as 'not particularly stringent,' 'not heavy,' and 'flexible.'") (quoting *Prescott*, 729 F. Supp. 2d at 364).

The term "similarly situated" is not defined by the FLSA and has not been defined by the First Circuit.  *See Venegas v. Glob. Aircraft Serv., Inc.*, 159 F. Supp. 3d 93, 106 (D. Me. 2016), *appeal dismissed sub nom. Venegas v. Lufthansa Technik N. Am. Holding Corp.*, No. 16-8006, 2017 WL 3595499 (1st Cir. June 30, 2017).  District courts have held that "[t]he plaintiffs must 'put forth some evidence that the legal claims and factual characteristics of the class . . . are similar.'" *Lichy*, 2018 WL 1524534, at *3 (alteration in original) (quoting *Trezvant*, 434 F. Supp.

2d at 44).  "In other words, the plaintiff must make '"a modest factual showing"' that [he or she] and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan."  *Prescott*, 729 F. Supp. 2d at 364 (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)).

> Here, Plaintiffs seek conditional certification of a collective action that includes:

> [D]elivery drivers . . . who, at any time within the past three years, have been employed to deliver FedEx Ground's packages using vehicles under 10,001 pounds gross weight, and were paid by an ISP, but were not paid one-and-a-half times their regular rate of pay for overtime hours worked beyond forty per week.

(Dkt. No. 1 ¶ 30; Dkt. No. 6 at 3).  Plaintiffs argue that they have satisfied the lenient standard required for the court to authorize issuance of notice to potential opt-in plaintiffs.  Specifically, Plaintiffs allege that notwithstanding the terms of the contracts between FedEx Ground and the ISPs making the ISPs responsible for the delivery drivers' compensation including overtime, FedEx Ground was an actual employer of the named Plaintiffs and other drivers who were paid by ISPs and FedEx Ground violated the FLSA by failing to compensate eligible drivers who worked more than forty hours a week (Dkt. No. 1 ¶¶ 25-27; Dkt. No. 57 at 12-14).

> Predictably, Defendant's objections to the court's conditional certification of a collective action concern FedEx Ground's ISP business model.  FedEx Ground contends that it was not the drivers' employer.  Instead, it asserts, it contracted with the ISPs to deliver its packages, the various ISPs employed the drivers, were responsible for the payment of their wages, including overtime, and are liable for evading the FLSA to the extent the drivers were not lawfully compensated (Dkt. No. 55 at 7).[13]  In view of this organizational structure, FedEx Ground's first contention is that Plaintiffs have failed to identify a uniform FedEx Ground policy of denying

---

[13] FedEx Ground agrees to the issuance of notice to other delivery drivers who were hired and paid by the ISP that hired and paid Plaintiffs Roy and Trumbull (Dkt. No. 55 at 15 n.11).

drivers overtime pay.  FedEx Ground next contends that there is no evidence to establish that it jointly employed the delivery drivers, and, to the extent it was a joint employer with each ISP, joint employment, alone, does not violate the FLSA.  Finally, because each ISP allegedly made individualized decisions regarding employment conditions such as truck size and compensation structure, FedEx Ground maintains that Plaintiffs cannot establish that other drivers were governed by a single unlawful policy or plan.[14]  However, FedEx Ground's arguments involve fact-intensive inquiries that should not be addressed on this undeveloped record and are more appropriate for consideration at stage two of the collective action certification process.  *See Roberts,* 2017 WL 1217114, at *4 ("A more searching assessment of the evidence is appropriate at the second stage of certification based on the putative plaintiffs who have actually opted in.").  Each of FedEx Ground's objections will be addressed in turn.

Plaintiffs respond to FedEx Ground's first objection by identifying its uniform scheme of contracting with intermediaries -- the ISPs -- to hire and pay delivery drivers as its generally applicable policy and practice aimed at evading the FLSA's overtime wage requirements.  According to Plaintiffs, FedEx Ground's ISP business model should not insulate it from complying with the FLSA.  *See, e.g.*, *Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *10 (S.D.N.Y. Jan. 4, 2016) ("One can readily imagine a scenario in which a company with nationwide operations imposed a common policy as to wages, hours, or

---

[14] FedEx Ground also argues that the real employers – the ISPs – are not being sued because Plaintiffs' counsel is burdened by a conflict of interest due to "past representation of individual ISP principals in other litigation" (Dkt. No. 55 at 16).  Plaintiffs' counsel responds by indicating that Defendant's argument is "speculative and incorrect" and that "they are not currently representing any ISPs" (Dkt. No. 57 at 17 n.8).  *See* Mass. R. Prof. C., Rule 1.7(a)(1) (2015) ("[A] lawyer shall not represent a client if the representation involves a current conflict of interest.  A current conflict of interest exists if:  (1) the representation of one client will be directly adverse to another client").

employment classifications that bound the intermediaries proximate to the affected workers.");

*Edwards v. Multiband Corp.*, Civil No. 10-2826 (MJD/JJK), 2011 WL 117232, at *4 (D. Minn.

Jan. 13, 2011) (finding the "colorable basis" standard satisfied by plaintiff's allegations that

unlawful wage-and-hour policies applied uniformly across subcontractors); *Lang v. DirecTV,*

*Inc.*, Civil Action No. 10-1085 G (1), 2011 WL 6934607, at *8 (E.D. La. Dec. 30, 2011)

(certifying a nationwide class based on plaintiffs' "substantial allegations of a 'single decision,

policy, or plan' by alleging that DirecTV purposefully misclassifies satellite technicians as

independent contractors, despite the large degree of control that DirecTV exerts over the

technicians, in order to circumvent FLSA requirements.") (footnote omitted).  At this stage of the

proceedings, Plaintiffs are not required to establish that FedEx Ground was the delivery drivers'

joint employer.  *See Ward v. Express Messenger Sys., Inc.,* Civil Action No. 17-cv-02005-NYW,

2018 WL 1604622, at *5 (D. Colo. Apr. 3, 2018) (holding that the joint employer inquiry is

better suited to the decertification stage because it is "fact-intensive and individualized");

*Johnson*, 802 F. Supp. 2d at 239 (the issue of joint employment is "properly reserved for

dispositive motions or for the second stage of the class certification process should the Defendant

move for decertification.") (collecting cases).  Similarly, Defendant's contention concerning

defenses, including whether exemptions from overtime apply, "tread too deeply into the merits

and are premature without knowing who the actual class members will be."  *Roberts*, 2017 WL

1217114, at *6.  This leaves the question of whether Plaintiffs have shown that they and putative

collective action members in Massachusetts were the victims of the same decision, policy, or

plan that violated the law.  *See Trezvant*, 434 F. Supp. 2d at 44 ("Courts have . . . required some

combined showing of similar factual circumstances and legal claims.").

Plaintiffs' complaint, affidavits, and FedEx Ground's SEC filing provide a reasonable basis for their claim that drivers who delivered FedEx packages had similar job responsibilities irrespective of which ISP hired and paid them, and that, by controlling the drivers' schedules and conditions of employment, FedEx Ground functioned as their joint "employer" under the FLSA's broad definition of that term.  *See Baystate Alternative Staffing, Inc.,* 163 F.3d at 675; 29 C.F.R. § 791.2(a).  According to the SEC filing for the fiscal year ending May 31, 2106:

> [i]n the third quarter of 2016, FedEx Ground announced plans to implement the . . . ISP agreement throughout its entire U.S. pickup and delivery network.  To date, service providers in 24 states are operating under or transitioning to, the ISP agreement.  The transition to the ISP agreement in the remaining 26 states is expected to be completed by 2020 . . . .

(Dkt. No. 6-6 at 19).  According to the evidence submitted by Plaintiffs, they and the drivers they encountered at the Springfield Terminal picked up packages and delivered them to customers in vehicles bearing FedEx Ground's colors and logo, while wearing FedEx Ground's uniforms, and utilizing FedEx Ground's scanners to verify deliveries.  FedEx Ground's practices dictated the hours the drivers worked each day:  FedEx Ground employees assigned packages to the drivers; the drivers had to wait at the terminal until the FedEx Ground employees finished setting out the packages; if an assigned package was missing from the driver's truck, the driver was required to report it to a FedEx Ground manager and had to wait until the manager located the package or allowed the driver to leave without it; FedEx Ground employees often changed delivery instructions or asked drivers to return to the terminal to retrieve more packages; and drivers were required to deliver all the packages they were assigned each day irrespective of the number of hours they worked.  FedEx Ground managers ensured that drivers complied with FedEx Ground's appearance and loading standards.  According to Roy and Trumbull, all the delivery drivers at the Springfield Terminal were paid through ISPs (Dkt. No. 6-8 ¶7; Dkt. No. 6-10 ¶ 6).

The drivers generally worked more than forty hours a week and were either paid a flat daily rate or a flat per-stop rate.  None of the "many" drivers Roy and Trumbull observed at the Springfield Terminal were compensated for working in excess of forty hours per week in violation of 29 U.S.C. § 207(a)(1) (Dkt. No. 6-8 ¶ 20; Dkt. No. 6-10 ¶ 23).  Consequently, like the delivery drivers in *Hodzic* and *Scovil*, who had similar relationships with FedEx Ground and were not compensated for overtime, Plaintiffs' claims are sufficiently similar to meet the requirements for the issuance of notice of conditional certification.  *See Hodzic*, 2016 WL 6248078, at *1, *7 (conditionally certifying class of delivery drivers based on plaintiffs' showing that FedEx Ground's policy of contracting with "authorized representatives of incorporated businesses" to provide delivery services violated the FLSA's overtime pay requirement);[15] *Scovil*, 811 F. Supp. 2d at 519-20 (concluding, based on "certain economic realities factors," that delivery drivers who were not compensated for working more than forty hours per week were similarly situated; the drivers were responsible for owning vehicles that bore the FedEx colors and logo, wearing FedEx uninforms, appearing at FedEx's terminal each morning to pick up assigned packages that FedEx employees loaded onto the drivers' trucks, reporting to FedEx terminal managers, and delivering all assigned packages).

---

[15] The instant case is distinguishable from so much of *Hodzic* as rejected the plaintiffs' request to conditionally certify a nationwide collective action of delivery drivers who delivered FedEx Ground's packages throughout the country.  *See Hodzic,* 2016 WL 6248078, at *9.  In *Hodzic*, the named plaintiffs' affidavits suggested that the conditions of their employment were peculiar to the Sewickley terminal.  *Id.* at *8.  Accordingly, the court authorized notice only to drivers who delivered packages from that location.  *Id.*  Here, on the other hand, the court's jurisdiction is limited to the claims of drivers who delivered packages from terminals in Massachusetts.  In view of the contents of FedEx Ground's SEC filing and the affidavits of drivers who delivered packages from terminals in Texas, Virginia, and North Carolina, Plaintiffs have adequately alleged that the named Plaintiffs' averments regarding working conditions and compensation were not exclusive to the Springfield Terminal, but applied to other drivers who were hired and paid by ISPs in Massachusetts (Dkt. No. 6-6 at 19; Dkt. No. 6-9; Dkt. No. 57-1).

Further, based on named Plaintiffs' averments that "many" drivers did not receive overtime compensation when they worked in excess of forty hours per week, there is a reasonable basis for crediting Plaintiffs' assertion that there are similarly situated aggrieved individuals in Massachusetts (Dkt. No. 6-8 ¶ 20; Dkt. No. 6-10 ¶¶ 22, 23). *See Gonpo v. Sonam's Stonewalls & Art LLC*, Civil Action No. 16-40138-MGM, 2018 WL 1725695, at *4 (D. Mass. Apr. 9, 2018) (plaintiff's demonstration of employer's "similar payroll practices" regarding the failure to pay overtime established the existence of other aggrieved individuals); *Johnson*, 802 F. Supp. 2d at 235-36.

FedEx Ground's contention that Plaintiffs are requesting certification of a fail-safe class due to the diversity among the ISPs that employed the drivers is unavailing (Dkt. No. 55 at 15-18; Dkt. No. 61 at 10). "A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability." *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012). *See Richey v. Matanuska-Susitna Borough*, No. 3:14-cv-00170 JWS, 2015 WL 1542546, at *2 (D. Alaska Apr. 7, 2015) ("Fail-safe class definitions earn that title because they require the court to determine the merits of the class members' claims in order to determine class membership."); *Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73 (D. Me. 2010) (a fail-safe class "'impermissibly determines membership based upon a determination of liability'") (quoting *Lewis v. First Am. Title Ins. Co.,* 265 F.R.D. 536, 551 (D. Idaho 2010)). FedEx Ground's argument lacks force for two reasons. First, it is unclear whether the fail-safe concept applies to preclude certification in FLSA cases. *See Feustel v. Careerstaff Unlimited, Inc.*, CASE NO. 1:14-cv-264, 2015 WL 13021897, at *2 (S.D. Ohio Mar. 25, 2015) ("It has been recognized . . . that a fail-safe class is not of concern in a FLSA collective action 'where class membership is readily and objectively

ascertainable on the basis of payroll records regardless of whether such evidence also speaks to the strength of individual prospective members' cases.'") (quoting *Gordon v. Maxim Healthcare Servs.*, *Inc.,* Civil Action No. 13-7175, 2014 WL 7008469, at *4 n.1 (E.D. Pa. Dec. 11, 2014)). "Further, defining the class to avoid the fail-safe problem while not being over-inclusive 'is more of an art than a science . . . and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.'" *Feustel,* 2015 WL 13021897, at *2 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)); *see also Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 357 (W.D.N.Y. 2014) (recognizing that the court has discretion to construe the complaint or define the class to prevent a fail-safe class). To the extent the fail-safe concept applies to FLSA cases, the notice in the instant case will be limited to those Massachusetts delivery drivers who, during the past three years, were paid by ISPs, were not exempt from overtime because they drove vehicles weighing less than 10,001 pounds gross weight, worked in excess of forty hours per week, and were not compensated for overtime at one-and-one-half times their hourly rate.[16] This is a sufficiently definite class.

The fact that Roy's and Trumbull's affidavits do not identify any other potential opt-in plaintiffs does not bar issuance of the notice to putative collective action members. "Before granting conditional certification, many courts require the identification of other similarly situated employees who are interested in joining the putative class." *Perez v. Prime Steak House*

---

[16] According to FedEx Ground, requesting employment records from the ISPs to determine who worked more than forty hours per week will constitute an undue burden (Dkt. No. 55 at 15-16). However, FedEx Ground's argument was based on Plaintiffs' request for notice to a nationwide class (*id.*). With a putative collective action limited to the employees of the eighty ISPs in Massachusetts, the potential burden is less (Dkt. No. 55-1 ¶ 21). In addition, based on Roy's and Trumbull's scanner data attached to the affidavit of FedEx Ground Senior Paralegal Eric Daley, it appears that FedEx Ground has ready access to records showing the time a driver logged into FedEx Ground's scanner at a terminal, the time a driver departed the terminal, and the time of the driver's last delivery of the day (Dkt. No. 55-6 ¶¶ 32-34; Dkt. No. 55-27; Dkt. No. 55-28).

*Rest. Corp.*, 959 F. Supp. 2d 227, 232 (D.P.R. 2013) (quoting *Johnson,* 802 F. Supp. 2d at 237).

However, the requirement that plaintiffs specifically identify interested class members in other

locations is not uniformly followed in this circuit and, in the court's view, it need not be followed

here.  "District courts around the Country — and within the First Circuit — have split as to

whether a named plaintiff must identify the names of other potential class members who are

interested in joining the lawsuit in order to secure conditional certification under the FLSA.

Many courts grant conditional certification regardless of whether a named plaintiff demonstrates

that other potential class members are actually interested in joining the lawsuit." *Perez v. Shucks*

*Me. Lobster LLC,* 2:15-cv-00348-JAW, 2016 WL 6304674, at *6 (D. Me. Oct. 27, 2016)

(collecting cases).  *See Rosselló*, 2015 WL 3890403, at *12-13.  Additional delay to obtain the

names of potential opt-in plaintiffs is unnecessary in the circumstances of this case where the

court has restricted the group of potential opt-in plaintiffs to delivery drivers who were employed

in Massachusetts.

Requiring Plaintiffs to identify others who are interested in opting in presents practical

obstacles where, as here, the parties have not engaged in preliminary discovery.  *See Rosselló*,

2015 WL 3890403, at *13 ("First, as courts in this district and circuit have acknowledged, a

hard-and-fast requirement that plaintiffs demonstrate opt-in interest risks creating 'a "chicken-

and-egg" problem.'") (quoting *Perez,* 959 F. Supp. 2d at 232 n.4); *Shucks Me. Lobster LLC*, 2016

WL 6304674, at *7.  "Often, as here, a plaintiff moving for conditional certification hopes to

obtain from the defendant the identities and contact information of every member of the

proposed class; with this information in hand, the plaintiff can disseminate court-approved

notice, the purpose of which is to determine whether any class members want to join the suit."

*Rosselló*, 2015 WL 3890403, at *13.  "Given the point of seeking conditional certification, an

interest requirement may be infeasible in many cases." *Id. See Johnson,* 802 F. Supp. 2d at 238

(quoting *Detho v. Bilal,* Civil Action No. H–07–2160, 2008 WL 2962821, at *3 (S.D. Tex. July

29, 2008)) ("[r]equiring an FLSA plaintiff who does not know the identities of the members of

the proposed class to provide information about class members' desire to opt in could require the

plaintiff to produce the very information that she sought to obtain through conditional

certification and notice.") (alteration in original); *Heckler v. DK Funding, LLC,* 502 F. Supp. 2d

777, 780 (N.D. Ill. 2007) (finding that an interest requirement "puts the cart before the horse"

and "does not make sense" because it would "essentially force plaintiffs or their attorneys to

issue their own form of informal notice," thereby undermining "a court's ability to provide

potential plaintiffs with a fair and accurate notice and would leave significant opportunity for

misleading potential plaintiffs."); *see also Wise,* 2006 WL 6110885, at *1 ("[I]t is unrealistic to

expect a party to consider whether to 'opt-in' to a collective action before that party is aware of

the pendency of the action.").  Here, the two named Plaintiffs delivered packages from the

Springfield Terminal in Chicopee (Dkt. No. 6-8 ¶ 4; Dkt. No. 6-10 ¶ 4).  They have not indicated

that they interacted with delivery drivers who picked up packages at terminals in other locations

in Massachusetts.  *See Shucks Me. Lobster LLC,* 2016 WL 6304674, at *7 ("Unlike in *Johnson,*

the facts of this case suggest that [the plaintiff] may require a court order to identify potential

members of the putative class who would otherwise remain unknown to her."); *Battistini v. La

Piccola Fontana, Inc.*, CIVIL NO. 15-2167 (JAG), 2016 WL 3566212, at *3 (D.P.R. June 27,

2016) ("[I]n this case, it makes no sense to disallow conditional class certification now before

Plaintiffs have had an opportunity to put potential plaintiffs on notice of this suit and their right

to join it.").  In addition, "an interest requirement would violate the FLSA's broad remedial

purpose," *Rosselló*, 2015 WL 3890403, at *14, of "'promot[ing] "the efficient adjudication of

38

similar claims, so similarly situated employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute claims."'" *Cunha*, 221 F. Supp. 3d at 181 (quoting *Iriarte v. Café 71, Inc.,* No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *2 (S.D.N.Y. Dec. 11, 2015)).

Defendant's reliance on *Sheffield v. Orius Corp.,* 211 F.R.D. 411 (D. Or. 2002), is unpersuasive (Dkt. No. 61 at 7-9).  The *Sheffield* putative collective action members -- linemen, splicers, crew foremen, laborers, or those with similar positions employed by different subsidiaries and affiliates of the defendant in ten states -- "allege[d] that defendant exercised a policy and practice of failing to pay overtime . . . ." *Id.* at 412-16.  The named plaintiffs "enjoyed different payment structures (piece-rate, hourly, and salaried) . . . ." *Id.* at 413.  The court denied plaintiffs' requests for certification of a collective action on the ground that the putative class members were not similarly situated, finding that "each claim would require extensive consideration of individualized issues of liability and damages." *Id.*  Here, by contrast, the putative class members share the same job title -- delivery driver --, worked in Massachusetts, and were employed by FedEx Ground.  *See Scovil,* 811 F. Supp. 2d at 519-20. As far as compensation structure, the affiants aver that they and the drivers they encountered were paid either a flat rate per day or a flat rate per delivery (Dkt. No. 6-8 ¶¶ 19, 20; Dkt. No. 6-10 ¶¶ 22, 23).  This variance in wage structure does not defeat certification of a collective action at stage one of the litigation where there is no requirement that putative class members' characteristics exactly match.  *Lichy*, 2018 WL 1524534, at *3 ("'Plaintiffs do not have to show that the potential class members have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay.'") (quoting *Jirak v. Abbott Labs., Inc.*, 566 F.

Supp. 2d 845, 848–49 (N.D. Ill. 2008)); *Prescott*, 729 F. Supp. 2d at 364 ("Generally . . . courts have found that 'similarly situated' employees have similar (not identical) job duties and pay provisions . . . ."). The significant commonality alleged by Plaintiffs is FedEx Ground's policy of contracting with ISPs to provide delivery services while maintaining control of the delivery process such that the delivery drivers are, in effect, employed by FedEx Ground. *See Ward*, 2018 WL 1604622, at *1, *6 (conditionally certifying Colorado delivery drivers' FLSA action against defendant, a regional package delivery service that subcontracted with Regional Service Providers ("RSP"), which, in turn, contracted with drivers to deliver packages, while defendant maintained "'near-total control over the manner in which drivers perform package delivery services.'"); *Ziglar v. Express Messenger Sys., Inc.,* No. CV-16-02726-PHX-SRB, 2017 WL 6539020, at *5 (D. Ariz. Aug. 31, 2017), *vacated and remanded on other grounds by* 739 F. App'x 444 (9th Cir. 2018) (conditionally certifying a group of Arizona delivery drivers where plaintiffs showed that defendant "has established a common policy or plan of fissured employment whereby drivers are required to contract with RSPs as independent contractors even though [d]efendant maintains control over their work" and that putative collective action members were similarly situated "with respect to this policy or plan.").

Plaintiffs have adequately demonstrated that other Massachusetts delivery drivers were similarly situated and that all were governed by a single policy or plan. Accordingly, Plaintiffs' motion for issuance of notice to putative collective action members is allowed.

5. Notice

Plaintiffs have attached their proposed Notice (Dkt. No. 6-1) and Opt-in Consent Form (Dkt. No. 6-2) to their motion. In view of the court's ruling that limits the collective action to delivery drivers who worked in Massachusetts, the language of the proposed notice and consent

form require modification to reflect that geographic limitation.  In addition, Defendant has

lodged specific objections to Plaintiff's proposed documents and the parties have agreed to meet

and confer regarding the contents of the notice and the delivery methods (Dkt. No. 55 at 18 n.13;

Dkt. No. 61 at 12 & n.7).

    The specific content of the notice is a matter entrusted to the court's discretion.  *See*

*Hoffman-La Roche, Inc.,* 493 U.S. at 170-72.  In order to provide guidance to the parties, the

court briefly addresses Defendant's specific objections, which are that the notice should:  (1)

notify potential opt-in plaintiffs of the need to "balance the risks of joining, including not only

losing but also surrendering claims that could have been raised, but were not," including claims

against the individual ISPs that hired and paid them, "or suffering a costs award;" (2) make clear

that the court does not endorse Plaintiff's claims; and (3) make clear that potential opt-in

plaintiffs may exercise their own choices on "important issues," such as the choice of counsel.  In

addition, Defendant complains that Plaintiffs "seek to co-opt FedEx Ground communication

channels (a compelled speech problem)" and do not clearly accept the costs of promulgating

notice (Dkt. No. 55 at 18 n.13).

    First, the notice advises potential opt-in plaintiffs that they will be "bound by any

settlement or ruling in this case" and "may also be asked to be a witness or to provide evidence

in this case, although not all individuals who opt in will be required to do this" (Dkt. No. 6-1).

As to an advisement regarding court costs,

> [t]he authority on this question is decidedly split.  On one hand, some district courts have
> found that "[b]eing made aware of the possibility of being held liable for [defendant's]
> costs of litigation is necessary information for potential plaintiffs to make an informed
> decision about whether to opt-in as a plaintiff."  *Heaps* [*v. Safelite Solutions, LLC*], 2011
> WL 1325207, at *8 [(S.D.Ohio Apr. 5, 2011)] (collecting cases).  Other district courts,
> however, have found that such language is "unnecessary and potentially confusing,"
> *Sexton v. Franklin First Fin., Ltd.,* No. 08–CV–04950, 2009 WL 1706535, at *12
> (E.D.N.Y. June 16, 2009), particularly given the "remote possibility" that costs will be

other than *de minimus. Guzman v. VLM, Inc.,* No. 07–CV–1126, 2007 WL 2994278, at
*8 (E.D.N.Y. Oct. 11, 2007); *see also id.* (such language "may have an in terrorem effect
that is disproportionate to the actual likelihood that costs ... will occur in any significant
degree.").

*Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 204 (W.D. Pa. 2014) (quoting *Byard v.*

*Verizon W. Va., Inc.,* 287 F.R.D. 365, 374-75 (N.D.W.Va. 2012)) (alterations in original).

Defendant cites no First Circuit authority that requires notice that opt-in plaintiffs may be liable

for costs.  Instead, in the case upon which it relies, *Frye v. Baptist Mem'l Hosp., Inc.,* 507 Fed.

App'x 506 (6th Cir. 2012), the court awarded costs to a defendant who prevailed in an FLSA

case.  *See id.* at 508.  In view of the possibly chilling effect an advisement regarding costs may

have on potential plaintiffs, there is no need to revise the notice to include potential liability for

costs.  Likewise, the warning that opt-in plaintiffs will be bound by any settlement or ruling

adequately advises putative collection action members of the waiver of claims not raised in the

suit against the named defendant, FedEx Ground.

The proposed notice informs potential opt-in collective action members that "[t]his case

is at an early stage, and there has not been a decision by the court as to whether plaintiffs are

correct that FedEx Ground is the joint employer of its delivery drivers who worked under ISPs,

and that FedEx Ground owes overtime compensation" (Dkt. No. 6-1).  This language makes

unnecessary Defendant's proposed language regarding the court's neutrality.

Defendant's final issue – that potential plaintiffs should be advised that they may choose

their own counsel – has some merit.  Although potential opt-in plaintiffs need not be specifically

advised that they can choose to hire their own counsel, they should be informed that "they may

choose to hire their own attorneys and pursue a lawsuit individually, unaffected by the course of

this collective action."  *Gomez v. ERMC Prop. Mgmt. Co., LLC*, No. 3:13-CV-01081, 2014 WL

3053210, at *2 (N.D. Ohio July 7, 2014).  An equivalent advisement is sufficient to notify prospective plaintiffs of their rights under the FLSA.[17]

### IV.    Conclusion

For the reasons stated herein, it is ordered that:

(1)    Plaintiff's Motion for Issuance of Notice to Similarly Situated Individuals Pursuant to 29 U.S.C. § 216(b) (Dkt. No. 6) is GRANTED as to delivery drivers employed by ISPs who deliver FedEx Ground packages in Massachusetts.

(2)    On or before December 14, 2018, Plaintiffs shall meet and confer with Defendant as to amending the proposed Notice and Opt-in Consent Form.

(3)    On or before December 31, 2018, the parties shall file a Motion to Approve Notice, Opt-in Consent Form, and delivery methods for the court's consideration.  In the event the parties cannot agree on drafts and delivery methods, they shall submit a single Notice and/or Opt-in Consent Form, indicating the language and delivery method(s) to which they agree, the language and delivery method(s) upon which they cannot agree, and the content and delivery method(s) each side proposes.

(4)    Once the court approves the Notice and Opt-in Consent Form, Plaintiffs are authorized to issue notice to all members of the conditionally certified collective action in accordance with court-authorized delivery methods.

IT IS SO ORDERED.

November 27, 2018                    /s/ Katherine A. Robertson
                                     KATHERINE A. ROBERTSON
                                     UNITED STATES MAGISTRATE JUDGE

---

[17] FedEx Ground's other objections concerning the co-opting of its communications channels and Plaintiffs' bearing of the cost of issuing notice are too abstract at this stage to warrant discussion by the court.  In view of Plaintiffs' lack of response to these complaints, they should be addressed in the parties' discussions regarding the notice and consent form.