UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-30116-KAR |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEMS, INC., | ) ) | |
| | ) | |
| Defendants. | | |

<u>MEMORANDUM AND ORDER ON DEFENDANT FEDEX GROUND PACKAGE
SYSTEMS, INC.'S DISCOVERY MOTIONS AND NOTICE</u>
(Dkt. Nos. 194, 195, 198, 204)

Familiarity with the basic facts of the case is assumed.  This memorandum and order

rules on FedEx's notice, which seeks dismissal with prejudice of certain opt-in plaintiffs

pursuant to the court's April 22, 2021 Order, and FedEx's three motions to compel.  The motions

to compel and the notice are addressed in the order in which they were filed.  In the rulings set

forth herein, the court is mindful of the purpose of FLSA collective actions and discovery and

the respective burdens of the parties.

"Congress' principal purpose in enacting the FLSA was to protect workers from

substandard wages, oppressive working hours, and labor conditions that are detrimental to

maintenance of minimal standards of living necessary for the health, efficiency, and well-being

of workers."  *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 178-79 (D. Mass.

2006), *aff'd* 508 F.3d 49 (1st Cir. 2007) (citing 29 U.S.C. § 202(a)).  By providing for collective

actions under the statute, "Congress implicitly recognized that because each employee's damages

may be insubstantial, employees may lack the financial incentive or resources to bring suit individually, and that absent a mechanism for class actions there would be a substantial risk that FLSA violations would not be redressed." *Id.* at 179. *See Cunha v. Avis Budget Car Rental, LLC*, 221 F. Supp. 3d 178, 181 (D. Mass. 2016) ("FLSA collective actions were created to promote the efficient adjudication of similar claims, so similarly situated employees, whose claims are often small and not likely to be brought on an individual basis, may join together . . . to prosecute claims.") (internal citations and quotations omitted)). FedEx stresses that "every opt-in Plaintiff is a 'party plaintiff' to the action" (Dkt. No. 195 at 2 (citation omitted)). Because FLSA actions are representative suits, however, a defendant "is not entitled to individualized discovery from each and every opt-in Plaintiff, but rather discovery from a certain number of Plaintiffs." *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.,* Master Docket No. 06-cv-17430-WYD-CBS, MDL Docket No. 1743, 2009 WL 1120293, at *2 (D. Colo. Apr. 27, 2009). *See Batiz v. Am. Commercial Sec. Servs.,* Case No. EDCV 06-566-VAP, 2010 WL 11556683, at *2 (C.D. Cal. May 11, 2010) (permitting individualized discovery would undermine the purpose and utility of FLSA collective actions). Thus, at least in larger FLSA collective actions such as this one, courts generally have limited discovery to a representative sample of opt-in plaintiffs as the court has done in this case (Dkt. No. 121). Representative discovery is intended to "'reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and yet afford the defendant a *reasonable* opportunity to explore, discover, and establish an evidentiary basis for its defenses.'" *Scott v. Bimbo Bakeries, USA, Inc.*, Civil Action No. 10-3154, 2012 WL 6151734, at *5 (E.D. Pa. Dec. 11, 2012) (quoting *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357-58 (S.D. Ohio 2006)) (emphasis added).

Following conditional certification of a collective, notice to potential opt-in plaintiffs, and an opt-in and discovery period, a defendant such as FedEx typically moves to decertify the conditional collective. The parties and the court certainly anticipate such a motion from FedEx in this case. After preliminary certification, parties are entitled take discovery aimed at establishing whether "the proposed class is 'homogeneous' (either as a single class or subclasses) or is 'hopelessly heterogeneous.'" *Oropeza v. AppleIllinois, LLC*, No. 06 C 7097, 2010 WL 3034247, at *4 (N.D. Ill. Aug. 2, 2010). The motions now before the court arise from disputes between the parties principally concerning the responses of opt-in plaintiffs to discovery propounded by FedEx, which, by agreement of the parties, was in the form of a questionnaire that included requests for documents. One motion and the "notice of those opt-ins who failed to respond fully to discovery by June 4, 2021" are based on the court's April 22, 2011 order (Dkt. No. 185). In all motions, FedEx seeks information concerning the number of hours the opt-in Plaintiffs worked and the amounts they were paid by the Independent Service Providers ("ISP").

## I.   FEDEX'S MOTION TO COMPEL PAY DOCUMENTS FROM CURRENT DRIVERS (DKT. NO. 194)

By this motion, brought pursuant to Fed. R. Civ. P. 37(a), FedEx seeks pay information from six opt-in Plaintiffs, Bjorlie, Krutov, Lawrence, Mulvey, Viner, and Wosko, who indicated on their responses to Discovery Questionnaires that they did not have documents "reflecting the hours [they] worked" and "the pay [they] received" within their possession, custody, or control (Dkt. No. 194 at 4).

### A.   The Parties' Arguments

According to FedEx, as party plaintiffs, these six opt-ins, who responded to Discovery Questionnaires, were obligated to preserve and produce responsive pay information. Because the six opt-ins are either current drivers or were driving delivery vehicles when they signed the opt-

in forms and received the Discovery Questionnaires, FedEx's argument continues, they either must have documents that reflect the hours they worked and the pay they received or can access that information through their employers (the ISPs), banks, or "online payroll service[s]" (Dkt. No. 194-2 at 1).  FedEx asks the court to order the six opt-in Plaintiffs to produce pay information from the date they signed the opt-in forms or to produce their pay information from the date FedEx served the Discovery Questionnaires on them "with a detailed written explanation as to why they did not start preserving these documents when they opted into the lawsuit" (Dkt. No. 194-2 at 1).  FedEx furthers asks the court to order that "any opt in who is a current driver continue to preserve and maintain for later supplemental production all documents in their possession, custody, or control regarding their hours worked and pay[.]" (Dkt. No. 194-2 at 2).  FedEx seeks dismissal with prejudice of any of the six opt-ins who fail to produce pay documents within thirty days of any order entered by this court requiring them to do so.

Plaintiffs argue that FedEx either has the compensation information it seeks or can obtain the information from the ISPs with whom it contracts for delivery (Dkt. No. 200).  According to Plaintiffs, FedEx's scanner data reflects the hours the opt-ins worked and the contracts between FedEx and the ISPs require the ISPs to provide FedEx with access to the pay information on FedEx's request (Dkt. No. 55-7 at 6 § 6.2).  For its part, FedEx represents that, in its experience, the ISPs generally do not comply with their contractual obligations to provide pay information to FedEx and that it would be required to subpoena information from the ISPs that failed to provide the requested information, then ask the court to enforce the subpoenas if the ISPs failed to respond.  FedEx argues that the six opt-ins have direct access to their pay records and an obligation to participate in discovery.

     **B.**     **Analysis**

Pursuant to Fed. R. Civ. P. Rule 34(a)(1)(A), a party is entitled to serve on an opposing party a request for documents and electronically stored information that are in the responding party's possession, custody, or control.  The court may impose a range of sanctions, up to dismissal, for a party's failure to comply with a court's order to produce documents.  *See* Fed. R. Civ. P. 37(b)(2)(A)(v); Fed. R. Civ. P. 41(b).  "The concept of 'control' has been construed broadly."  *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006).  *See Merchia v. IRS,* 336 F.R.D. 396, 398-99 (D. Mass. 2020) ("a document is 'under a party's "control" when that party has the right, authority or ability to obtain [the] document[ ] upon demand.'") (quoting *Szulik v. State St. Bank and Tr. Co.*, Civil Action No. 12-10018-NMG, 2014 WL 3942934, at *1 (D. Mass. Aug. 11, 2014)).  "Under Rule 34, a party is in control of any documents possessed by a third party if that third party is … obligated to make them available." *Coventry Capital US LLC v. EEA Life Settlements Inc.,* 333 F.R.D. 60, 65 (S.D.N.Y. 2019), *on reconsideration in part,* 439 F. Supp. 3d 169 (S.D.N.Y. 2020) (citing *Mazzei v. Money Store*, No. 01cv5694 (JGK)(RLE), 2014 WL 3610894, at *3 (S.D.N.Y. July 21, 2014)).  *See also Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (same).  "Courts have held that a responding party is required to produce documents in [his] possession, custody, or control regardless of whether the requesting party is already in possession of the requested documents." *P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 318 F.R.D. 224, 230 (D.P.R. 2016) (citing *Med. Protective Co. v. Am. Int'l Specialty Lines Ins. Co.*, Cause No. 1:13-CV-00357, 2014 WL 4979394, at *3 (N.D. Ind. Oct. 6, 2014); *Redding v. ProSight Specialty Mgmt. Co.*, CV 12-98-H-CCL, 2014 WL 11412743, at *2 (D. Mont. July 2, 2014); *Gomez v. Tyson Foods, Inc.*, No. 8:08CV21, 2012 WL 3111897, at *4 (D. Neb. July 31, 2012); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal 1996)).

Plaintiffs have not argued that documents showing the opt-ins' hours worked and pay received are not relevant on the question of whether Plaintiffs can establish – as they claim – that they worked more than forty hours a week and were not paid overtime.  These six opt-in Plaintiffs have represented that they have no documents in their possession, custody, or control showing their pay and hours (Dkt. No. 94 at 2).  Generally, the court will not order a party to produce documents when the party represents that the documents are not in his or her possession, custody, or control.  *See Bobba v. Patel*, Civil Case No. 3:19-30171-MGM, 2021 WL 1907460, at *3 (D. Mass. May 12, 2021) (citing *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000)).  Plaintiffs contend that FedEx either has, or has access through the ISPs, to this information and should undertake to obtain any such information that it does not have from a source other than the opt-in Plaintiffs.[1]  The court is not persuaded by Plaintiffs' position.

Even if FedEx has the contractual right to obtain pay information from the ISPs, that does not relieve the opt-ins selected by FedEx for discovery from their obligation to produce relevant records to Fed Ex if those records are in their possession, custody, or control.  *See P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230.  An employee in Massachusetts has a right to obtain certain information from an employer, including the "rate of pay and other compensation" under the Massachusetts personnel records statute, Mass. Gen. Laws ch. 149, § 52C ("Section 52C"). While an employer of fewer than twenty employees is not required to create or maintain the pertinent records, *see* Section 52C, para. 7, and the ISPs may not satisfy this numerical threshold, the ISPs have contractual obligations to FedEx to create and maintain relevant pay information.

---

[1] To the extent any opt-in plaintiff does not have documents showing the number of hours he or she worked, the court is not persuaded that FedEx can show any prejudice from any such gap because FedEx's scanner data showing drivers' times in and out of the FedEx delivery centers seems likely to be the best evidence on this point even if such data does not address breaks taken during the workday.

6

To the extent that the ISPs do so, they have an obligation under Section 52C to provide this information to their employees on demand.  *See* Section 52C, para. 5.  This information should, therefore, be within the control of the six opt-ins for purposes of Rule 34, at least for a portion of the relevant period.[2]  *See Correia v. Town of Framingham*, Civil No. 12-10828-NMG, 2013 WL 952332, at *3 (D. Mass. Mar. 8, 2013).

By answering the Discovery Questionnaire, the six opt-ins have shown their interest in participating in the case.  They should have kept records of their pay, at least from the date on which they were served with the Discovery Questionnaires.  They will be given an additional sixty (60) days from the date of this order to attempt to obtain pay records from the ISP or ISPs that employed them or from another source.  If, after 60 days have passed, FedEx shows that the six opt-ins did not make *reasonable* efforts to obtain pay records to the extent possible, then the court will consider whether, in light of the efforts made by these six opt-ins, it should dismiss their claims with prejudice.  FedEx is reminded that the opt-in Plaintiffs may be no more successful than FedEx anticipates it would be in obtaining records from their ISP employers.  If they make reasonable efforts to obtain documents, their claims will not be dismissed.

C.    **Conclusion**

FedEx's Motion to Compel Pay Documents from Current Drivers (Dkt. No. 194) is GRANTED to the limited extend set forth herein.  The court will not, as FedEx requests, order that all opt-ins provide FedEx with "a detailed written explanation as to why they did not start

---

[2] FedEx claims that the six opt-ins could also obtain the information from their banks. There is nothing before the court on the basis of which the court could find that the six opt-ins have the right to obtain this information from their banks.  If FedEx has records showing direct deposits from the ISPs to the six opt-in plaintiffs, then FedEx already has the information it seeks by this motion, and its motion is an attempt to decrease the size of the collective by obtaining dismissal with prejudice rather than a legitimate attempt to obtain information it needs to defend the case.

preserving these documents when they opted into the lawsuit."  Nor will the court order that any opt-in who is a current driver be required to preserve and maintain all documents in their possession, custody, or control regarding their hours worked and pay received.  Communicating such an obligation to all opt-ins who are current employees would place an undue burden on Plaintiffs' counsel and is not consistent with the theory and operation of representative discovery.

## II.   FEDEX'S MOTION TO DISMISS WITH PREJUDICE OPT-IN PLAINTIFFS WHO FAILED TO COMPLY WITH THE COURT'S APRIL 22, 2021 ORDER COMPELLING FULL DOCUMENT PRODUCTION (DKT. NO. 195)

This motion concerns Part B of the court's April 22, 2012 order that addressed the named "opt-in plaintiffs who have responded to questionnaires and have indicated that they have some requested documents that they have not produced."  The court ordered those opt-ins to produce the requested documents in their possession, custody, or control on or before May 21, 2021. Plaintiffs withdrew two of the original opt-ins that were in that category (Dkt. Nos. 187, 214). This left seven named opt-ins who were subject to the court's order.

### A.   The Parties' Arguments

FedEx claims that these seven opt-ins had a year to produce documents, have failed to comply with the court's order, and, relying on Fed. R. Civ. P. 37(b)(2)(A) and 41, seeks to dismiss them from the case with prejudice because without the requested pay documentation, FedEx claims to be prejudiced "in its ability to take depositions, move for decertification, and otherwise defend against Plaintiffs' allegations and [the opt-ins' failure to respond] must be seen as willful" (Dkt. No. 195 at 5).  FedEx states that Bessette, Jones, Jr., and Neimerck, three of the seven opt-ins who indicated that they had documents in their possession, custody, or control,

failed to respond to the court's order (Dkt. No. 195 at 5). [3]  Mendonca produced paystubs covering the period from April 2016 to mid-March 2017 and W-2 forms from 2015 to 2018 (Dkt. No. 195 at 4).  According to FedEx, however, he was a driver on November 4, 2020 and failed to produce pay documents through that date (Dkt. No. 195 at 4).  Opt-in Barros provided 12 pages of paystubs covering 12 week-long pay periods for the 15 months from January 26, 2020 to April 24, 2021 (Dkt. No. 195 at 4).  FedEx claims that his records are incomplete because he was a delivery driver from November 13, 2017 and did not produce paystubs from that date to January 26, 2020 (Dkt. No. 195 at 4).  Opt-in Michaud had paystubs when she was served with the questionnaire but discarded them because she mistakenly believed that she could access them online (Dkt. No. 195 at 4).  Finally, opt-in Ingram previously stated that he saved all of his paystubs but indicated in May 2021 that they were damaged in a fire (Dkt. No. 195 at 4-5).

Plaintiffs respond that dismissal with prejudice is a drastic remedy that is not warranted by the discovery violations alleged by FedEx.  As to the discovery responses that FedEx deems to be insufficient, Plaintiffs' counsel indicated that she "has sought to follow up with the opt-in[s] and, in many cases, has been able to produce additional documents or a supplemental interrogatory response stating that the opt-in has looked for documents but in fact does not have any.  Counsel will continue to supplement in response to FedEx's requests for further information and/or documents" (Dkt. No. 201 at 3).

**B.    Analysis**

"Pursuant to Fed. R. Civ. P. 37(b)(2)(A), a [c]ourt may impose a sanction if a party fails to obey a discovery order."  *Zhuang v. Saquet*, 303 F.R.D. 4, 7 (D. Mass. 2014), *aff'd sub nom.*

---

[3] Camargo, an additional opt-in who did not respond to the court's order, withdrew after FedEx filed its motion (Dkt. No. 214).

*ZHUANG v. SAQUET, ET AL,* No. 14-2114 (1st Cir., Oct. 24, 2014).  A district court has broad discretion to impose sanctions for discovery violations.  *See Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642–43 (1976) (per curiam); *Sheppard v. River Valley Fitness One, L.P.,* 428 F.3d 1, 6 (1st Cir. 2005).  One possible sanction is "dismissing [an] action or proceeding in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v).  However, "dismissal orders typically are measures of last resort, reserved for extreme cases."  *Torres-Vargas v. Pereira*, 431 F.3d 389, 393 (1st Cir. 2005).  *See Estate of Solis Rivera v. United States*, 993 F.2d 1, 2 (1st Cir. 1993) ("Dismissal with prejudice is a harsh sanction, which should be employed only when a plaintiff's misconduct has been extreme and only after the district court has determined that none of the lesser sanctions available to it would be truly appropriate.").  "The First Circuit examines a number of substantive and procedural factors to determine whether a dismissal under Rule 37(b) is appropriate for the violation of a discovery order."  *Zhuang,* 303 F.R.D. at 7 (citing *Malloy v. WM Specialty Mortgage LLC,* 512 F.3d 23, 26 (1st Cir. 2008) (citation omitted)).

> The substantive factors include: 1) the severity of the violation, 2) the legitimacy of the party's excuse, 3) repetition of violations, 4) the deliberateness vel non of the misconduct, 5) mitigating excuses, 6) prejudice to the other side and to the operations of the court and 7) the adequacy of lesser sanctions.  As to procedure, the [c]ourt considers whether the offending party was given sufficient notice and opportunity to explain its noncompliance or argue for a lesser penalty.  Imposing the sanction of dismissal under Rule 37(b) necessitates considering and balancing all of the "pertinent circumstances."  *Young v. Gordon,* 330 F.3d 76, 81 (1st Cir. 2003).

*Id.*

These factors weigh against dismissing the claims of these opt-ins with prejudice.  As to the three opt-in Plaintiffs who had not responded by the time FedEx filed its motion, it was a single incidence of non-compliance.  *Compare Akin v. Pack*, Civil Action No. 16-cv-30048-MGM, 2017 WL 3262110, at *3 (D. Mass. July 6, 2017), *rec. dec. adopted,* Civil Action No. 16-30048-MGM, 2017 WL 3251390 (D. Mass. July 28, 2017) ("The harm of [disregarding a court

order] is aggravated when, as in this case, it is repeated."). Two opt-ins, Mendonca and Barros, complied with the order by producing some records. The two-opt-ins who provided reasons for their failure to produce documents, Michaud and Ingram, provided legitimate excuses. Michaud believed that her pay records were available online and Ingram's records were damaged in a fire. Moreover, none of the seven opt-ins had notice that their cases would be dismissed with prejudice if they failed to respond to the court's order. "Although prior notice is not a prerequisite to dismissal with prejudice, it is an important consideration." *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 45 (1st Cir. 2007) (citing *Robson v. Hallenbeck*, 81 F.3d 1, 3 (1st Cir. 1996)). *See Mulero-Abreu v. P.R. Police Dep't*, 675 F.3d 88, 94 (1st Cir. 2012) ("[P]laintiffs were twice explicitly warned that if they neglected to comply [with orders to respond to discovery requests] by a specified date, their case would be dismissed."); *Vazquez-Rijos v. Anhang*, 654 F.3d 122, 130 (1st Cir. 2011) (affirming dismissal of case where court issued multiple warnings to plaintiff before dismissing her case). *Compare Malot*, 478 F.3d at 45 (reversing dismissal with prejudice where the trial court did not attempt to exhaust milder sanctions and did not warn plaintiffs they might face dismissal with prejudice of their claims before entering dismissal order). The five opt-ins who have not produced any documents should make reasonable efforts to obtain records from their ISP employer(s).

C.    **Conclusion**

For the above-stated reasons, FedEx's request for dismissal of the seven opt-ins is DENIED. The three opt-ins who failed to respond to the court's April 22, 2021 order, Bessette, Jones, Jr., and Neimerck, and the two opt-ins whose records were lost or destroyed, Michaud and Ingram, will have an additional sixty (60) days from the date of this order to attempt to obtain pay records from the ISP or ISPs that employed them or from another source. If, after 60 days

have passed, FedEx shows that these five opt-ins did not make *reasonable* efforts to obtain pay records to the extent possible, then the court will consider whether, in light of the efforts made by these five opt-ins, it should dismiss their claims with prejudice.  Mendonca and Barros have sufficiently complied with the court's order that no further relief from the court is warranted.

III.   **FEDEX'S NOTICE OF THOSE OPT-INS WHO FAILED TO RESPOND FULLY TO DISCOVERY BY JUNE 4, 2021 AND REQUEST FOR AN ORDER DISMISSING WITH PREJUDICE THOSE OPT-INS WHO FAILED TO RESPOND FULLY TO DISCOVERY BY JUNE 4, 2021 (DKT. NO. 198)**

FedEx's "notice" addresses the status of the 28 opt-in Plaintiffs who were the subject of Part A of the court's April 22, 2021 order (Dkt. No. 185).  The 28 opt-ins were directed to produce completed questionnaires and requested documents within their possession, custody, or control on or before June 4, 2021 and were notified that their failure to comply would result in dismissal of their claims with prejudice (Dkt. No. 185).  Five of the 28 opt-ins withdrew (Dkt. Nos. 187, 193, 214).  Plaintiffs agree that 21 of the 23 remaining opt-ins should be dismissed with prejudice for failing to comply with the court's order (Dkt. No. 215).  However, the parties dispute the dismissal of opt-ins Harrell and Berch.

According to FedEx, Harrell completed the questionnaire and provided paystubs for the time he drove for ABC from February 16 to June 20, 2020 (Dkt. No. 198, 216).  However, although Harrell allegedly indicated that he would provide paystubs for the period when he was a delivery driver for Samlep from June 20 to November 4, 2020, he failed to produce those documents (Dkt. No. 198, 216).  For the reasons previously discussed when addressing Docket No. 195 (Part II, above), Harrell has sufficiently complied with the court's order so that no sanctions are warranted.

As for Berch, Plaintiffs' counsel states that he signed his questionnaire on May 20, 2021 but it was not produced to FedEx until June 10, 2021 due to "an administrative oversight in

12

counsel's office" (Dkt. No. 215 at 1).  Plaintiffs allege that FedEx was not prejudiced by the six

day delay (Dkt. No. 215).  FedEx counters that Berch failed to produce any documents

notwithstanding his status as a current driver (Dkt. No. 216).  In addition, he indicated on his

questionnaire that he only drove trucks that weighed in excess of 10,001 pounds and, therefore,

is excluded from the collective (Dkt. No. 216).  For the reasons discussed when addressing

Docket No. 194 (Part I above), unless it is conclusively determined that Berch drove delivery

vehicles that weighed in excess of 10,001 pounds, his case should not be dismissed based on his

failure to produce paystubs notwithstanding his status as a current driver.  Berch will be given an

additional sixty (60) days from the date of this order to attempt to obtain pay records from the

ISP or ISPs that employed him or from another source.  If, after 60 days have passed, FedEx

shows that Berch did not make *reasonable* efforts to obtain pay records to the extent possible,

then the court will consider whether, in light of the efforts made by Berch, it should dismiss his

claims with prejudice.

FedEx's Request for an Order Dismissing with Prejudice those Opt-ins Who Failed to

Respond Fully to Discovery by June 4, 2021 (Dkt. No. 198) is GRANTED as to Appleton,

Arzeno, Caban, Corcoran, Forcier, Gomez, T. Hayes, Hornedo, Jaro, Louis, Maloney IV,

McCormack, McFadries, Miel, Rayneld, Rodrigues, Rose, Schiep, Jose Souza, Stevens, and

Valera, and DENIED as to Berch and Harrell.

## IV. FEDEX'S MOTION TO COMPEL RESPONSES FROM PLAINTIFF-SELECTED OPT-INS (DKT. NO. 204)

By way of relevant background, on January 3, 2020, the court ordered the parties to

transmit written Discovery Questionnaires to 50 of the opt-in Plaintiffs selected by FedEx (Dkt.

No. 121).  According to the parties, thereafter, Plaintiffs served FedEx with interrogatories and

requests for production of documents related to all 544 opt-ins (Dkt. No. 204 at 3).  In a March

23, 2020 e-mail communication, FedEx's counsel objected to Plaintiffs' service of interrogatories and requests for production of documents on "every single opt in" unless Plaintiffs permitted FedEx to serve the Discovery Questionnaire on all of the members of the conditionally certified collective (Dkt. No. 211-1 at 5).  If Plaintiffs did not agree to that proposal, FedEx's counsel suggested that Plaintiffs "choose 50 opt ins (plus Roy and Trumbull separately), which is consistent with Judge Robertson's order" (Dkt. No. 211-1 at 5).  On March 25, 2020, Plaintiffs' counsel replied:

> Pursuant to what we discussed and agreed, we [Plaintiffs] will send you a list (possibly on a rolling basis) of 50 opt-ins for whom we are initially seeking discovery responses from FedEx. . . . We reserve the right to seek responses related to additional drivers, and we understand that FedEx reserves its right to oppose our seeking discovery related to additional drivers.  FedEx also agrees to provide us with any additional information it obtains related to the 50 opt-ins who were served with FedEx's [Discovery] [Q]uestionnaire.  We agreed to continue communicating about discovery and that we will continue to confer if there is additional information we believe we need.  Please let me know if you think I have misstated anything that was agreed to.

(Dkt. No. 211-1 at 2).  There is no dispute that FedEx complied with its responsibilities under the agreement with Plaintiffs by providing Plaintiffs with the requested discovery for the 100 opt-ins.  Equally, there is no dispute that Plaintiffs complied with the parties' agreement by limiting its discovery requests to FedEx to fifty members of the conditional collective selected at its discretion.  It did that notwithstanding the absence of any order issued by the court limiting the discovery that Plaintiffs could propound on FedEx.

On December 22, 2020, FedEx's counsel wrote:

> Given that Plaintiffs have information that we [FedEx] produced for not only our 50+ selected opt ins, but also the 50 opt ins that Plaintiff selected, we believe we are entitled to questionnaire responses from the 50 opt ins that Plaintiffs selected.  Otherwise, we are sitting here with half information for 50 of the 100.  In no world does a party to a lawsuit get to obtain information from the other party without also providing the information he has.  Indeed, if Plaintiffs were to attempt to use those Plaintiff-selected opt ins for something, we would most certainly be entitled to question them and obtain their documents. . . . [W]e need to come to some sort of agreement on it so that we can start

preparing those questionnaires. . . . At the very minimum, they would need to produce documents [if they are deposed].

(Dkt. No. 211-2 at 3-4).  Plaintiffs' counsel responded:

We will agree to produce documents, and answer [Discovery] [Q]uestionnaires, for the 50 drivers we [Plaintiffs] identified.  We'll get started with that right after the holidays. . . . We also don't agree that drivers should be dropped from the case if they don't respond, since the FLSA allows drivers to opt in to a case being prosecuted by others.  So long as you [FedEx] get a reasonable amount of discovery to allow you to defend the case, individual drivers should not be penalized for not participating in discovery.

(Dkt. No. 211-2 at 2).

## A.    The Parties' Arguments

FedEx alleges that Plaintiffs agreed that the 50 Plaintiff-selected opt-ins would provide FedEx with completed Discovery Questionnaires and responsive documents that were in their possession, custody, or control (Dkt. No. 204 at 3-4).  Relying on Fed. R. Civ. P. 37(a), FedEx now asks the court to enforce the parties' agreement by compelling "full responses" from the Plaintiff-selected opt-ins who have failed to complete Discovery Questionnaires and/or produce the requested documents to FedEx (Dkt. No. 204).  According to FedEx, eight of the 50 Plaintiff-selected opt-ins have withdrawn from the case, fifteen have failed to respond to the questionnaires, one (Robertson) responded that he discarded responsive documents "with no further explanation as to when that occurred or whether he can obtain copies," one (Santos) was a delivery driver as of at least November 4, 2020, but failed to produce documents, and one (Lima) has produced illegible documents that have not been replaced despite FedEx's request (Dkt. No. 204 at 5).  FedEx asks the court to order those eighteen identified opt-ins who have failed to respond at all or who have not provided complete responses to fully respond to the questionnaire and to produce all responsive documents in their possession, custody, or control within 30 days or be subject to dismissal with prejudice.

Plaintiffs point out that the Plaintiff-selected opt-ins were not subject to the court's order like the opt-ins who FedEx selected. According to Plaintiffs, they "volunteered" to permit FedEx to transmit Discovery Questionnaires to the 50 Plaintiff-selected opt-ins nine months after the parties agreed that FedEx would provide Plaintiffs with discovery for 50 opt-ins of Plaintiffs' choice and, therefore, it was not part of a negotiated agreement between the parties that should be enforced by the court (Dkt. No. 211). In addition, when FedEx deposed Robertson on July 13, it had the opportunity to ask when he discarded his paystubs and whether he could obtain copies. As to Santos, Plaintiffs argue that he should not be compelled to produce paystubs because FedEx has access to his pay records. Finally, Lima produced photographs of some of his paystubs and the dates were cut off in some of the photos. Plaintiffs' counsel is attempting to obtain better photos (Dkt. No. 211 at 5).

In reply, FedEx points out that Plaintiffs' opposition to the motion stated the terms of the discovery agreement (Dkt. No. 217 at 3). Plaintiffs "agreed" that the 50 Plaintiff-selected opt-ins would complete the "same [Discovery] [Q]uestionnaire that was served on the 50 FedEx-selected opt-ins" (Dkt. No. 217 at 3 (citing Dkt. No. 211 at 2)). Consequently, according to FedEx, the court should enforce the agreement by dismissing, with prejudice, any Plaintiff-selected opt-ins who fail to complete the Discovery Questionnaires and/or provide the responsive documents that are in their possession, custody, or control. In the alternative, because FedEx allegedly has complied with its responsibility to provide Plaintiffs with discovery for the 50 Plaintiff-identified opt-ins, if Plaintiffs wish "the non-responding and partial-responding Plaintiff-selected opt-ins to remain in the case, Plaintiffs' counsel should have to reimburse FedEx . . . for its costs and fees for complying with their discovery requests. The same is true as to those Plaintiff-selected opt-ins that have since dropped out" (Dkt. No. 217 at 5).

B.     **Analysis**

Courts are inclined to enforce discovery agreements between the parties, particularly when "the parties' agreed to each other's requests . . . ."  *In re Santa Fe Natural Tobacco Co. Mktg. & Sales Practices & Prods. Liab. Litig.,* No. MD 16-2695 JB/LF, 2018 WL 3972909, at *11 (D.N.M. Aug. 18, 2018).  *See Landry v. Swire Oilfield Servs., LLC,* 323 F.R.D. 360, 400 (D.N.M. 2018) ("The [c]ourt . . . will not upset an agreement between the two parties."); *Fed. Deposit Ins. Corp. v. LSI Appraisal LLC,* Case Nos. SACV 11-00706 DOC (ANx), SACV 11-00704 DOC (ANx), 2014 WL 12561102, at *3 (C.D. Cal. July 21, 2014) ("private agreements should be considered and honored by the courts."); *Evans v. VonFeldt Realtors, Inc.,* No. 82-1737-C, 1989 WL 31398, at *1 (D. Kan. March 30, 1989) ("Obviously, other discovery is allowed upon the parties' own agreement.").  "The rationale underlying this principle is simple: if the parties could not rely on courts to enforce discovery agreements, there would be little incentive for parties to make them." *In re Santa Fe Natural Tobacco Co.,* 2018 WL 3972909, at *11 n.9 (citing *Milazzo v. KG Enters., Inc.,* No. CIV. 97-649-SD, 1999 WL 1327394, at *2 (D.N.H. Feb. 16, 1999) ("If parties did not resolve most discovery matters by consent and stipulation the court would be inundated with discovery motions."); *Angell v. Shawmut Bank Conn. Nat'l Assoc.,* 153 F.R.D. 585, 590 (M.D.N.C. 1994) ("Private agreements save time and expense for the parties and valuable court time as well.")).

The attorneys' e-mails show that the parties negotiated discovery agreements.  Plaintiffs agreed to limit their discovery requests to FedEx to fifty opt-ins that Plaintiffs selected.  FedEx agreed to produce information from its records related to 100 opt-ins:  the 50 FedEx-selected opt-ins who received the Discovery Questionnaire pursuant to the court's order and 50 Plaintiff-selected opt-ins (Dkt. No. 211-1 at 2, 5).  Plaintiffs subsequently agreed to "produce documents

and answer questionnaires" for the 50 Plaintiff-identified opt-ins (Dkt. No. 211-2 at 2).  In the

court's view, while it may have the authority to enforce that agreement, *see RCHFU, LLC v.*

*Marriott Vacations Worldwide Corp.,* Civil Action No. 16-cv-01301-PAB-GPG, 2019 WL

2135816, at *3 (D. Colo. May 16, 2019) (it was within the magistrate judge's discretion to

enforce the parties' "binding agreement"); *Pinks v. M&T Bank Corp.,* 13-CV-1730 (LAK)(RLE),

2016 WL 1216813, at *4 (S.D.N.Y. Mar. 25, 2016) ("To the extent [p]arties enter into

agreements on the best way to conduct discovery, courts should uphold and honor such

agreements."), FedEx is overstating the degree of prejudice it has sustained and overreaching in

the remedy it seeks.

The court never entered any order limiting the discovery Plaintiffs could propound to

FedEx.  Plaintiffs agreed to limit their discovery requests to FedEx for information related to 50

opt-ins.  So far as appears from the record before the court, Plaintiffs have honored that

agreement.  That FedEx provided Plaintiffs with information related to those 50 opt-ins is not

some unusual event.  It is what would be expected to occur in discovery.  It remains a fact that

Plaintiffs further agreed that the 50 opt-ins for whom they sought discovery from FedEx would

respond to the Discovery Questionnaire and produce relevant documents in their possession,

custody or control and this aspect of the parties' agreement should also be enforced.

Accordingly, the court enters the following orders:

- As to the fifteen Plaintiff-selected opt-ins who have failed to respond to the
  Discovery Questionnaires, they must produce completed questionnaires and
  requested documents that are within their possession, custody, or control within
  sixty days of entry of this order.  To the extent these opt-ins fail to make
  *reasonable* efforts to comply with this order, Plaintiffs will not be entitled to rely
  on information related to the employment and compensation of these opt-ins to
  support their opposition to FedEx's decertification or summary judgment motions
  or at trial.  The claims of these opt-ins, however, will not be dismissed and they
  will remain part of the collective, subject to further orders of the court.

- As to Plaintiff-selected opt-in Robertson who allegedly responded to the Discovery Questionnaire by indicating that he discarded responsive documents "with no further explanation as to when that occurred or whether he can obtain copies," FedEx's motion to compel is DENIED in its entirety because, during Robertson's deposition, FedEx had an opportunity to question him concerning the circumstances surrounding his disposal of responsive documents.

- As to Plaintiff-selected opt-in Santos, who, according to FedEx was a delivery driver at least as of November 4, 2020, Santos has sixty days from the date this order enters to seek to obtain responsive documents.  To the extent his *reasonable* efforts to do so are unsuccessful, there will be no discovery penalty. To the extent he fails to make such reasonable efforts, Plaintiffs will not be entitled to rely on information about his employment or compensation.  FedEx's motion to compel is otherwise DENIED.

- As to Plaintiff-selected opt-in Lima whose photographs of his paystubs inadvertently omitted dates, Plaintiffs' counsel is in the process of remedying this issue.  Accordingly, FedEx's motion to compel as to Lima is DENIED.

### C.    Conclusion

FedEx's Motion to Compel from Plaintiff-Selected Opt-ins (Dkt. No. 204) is GRANTED in limited part and DENIED in part.

### V.    CONCLUSION

For the above-stated reasons, FedEx's notice/request for order and three motions are granted in part and denied in part as follows:

FedEx's Motion to Compel Pay Documents from Current Drivers (Dkt. No. 194) is GRANTED to the limited extent described herein.

FedEx's Motion to Dismiss with Prejudice Opt-in Plaintiffs who Failed to Comply with the Court's April 22, 2021 Order Compelling Full Document Production (Dkt. No. 195) is DENIED.

FedEx's Notice and Request for an Order Dismissing with Prejudice those Opt-ins Who Failed to Respond Fully to Discovery by June 4, 2021 (Dkt. No. 198) is GRANTED as to Appleton, Arzeno, Caban, Corcoran, Forcier, Gomez, T. Hayes, Hornedo, Jaro, Louis, Maloney

IV, McCormack, McFadries, Miel, Rayneld, Rodrigues, Rose, Schiep, Jose Souza, Stevens, and Valera, and DENIED as to Berch and Harrell.

FedEx's Motion to Compel from Plaintiff-Selected Opt-ins (Dkt. No. 204) is GRANTED in limited part and DENIED in part as described herein.

It is so ordered.

Dated:  August 23, 2021                                      /s/ Katherine A. Robertson
                                                             KATHERINE A. ROBERTSON
                                                             U.S. MAGISTRATE JUDGE