UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>   Defendant. | Case No.: 3:17-cv-30116-KAR<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF SCANNER DATA**<br><br>Leave to file granted on 9/26/2022 |

I.  **INTRODUCTION**

In its Opposition to Plaintiffs' Motion to Compel Production of Scanner Data, FedEx Ground Package System, Inc. ("FedEx" or "Defendant") Defendant advances a number of red herrings in an effort to distract the Court from the reality that Plaintiff's discovery request is both relevant and proportional to the needs of the case. First, Defendant selectively quotes from its own witness's testimony in an attempt to bolster its argument that it would be burdensome to produce the requested data. To the contrary, the record makes clear that Defendant could gather and produce the data **in mere days**. Second, Defendant ignores this Court's prior findings regarding the relevance of scanner data and makes the unconvincing argument that scanner records of driving time are irrelevant in a delivery driver overtime case.  Third, Defendant mischaracterizes the nature of the discovery at issue: Plaintiffs do not seek individualized discovery, but rather seek a mass production of data from *a single entity*. Finally, Defendant engages in a premature merits argument that should be reserved for the decertification stage. The Court should order FedEx to produce the requested scanner data without further delay.

II.  **ARGUMENT**

   A.  **FedEx's Own Witness Testimony Indicates that the Requested Scanner Can Be Quickly Accessed and Produced in Mere Days.**

Instead of putting forth any evidence of what the actual burden would be to pull data for the 550 opt-ins in this case (assuming such data has not already been extracted by FedEx[1]),

---

[1]     To date, FedEx has never unambiguously denied that its in-house legal team has already pulled at least much of the scanner data for all opt-ins, as they have for the 30,000 opt-ins in Claiborne, et al. v. FedEx Ground Package System, Inc., Civ. No. 2:18-cv-01698-RJC (W.D. Pa.), despite Plaintiffs' repeated suggestions to that effect both in conferral efforts and in their motion to compel.  See Dkt. 256-6 at 4 ("Based on recent testimony obtained in Claiborne, we believe that scanner data has likely already been pulled for all opt-ins").  Indeed, based on what FedEx has informed Plaintiffs regarding how it determines whether a driver drove a small vehicle (a process that includes comparing vehicle IDs found in scanner data with FedEx's

Defendant cherry-picks from its own witness's testimony to support its unfounded proposition that "[c]ollecting and producing scanner data for every opt-in Plaintiff is a serious undertaking because the information is not readily available." Dkt. 259 at 14.  Specifically, FedEx cites to a single line from a declaration by Susan Kernen, FedEx's in-house paralegal, in which she testified that "a project compiling scanner data … took 16 weeks to complete." Id.  Defendant takes Ms. Kernen's statement, which was made about a scanner data project for a different case involving tens of thousands more opt-ins, out of context.

To be precise, Ms. Kernen testified that: (1) FedEx's scanner data exports into "an Excel spreadsheet that can be used for matching up and sorting"; and (2) "FedEx Ground pulled all scanner data nationwide, from which it then **pulled together the scan records for the 30,000 opt ins for**" the <u>Claiborne</u> **collective over approximately 16 weeks**.  See Dkt. 259-13 at ¶ 6 (emphasis added).  By comparison, there are only 550 opt-ins in this case.  If it took FedEx approximately 16 weeks to pull data for 54.5 times as many opt-ins, **it stands to reason that it would take FedEx approximately 2 days to pull data for a small fraction of the number of opt-ins in this case (112 days/54.5 = 2.055)**.  Thus, the record reflects that an estimate of <u>**days**</u> (not weeks) is far more likely to reflect the amount of time it would take FedEx to pull the requested data in this case.  That estimate is plainly inconsistent with Defendant's claim of burden, especially in a collective action where producing the requested data cannot be viewed as undue.  See <u>Gilbert v. Citigroup, Inc</u>, 2009 WL 10692463, at *6 (N.D. Cal. Apr. 2, 2009) (rejecting defendant's claim in an FLSA action that requested data would be burdensome to produce pre-final certification and holding that defendant failed to prove that any alleged "burden is *undue*.") (emphasis in original).

---

vehicle records), it would seem impossible for FedEx to have compiled a notice list in this case without also extracting the scanner data to create the list.

B. **The Requested Scanner Data Is Unquestionably Relevant.**

As Plaintiffs explained in their motion and in conferral efforts, this Court has already recognized the relevance of FedEx's scanner data to this case. See Dkt. 256 at 11, citing Roy v. FedEx Ground Package Sys., Inc., 2021 WL 3727143, at *3 n.1 (D. Mass. Aug. 23, 2021) ("FedEx's scanner data showing drivers' times in and out of the FedEx delivery centers seems likely to be the best evidence on [hours worked] even if such data does not address breaks taken during the workday."); see also Roy v. FedEx Ground Package Sys., Inc., 353 F. Supp. 3d 43, 72, n.16 (D. Mass. 2018) ("FedEx Ground has ready access to records showing the time a driver logged into FedEx Ground's scanner at a terminal, the time a driver departed the terminal, and the time of the driver's last delivery of the day."). Defendant brushes aside these most basic relevance arguments, which Plaintiffs have asserted from day one, see Dkt. 256-6 at 1 (conferral email) ("The scanner data is a common type of evidence that can be used to analyze hours worked using a common methodology for the collective."). Instead, FedEx seizes upon one aspect of Plaintiffs' relevance argument[2] — the issue of control in the joint employment context[3]

---

[2]   Plaintiffs argued that "**in addition to clearly being relevant to the issue of whether opt-in Plaintiffs worked overtime hours**, the requested data" (Dkt. 256 at 7, emphasis in original) is relevant to other issues in this case inter alia, FedEx's control over drivers' work schedules and maintenance of employment records. See, e.g., Tumulty v. FedEx Ground Package Sys., Inc., 2005 WL 8181225, *12 (W.D. Wash. Mar. 7, 2005) (FedEx was a joint employer of delivery drivers working under contractor based in part on FedEx's maintenance of employment records "which tracked the Drivers' deliveries"). While Plaintiffs assert that remains true, FedEx cannot sidestep the independent relevancy of the scanner data for purposes of analyzing hours worked.

[3]   Defendant suggests that because the scanner data is used to provide information to customers regarding package deliveries, it cannot simultaneously be used by FedEx to exercise control over its drivers. This is nonsensical—raw data can be used and presented to different end users for different purposes. Moreover, FedEx's premature merits argument at this stage, as to what the evidence will or will not ultimately show, should be rejected. Plaintiffs believe that the scanner data constitutes common evidence showing how FedEx exercises indirect control over its drivers, such as control over drivers' work schedules.

— and attempts to give the Court that false impression that Plaintiffs' request for the data turns on that issue.[4] See Dkt. 259 at 7. Regardless, FedEx fails to rebut the plain fact that the scanner data constitutes common evidence pertaining to the issue of whether opt-ins worked overtime hours. Indeed, given the obvious import of scanner data in this overtime case any meaningful effort to deny the relevance of the data lacks credibility, especially where FedEx has already produced scanner data in this case (because it is relevant) and this Court is not the first court to recognize the significance of FedEx's scanner data in wage and hour litigation. See, e.g., Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981, 986–87 (9th Cir. 2014) ("After each delivery, drivers must use an electronic scanner to send data about the delivery to FedEx.").

    Scalia v. Paragon Contractors Corp., 957 F.3d 1156 (10th Cir. 2020), which Defendant cites in support of its argument that has no obligation to produce evidence of hours worked until Plaintiffs make a prima facie case showing overtime violations, in fact underscores the relevance and discoverability of the scanner data. In Paragon Contractors, the Tenth Circuit held that where

---

[4] FedEx also claims that Plaintiffs are seeking GVWR information beyond the scope of what the parties conferred about when discussing FedEx's refusal to produce scanner data. See Dkt. 259 at 16. However, FedEx knows full well from conferring with Plaintiffs and from their motion that they are seeking delivery driver data that includes records of hours worked (and vehicle identifying information that can *ultimately be used* to identify the GVWR of a vehicle with FedEx's cooperation). FedEx knows precisely what set of scanner data Plaintiffs are requesting, but it nonetheless pounces on an inartful sentence in Plaintiffs' motion where they suggest the scanner data contains the full GVWR information in an effort to argue Plaintiffs did not adequately confer and are seeking additional data beyond what is found in FedEx's scanner data. As FedEx knows, the scanner data contains records of hours (which is discoverable) as well as well as vehicle identification numbers. That is the information Plaintiffs seek in this motion and it is not burdensome for FedEx to produce it. Moreover, FedEx has already represented to Plaintiffs and the Court that every opt-in Plaintiff who received notice drove a vehicle under 10,001 during the claims period per FedEx's records. See Dkt. 72 at 2 (jointly reporting that FedEx compiled a notice "list of individuals who operated out of a FedEx Ground station in Massachusetts since February 19, 20215 and drove either a vehicle under 10,001 pounds gross vehicle weight rating ("GVWR") or a vehicle of unknown GWVR on at least one occasion."). Accordingly, FedEx's discussion of GWVR on this motion is a mere distraction from FedEx's refusal to produce scanner data which FedEx understands this motion to be about.

4

an employer fails to comply with recordkeeping requirements, employees may establish prima facie violations using representative testimony, thereby shifting the burden to the employer to negate the reasonableness of the representative evidence.  See Paragon Contractors, 957 F.3d at 1161.  Whether Plaintiffs have presented a *prima facie* case is a premature merits argument.  However, in this case, all of the Plaintiffs have already met their burden of establishing prima facie overtime violations via the filing of opt-in form declarations swearing under oath (see, e.g., Dkt. 89-1) that they worked during the claims period without overtime pay, despite working more than forty (40) hours per week.  See Paragon Contractors, 957 F.3d at 1161-62 (affirming use of "claims forms to fill in [evidentiary] gaps where information was not available" and expressly rejecting defendant's argument that "the district court misread Mt. Clemens and set the bar too high for rebutting a prima facie case" based on the use of claims forms); see also Uronis v. Cabot Oil & Gas Corp., 2022 WL 4231203, at *7 (3d Cir. Sept. 14, 2022) (an opt-in consent form is "testimony" under the FLSA's anti-retaliation provision because "[a] consent to join a collective action is just that: it is an informational statement (that an employee is similarly situated to the named plaintiff with respect to the alleged FLSA violation) made to a government entity (the court).").  As a result, FedEx should not be allowed to refuse to produce scanner data in its possession, which is probative of the accuracy of Plaintiffs' testimony in their opt-in consent declarations that they worked more than 40 hours in some weeks.

### C. Classwide scanner data coming from a single source is not "individualized" discovery.

The requested scanner data is not individualized discovery because it comes from a single source, FedEx, and Plaintiffs can analyze the scanner data to present the court with a common (classwide) method of proof that collective members worked more than 40 hours at least one week during the claims period.  See Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1022

(D. Minn. 2007) (denying motion for decertification and finding that "plaintiffs have presented common evidence of possible eligibility for overtime compensation under the FLSA due to their weekly work hours in excess of forty."). Indeed, far from being "useless" or "individualized discovery" (as FedEx claims), Plaintiffs' request is entirely consistent with how classwide time records are routinely analyzed in wage and hour litigation, as recognized by the Supreme Court in Tyson. See Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 463, 136 S. Ct. 1036, 1051, 194 L. Ed. 2d 124 (2016) (Roberts, J., concurring) ("The Court properly concludes that despite the differences in donning and doffing time for individual class members, respondents could adequately prove the amount of time for each individual through generalized, class-wide proof.).

FedEx argues that Plaintiffs' request violates a purported "reciprocal" discovery norm in FLSA litigation, while drawing false equivalencies between having each and every low-wage opt-in worker sit for a deposition or submit to written discovery (something FedEx sought to do in this case) and requiring a single defendant, FedEx, to produce readily available time records maintained in the ordinary course of its business.[5] In suggesting it would be anomalous for the Court to require FedEx to produce the scanner data when the Court (correctly) limited FedEx's ability to burden opt-in Plaintiffs with discovery, FedEx cites caselaw that in fact supports Plaintiffs' argument that there is nothing inappropriate or unusual about FedEx being required to produce complete scanner data in this case. For example, Lawson v. Love's Travel Stops & Country Stores, Inc., 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019), which Defendant cites

---

[5] FedEx also argues that a supposed discovery agreement between the parties preclude Plaintiffs' request here. See Dkt. 259 at 5. FedEx is wrong because this *supposed* agreement is expressly states that Plaintiffs "reserve the right to seek [discovery] responses related to additional drivers" (Dkt. 211-1 at 2) and Plaintiffs have exercised their rights based on specific developments in discovery that have made clear that it is not meaningfully burdensome for FedEx to produce the requested scanner data at this juncture.

6

for the proposition that a "reciprocal" discovery rule should operate to shield it from producing the requested data, actually states that the party with ready access to data in a workers' rights case is typically the corporate defendant, and that there is nothing inappropriate about requiring a single corporate defendant to produce more electronically stored information than their employees. See Lawson, 2019 WL 5622453, at *4 ("**[I]n FLSA litigation, several factors understandably may often lead to a greater production of ESI by the defense than by the plaintiffs**" because **"the burden of ESI discovery relating to [the] elements of an FLSA claim will necessarily fall upon the alleged policymaker, the defendant."**) (emphasis added). Indeed, Judge Colville made similar observations in Claiborne when he ordered FedEx to produce GWVR data for 1,000 drivers **above and beyond** the scope of the representative sample of opt-ins required to complete written discovery in that case. See Claiborne, 2021 WL 3563388, *19 (W.D. Pa. Aug. 12, 2021) ("FedEx is clearly the party with access to more resources in this FLSA collective action. Further, **FedEx is a <u>single</u> source for this information, as opposed to Plaintiffs' counsel being required to reach out to each of the individual collective members, who are further unlikely to be able to produce information in a format comparable to what FedEx can produce**.").(emphasis added).[6] The fact that low-wage workers do not have access to sophisticated scanner data, compared to a multi-national

---

[6]  In the same order, Judge Colville ordered FedEx to produce "any GVWR information that FedEx accesses and/or generates with respect to any named-Plaintiff or opt-in Plaintiff going forward in this case" and "an additional 1,000 opt-ins, to be chosen by Plaintiffs."  2021 WL 3563388, at *19.  Accordingly, Judge Colville rejected FedEx's self-serving limitation on having to produce data in its possession only for those opt-ins it is permitted to serve written discovery on, by requiring FedEx to produce data for 1,000 opt-ins beyond the representative sample and for any opt-ins whose data FedEx has already accessed. In this case, FedEx may have already pulled all the scanner data and it would have had to have pulled substantial scanner and GWVR data simply to compile the notice list in this case in determining which drivers drove vehicles weighing less than 10,000 pounds.

delivery company who maintains such data in the normal course of business, does not relieve FedEx of its discovery obligations in this case.[7]

### D. By prematurely arguing that Plaintiffs are not "similarly situated," FedEx places the scanner data squarely within the scope of discovery.

An opposition to a motion to compel production of a specific set of information prior to completion of discovery is not an appropriate vehicle to argue about whether the collective should receive final certification. Indeed, it is well-established that the issue of decertification should be decided after the Court is presented with a complete and full discovery record.[8]  See, e.g., Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357, 359 (D. Me. 2010) (a defendant "may move to decertify the collective action after discovery is complete."); Bah v. Enter. Rent-A-Car Co. of Bos., LLC, 560 F. Supp. 3d 366, 372 (D. Mass. 2021) (accord). Nevertheless, at every opportunity since this collective was conditionally certified, *but before complying with its discovery obligations*, FedEx has argued that class and collective certification is improper due to

---

[7]     Moreover, contrary to FedEx's (premature) argument that Plaintiffs' request for complete scanner data "underscores that this collective is not similarly situated" (Dkt. 259 at 13), in Young v. Act Fast Delivery of West Virginia, Inc., 2019 WL 4859009, at *1–4 (S.D. W. Va. Oct. 1, 2019) the Court held a collective trial in a highly similar joint employment FLSA action and recognized the relevance of classwide data and found that it should be subject to production. Indeed, the defendant lost a post-trial Rule 60 motion because it failed to produce requested delivery data in its possession that would have unquestionably aided Plaintiffs in their presentation of their FLSA collective action to the jury. Implicit in the Court's opinion was the finding that Plaintiffs should have been afforded the opportunity to receive, analyze, and carefully present the data as part of proving their collective claims. In its opposition, FedEx attempts to distinguish Young by arguing that the collective was about half the size of this one. See Dkt. 259 at 12. However, the fact that the Young collective was half the size has nothing to do with whether Plaintiffs have the right to obtain classwide scanner data in the defendant's possession. The undisputed evidence is that it would only take FedEx a handful of days to access and produce the scanner data at issue.

[8]     At the appropriate time, Plaintiffs are prepared to present the court with substantial evidence that FedEx is in fact a joint employer of its drivers and maintains significant control over hiring, terminations, discipline, work rules, and many other terms and conditions of their employment. Plaintiffs have been gathering such evidence in discovery and continue to do so.

purported difficulties of determining, *inter alia*, each driver's work hours, each driver's unpaid overtime wages, or the GVWR of the vehicles driven by each driver. But, as already noted, these arguments "put the cart before the horse."[9] If, as Plaintiffs allege, FedEx is a statutory employer under the FLSA, then FedEx – like Sleepy's – is to blame for any recordkeeping shortcomings. See, e.g., Hargrove v. Sleepy's LLC, 974 F.3d 467, 470 (3d Cir. 2020) (workers in a wage and hour dispute "should not bear the cost of the employer's faulty record keeping."). As in Hargrove, FedEx cannot rely on its own recordkeeping deficiencies to defeat class and collective litigation. And FedEx certainly cannot rely on its own refusal to produce relevant records it does possess; data this Court has described as "likely to be the best evidence on" hours worked.[10] See Roy, 2021 WL 3727143, at *3 n.1.

At bottom, FedEx cannot have it both ways. FedEx cannot on the one hand *attempt* to hold Plaintiffs to a heightened final certification standard while on the other withholding evidence that Plaintiffs can use to help persuasively demonstrate to the Court that they can prove

---

[9] It is possible, that after a reviewing a full record and full briefing on the question of final certification, this Court will enter final certification on the question of joint employment liability, before addressing other issues in this case. See Harris v. Medical Transportation Management, Inc., 2021 WL 3472381, at *6 (D.D.C. Aug. 6, 2021) (pending on appeal) ("there can be no doubt that permitting this case to proceed as a collective action on the issue of whether [the defendant] is a joint employer will benefit individual plaintiffs and the judicial system by the efficient resolution in one proceeding of a common issue of law and fact."). However, given that the Court has not made such a ruling at this juncture, and there is no bifurcation of discovery, it is only fair that FedEx produces the non-burdensome discovery requested. Indeed, judicial efficiency counsels in favor of requiring the non-burdensome production so that Plaintiffs can start analyzing the data in the event the case receives final certification and moves forward to trial. Indeed, even in the unlikely event the case is decertified, the opt-ins in this case still have viable claims to pursue in this Court and there is no reason to delay this non-burdensome discovery.

[10] When building or defending a case, it matters tremendously what your evidence is and where it comes from. FedEx understands this, which is the real reason it is fighting so hard from preventing Plaintiffs from obtaining the "best available evidence" to present to the Court so that this case can be fairly presented and understood.

their classwide case by a preponderance of evidence.[11] This is true even despite the fact that FedEx's view of the standard for obtaining final certification is incorrect and has in fact been rejected by a court within the First Circuit in a similar case involving FedEx. See Scovil v. FedEx Ground Package Sys., Inc., 886 F. Supp. 2d 45, 58, n. 20 (D. Me. 2012).[12]

## CONCLUSION

For the reasons explained above and in Plaintiffs' motion to compel scanner data, the Court should order Defendant to promptly produce scanner data for all opt-in plaintiffs.

Dated:  September 26, 2022               Respectfully submitted,

                                         JORDAN ROY and JUSTIN TRUMBULL, on
                                         behalf of themselves and others similarly situated,

                                         By their attorneys,

                                         */s/ Shannon Liss-Riordan*
                                         Shannon Liss-Riordan (BBO #640716)
                                         Michelle Cassorla (BBO #688429)
                                         Zachary Rubin (BBO #704485)
                                         LICHTEN & LISS-RIORDAN, P.C.
                                         729 Boylston Street, Suite 2000

---

[11]     FedEx attempts to give the impression to this Court that Judge Colville endorsed its "similarly situated" analysis at a phone conference in Claiborne.  That is not remotely the case, and it is misleading of FedEx to cite to another Judge's humble questions a telephonic conference as somehow deciding an important issue in that case.  In the same status conference, Judge Colville made clear that he was merely asking a hypothetical and had not yet closely considered the caselaw or arguments regarding whether FedEx's framing of the "similarly situated" analysis is correct and he would require full briefing on key issues in the case. See Dkt. Attached hereto as Ex. A, 4/25/22 Telephone Conference Transcript at p. 16 (J. Colville) ("Okay. I won't belabor my point.  Again, **I'm new enough to the issue and new enough to the law itself that I won't presume anything**.") (emphasis added).

[12]     In Scovil, the court held that "the requirement is that the plaintiffs be 'similarly situated,' not identical" (id. at 57) and the Court expressly rejected FedEx' arguments that alleged individual statute of limitation defenses or "FXG's arguments about qualifying vehicle weight" required decertification.  Id. at 58, n. 20.  Instead, the court denied FedEx's motion for decertification.

        Boston, Massachusetts 02116
        (617) 994-5800
        sliss@llrlaw.com
        mcassorla@llrlaw.com
        zrubin@llrlaw.com

### **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants on September 26, 2022.

        */s/ Shannon Liss-Riordan*
        Shannon Liss-Riordan