## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JORDAN ROY and JUSTIN TRUMBULL,
on behalf of themselves and others similarly
situated,

            Plaintiffs,

v.

FEDEX GROUND PACKAGE SYSTEM,
INC.,

            Defendant.

Case No.:  3:17-cv-30116-KAR

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION
## OF VEHICLE MANAGEMENT SYSTEM ("VMS") DATA

Plaintiffs Jordan Roy and Justin Trumbull, on behalf of themselves and others similarly situated, ("Plaintiffs") file this motion seeking to compel Defendant FedEx Ground Package System, Inc. ("FedEx") to produce vehicle data related to the delivery vehicles driven by the opt-in Plaintiffs for which FedEx has refused to produce this data.  Plaintiffs request that FedEx be ordered to produce its Vehicle Management System ("VMS") data associated with the delivery vehicles driven by these 320 opt-ins during the claims period (which is not burdensome to produce, as described below), or at least the VMS spreadsheets that FedEx admits it already has in its possession, sorted by Massachusetts terminal.

FedEx's VMS data includes National Highway Traffic Safety Administration Vehicle Identification Numbers ("VIN numbers"), Gross Vehicle Weight Rating ("GVWR") information, and FedEx's uniquely assigned corresponding FedEx Vehicle ID.  As explained below, FedEx does not genuinely dispute the relevancy of the requested data in a case where FedEx has argued

that at least some of the collective action members are exempt from the FLSA's overtime

protection under the Motor Carrier Act exemption because they did not drive vehicles under

10,001 pounds.  See Dkt. 49 (Answer) at ¶19 (asserting that the claims of Plaintiffs and opt-ins

"are barred" by "the Motor Carrier Exemption").  However, although FedEx maintains records

that would allow Plaintiffs to show (with limited exceptions) when each opt-in drove a "small

vehicle," FedEx has refused to provide that data.  If FedEx produces the VMS data, Plaintiffs can

efficiently combine it with FedEx's scanner data (which captures "on duty" time) to show, based

solely on FedEx's records, that opt-ins worked at least 40 hours during weeks when they drove a

small vehicle.  As Plaintiffs explained in their reply brief in support of their successful motion to

compel scanner data, Plaintiffs "can ultimately be used to identify the GVWR of a vehicle *with*

*FedEx's cooperation*."  Dkt. 367 at p. 4, n. 4.  (emphasis added).  Unfortunately, Plaintiffs have

not received FedEx's cooperation despite demonstrating through extensive conferral and

discovery that FedEx's alleged burden objections fail scrutiny, *yet again*.  See Roy v. FedEx

Ground Package Sys., Inc., 2022 WL 17343846, at *4 (D. Mass. Nov. 30, 2022) ("As Plaintiffs

have demonstrated, FedEx has not shown that producing scanner data for all opt-in members of

the collective for whom it has not produced such data would be unduly burdensome.").

        As explained fully below, FedEx has already gone through the process of accessing the

requested data in order to create a list of drivers who were eligible to opt-in to this action, and

that list was used to provide notice to the putative class.  See Dkt. 72 at p. 2.  However, FedEx

has claimed that it did not actually extract and save the vehicle data from its VMS database that

it can simply re-produce.  While Plaintiffs find FedEx's position difficult to believe, the mere

fact that FedEx was admittedly able to search its VMS data to create the notice list of

approximately 2,000 drivers in this action[1] at the outset belies FedEx's claim that to produce this data for 320 opt-ins would constitute undue burden.

Moreover, FedEx's own search methodology reflects it is not unduly burdensome to gather the requested data.[2]  In the related case of Claiborne, et al. v. FedEx Ground Package System, Inc., Civ. No. 2:18-cv-01698-RJC (W.D. Pa.) (which raises the same claims as this case, in which there are more than 30,000 opt-ins nationwide), FedEx gathered vehicle data (and scanner data) for 1,000 drivers of Plaintiffs' choosing in less than three (3) months.  Therefore, here, by comparison, it appears it should take less than one (1) month to gather VMS data for the remaining 320 opt-ins for whom FedEx has not yet produced this information.[3]

---

[1]     Specifically, after the Court granted conditional certification, FedEx searched its scanner data and VMS data to determine which drivers should be on the notice list provided to Plaintiffs. See Dkt. 72 at 2.  Out of the thousands of drivers who worked during the claims period, FedEx determined that approximately 2,000 either drove a "small vehicle" or a vehicle of unknown weight during the claims period and thus should receive notice.  Id.  Thereafter, approximately 550 drivers opted-in to this case.  Some of those drivers have been dismissed from this action. Plaintiffs currently have vehicle data for 156 drivers in the action and there remain 320 drivers for whom Plaintiffs have not received any vehicle data.

[2]     As described further below, this production would not be burdensome, since FedEx has now conceded, following recent deposition testimony, that it can export the VMS data into spreadsheets.  Furthermore, there are readily available Excel data processing tools that will allow FedEx to target and extract the VMS data tied to the vehicles driven by the opt-ins during the class period.  Because the Scanner Data FedEx has already produced contains unique FedEx Vehicle IDs for each vehicle driven by the opt-ins, and because the VMS data contains the same FedEx Vehicle identification numbers, Excel allows users to compare the spreadsheets automatically (without requiring manual manipulation of thousands of data points) using these ID numbers to extract the requested VMS data, including GVWR and VIN information. Plaintiffs' counsel has explained this to FedEx's counsel during conferral, and FedEx has not explained why it could not do this.

[3]     Moreover, Plaintiffs have also determined that there is an even *more* efficient way to isolate the relevant data in an automated fashion using widely available Excel tools.  At the very least, Plaintiffs request a court order requiring FedEx to produce the VMS data spreadsheets (inclusive of all VIN numbers all GVWR information) that it already has in its possession, corresponding to FedEx's Massachusetts terminals.

Accordingly, Plaintiffs respectfully request an order compelling FedEx to promptly produce the requested VMS data.

## I.      BACKGROUND

Before discovery in this action even started, FedEx had already accessed vehicle data for the delivery drivers who would ultimately opt-in to this case.  Specifically, FedEx represented to the Court that it compiled a notice "list of individuals who operated out of a FedEx Ground station in Massachusetts since February 19, 2015 and drove either a vehicle under 10,001 pounds gross vehicle weight rating ("GVWR") or a vehicle of unknown GWVR on at least one occasion." Dkt. 72 at p. 2.  In discovery, Plaintiffs requested documents related to the vehicles driven by the opt-in Plaintiffs.  See Ex. A, Plaintiffs' Document Request No. 1 from its First Set of Requests.  However, FedEx has refused to produce the vehicle data for all opt-ins.

Plaintiffs engaged FedEx in extensive email and phone conferral as they continued to conduct discovery related to FedEx's claim that it would be burdensome to produce the requested vehicle information.  The relevant conferral history is set forth in two email chains attached hereto as Ex. B and Ex. C.

As part of this conferral, on November 18, 2022, Plaintiffs emailed FedEx regarding their request for vehicle information, in which they pointed out that FedEx already accessed the requested data to compile a notice list.  See Id. at p. 8 (explaining that Plaintiffs "do not understand how FedEx could have compiled a notice list for the collective without first having pulled substantial GVWR data or information to do so.").  However, despite having *already gone through the process* of looking up the GVWR information of all of the opt-ins in Roy to create a notice list (see Dkt. 72 at 2), FedEx claimed it did not have records related to the creation of the notice list.  Plaintiffs therefore requested an explanation from FedEx regarding how the notice

list was created so they could seek to understand FedEx's position.  See Ex. B at p. 2.  While FedEx provided some limited information, Plaintiffs still do not understand the search methodology FedEx used to generate the class list.

Although FedEx has failed to adequately explain the search methodology it has used to gather GVWR information in order to compile the class list in this case, Plaintiffs' counsel knows from the litigation history in Claiborne that FedEx's own methodology would enable FedEx to produce the requested data for 320 opt-ins without undue burden.   In Claiborne, Plaintiffs provided FedEx with a list of 1,000 drivers on December 20, 2021, and FedEx provided spreadsheets containing complete scanner data and GVWR information for those 1,000 drivers on March 14, 2022.  See Rubin Decl. (Ex. D) at ¶¶ 3-4.  Given that it took less than three months to produce this information for 1,000 drivers, it appears it would take FedEx less than a month to gather the information in a similar manner here for one-third the number of drivers.  Moreover, FedEx has already produced this information for 156 drivers in the action, roughly one third of the collective.

Plaintiffs have also engaged in recent discovery to test further FedEx's claim that producing this information would be overly burdensome.  On January 24, 2023, Plaintiffs deposed Stephanie Newmont – a FedEx Ground's Manager of Fleet Maintenance.  See Newmont Dep. (Ex. E) at Tr. 10. Ms. Newmont testified that VMS data *could be exported into spreadsheets* and that FedEx does so in the normal course of its business to provide station managers with a means to look at all of the vehicles associated with their stations to determine whether those vehicles are current regarding state vehicle inspections.  As Ms. Newmont testified on January 24, 2023, "VMS data can be pulled from the system and put in spreadsheet form" (Tr. 40:23-24, 41:1).  Indeed, she confirmed having seen VMS spreadsheets used for

purposes of validating inspection information.  (Tr. 41.)  She also explained that spreadsheets of

VMS data "are provided to [FedEx's] station management…to make sure that [vehicle]

inspections are completed."  (Tr. 43:13-15).

      Ms. Newmont's testimony was the latest in the unraveling of FedEx's burden objections.

Initially, the main evidence that FedEx had relied upon in support of its burden claim consisted

of a declaration from an in-house paralegal, Susan Kernen.  In her declaration, Ms. Kernen

described a *low-tech process* of taking screenshots of her computer while manually and tediously

looking up vehicle weight information one-by-one in VMS.  See Kernen Decl. (Ex. F) at ¶¶-11-

12.  Ms. Kernen's declaration does not explain, as Ms. Newmont and Ms. Kernen would later

testify at their depositions, that raw VMS data can easily be exported to spreadsheets and,

indeed, had been provided to FedEx's e-discovery vendor, NERA.  See Kernen Dep. (Ex. G) at

Tr. 41-42, 50, 54 58, 66, and 74. [4]  However, when Plaintiffs conferred with FedEx about this

---

[4]     Indeed, Ms. Kernen's declaration seems to contrast her ability to export "Scanner Data"
in a spreadsheet with the supposed inability to do so as it relates to the VMS data.  As it turns
out, *the VMS data can be exported into spreadsheet form*.  See Newmont Dep. at Tr. 40-41.
Plaintiffs are not suggesting that Ms. Kernen was untruthful when she described the process by
which she – as an individual paralegal – has the means and technical skills to look up vehicle
data.  *The apparent problem is that her declaration was being presented in Claiborne to justify
FedEx's claims of burden when FedEx failed to disclose that it had indeed extracted raw VMS
data and already provided it to a vendor in connection with this litigation and that VMS data is
exported into spreadsheets in the normal course of FedEx's business*.  Ms. Kernen herself
seemed to be unaware that her declaration was being used for this purpose.  See Kernen Tr. at
42:11-16 (testifying that she did not know her declaration was being presented to support
FedEx's burden objection "but I know that we're really talking about two different things.  So
I'm pulling the [VMS] image, that's basically what I do…And then there was the feed that I've
never received, never look at, that went from the Vehicle Management System directly to
NERA.").

     In Claiborne, although Plaintiffs' motion to compel GVWR data was granted in part,
based on the evidence that FedEx submitted regarding the alleged burden, the Court "at [that]
time" only required:

revelation, FedEx claimed that its vendor was merely given a copy of the database itself and that it allegedly still had to engage in a burdensome search process to extract the requested data.  Ms. Newmont's testimony -- that VMS data can be extracted and filtered via spreadsheets – demonstrated that FedEx's prior burden objections regarding the accessibility and searchability of VMS data were inaccurate.

Immediately following Ms. Newmont's deposition, Plaintiffs sent a request for supplemental production for FedEx to produce all documents related to the vehicles driven by the opt-ins.  See Ex. C at p. 12.  Plaintiffs requested the VMS spreadsheets provided to the stations in Massachusetts[5] during the relevant period and any VMS data provided to FedEx's vendor in connection with the Roy litigation.  See Id.  Nevertheless, FedEx has refused to produce these documents.[6]

---

(1) any GVWR information that FedEx has already accessed and/or generated with respect to any named-Plaintiff and/or opt-in Plaintiff; (2) GVWR information for all opt-ins who are chosen to participate in representative discovery, as discussed above; (3) any GVWR information that FedEx accesses and/or generates with respect to any named-Plaintiff or opt-in Plaintiff going forward in this case; and (4) GVWR information for an additional 1,000 opt-ins, to be chosen by Plaintiffs.

Claiborne, 2021 WL 3563388, *18 (W.D. Pa. Aug. 12, 2021). The Court in Claiborne expressly held that "[t]his issue may be revisited, if warranted and appropriate, as representative discovery proceeds in this matter." Id.

[5]     There are currently "possibly six or seven" stations or terminals in Massachusetts.  See Blais Tr. (Ex. H) at Tr. 15:12-18.

[6]     On February 9, 2023, FedEx responded to Plaintiffs' request that the VMS spreadsheets have no reference to the drivers and that FedEx would not produce the spreadsheets or the VMS data.  Plaintiffs clarified that, although VMS data does not directly list the names of the drivers, *it does contain the FedEx Vehicle IDs associated with the vehicles driven by drivers*.  See Ex. C at p. 11.  Indeed, Plaintiffs emphasized that **"FedEx cannot seriously argue that the VMS data is not relevant to determining the vehicles driven by Plaintiffs – because that is precisely how FedEx itself is using the information in this litigation."**  (emphasis in original).  See Ex. C at p. 10.

Throughout their extensive attempt to confer with FedEx on this issue, Plaintiffs' counsel continued to brainstorm ways in which the VMS data could be accessed via alternative means. Once it became clear that there was an *especially efficient means to search for and target the requested data* (which is different from any search methodology FedEx has ever described employing), Plaintiffs wrote to FedEx in a final effort to avoid what they viewed as avoidable motion practice.  On February 20, 2023, Plaintiffs emailed FedEx in part to explain that: (1) because the unique FedEx Vehicle ID numbers in FedEx's produced Scanner Data could be isolated in an automated fashion using Excel (and indeed, Plaintiffs had already done so[7]); and (2) because the record is now clear, as FedEx concedes, that VMS data can be exported into spreadsheets, the requested VMS data corresponding to the vehicles driven by the opt-ins during the relevant period can be automatically isolated and extracted using an Excel tool known as VLOOKUP.   See Ex. C at p. 1-2.[8]  VLOOKUP is a commonly used Excel tool that allows users to match data in one spreadsheet with corresponding data in another. See Excel vLookup: Combining 2 Spreadsheets, available at https://kb.wisc.edu/msndata/page.php?id=90851 (last accessed February 22, 2023); see also https://www.youtube.com/watch?v=PDBR3Zt2JeE (demonstrating the application of VLOOKUP) (last access February 22, 2023).

FedEx did not respond to any of the substance of Plaintiffs' argument that it would not be burdensome for FedEx to gather the requested data (if it truly did not maintain it, after creating

---

[7]      Specifically, Plaintiffs informed FedEx that within the approximately 86,000 rows of scanner data, Plaintiffs were quickly able to isolate 2,555 unique FedEx Vehicle ID numbers in an automated fashion using Excel.   See Ex. C at p. 2.

[8]      As reflected in the conferral email chain (Ex. C), Plaintiffs' counsel repeatedly asked FedEx to confer by phone to discuss its burden objections and in hopes of reaching a discovery agreement.  Since at least January 24, 2023, FedEx has refused to offer Plaintiffs any availability to confer by phone.

the notice list).  On February 21, 2023, FedEx responded only to accuse Plaintiffs of a "scorched

earth approach to discovery."  FedEx also declined Plaintiffs' request to confer by phone.  See

Ex. C at p. 1.

Plaintiffs thus now file this motion to compel.

## II.   LEGAL STANDARD

Pursuant to Rule 26, "[p]arties may obtain discovery regarding any matter, not privileged,

that is relevant to the claim or defense of any party. . ."  Fed. R. Civ. P. 26(b)(1).  Courts

construe relevancy broadly at the discovery stage, "such that information is discoverable if there

is *any probability* that it might be relevant to the subject matter of the litigation."  United States

v. Mass. Indus. Fin. Agency, 162 F.R.D. 410, 414 (D. Mass. 1995) (emphasis added).[9]

"Once a showing of relevance is made, the party opposing disclosure bears the burden of

showing that the requested discovery is improper."  Controlled Kinematics, Inc. v. Novanta

Corp., 2019 WL 3082354, at *2 (D. Mass. July 15, 2019); see also Roy v. FedEx Ground

Package Sys., Inc., 2022 WL 17343846, at *2 (D. Mass. Nov. 30, 2022) (accord).

## III.   ARGUMENT

### A.   The VMS data requested by Plaintiffs is relevant and properly discoverable

In this case, **FedEx has already represented to the Court that it searched its vehicle**

**records to create a notice list in this collective action**.  See Dkt. 72 at p. 2.  Moreover, the opt-

in plaintiffs in their consent forms filed with the Court have certified that they recall driving a

---

[9]      See also E.E.O.C. v. Electro-Term, Inc., 167 F.R.D. 344, 346 (D. Mass. 1996)
("Relevancy" under Rule 26 is "broadly construed at the discovery stage such that information is
discoverable if there is any possibility that it might be relevant to the subject matter of the
action.").  Accordingly, courts in the First Circuit have "repeatedly held that there should be
generally unrestricted access to sources of information" during discovery.  Cohn v. Dart
Industries, Inc., 1976 WL 44045, at *1 (D. Mass. Apr. 26, 1976) (citing Horizons Titanium v.
Norton Co., 290 F.2d 421 (1st Cir. 1961)).

9

vehicle under 10,001 pounds within the scope of this collective action's statutory period.

Plaintiffs have requested information regarding the GVWR of the vehicles driven by opt-ins

because FedEx has argued that at least some of the collective action members are exempt from

the FLSA's overtime protection under the Motor Carrier Act exemption because they did not

drive vehicles under 10,001 pounds. See Dkt. 49 (Answer) at ¶19 (asserting that the claims of

Plaintiffs and opt-ins "are barred" by "the Motor Carrier Exemption").

     However, FedEx has refused to produce the information in its possession that is relevant

to its defense (and thus which FedEx has the burden of proving). FedEx cannot have it both

ways: it cannot assert the exemption defense while simultaneously refusing to produce

information in its possession that is relevant to it.[10] If FedEx intends to proceed with this

defense, it must produce the records it possesses with respect to the opt-ins.[11]

---

[10]    Plaintiffs understand that FedEx will argue that Plaintiffs bear the burden of proof on this issue, but that merits argument is not relevant to the determination of whether the information is discoverable. See Claiborne, 2021 WL 3563388, *18 (holding the GVWR information is relevant to the FLSA claims regardless of which party the Court ultimately finds had the burden of proof at the merits stage of the litigation); cf. Mazzarella v. Fast Rig Support, LLC, 823 F.3d 786, 789 (3d Cir. 2016) ("the District Court correctly determined that Defendants have not met their burden to show that the Motor Carrier Act ('MCA') exemption to the overtime provisions in the Fair Labor Standards Act…applies"); see also Brooks v. Halsted Commc'ns, Ltd., 620 F. Supp. 2d 193, 201 (D. Mass. 2009) ("Starting in June 2008, all employers in the motor carrier industry were required to distinguish for purposes of compensation between employees who operated light vehicles [under 10,001 lbs] and those operating commercial vehicles.").

[11]    If it is determined that any opt-ins did not drive trucks under 10,001 pounds (despite having been included on FedEx's notice list and despite having attested to this fact in their opt-in notices), Plaintiffs recognize they should properly be dismissed from this action. It is ironic that FedEx is fighting to withhold information that would allow the parties and the Court to ensure that the opt-ins in this collective are all eligible for the claim being pressed in this case. See Swenson v. Mobilityless, LLC, 2022 WL 2347113, at *2 (D. Mass. June 29, 2022) (M.J., Robertson) ("Plaintiffs seeking to represent a class or classes generally are entitled to conduct discovery related to defining a potential class or classes of individuals to whom the defendant(s) may be liable and to the nature and scope of class-wide claims."). It appears that FedEx may be trying to withhold this information in order to advance its anticipated argument that the collective is unmanageable because some opt-ins are not eligible for this case. But it is Plaintiffs

FedEx cannot and does not seriously dispute the relevance of VMS data.  See Ex. C at p. 8 (FedEx's counsel stating that "[w]e have never argued that the VMS data is irrelevant."). Instead, during the conferral process, FedEx rehashed arguments already rejected by this Court, claiming that Plaintiffs are seeking improper individualized discovery.  However, the Court previously addressed FedEx's arguments that seeking data from FedEx on all opt-ins amounted to "'an improper request for individualized discovery' as opposed to representative discovery that is generally made available to defendants in FLSA actions."  Roy v. FedEx Ground Package Sys., Inc., 2022 WL 17343846, at *3.  As the Court explained, "[r]epresentative discovery in FLSA cases is designed to minimize the outsized burden that individual discovery **would impose on plaintiffs' counsel** and yet afford the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses." Id. (internal quotations and citation omitted) (emphasis added).

The Court correctly held that there is nothing inappropriate or improper with plaintiffs seeking data from a single source – i.e., the defendant – in a FLSA collective action.  See Id. (rejecting FedEx's argument that gathering data from a "single source" amounted to an improper individualized discovery); see also Claiborne, 2021 WL 3563388, *19 ("FedEx is clearly the party with access to more resources in this FLSA collective action. Further, **FedEx is a single source for this information, as opposed to Plaintiffs' counsel being required to reach out to each of the individual collective members, who are further unlikely to be able to produce information in a format comparable to what FedEx can produce**.") (emphasis added).

who are trying to ensure that all opt-ins are eligible, while FedEx is fighting Plaintiffs on this point.

   **B.**  **FedEx's burden objections do not withstand scrutiny**

     **1.**  **The fact that FedEx already searched the VMS database to create a notice list of approximately 2,000 drivers undermines FedEx's claim of undue burden**

It is not in dispute that FedEx reviewed its VMS data in order to determine which drivers should receive notice in this action.  Through that process, FedEx identified approximately 2,000 drivers who it admitted should receive notice.  As a matter of logic, to create such a list, FedEx had to have considered the vehicle weights of the vehicles driven by all Massachusetts drivers during the relevant period.  After this process occurred, approximately 550 drivers opted-in to the case.  Here, Plaintiffs are seeking data for 320 of those drivers, since FedEx has already produced the data for approximately one-third of the drivers in the action.  And indeed, FedEx has already produced this information for roughly one-third of drivers in this case (as well as for 1,000 drivers in the <u>Claiborne</u> case).  The fact that FedEx was able to create a notice list for this action – which would have required reviewing *far more data* (covering thousands of drivers) – shows it is not unduly burdensome to provide the data Plaintiffs are requesting for a mere 320 drivers.  Moreover, FedEx's claim that it did not keep records regarding the vehicle weights of these drivers (and therefore may have to search its data over again) is no excuse for FedEx's failure to produce the data.  It was of course reasonably foreseeable that the underlying vehicle data would be needed in discovery in this action, and if FedEx failed to take reasonable steps to avoid future burdens in discovery, Plaintiffs should not be refused relevant discovery for that reason.

**2. Even applying FedEx's own professed search methodology reflects that gathering the requested data is not unduly burdensome**

As noted above, it took FedEx less than three (3) months to gather both VMS and scanner data[12] for 1,000 drivers in <u>Claiborne</u>.  Plaintiffs provided FedEx with a list of 1,000 drivers on December 20, 2021, and FedEx provided spreadsheets containing complete scanner data and GVWR information for those 1,000 drivers on March 14, 2022.  <u>See</u> Rubin Decl. (Ex. D) at ¶¶ 3-4.  Given that the data at issue here is only for 32% of that number of drivers, it appears it would take FedEx less than a month to gather the information, using FedEx's own search methodology that it used in <u>Claiborne</u>.

**3. Alternatively, the requested VMS data can be easily isolated in an automated fashion using Excel's VLOOKUP function**

As explained above, Plaintiffs made numerous proposals to FedEx and asked specific questions regarding the nature of FedEx's search efforts in hopes of resolving or at least better understanding this discovery dispute.  And although Plaintiffs received less than complete cooperation, the conferral process culminated with Plaintiffs realizing and demonstrating to FedEx that widely available Excel data processing tools could be used to isolate the requested data in an automated fashion.  <u>See</u> Ex. C at p. 2.  Specifically, Plaintiffs informed FedEx that FedEx's unique Vehicle ID numbers could be isolated within the voluminous scanner data quickly using Excel.[13]  <u>Id</u>.  With this list of unique FedEx Vehicle ID numbers, FedEx could use

---

[12]     For purposes of this litigation (and <u>Claiborne</u>), FedEx's practice has been to pull scanner data and VMS data and combine both sets of information into single spreadsheets for each driver for whom discovery has been requested.  While those spreadsheets are helpful, Plaintiffs never asked FedEx to take the step of combining the two data sets.  Instead, Plaintiffs have explained that FedEx can produce the scanner data and the VMS data, and Plaintiffs can combine and analyze this data, if it is truly too burdensome for FedEx to do this for all drivers.

[13]     As the Court knows, FedEx previously refused to produce its scanner data for all opt-ins, requiring Plaintiffs to move to compel the data.  On November 30, 2022, the Cout ordered FedEx

the Excel tool "VLOOKUP" to isolate the corresponding VMS data.  The VMS data and

FedEx's scanner data both include FedEx's unique Vehicle ID numbers.  However, the scanner

data does not contain GVWR and VIN information – that is only contained in the VMS data.

However, VLOOKUP allows a user *to pull automatically* all data from one spreadsheet (in this

case VMS data) that corresponds with data from another spreadsheet.  Therefore, as Plaintiffs

explained to FedEx during conferral, one can extract the unique FedEx Vehicle ID numbers

found in the scanner data (which Plaintiffs did in under a minute using Excel) and use such a list

to extract GVWR and VIN information tied to these FedEx Vehicle ID numbers.  This automated

process, known as VLOOKUP, is widely used and described by the University of Wisconsin on

a webpage titled Excel vLookup: Combining 2 Spreadsheets, available at

https://kb.wisc.edu/msndata/page.php?id=90851  (last accessed February 22, 2023).  Similarly,

there are demonstrations on YouTube and elsewhere showing how efficiently VLOOKUP can be

utilized to match data across spreadsheets.  See, e.g.

https://www.youtube.com/watch?v=PDBR3Zt2JeE (last access February 22, 2023).  Plaintiffs

would be able to perform this function themselves if FedEx produced spreadsheets of VMS data.

However, FedEx could do the same, given its vast resources and access to IT personnel,

experienced data analysts, and discovery vendors.

       As a second alternative, Plaintiffs' counsel have the means to isolate the requested VMS

data if FedEx produces VMS spreadsheets associated with the stations in Massachusetts.  Screen

shots from FedEx's VMS database reflect that each entry contains a "Terminal" number where

the vehicle is associated.  See, e.g., Ex. I (a screenshot of a VMS data entry).  Moreover, FedEx's

---

to produce the scanner data for all opt-ins within 30 days.  See Dkt. 273 at p. 8.  FedEx produced
the scanner data for 320 additional opt-ins on December 29, 2022.

Vehicle Maintenance Department Head, Stephanie Newmont, testified that VMS data can and has been exported into spreadsheets for purposes of giving FedEx's Station Management spreadsheets they can use to determine if vehicle inspections are up to date.  <u>See</u> Newmont Dep. (Ex. E) at Tr. 43:13-15.  It stands to reason that FedEx sorts its VMS data by station number in order to compile spreadsheets to be used by local management for such purposes.  In any event, the record reflects that VMS data can be exported into spreadsheets, *which means it can be sorted in such a fashion*.  In Massachusetts, there are only six or seven terminals.  <u>See</u> Blais Tr. (Ex. H) at Tr. 15:12-18.  Therefore, FedEx would only have to extract a few spreadsheets to produce to Plaintiffs.  Plaintiffs could then use VLOOKUP to isolate the specific vehicles driven by the opt-ins.

## IV.  CONCLUSION

As Plaintiffs have demonstrated, FedEx should be ordered to produce the requested VMS data associated with the vehicles driven by the opt-ins during the relevant period because: (1) there is no genuine dispute that the data is relevant to claims and defenses in this Fair Labor Standards Act ("FLSA") action; (2) FedEx's burden objections do not withstand scrutiny; and (3) there is no other legitimate basis for FedEx to withhold the discoverable information.

FedEx cannot meet its burden as the party withholding relevant data in its possession for at least three reasons.  First, FedEx's burden claim is belied by the fact that FedEx was reasonably able to compile a notice list (consisting of a much larger group of drivers) by accessing the VMS data.  Second, it is clear that it would not be unduly burdensome for FedEx to gather the requested data even using FedEx's search methodology.  And finally, Plaintiffs have demonstrated during conferral, and explained herein, that there is an even more efficient (automated) means to gather the requested data.

Therefore, the Court should order FedEx to produce VMS data for the opt-ins for which FedEx has not produced this information.

Dated:  February 24, 2023                     Respectfully submitted,

                                              */s/ Zachary Rubin*
                                              Shannon Liss-Riordan *(BBO #640716)*
                                              Harold Lichten *(BBO #549689)*
                                              Michelle Cassorla *(BBO #688429)*
                                              Zachary Rubin *(BBO #704485)*
                                              Krysten Connon *(pro hac vice)*
                                              LICHTEN & LISS-RIORDAN, P.C.
                                              729 Boylston Street, Suite 2000
                                              Boston, Massachusetts 02116
                                              (617) 994-5800
                                              sliss@llrlaw.com
                                              mcassorla@llrlaw.com
                                              zrubin@llrlaw.com
                                              kconnon@llrlaw.com


                                              Peter Winebrake (*pro hac vice*)
                                              Mark J. Gottesfeld (*pro hac vice*)
                                              Michelle Tolodziecki (*pro hac vice*)
                                              Winebrake & Santillo, LLC
                                              715 Twining Road, Suite 211
                                              Dresher, PA  19025
                                              Telephone:    215.884.2491
                                              pwinebrake@winebrakelaw.com
                                              mgottesfeld@winebrakelaw.com
                                              mtolodizekci@winebrakelaw.com


                                              *Attorneys for Plaintiffs*

**CERTIFICATE OF CONFERRAL**

I hereby certify, pursuant to L.R. 7.1 and L.R. 37.1(a), that Plaintiffs' counsel conferred with Defendant regarding the dispute raised here, as set forth in Exhibits B and C and were not able to reach agreement.

*/s/ Zachary Rubin*
Zachary Rubin

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2023, I caused a true and correct copy of the foregoing to be filed with the Court's CM/ECF system, which constitutes service on Defendant, whose counsel are registered participants on that system.

*/s/ Zachary L. Rubin*
Zachary L. Rubin