UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-30116-KAR |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEMS, INC., | ) ) | |
| | ) | |
| Defendant. | | |

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL VEHICLE
MANAGEMENT SYSTEM (VMS) DATA
(Dkt. No. 303)

ROBERTSON, U.S.M.J.

Before the court is Jordan Roy's and Justin Turnbull's (collectively, "Plaintiffs") motion

to compel Defendant FedEx Ground Package Systems, Inc. ("FedEx") to produce Vehicle

Management System ("VMS") data concerning the Gross Vehicle Weight Rating ("GVWR") of

the vehicles driven by drivers who delivered FedEx packages in Massachusetts and were paid by

Independent Service Providers ("ISP") (Dkt. No. 303).  FedEx has opposed Plaintiffs' motion

(Dkt. No. 313), and Plaintiffs have responded (Dkt. Nos. 320).  For the reasons that follow, the

Plaintiffs' motion is granted.

I.     BACKGROUND

Familiarity with the basic facts of this Fair Labor Standards Act ("FLSA") action is

assumed.  So far as is relevant to this motion, the court conditionally certified a collective of

similarly situated individuals who delivered FedEx's packages in Massachusetts after February

19, 2015, using vehicles with gross weights of less than 10,001 pounds, who were paid by the

ISPs to perform delivery services on FedEx's behalf, and who were not paid overtime compensation for all hours worked over forty each week. *See Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 72 (D. Mass. 2018).

    II.    LEGAL STANDARDS

    A.    <u>Motion to Compel</u>

Fed. R. Civ. P. 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> >
> > (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

"On a motion to compel, '[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance.'" *Controlled Kinematics, Inc. v. Novanta Corp.*, Civil Action No. 17-cv-11029-ADB, 2019 WL 3082354, at *2 (D. Mass. July 15, 2019) (alteration in original) (quoting *Johansen v. Liberty Mut. Grp., Inc.*, Civil Action No. 15-cv-12920-ADB, 2017 WL 6045419, at *1 (D. Mass. Dec. 6, 2017)).  "At the discovery stage,

relevance should be 'broadly construed,' and information should be deemed 'discoverable if there is any possibility it might be relevant to the subject matter of the action.'" *Nosalek v. MLS Prop. Info. Network, Inc.*, CIVIL ACTION NO. 20-12244-PBS, 2022 WL 4815961, at *4 (D. Mass. Oct. 3, 2022) (quoting *Cherkaoui v. City of Quincy*, Civil Action No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015)).  "'[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), *modified on reconsideration,* 160 F. Supp. 3d 431 (D. Mass. 2016) (citation omitted).  Then, "[o]nce a showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper." *Controlled Kinematics*, 2019 WL 3082354, at *2.

      B.    <u>Discovery of Electronically Stored Information ("ESI")</u>

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).  *See W Holding Co. v. Chartis Ins. Co. of P. R.*, 293 F.R.D. 68, 72–73 (D.P.R. 2013) ("While cost and burden are critical elements in determining accessibility, a showing of undue burden is not sufficient by itself to trigger a finding of inaccessibility.  For example, the sheer volume of data may make its production expensive, but that alone does not bring it within the scope of Rule 26(b)(2)(B).  Rather, the cost or burden must be associated with

some technological feature that inhibits accessibility.") (citing *Chen–Oster v. Goldman, Sachs & Co.,* 285 F.R.D. 294, 301 (S.D.N.Y. 2012) (footnote omitted)).

II.     ANALYSIS

FedEx has provided Plaintiffs with the GVWR data for the vehicles driven by 156 opt-ins.  Plaintiffs have moved to compel FedEx to produce their VMS data that contains the GVWR information related to the remaining 320 opt-ins' vehicles (Dkt. No. 303 at 1, 3 n.1).

A.     The Motor Carrier Act Exemption and the Technical Corrections Act Exception to the FLSA

The FLSA provides an exemption to its overtime provision, 29 U.S.C. § 207(a)(1), for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [the Motor Carrier Act "MCA"]."  29 U.S.C. § 213(b)(1).  Section 31502 of the MCA gives the Secretary of Transportation regulatory authority over "qualifications and maximum hours of service of employees of, and standards of equipment of a motor carrier[,] and . . . of a motor private carrier, when needed to promote safety of operation."  49 U.S.C. § 31502(b)(1) and (2).  However, in 2008, Congress passed the SAFETEA-LU Technical Corrections Act ("TCA"), which stated that "'[b]eginning on the date of the enactment of this Act, section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) shall apply to a covered employee *notwithstanding* [29 U.S.C. 213(b)(1))].'"  *O'Brien v. Lifestyle Transp., Inc.*, 956 F. Supp. 2d 300, 304 (D. Mass. 2013) (first alteration in original) (quoting Pub. L. 110-224, § 306(a), 122 Stat. 1572 (2008)).  Section 306 of the 2008 TCA defined "covered employee" as one who:

> (1) is employed by a motor carrier or motor private carrier;
>
> (2) whose work, in whole or in part, is defined—
>
> > (A) as that of a driver, driver's helper, loader, or mechanic; and

4

(B) as affecting the safety of operation of motor vehicles weighing 10,000
pounds or less in transportation on public highways in interstate or foreign
commerce . . . and

(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

Pub. L. No. 110-244, § 306(c), 122 Stat. 1572, 1621 (2008).  *See Botero v. Commonwealth*

*Limousine Serv. Inc.*, Civil Case No. 12-10428-NMG, 2013 WL 3929785, at *12 (D. Mass. July

25, 2013) (quoting Pub. L. No. 110–244, §§ 305–06, 122 Stat. 1572, 1620–21 (2008)).

"GVWR is the proper vehicle weight measurement to apply when determining the application of

the TCA exception to the MCA exemption to the FLSA."  *Gomez v. Loomis Armored US, LLC*,

No. 5:16-CV-931-DAE, 2017 WL 7052254, at *6 (W.D. Tex. Oct. 26, 2017), *on reconsideration*

*in part,* No. 5:16-CV-931-DAE, 2018 WL 6265114 (W.D. Tex. Aug. 17, 2018)

      B.     <u>Plaintiffs' Arguments</u>

      Noting that one of FedEx's attorneys stated that FedEx has "never argued that VMS data

is irrelevant" (Dkt. No. 303-3 at 9), Plaintiffs focused on FedEx's anticipated argument that

production of the VMS data would be unduly burdensome.  Plaintiffs indicated that FedEx

accessed GVWR information to create the list of 2,000 potential opt-ins to whom notices were

sent after the court conditionally certified a collective of similarly situated individuals who

delivered FedEx packages in Massachusetts after February 19, 2015, using vehicles weighing

less than 10,001 pounds, who were paid by ISPs, and who were not paid overtime compensation

for all hours worked over forty each week (Dkt. No. 303 at 12).  *See Roy*, 353 F. Supp. 3d at 72,

76.  It took FedEx three months to produce spreadsheets with scanner data and GVWR

information for 1,000 vehicles in *Claiborne v. FedEx Ground Package Sys., Inc. (Claiborne),*

2:18-cv-01698-RJC, 2021 WL 35633888 (W.D. Pa. Aug. 12, 2021), the case involving FLSA

claims by drivers who deliver packages for FedEx in all states except Massachusetts.  *See id.* at

*3, *19.  By extrapolation, Plaintiffs argue, it should take FedEx approximately one month to produce spreadsheets of GVWR data for one-third of that number (Dkt. No. 303 at 13 & n.12).

Plaintiffs point to the deposition testimony of Stephanie Newmont, FedEx's manager of fleet maintenance, to support their contention that FedEx's IT Services personnel can export VMS data into spreadsheets from which the requested GVWR information can be extracted. Newmont indicated that her department consulted the spreadsheets of VMS data that FedEx's IT Services personnel produced for station managers who used the spreadsheets to determine whether their vehicle inspections were up-to-date (Dkt. No. 303-5 at 3-9).  Because the scanner data and VMS data include the unique FedEx vehicle identification numbers, but the scanner data does not include the GVWR, Plaintiffs proposed a way for FedEx to use a spreadsheet computer program (VLOOKUP) to produce a list of vehicles and their GVWRs.  The program would purportedly generate the list by extracting the unique FedEx vehicle identification numbers from the scanner data spreadsheets, as Plaintiffs have done, and matching those numbers to the unique FedEx vehicle identification numbers and corresponding GVWR data from the VMS spreadsheets (Dkt. No. 303 at 13-14).[1]

In the alternative, Plaintiffs seek production of FedEx's VMS data spreadsheets that are associated with its six or seven Massachusetts terminals.  Plaintiffs would then employ VLOOKUP to identify the opt-ins' vehicles (Dkt. No. 303 at 14-15).

C.    FedEx's Opposition

FedEx asserts that "[t]he information Plaintiffs seek[] is not readily accessible either in the form of the entire VMS database, or in the form of spreadsheets somehow created and pull[ed] from the VMS database" (Dkt. No. 313 at 23).  FedEx contends that (1) Plaintiffs did

---

[1] Plaintiffs also offered to combine the scanner data with the VMS data (Dkt. No. 303 at 13 n.12).

not request the VMS data and, even if they did, it is not relevant to whether the opt-ins and

Plaintiffs are similarly situated; (2) production of the VMS data is unduly burdensome; (3)

Plaintiffs are entitled to and have received representative discovery, but they are seeking

individualized discovery; and (4) Plaintiffs' motive in seeking GVWR data is to "improperly cull

the collective" by removing opt-ins who drove vehicles with GVWRs in excess of 10,001 pounds

(Dkt. No. 313).[2]

　　　First, FedEx argues that the GVWR data is not included in Request for Production

("RFP") number 1 in Plaintiffs' First Set of Requests for Production because the VMS data does

not contain any driver information.[3]  Without driver information, the VMS data is not relevant to

whether the opt-in drivers are similarly situated.

---

[2] FedEx notes that "[w]hen Plaintiffs moved to compel FedEx . . . to produce the scanner data, they represented to the [c]ourt that they were not seeking GVWR information, and the [c]ourt granted their motion" (Dkt. No. 313 at 20).  During the e-mail discussions concerning the production of the GVWR data, FedEx's counsel indicated that "it was very pertinent to [the court's scanner data] decision that Plaintiffs were *not* requesting the GVWR information.  If they had been, [the court] likely would not have ruled the way [it] did" (Dkt. No. 303-3 at 10).  As the decision indicates, however, GVWR data was mentioned in response to FedEx's argument that Plaintiffs were requesting the GVWR information.  *See Roy,* 2022 WL 17343846, at *4 ("FedEx's claim that Plaintiffs' motion encompasses GVWR information for all opt-ins is simply inaccurate.  Plaintiffs have acknowledged that the scanner data does not include GVWR information and that they are not moving to compel production of this information.").  Plaintiffs state that they did not include the GVWR data in the August 19, 2022 motion to compel the scanner data because the conferral process concerning the GVWR data was ongoing as evidenced by the emails that spanned the period from September 22, 2022 to February 23, 2023 (Dkt. Nos. 303-2 & 303-3; Dkt. No. 320 at 10 & n.10).

[3] RFP number 1 requested:

　　　Any and all documents related to Plaintiffs and each opt in, including but not limited to . . . delivery vehicle(s) driven . . . any other electronically stored information, and any communications sent by, received by, or otherwise in Defendant's possession, custody, or control, identifying the Plaintiff or opt-in and/or the ISPs through which the Plaintiff or opt-in performed delivery services for Defendant.  These documents should be organized by Plaintiff or opt-in.

Second, FedEx asserts that Plaintiffs' request is unduly burdensome because the VMS database includes information on more than 300,000 pieces of company-owned and ISP-owned equipment, including vehicles, and contains "massive amounts of data" that is not readily accessible in a usable format (Dkt. No. 313 at 13-14, 21). However, FedEx does not dispute Newmont's assertion that FedEx's IT Solutions personnel can extract VMS data and produce and print spreadsheets and lists of VMS data, including GVWR information (Dkt. No. 303-5 at 4-9; Dkt. No. 313 at 22; Dkt. No. 313-6 at 8-16). Other FedEx employees can extract GVWR information by inputting a vehicle identification number into the VMS database and pulling up a screen shot of the vehicle's information that is supposed to, but may not, include the vehicle's GVWR (Dkt. No. 303-6 ¶¶ 11-12, 14; Dkt. No. 313 at 21; Dkt. No. 313-2 at 7, 11). FedEx utilized the services of "a [third-party] vendor" to search the VMS database in that manner to compile the list of 2,000 potential opt-ins who were provided notice in 2019 and to provide the GVWR information for the 156 opt-ins (Dkt. No. 313 at 21; Dkt. No. 313-2 at 7-8; Dkt. No. 313-6 at 8; Dkt. No. 313-7 ¶¶ 8, 9). FedEx disagrees with Plaintiffs' assessment that it would take one month for a vendor to obtain the GVWR for more than 300 opt-ins using that method. Even if that estimate is accurate, FedEx relies on the declaration of a senior paralegal to argue that it would be required to incur costs and disruption for vetting, engaging, training, and setting up additional vendors (Dkt. No. 303-6; Dkt. No. 313 at 21).

FedEx further contends that Plaintiffs' alternative request for the Massachusetts stations' spreadsheets also poses an undue burden because it would involve recovering spreadsheets "used by dozens of station managers over dozens of different locations in Massachusetts over the last

---

(Dkt. No. 303-1 at 3-4).

eight years."  Even if FedEx could obtain the spreadsheets, it contends that they may only

contain vehicle inspection information and may not include GVWR data (Dkt. No. 313 at 22).

Third, FedEx repeats its complaint that Plaintiffs' request for GVWR data for all opt-ins

is another request for individualized discovery.  FedEx attempts to distinguish this case from

*Claiborne* where FedEx ultimately produced the GVWR data for about 10% of the collective.

*See Claiborne,* 2021 WL 3563388, at *19.  In contrast, FedEx argues that it has provided

Plaintiffs with the GVWR data for more than 30% of the collective (Dkt. No. 313 at 23-24).

Finally, FedEx alleges that Plaintiffs' discovery request should be denied to prevent them

from using the GVWR data to support the dismissal of opt-ins who stated that they drove

vehicles with GVWRs of less than 10,001 pounds when they consented to join the collective but

who actually drove vehicles with GVWRs in excess of 10,001 pounds.  In arguing that discovery

cannot be used to "cull a collective down to only 'similarly situated' plaintiffs," FedEx contends

that Plaintiffs' reliance on *Swenson v. Mobilityless*, *LLC,* Civil Case No. 3:19-30168-MGM, 2022

WL 2347113, at *2 (D. Mass. June 29, 2022), for the position that discovery can be used to

define a potential class is misplaced because *Swenson* addressed a class action, which is

distinguishable from an FLSA collective action (Dkt. No. 313 at 24-25).

D.    Plaintiffs' Response

Plaintiffs disagree with FedEx's argument that RFP number 1, which requested

documents related to drivers' delivery vehicles, did not encompass a request for the GVWR data.

The scanner data includes the driver's information and the unique FedEx identification number

for the driver's vehicle.  The VMS data contains the unique FedEx identification number and the

GVWR for each vehicle.  Therefore, Plaintiffs assert, the scanner data and the VMS data, in

combination, identify the GVWR for a driver's vehicle and fall squarely within RFP number 1's

request (Dkt. No. 303-3 at 11 ¶ 1, 12; Dkt. No. 320 at 4).  To the extent RFP number 1 does not encompass the GVWR data, Plaintiffs suggest that requests for production should not be read in a hypertechnical manner (Dkt. No. 320 at 11-12).

In view of the undisputed evidence that FedEx's IT Solutions personnel can export VMS data into spreadsheets, Plaintiffs respond to FedEx's assertion that a spreadsheet with the GVWR information for 320 opt-ins is not readily accessible by pointing to the absence of a declaration from IT Solutions personnel stating that the production of the information would be unduly burdensome (Dkt. No. 320 at 6-7 & nn.4 & 5).  Instead, FedEx relied on the declaration of counsel, the declaration and deposition testimony of Susan Kernan, a senior paralegal, and the deposition testimony of Newmont, FedEx's manager of fleet maintenance (Dkt. No. 313-2; Dkt. No. 313-6; Dkt. No. 313-7).  Plaintiffs also note that although an outside litigation discovery vendor, which received a direct feed of VMS data from FedEx, provided FedEx's counsel with the number of unique equipment numbers in the VMS database, FedEx "did not submit a declaration from this vendor explaining whether it would be time consuming to isolate the 2,555 unique vehicles driven by the opt-ins during the claims period using FedEx's Vehicle ID numbers" (Dkt. No. 320 at 9).  In addition, Plaintiffs contend that FedEx repeatedly argued that it was too difficult to "print" spreadsheets when Plaintiffs did not request printed spreadsheets (Dkt. No. 320 at 8).

Finally, Plaintiffs contend that FedEx's arguments concerning final certification of the collective are premature.  Plaintiffs claim that FedEx is attempting to withhold information that bears on whether the opts-in are similarly situated, which is the standard that plaintiffs must meet for final certification of the collective (Dkt. No. 320 at 12-14).  *See Dyse v. HealthAll*

*Consulting,* 433 F. Supp. 3d 35, 38 (D. Mass. 2020) (citing *Trezvant v. Fid. Emp'r Servs. Corp.,* 434 F. Supp. 2d 40, 43 (D. Mass. 2006)).

      E.    <u>Analysis</u>

      Plaintiffs' request for the drivers' delivery vehicles' GVWR data may be encompassed within their RFP number 1 either specifically or by implication for the reasons asserted by Plaintiffs.  *See* 8B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2211 (3d ed. 2004) ("[R]equests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under subdivision (a) [of Rule 37].") (alterations in original) (citation omitted).

      In *Claiborne,* Judge Colville found that the GVWR data was relevant to whether the Plaintiffs are "'covered employees'" under the TCA who must be compensated for overtime if they work more than forty hours per week.  *Claiborne,* 2021 WL 3563388, at *18.  As to FedEx's claim that production of the GVWR information was disproportional to the needs of the case and unduly burdensome, Judge Colville stated:

> FedEx does not dispute that it has access to the GVWR information, and FedEx is clearly the party with access to more resources in this FLSA collective action.  Further, FedEx is a single source for this information, as opposed to Plaintiffs' counsel being required to reach out to each of the individual collective members, who are further unlikely to be able to produce information in a format comparable to what FedEx can produce.  FedEx does not argue that the GVWR information at issue would not prove important and/or beneficial to Plaintiffs in the instant action, and the benefit and/or importance is especially clear here, where FedEx has represented that it intends to use such information to argue against final certification.

*Id.* at *19.  Judge Colville denied the plaintiffs' request for GVWR data for all 30,000 members of the collective, but ordered FedEx to produce any GVWR information it had already accessed or generated, GVWR information for all discovery opt-ins, any GVWR information FedEx

accesses or generates in the future for a named plaintiff or opt-in, and GVWR data for an additional 1,000 opt-ins of the plaintiffs' choice. *Id.*

I agree with Judge Colville that the GVWR data is relevant and that its production does not unduly burden FedEx. It is anticipated that FedEx will use GVWR data in the instant case to support its claim for decertification of those who drove trucks weighing more than 10,001 pounds. *See Scalia v. Beleco, Inc.*, 549 F. Supp. 3d 208, 216 (D. Mass. 2021) ("'[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof'") (alteration in original) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)). "It is well-established that Plaintiffs are entitled to production of documents related to a defendant's affirmative defenses . . . ." *Swenson,* 2022 WL 2347113, at *5 (citing *Britton v. Marcus, Errico, Emmer & Brooks, P.C.*, Civil Action No. 18-cv-11288-IT, 2021 WL 3604841, at *4 (D. Mass. Aug. 13, 2021); *Papkee v. MECAP, LLC*, No. 2:20-cv-00006-DBH, 2021 WL 1164770, at *4 (D. Me. Mar. 26, 2021)). With no declaration(s) from FedEx's IT Solutions personnel, FedEx has not sustained its burden of establishing that production of the GVWR data for the remaining opt-ins is unduly burdensome. *See Katz v. Liberty Power Corp., LLC*, Civil Action No. 18-cv-10506-ADB, 2020 WL 3492469, at *5 (D. Mass. June 26, 2020) ("the party resisting discovery must show specifically how each [request for production] is not relevant or how each question is overly broad, burdensome or oppressive.") (alteration in original) (citing *Brenford Envtl. Sys., L.P. v. Pipeliners of P. R., Inc.,* 269 F.R.D. 143, 147 (D.P.R. 2010) (citations and internal quotation marks omitted)). As to FedEx's contention that Plaintiffs will use the GVWR data to remove dissimilar drivers from the collective, the potential use of discovery material is not a basis to deny an otherwise valid request. *See* Fed. R. Civ. P. 26(b)(2)(C).

For those reasons and in order to maintain consistency between the parties in *Claiborne* and in the instant case, FedEx is directed to produce the GVWR data for the opt-ins for whom the data has not been produced.

IV.    CONCLUSION

For the above-stated reasons, the court grants Plaintiffs' Motion to Compel Vehicle Management System (VMS) Data (Dkt. No. 303) for the opt-in plaintiffs for whom the GVWR data has not been produced.  FedEx is directed to produce the material within thirty days of this order unless the parties agree to a different timeframe.

It is so ordered.

Dated:  May 22, 2023                                  /s/ Katherine A. Robertson
                                                             KATHERINE A. ROBERTSON
                                                             United States Magistrate Judge