UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:17-cv-30116-KAR |
| FEDEX GROUND PACKAGE SYSTEMS, INC., | ) ) ) ) | |
| Defendant. | | |

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL FEDEX'S
PRODUCTION OF DOCUMENTS
(Dkt. No. 298)

ROBERTSON, U.S.M.J.

Before the court is Jordan Roy's and Justin Turnbull's (collectively, "Plaintiffs") motion to compel Defendant FedEx Ground Package Systems, Inc. ("FedEx") to produce documents (Dkt. No. 298).  FedEx has opposed Plaintiffs' motion (Dkt. No. 309), and Plaintiffs have responded (Dkt. Nos. 319).  For the reasons that follow, the Plaintiffs' motion is granted in part and denied, in part, without prejudice.

I.    BACKGROUND

Familiarity with the basic facts of the case is assumed.  In August 2017, Plaintiffs, acting on behalf of themselves and other similarly situated persons, who claim they were jointly employed by FedEx and Independent Service Providers ("ISPs"), brought a single claim against FedEx for unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA") (Dkt. No. 1).  *See Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 51-52 (D. Mass. 2018).  The court conditionally certified a collective of similarly situated individuals who delivered FedEx's

packages in Massachusetts after February 19, 2015, using vehicles with gross weights of less

than 10,001 pounds, who were paid by the ISPs to perform delivery services on FedEx's behalf,

and who were not paid overtime compensation for all hours worked over forty each week.  *See*

*id.* at 72.  Notices were issued to potential members of the proposed collective. *See id.* at 76.

Approximately 554 opt-in plaintiffs submitted consent forms affirming that they drove a vehicle

with a gross vehicle weight rating ("GVWR") under 10,001 pounds, worked more than forty

hours a week, and, "to the best of [their] knowledge," were not paid overtime for the hours that

exceeded forty hours in a week (Dkt. Nos. 85-1, 85-91, 96, 97).  According to FedEx, there are

presently 483 opt-in plaintiffs (Dkt. No. 259 at 12).

    II.    LEGAL STANDARD

    Fed. R. Civ. P. 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> >
> > (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

"On a motion to compel, '[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance.'" *Controlled Kinematics, Inc. v. Novanta Corp.*, Civil Action No. 17-cv-11029-ADB, 2019 WL 3082354, at *2 (D. Mass. July 15, 2019) (alteration in original) (quoting *Johansen v. Liberty Mut. Grp., Inc.*, Civil Action No. 15-cv-12920-ADB, 2017 WL 6045419, at *1 (D. Mass. Dec. 6, 2017)). "At the discovery stage, relevance should be 'broadly construed,' and information should be deemed 'discoverable if there is any possibility it might be relevant to the subject matter of the action.'" *Nosalek v. MLS Prop. Info. Network, Inc.*, CIVIL ACTION NO. 20-12244-PBS, 2022 WL 4815961, at *4 (D. Mass. Oct. 3, 2022) (quoting *Cherkaoui v. City of Quincy*, Civil Action No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015)). "'[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), *modified on reconsideration,* 160 F. Supp. 3d 431 (D. Mass. 2016) (citation omitted). Then, "[o]nce a showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper." *Controlled Kinematics*, 2019 WL 3082354, at *2.

III.   ANALYSIS

Plaintiffs have moved to compel FedEx to produce the following material that Plaintiffs requested in their Second and Third Sets of Requests for Production:  (1) FedEx's "Electronic Compliance Assessment Overview" (Handbook); (2)  FedEx's policy documents; (3) FedEx's contracts with First Advantage; (4) driver disqualification documents; (5) compliance documents; and (6) badge swipe data.  In *Claiborne v. FedEx Ground Package Sys., Inc.*

*(Claiborne),* 2:18-cv-01698-RJC, 2022 WL 4537003 (W.D. Pa. Sept. 28, 2022), the case involving drivers who deliver packages for FedEx in all states except Massachusetts, Judge Colville directed FedEx to produce the documents in the first five categories to the plaintiffs' attorneys, who also represent Plaintiffs in the instant case.  *See id.* at *7-10; *see also Claiborne v. FedEx Ground Package Sys., Inc.,* 2:18-cv-01698-RJC, 2021 WL 3563388, at *3 (W.D. Pa. Aug. 12, 2021).  Plaintiffs allege that because FedEx designated the material that it produced in *Claiborne* as "confidential," FedEx takes the position that Plaintiffs' attorneys cannot use those materials in the Massachusetts litigation (Dkt. No. 298 at 2-3; Dkt. No. 319 at 2-3 & n.3).

Plaintiffs argue that, with the exception of the badge swipe data, the materials they seek are relevant to showing that FedEx was liable for a violation of the FLSA because it was the drivers' joint employer.  "The basic elements of a FLSA claim are that (1) plaintiffs must be employed by the defendants; (2) the work involved interstate activity; and . . . (3) plaintiffs 'performed work for which they were under-compensated.'"  *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) (quoting *Pruell v. Caritas Christi,* 678 F.3d 10, 12 (1st Cir. 2012)).  "The FLSA's definitions of 'employee,' 'employer,' and 'employ' are broad, and 'comprehensive enough to require [their] application to many persons and working relationships' that were not considered employment at common law." *Bah v. Enter. Rent-A-Car Co. of Boston, LLC*, C.A. No. 17-12542-MLW, 2020 WL 6701324, at *7 (D. Mass. Nov. 13, 2020) (alteration in original) (citation omitted).  "Therefore, while at common law an employer was the entity that directly employed an individual, '[t]wo or more employers may jointly employ someone for purposes of the FLSA.'" *Id.* (alteration in original) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528 (1985)).  In determining whether a defendant was a

joint employer, "the court look[s] in particular to four factors:  whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Baystate Alternative Staffing, Inc. v. Herman (Baystate)*, 163 F.3d 668, 675 (1st Cir. 1998).

For its part, FedEx lodges four general objections to Plaintiffs' requests.  First, FedEx contends that this case is distinguishable from *Claiborne* because Plaintiffs' motion was filed within weeks of FedEx's April 7, 2023 deadline to file its decertification motion (Dkt. No. 309 at 8, 15).[1]  The scheduling order set February 28, 2023 as the deadline to complete discovery (Dkt. No. 276).  Plaintiffs filed their motion on February 22, 2023 (Dkt. No. 298).  Second, FedEx objects to Plaintiffs' requests on the ground of relevance.  FedEx argues that the only relevant evidence is that which bears on the question of certification or decertification of the collective.  That inquiry involves a determination of whether or not the opt-ins and Plaintiffs are similarly situated (Dkt. No. 309 at 10, 14).  *See Dyse v. HealthAll Consulting,* 433 F. Supp. 3d 35, 38 (D. Mass. 2020) (citing *Trezvant v. Fid. Emp'r Servs. Corp.,* 434 F. Supp. 2d 40, 43 (D. Mass. 2006)).  Third, FedEx contests the scope of Plaintiffs' requests.  FedEx contends that plaintiffs in an FLSA action are entitled to discovery for a representative sample of opt-ins, not individualized discovery for all opt-ins.  FedEx characterizes Plaintiffs' requests for what amounts to individualized discovery as being overbroad, burdensome, and disproportional to the needs of the case (Dkt. No. 309 at 10-11).  Finally, FedEx argues that Plaintiffs' requests for additional information concerning the relationship between FedEx and the ISPs is duplicative of material that it has already produced (Dkt. No. 309 at 16-18).

---

[1] That deadline subsequently was extended to June 16, 2023 (Dkt. Nos. 311, 323).

The issues raised in the instant case are substantially similar to those raised in *Claiborne*. With the exception of the badge swipe data, FedEx has produced the requested documents to the *Claiborne* plaintiffs.  In order to maintain parity between the two cases, Plaintiffs in the instant case and the *Claiborne* plaintiffs should have access to the same information.

A.      FedEx's Handbook ("Electronic Assessment Overview")

Plaintiffs' Request for Production (RFP) number 7 in their Second Set of Requests for Production asked FedEx to produce:  "[a]ll policies, procedures, handbooks, rules, processes, guidelines, templates, and/or instructions pertaining to the manner in which FedEx employees conducted Compliance Analyses, including Wage and Hour Assessments, of Independent Service Providers [ISPs] . . . during the relevant period, including . . . the handbook pertaining to compliance assessments and wage and hour assessments that Erica Bacon testified about during her deposition" (Dkt. No. 298-2 at 13).

1.      Plaintiffs' Argument

Plaintiffs seek a ruling permitting them to use the Handbook that was produced in *Claiborne* (Dkt. No. 319 at 3).  Plaintiffs argue that the Handbook is relevant to showing that FedEx "maintained employment records" and "determined the rate and method of payment" of the drivers under the *Baystate* joint employment test.  The agreements between FedEx and the ISPs ("ISP Agreements") require the ISPs to pay drivers overtime and maintain proper time and payroll records.  The Handbook describes the uniform methods FedEx's employees should use to assess an ISP's compliance with the terms of the ISP Agreement concerning overtime and recordkeeping, report the outcome of the assessment, and conduct any follow-up, including Business Discussions, Opportunities to Cure, or termination of the ISP Agreement for failure to comply with the terms concerning wages and record keeping (Dkt. No. 298 at 5-6).

6

2.      FedEx's Objections

As it did in *Claiborne*, FedEx contends that the Handbook is not relevant to decertification, and even if the joint employment relationship was relevant at this stage, FedEx's access to the ISPs' wage and hour documents is not evidence of a joint employment relationship. In addition, FedEx relies on its assertion that the requested information is cumulative of the information that it has produced:  over 400 pages of non-privileged portions of compliance assessments for the time periods the ISPs employed discovery opt-ins; over 600 pages of annual compliance certifications from the ISPs; the ISP Agreements that detail what FedEx Ground can assess and in what form; and an almost seven hour deposition of a witness from the Legal Compliance department (Dkt. No. 309 at 26-27 & n.10).  Plaintiffs' reply includes an affidavit from the Managing Attorney of FedEx's Legal Compliance and Ethics Group, Dianna Karg, which describes the alleged uniform manner in which the group members conduct random and targeted assessments of the ISPs (Dkt. No. 319-1 ¶¶ 2, 6-9).[2]

3.      Analysis

There is authority for considering a defendant's uniform policies and practices when analyzing its status as a joint employer at the decertification stage of the FLSA litigation.  *See Harris v. Med. Transp. Mgmt., Inc.,* Case No. 17-cv-01371 (APM), 2021 WL 3472381, at *5 (D.D.C. Aug. 6, 2021), *appeal docketed,* No. 22-7033 (D.C. Cir. Mar. 28, 2022) (in a decertification action where the court considered whether the defendant was a joint employer, it found that the defendant's role would "likely . . . be defined by policies and practices that are

---

[2] FedEx submitted Karg's affidavit in *Claiborne* to support its position that redacted portions of the Handbook were protected by the attorney-client privilege and/or the work product doctrine (Dkt. No. 319 at 4 n.6).

broadly applicable to all [transportation service providers], and thus subject to a common defense"); *see also Roy,* 353 F. Supp. 3d at 69 (the joint employment question is better addressed at the decertification stage) (citing *Ward v. Express Messenger Sys., Inc.,* Civil Action No. 17-cv-02005-NYW, 2018 WL 1604622, at *5 (D. Colo. Apr. 3, 2018)).

In *Claiborne*, Judge Colville overruled FedEx's objections to production of the Handbook and found that

> [the] internal FedEx documents . . . may lead to the discovery of evidence relevant to the question of whether common evidence can be used to prove the *Enterprise* [joint employment] factors.  FedEx has offered minimal argument as to the burden that would be imposed by being required to produce its own internal policies.  While the information sought may be cumulative to an extent, the Court is inclined to require the production of the internal FedEx documents at this juncture, subject to any privilege objections raised by FedEx, and properly identified and described in a privilege log.

*Claiborne,* 2022 WL 4537003, at *10.  *See also Thomas & Betts Corp. v. New Albertson's, Inc.*, Civil Action No. 10-11947-DPW, 2013 WL 11331377, at *5 (D. Mass. July 11, 2013) ("'[t]he various methods of discovery [including depositions, interrogatories and requests for production] as provided for in the Rules are clearly intended to be cumulative, as opposed to alternative or mutually exclusive.'") (alterations in original) (quoting *Starlight Int'l, Inc. v. Herlihy,* 186 F.R.D. 626, 641 (D. Kan. 1999)).  There is no dispute that although Judge Colville's decision did not specifically address the plaintiffs' request for the Handbook, it was included as one of the many "policies" that the plaintiffs sought to compel FedEx to produce and it was included within the judge's order (Dkt. No. 298 at 7 n.4).

The court agrees with Judge Colville's analysis and grants Plaintiffs' motion to compel production of the Handbook.

B.     FedEx's Policy Documents

Plaintiffs' RFP numbers 8, 9, 12, 17, 18, 19, 20, 21, 22, 23, 24, and 25 in their Second Set of Requests for Production asked FedEx to produce specific policies that Plaintiffs described in a chart in their motion (Dkt. No. 298 at 8-10).  Plaintiffs assert that FedEx produced these policies in *Claiborne* on October 28, 2022 (Dkt. No. 319 at 5).

1.      Plaintiffs' Argument

Plaintiffs state that FedEx has produced a "small number" of the requested policies, but refused to produce the majority of them (Dkt. No. 298 at 11 n.7; Dkt. No. 298-2 at 25).  Plaintiffs contend that the policies they seek are relevant to showing the *Baystate* joint employment factors.  For example, Plaintiffs allege that FedEx controlled drivers' job performance, the conditions under which they could be discharged, and their rates of pay through the policies governing FedEx's relationship with the ISPs (Dkt. No. 298 at 8-10).

2.      FedEx's Objections

First, FedEx argues that Plaintiffs' requests are "overbroad and excessive" and not relevant because they seek "every document relating in any way to FedEx's interactions *with Service Providers*, not drivers" (Dkt. No. 309 at 18-19) (emphasis supplied).

FedEx responds with a chart that cites authority for its substantive legal argument that the requested policies are not evidence of FedEx's status as a joint employer.  In addition, FedEx's chart contends that Plaintiffs' requests are duplicative and cumulative of the discovery it has already produced (Dkt. No. 309-1 at 2-7; Dkt. No. 309-2 [listing 103 policies FedEx allegedly has produced]).  For example, as to Plaintiffs' RFP number 22, which seeks FedEx's policies relating to the work performed by drivers, FedEx claims that it has provided ISP Agreements and schedules, Business Discussion records related to discovery opt-ins, deposition testimony describing FedEx's relationship with the ISPs, and some of the policies that are included in

9

Plaintiffs' request (Dkt. No. 309-1 at 6).  FedEx does not argue that production of the policies that it has produced in *Claiborne* is unduly burdensome.

In response, Plaintiffs contend that the policies are not duplicative of deposition testimony concerning the specific contents of the policies because Plaintiffs did not have the policies to present to witnesses.  In addition, Plaintiffs contend that "at least 20 of the documents [on FedEx's list of 103 policies] describe exactly or essentially the same policies" (Dkt. No. 319 at 6 & n.9).

       3.     Analysis

As to FedEx's overbreadth objection, Plaintiffs' chart identifies the specific policies they seek.  As to FedEx's other objections, it does not claim that it advanced different arguments in *Claiborne.*  For the reasons discussed concerning the Handbook, Judge Colville granted the plaintiffs' motion to compel the requested policies subject to any privilege objections raised by FedEx.  *See Claiborne,* 2022 WL 4537003, at *10; *see also Harris,* 2021 WL 3472381, at *5; *Thomas & Betts Corp.,* 2013 WL 11331377, at *5.  This court grants Plaintiffs' motion to compel the requested policies for the same reasons.

       C.     <u>The First Advantage Contract</u>

Plaintiffs' RFP number 1 in their Third Set of Requests for Production of Documents asked FedEx to produce the same First Advantage contract that FedEx was compelled to produce in *Claiborne* (Dkt. No. 298-3 at 9; Dkt. No. 319 at 7).

       1.     Plaintiffs' Argument

"First Advantage . . . is purportedly a third-party vendor that FedEx utilizes to screen drivers desiring to work for FedEx and its Service Providers . . . ."  *Claiborne,* 2022 WL 4537003, at *7.  Plaintiffs assert that because the contract establishes the procedures that First

Advantage must follow and details uniform qualifications that apply to all FedEx drivers in the United States, it is relevant to FedEx's status as a joint employer (Dkt. No. 298 at 12-13).

>    2.    FedEx's Objections

As it did in *Claiborne*, FedEx argues that its contract with First Advantage is not relevant to joint employment because the drivers worked for the ISPs.  In addition, FedEx contends that the contract is duplicative of the First Advantage reports that it has produced for the discovery opt-ins (Dkt. No. 309 at 25).  *See Claiborne,* 2022 WL 4537003, at *8.

>    3.    Analysis

In *Claiborne,* the plaintiffs requested the First Advantage contracts and e-mail messages between First Advantage and FedEx.  *See id.*  In granting the plaintiffs' motion to compel the production of the contracts, Judge Colville found that "the contracts between FedEx and First Advantage could possibly lead to the discovery of evidence relevant to the question of whether common evidence can be used to prove the [*Baystate*] factors, and specifically with respect to FedEx's purported authority to hire."  *Id.*  The judge noted that FedEx's relevance objection was premature.  *Id.*  The plaintiffs' request for e-mail messages was denied.  *See id.*  Plaintiffs have not requested e-mail messages in the instant case.

Because the First Advantage contract may bear on FedEx's status as a joint employer, Plaintiffs' motion to compel production of the First Advantage contract is granted.

>    D.    Driver Disqualification Documents

Plaintiffs' Third Set of Requests for Production of Documents asked FedEx to produce Driver Disqualification Documentation.  Specifically, Plaintiffs requested the same documents that Judge Colville ordered FedEx to produce in *Claiborne*:  (1) all letters notifying a driver or ISP that the driver was disqualified (RFP number 2); (2) all Disqualification Event Forms (RFP

number 2); (3) all Business Discussion Records (RFP numbers 3 and 4); and (4) all documents concerning FedEx's RESOLVE process (RFP number 5) (Dkt. No. 298-3 at 10-14; Dkt. No. 319 at 7-8).  *See Claiborne*, 2022 WL 4537003, at *8.

        1.      Plaintiffs' Argument

Plaintiffs allege that once FedEx disqualifies a driver, that driver is prohibited from driving for FedEx throughout the United States.  "The first set of letters sought by Plaintiffs are purportedly those that are sent to drivers and Service Providers notifying them that FedEx has made a determination that a particular driver has been disqualified from driving for FedEx" (Dkt. No. 298-3 at 10).  *Claiborne,* 2022 WL 4537003 at *8.  Plaintiffs describe Disqualification Event Forms as "'standardized forms that FedEx issues pursuant to FedEx procedure reflecting why a driver's employment is being terminated.'"  *Id.*  Business discussion records are standardized documents, issued pursuant to FedEx's procedure, that purportedly involve conversations between FedEx and ISPs concerning the ISP's failure to follow FedEx's policies and procedures including the disqualification of drivers (Dkt. No. 298 at 14-15).  *See id.*  "[T]he RESOLVE process is purportedly utilized by FedEx to allow Service Providers to dispute FedEx's disqualification of a driver."  *Id.*

Plaintiffs contend that the requested documents are relevant to the joint employment analysis because they demonstrate that FedEx "has the 'power to [] fire drivers' (*Baystate* factor 1) and that FedEx supervised and controlled . . . conditions of employment' (*Baystate* factor 2)." Plaintiffs add that although they are seeking FedEx's "uniform policies and contractual agreements in arguing the common evidence can determine whether FedEx is a joint employer . . . . [they] will also likely rely upon standardized documents . . . to demonstrate how FedEx's

policies are actually implemented in a uniform manner" (Dkt. No. 298 at 15) (alterations in original).

        2.     FedEx's Objections

FedEx asserts that because the requested documents concern its compliance with DOT regulations, they are not evidence of joint employment as a matter of law (Dkt. No. 309 at 22). FedEx further indicates that it has produced the letters (RFP number 2), Disqualification Event Forms (RFP number 2), the Business Discussion Records (RFP number 3) for the named Plaintiffs and the discovery opt-ins, and "[a]ll 'Business Discussion Records,' including all attachments, concerning or pertaining to any [ISP] since February 19, 2015" (RFP number 4). (Dkt. No. 298-3 at 10, 12). FedEx objects to the production of additional documents on the ground that it would be duplicative of "substantial discovery" -- the ISP Agreements, the opt-in discovery, and deposition testimony covering those topics -- that it has already produced (Dkt. No. 309 at 22).

Plaintiffs respond that FedEx has produced "a few" examples of the forms that it completed and issued: 3 letters notifying an ISP that a driver has been disqualified; 2 Disqualification Event Forms; 85 Business Discussion Records; and 0 documents showing an ISP using the RESOLVE process. They further assert that some forms (i.e. Disqualification Event Forms) will not apply to every opt-in. In response to FedEx's argument that it is not a joint employer because it merely complies with DOT regulations when it disqualifies drivers, Plaintiffs distinguished the cases upon which FedEx relied by contending that the joint employment relationship is a fact-based inquiry and FedEx's disqualifications of drivers went beyond compliance with DOT regulations (Dkt. No. 319 at 8-9 & n.14).

        3.     Analysis

Finding that "the 'driver disqualification documents' may lead to the discovery of relevant evidence respecting the joint employer inquiry, and FedEx has already produced such information with respect to 57 pre-notice opt-ins," Judge Colville ordered FedEx to produce the driver disqualification material for 100 additional opt-ins, selected by the plaintiffs, who returned questionnaires and were not the subject of the plaintiffs' motion to dismiss. *Claiborne,* 2022 WL 4537003 at *9. Judge Colville's reasoning is sound. FedEx is directed to produce the requested driver disqualification letters, disqualification event forms, and RESOLVE documents for all opt-in plaintiffs for whom FedEx has not yet provided that information. As to its business discussion records, FedEx is directed to produce any additional responsive documents that it has not already produced.

E.     Compliance Documents

RFP numbers 6 and 7 in Plaintiffs' Third Set of Requests for Production asked FedEx to produce the following documents concerning or pertaining to any ISP since February 19, 2015: all Compliance Investigation Reports/Compliance Analyses; Notices of Compliance Concern; Notices of Opportunity to Cure; and letters, memoranda, and other documents informing ISPs of the termination of their contracts. Plaintiffs' requests included the Bates-numbered documents that FedEx produced in *Claiborne* (Dkt. No. 298 at 16-17; Dkt. No. 298-3 at 14-15, 17).

1.     Plaintiffs' Argument

The Compliance Documents include standardized reports of the outcome of FedEx's assessments of the ISPs' payment of overtime and compliance with wage and hour record keeping requirements, FedEx's letters to the ISPs notifying them of its findings, correspondence from FedEx to the ISPs informing them of the deadline by which that they must correct the deficiencies disclosed by the assessments, and FedEx's letters to the ISPs explaining the reasons

for terminating their ISP Agreements (Dkt. No. 298 at 16-18).  *See Claiborne,* 2022 WL 4537003, at *9 (describing the compliance documents).  Plaintiffs argue that the compliance documents are relevant to the *Baystate* joint employment analysis because they show that FedEx determined the drivers' rate and method of payments and maintained employment records (Dkt. No. 298 at 18).

        2.       FedEx's Objections

FedEx's opposition to Plaintiffs' motion to compel does not specifically address the compliance documents but appears to rely on its general objections that the business-to-business interactions between FedEx and the ISPs are not relevant to the relationship between FedEx and the opt-in drivers and that Plaintiffs' request is overbroad, unduly burdensome, duplicative, and cumulative of material that it has produced (Dkt. No. 309 at 10-11, 16-18, 26-27).   Plaintiffs respond that FedEx has produced 3 Compliance Investigation Reports (and 0 documents labelled Compliance Analyses), 2 Notices of Compliance Concern, 15 notices of Opportunity to Cure, and 0 letters/memoranda informing ISPs of the termination of their contract (Dkt. No. 319 at 10).

        3.       Analysis

In response to FedEx's objection as to relevance, Judge Colville found that "the documents sought by Plaintiffs may lead to the discovery of some relevant evidence as to the relationship between FedEx, Service Providers, and drivers that may ultimately be relevant as to whether the Plaintiffs can prove that they are similarly situated and that FedEx is their joint employer." *Claiborne,* 2022 WL 4537003, at *10. Judge Colville compelled FedEx to produce the "'compliance documents,' as defined in the Motion to Compel Documents, pertaining to the [ISPs] who paid the 100 individuals selected by Plaintiffs for the 'driver disqualification

documents.'"  *Id.*  To the extent FedEx claimed that a document was privileged, it was directed to provide a privilege log.  *See id.*

I agree with Judge Colville's analysis of the relevance of the compliance documents and FedEx has not sustained its burden of showing that production of the documents will be unduly burdensome.  To the extent that FedEx has not produced the "compliance documents," as they are described in Plaintiffs' motion, pertaining to any ISPs who paid the opt-in plaintiffs, they are directed to produce those documents.  FedEx is directed to provide a privilege log for any documents for which it claims a privilege.

      F.    <u>Badge Swipe Data</u>

Plaintiffs' RFP number 9 in their Third Set of Requests for Production asked FedEx to produce "[a]ll documents and/or data concerning or pertaining to the time and/or location of each Plaintiff's activities during the period between his/her arrival at the FedEx terminal/station/hub ("FedEx terminal") and his/her departure from the FedEx terminal during the Relevant Period, including but not limited to the times that each Plaintiff:  (i) swiped, scanned or otherwise used their badge at the FedEx terminal; (ii) entered the FedEx terminal; (iii) left the FedEx terminal; and (iv) passed through any security screening process or device within the FedEx terminal" (hereinafter, "badge swipe data") (Dkt. No. 298-3 at 19).

      1.    Plaintiffs' Argument

When an ISP wants a newly hired driver to have access to a FedEx terminal, the driver is provided with a badge and assigned an identification number (Dkt. No. 309-3 ¶ 4).  The badge's proximity number is linked to the driver's identification number (Dkt. No. 309-3 ¶ 4).  The driver is supposed to swipe his or her badge each time he or she enters and exits a FedEx terminal (Dkt.

No. 309-3 ¶ 5).  There is no dispute that FedEx's access control system records the dates and times of the scans (Dkt. No. 309-3 ¶ 3).

Plaintiffs claim that FedEx violated the FLSA by not paying drivers overtime compensation for all the hours they worked each week in excess of forty.  Relying on deposition testimony, Plaintiffs contend that because drivers do not log into their scanners until after they enter the terminal, there may be a variance between the time they enter or exit the terminal and the time reflected on their scanners.  Plaintiffs allege that the badge swipe data has the potential to be a more accurate indicator of an opt-in driver's work hours.  Plaintiffs seek to use the badge swipe data, along with the scanner data, "to analyze the hours worked by opt-ins using a common methodology" to show the opt-in drivers' work hours.  That information is relevant to whether they were paid overtime for hours worked in excess of forty hours a week (Dkt. No. 298 at 19-20).

### 2.   FedEx's Objections

FedEx raises three objections to Plaintiffs' request for production of the badge swipe data: (1) the badge swipe data is not relevant to whether the opt-ins are similarly situated because FedEx uses it to maintain secure terminals and the data does not provide accurate and reliable information about the hours the opt-ins worked; (2) by requesting the scanner data and the badge swipe data, Plaintiffs are seeking individualized discovery for all opt-ins; and (3) the badge swipe data is not readily accessible because it is unduly burdensome to produce (Dkt. No. 309 at 11-15).

First, as to relevance, FedEx does not deny that the badge swipe data recorded the times that the drivers entered and exited the terminals.  However, FedEx contends that it does not use the data as a "time-keeping mechanism."  Rather, it uses the badge swipe data to prevent

unauthorized individuals from entering the terminals where "thousands of customer packages" are located (Dkt. No. 309 at 12; Dkt. No. 309-3 ¶ 3).  Relying on instances when drivers may not scan their badges when entering or exiting a facility, FedEx asserts that the badge swipe data's lack of reliability also makes it irrelevant (Dkt. No. 309 at 12; Dkt. No. 309-3 ¶ 5).

Second, FedEx argues that Plaintiffs' motion to compel production of the badge swipe data for all opt-ins should be denied because, when combined with its production of scanner data for all opt-ins, Plaintiffs are seeking individualized discovery as opposed to the representative discovery that is generally made available to defendants in an FLSA action (Dkt. No. 309 at 13-14). [3]  Moreover, FedEx alleges, badge swipe data is not relevant to whether opt-ins are similarly situated because Plaintiffs will use scanner data to show hours worked for some opt-in drivers and will use badge swipe data for others (Dkt. No. 309 at 14).

Third, FedEx proffers the declaration of a FedEx manager, Jay Boyles, a specialist in facility security design and technology, to meet its burden to show that production of the badge swipe data is unduly burdensome (Dkt. No. 309-3).  Boyle described FedEx's methods for

---

[3] To support its argument that Plaintiffs' motion to compel should be denied on the ground that it seeks individualized discovery, FedEx relies on the same cases that it cited in its opposition to Plaintiffs' motion to compel production of the scanner data (Dkt. No. 309 at 14).  *See Roy v. FedEx Ground Package Sys., Inc.,* Case No. 3:17-cv-30116-KAR, 2022 WL 17343846, at *3 (D. Mass. Nov. 30, 2022).  In *Branson v. Alliance Coal, LLC,* CIVIL ACTION NO. 4:19-CV-00155-JHM-HBB, 2022 WL 2717625 (W.D. Ken. July 13, 2022), the plaintiffs moved to compel the defendant to produce "a considerable amount of discovery" for the more than 500 opt-in plaintiffs and over 1,800 employees who were not opt-ins.  *See id.* at *8.  Here, however, Plaintiffs have not requested badge swipe data for non-opt-ins.  In *Reno v. Western Cab Co.,* Case No.: 2:18-cv-00840-APG-NGK, 2019 WL 6310716 (D. Nev. Nov. 25, 2019), the court denied the plaintiffs' request for production of all payroll records and records showing the cost of gasoline for all opt-ins because plaintiffs failed to explain the reason for the scope of the request. *See id.* at *2.  In contrast, Plaintiffs have adequately demonstrated the relevance of the badge swipe data.

retrieving badge swipe data.  Current badge swipe data is kept for thirty days before it is

archived.  FedEx's archives contain badge swipe data from 2017.  The archived data for active

and inactive drivers is retrieved by different methods.  The retrieval of active drivers' archived

data requires a driver-by-driver search of FedEx's archives for each driver's identification

number.  To access to the badge swipe data of inactive drivers, FedEx IT Services personnel

must search the Ground Identification Badging System archive database to determine which

previous proximity numbers are available (Dkt. No. 309-3 ¶¶ 9-13).

Boyle estimated that it would take two members of his team a minimum of eight weeks to

search for the electronically stored badge swipe data for 500 active drivers going back to 2017.

Because searches for inactive drivers' data may require additional time and resources, the actual

amount of time it would take to retrieve the requested data would depend on factors such as how

may opt-in drivers were inactive (Dkt. No. 309-3 ¶¶ 10, 14).

FedEx relies on *Netherlands Ins. Co. v. HP, Inc.,* No. 18-cv-12136-DLC, 2022 WL

18027562 (D. Mass. Dec. 30, 2022), for its position that compliance with Plaintiffs' request for

badge scan data is unduly burdensome (Dkt. No. 309 at 13).  After an HP printer caught fire,

Netherlands Insurance Co. (Netherlands) sued HP, Inc. (HP) and moved to compel HP to

produce information about other printer fires.  *Id.* at *1.  Although HP maintained a database of

all alleged printer fires, the court found that Netherlands' request was unduly burdensome

because it required HP to determine which of its printer models contained some or all of the

same components as the printer that allegedly caused the fire at issue in the suit.  *Id.* at *3.  In

addition, Netherlands' request required HP to compile all the supporting data it had for each of

those prior claims.  *Id.*  In some cases, that meant going back twenty-two years.  *Id.*  The court

found that Netherlands' request was "much more than pressing a few buttons to generate a database printout." *Id.*

In response to FedEx's argument that it will take at least eight weeks to produce the data, Plaintiffs indicate that they "would be fine with receiving the badge swipe data after decertification briefing and argument" (Dkt. No. 319 at 2 n.1).

3.    Analysis

Other FLSA cases have permitted discovery of badge swipe data. *See Sargant v. HG Staffing, LLC*, No. 3:13-CV-00453-LRH, 2014 WL 1653273, at *6 (D. Nev. Apr. 23, 2014) (court ordered production of badge swipe data); *see also McNeil v. Faneuil, Inc.,* Action No. 4:15cv81, 2017 WL 5711439, at *4 (E.D. Va. Sept. 25, 2017) (defendant's expert examined the badge swipe data that was produced in discovery in an FLSA action); *Luo v. Zynga, Inc.,* Case No. 13-cv-00186 NC, 2014 WL 457742, at *2 n.2 (N.D. Cal. Jan. 31, 2014) (badge swipe data was produced in discovery in an FLSA suit).

FedEx's objections are similar to those it raised in response to Plaintiffs' request for scanner data. *See Roy,* 2022 WL 17343846, at *1. As to FedEx's claim that the badge swipe data is irrelevant, "[d]iscovery that is relevant to [p]laintiffs' FLSA claims is information that tends to prove that it is more probable that Plaintiffs are owed overtime pay by [d]efendants." *Pruess v. Presbyterian Health Plan, Inc.*, 579 F. Supp. 3d 1235, 1240 (D.N.M. 2022). Like the scanner data, the badge swipe information may be relevant to the question of whether the opt-in drivers worked more than forty hours per week and are entitled to overtime compensation. FedEx cites no authority for its position that the badge swipe data is not relevant because it uses the information for security, but Plaintiffs seek to use it for time-keeping. In rejecting FedEx's argument that the scanner data lacked relevance because it was purportedly unreliable, this court

found that "deficiencies as a method of proof does not negate its relevance as that term is used for purposes of discovery in an FLSA action." *Roy,* 2022 WL 17343846, at \*2.

As to FedEx's complaint that Plaintiffs are not entitled to individual discovery, "[r]epresentative discovery in FLSA cases is designed to minimize the outsized burden that individual discovery would impose on plaintiffs' counsel '"and yet afford the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses."'" *Id.* (quoting *Scott v. Bimbo Bakeries, USA, Inc.*, Civil Action No. 10-3154, 2012 WL 6151734, at \*5 (E.D. Pa. Dec. 11, 2012)).  "In a similar case in Pennsylvania involving drivers who deliver packages for FedEx in all states except Massachusetts, are employed by ISPs, and use vehicles with GVWR of under 10,001 pounds, plaintiffs asked FedEx to produce GVWR information for all 30,000 opt-ins." *Id.* (citing *Claiborne,* 2021 WL 3563388, at \*19).  "In rejecting FedEx's argument that the plaintiffs were not entitled to the GVWR discovery that they sought, the court found that FedEx was 'a single source for this information, as opposed to Plaintiffs' counsel being required to reach out to each of the individual collective members, who are further unlikely to be able to produce information in a format comparable to what FedEx can produce.'" *Id.* (quoting *Claiborne,* 2021 WL 3563388, at \*19).  This court agreed with that analysis when considering the motion to compel the scanner data.

Boyle's description of the time and resources required to obtain the archived badge swipe data, *see Viscito v. Nat'l Planning Corp.,* Civil Case No. 3:18-30132-MGM, 2019 WL 5318228, at \*6 (D. Mass. Oct. 21, 2019), gives FedEx's claim of undue burden more heft than its assertions of irrelevance and individualized discovery.  *See Roy,* 2022 WL 17343846, at \*4 ("As the party resisting discovery, FedEx has the burden of showing that production of the requested scanner data imposes an undue burden.") (citing *Sánchez-Medina v. UNICCO Serv. Co.*, 265 F.R.D. 24,

27 (D.P.R. 2009); *Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc.*, 730 F. Supp. 1165, 1186 (D. Mass. 1989)).  However, FedEx's showing may not outweigh the relevance of the data to show a violation of the FLSA if the collective meets the requirements for final certification.

Because Plaintiffs have agreed to postpone FedEx's production of the badge swipe data, Plaintiffs' request for badge swipe data is denied without prejudice to its renewal after the court's decision on FedEx's anticipated motion for decertification of the collective.[4]

IV.   CONCLUSION

Plaintiffs' Motion to Compel FedEx's Production of Documents (Dkt. No. 298) is granted, in part, as described herein.  So much of Plaintiffs' motion as requests badge swipe data is denied, without prejudice.  To the extent FedEx is being directed to produce the same documents that it produced in *Claiborne,* if the parties agree, Plaintiffs' attorneys can use the responsive documents that FedEx produced in *Claiborne*.  FedEx is directed to produce the material within thirty days of this order unless the parties agree to a different timeframe.

It is so ordered.

Dated:  May 22, 2023                    /s/ Katherine A. Robertson
                                        KATHERINE A. ROBERTSON
                                        United States Magistrate Judge

---

[4] Plaintiffs' attorneys claim that they asked FedEx's counsel to confer about their Third Set of Requests for Production, including the request for badge swipe data, via telephone on February 1, 2023 and February 7, 2023, but FedEx's counsel ignored Plaintiffs' counsels' requests to confer (Dkt. No. 298 at 3).  FedEx counters that it "inadvertently overlooked" Plaintiffs' demand for the badge swipe data in Plaintiffs' "numerous emails about overlapping topics" and contends that Plaintiffs' motion to compel the badge swipe data should be denied due to Plaintiffs' failure to satisfy the meet and confer requirement as to the request for that data (Dkt. No. 309 at 9).  The parties' contentions about the obligation to confer in advance of filing a motion to compel are inconsequential at this time.