UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>FEDEX GROUND PACKAGE SYSTEMS, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:17-cv-30116-KAR<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER ON FEDEX GROUND SYSTEMS, INC.'S MOTION TO REDACT PLAINTIFFS' MOTION TO COMPEL FILED FEBRUARY 22, 2023 (ECF 298) AND TO MAINTAIN DOCUMENTS FILED UNDER SEAL
(Dkt. No. 314)

ROBERTSON, U.S.M.J.

  Defendant FedEx Ground Package Systems, Inc. ("FedEx") has moved to redact portions of Plaintiff Jordan Roy's and Plaintiff Justin Turnbull's ("Plaintiffs"), Motion to Compel FedEx's Production of Documents Filed February 22, 2023 (Dkt. No. 298) ("Plaintiffs' Motion") and to permanently seal six exhibits to Plaintiffs' Motion. Plaintiffs oppose FedEx's motion (Dkt. No. 324). For the reasons that follow, FedEx's motion is DENIED.

  I.  RELEVANT BACKGROUND

  Plaintiffs filed their discovery motion on February 22, 2023 (Dkt. No. 298). The following day, they requested that six exhibits to their motion be provisionally sealed because FedEx had designated these documents "confidential" under a court-approved stipulated

protective order (Dkt. Nos. 146, 299).[1]  On February 23, 2023, the court granted Plaintiffs' motion to seal "until FedEx has the opportunity to explain to the Court why such documents should remain under seal" (Dkt. No. 299 at 1, 300). [2]

On March 20, 2023, FedEx filed its Motion to Redact Plaintiffs' Motion to Compel Filed February 22, 2013 (ECF 298) and to Maintain Documents Filed Under Seal (Dkt. No. 314), submitting declarations of Dianna Karg, the Managing Attorney of its Legal Compliance and Ethics Group, and Paul Spaulding, a manager "with primary responsibilities of leading and implementing network initiatives and projects," to justify its request (Dkt. No. 314-3 at 2 ¶ 1; Dkt. No. 314-4 at 2 ¶ 1).  FedEx seeks to redact the parts of Plaintiffs' Motion that described FedEx's Handbook and its contract with First Advantage and to continue the impoundment of the six exhibits to the motion that the court had provisionally sealed at Plaintiffs' request (Dkt. No. 314 at 2-5).  FedEx's publicly-filed motion, however, included the parts of Plaintiffs' Motion that it seeks to redact as well as the provisionally sealed exhibits (Dkt. No. 314-2 at 4-5, 11; Dkt. No. 314-3 at 2-18; Dkt. No. 314-4 at 2-43).  It was not until April 5, 2023, that FedEx's attorney notified the Clerk's Office that it had publicly filed the provisionally sealed exhibits, which the clerk then sealed pending the court's ruling on the instant motion.

II.    LEGAL STANDARDS

"Under the common law, there is a long-standing presumption of public access to judicial records." *In re Gitto Glob. Corp.,* 422 F.3d 1, 6 (1st Cir. 2005) (citing *Nixon v. Warner*

---

[1] The protective order included the parties' acknowledgment that the order did not entitle them to seal confidential information filed with the court and FedEx does not rely on the protective order to support its motion (Dkt. No. 146 ¶ 15).

[2] Citations to Docket No. 314-2 refer to the page numbers at the bottom of the document's pages because the page numbers at the top are obscured.

*Commc'ns, Inc.,* 435 U.S. 589, 597 (1978)).  The First Circuit has defined "judicial records" as "those 'materials on which a court relies in determining the litigants' substantive rights.'" *United States v. Kravetz,* 706 F.3d 47, 54 (1st Cir. 2013) (quoting *In re Providence Journal,* 293 F.3d 1, 9-10 (1st Cir. 2002)).  "Because all papers filed with the Court are presumptively available for inspection by the public, the party seeking to seal or redact papers filed bears the burden of proof."  *In re Gitto/Glob. Corp.*, 321 B.R. 367, 373 (Bankr. D. Mass.), *aff'd sub nom. In re Gitto Glob. Corp.*, Nos. Civ.A. 05-10334-DPW, Civ.A. 05-10532-DPW, 2005 WL 1027348 (D. Mass. May 2, 2005), *aff'd,* 422 F.3d at 1.  However, because discovery disputes do not usually determine the parties' substantive rights, "[t]he presumption of a common-law right of access does not . . . extend to documents submitted to a court for use in deciding discovery motions." *Warren v. Rojas*, Civil No. 09-40217-FDS, 2016 WL 1642584, at *1 (D. Mass. Apr. 25, 2016) (citing *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 13-14 (1st Cir. 1986)).  *See Anderson,* 805 F.2d at 11 ("We think it is clear and hold that there is no right of public access to documents considered in civil discovery motions.")

"Nevertheless, once filed with the court, a showing of good cause is necessary to protect discovery motions and responses from disclosure."  *Walker v. Segway Inc.*, Civil No. 11-cv-382-JD, 2013 WL 2077223, at *1 (D.N.H. May 15, 2013) (citing *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 533 (1st Cir. 1993)).  "Demonstrating 'good cause' entails making a particularized factual showing of the harm that would be sustained if the court did not allow the filing under seal."  *Dunkin Donuts Franchised Rests., LLC v. Agawam Donuts, Inc.*, Civil Action No. 07-11444-RWZ, 2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008) (quoting Fed. R. Civ. P. 26(c)).  *See Anderson,* 805 F.2d at 7 ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements").  Further, a party may be found

to have waived impoundment of material that has been publicly available because "'the proverbial cat is out of the bag.'" *In re Document Techs. Litig.,* 282 F. Supp. 3d 743, 750 (S.D.N.Y. 2017) (citation omitted). *See Abiomed, Inc. v. Maquet Cardiovascular LLC,* Civil Action No. 16-10914-FDS, 2021 WL 5165010, at *2 (D. Mass. Nov. 5, 2021) (discussing cases finding a waiver of confidentiality by disclosing the material in open court).

    III.    ANALYSIS

        A.    <u>Portions of Plaintiffs' Motion Describing the Handbook and the First Advantage Contract</u>

FedEx seeks to redact the portions of Plaintiffs' Motion that describe FedEx's Handbook and its contract with First Advantage (Dkt. No. 314-2 at 4-5, 11). Specifically, FedEx requests redaction of the Handbook's description of the steps that FedEx employees take when conducting wage and hour compliance assessments of Independent Service Providers ("ISPs") that employ drivers who deliver packages for FedEx (Dkt. No. 314-1 at 4-5). FedEx contends that the Handbook contains "confidential and proprietary information . . . regarding details of FedEx['s] . . . business operations," which "is not shared with anyone outside of FedEx." FedEx maintains that disclosure of the information will result in irreparable harm because an ISP "might . . . use information from the procedures to unnecessarily prolong, frustrate, or prevent a full assessment" and competitors might use the information to "develop or refine their own operations, model, or strategy" (Dkt. No. 314-3 at 3 ¶¶ 4, 5). As to the single sentence in Plaintiffs' Motion describing the First Advantage contract, FedEx asserts that it agreed with First Advantage to keep the terms of the contract confidential. Plaintiffs' Motion purportedly reveals "proprietary information about how drivers are screened and qualified" by First Advantage (Dkt. No. 314-4 at 2-3 ¶ 3).

Plaintiffs argue that FedEx waived its claim for sealing by failing to move to redact the allegedly objectionable portions of Plaintiffs' Motion on February 22, 2023, when Plaintiffs filed

4

their motion, and then waiting for about a month to request redactions (Dkt. Nos. 298, 314). Furthermore, when FedEx finally moved to redact portions of Plaintiffs' Motion, FedEx's CM/ECF filing included the portions of Plaintiffs' Motion that it seeks to seal (Dkt. No. 314-2). Those pages remain available on the court's docket (Dkt. No. 324 at 8 n.6).

To the extent the court concludes that FedEx did not waive its claim, Plaintiffs contend that FedEx has failed to make the requisite particularized showing of harm.  Plaintiffs disagree with FedEx's assertion that the portions of Plaintiffs' Motion that are at issue reveal proprietary information, note that neither the Handbook nor the First Advantage contract were submitted with Plaintiffs' Motion, and point to FedEx's unsealed filings in this case and in *Claiborne* where FedEx described the Handbook and the contract in more detail than Plaintiffs did in their discovery motion (Dkt. No. 324 at 8-12).  *See Claiborne v. FedEx Ground Package Sys., Inc.,* 2:18-cv-01698-RJC, 2022 WL 4537003, at *7, *8 (W.D. Pa. Sept. 28, 2022) ("First Advantage . . . is purportedly a third-party vendor that FedEx utilizes to screen drivers desiring to work for FedEx and its Service Providers" and "'First Advantage has a process that determines whether drivers are qualified to work for FedEx, using criteria provided by FedEx . . . .'").  The court agrees with Plaintiffs that FedEx waived any right to the sealing of any portion of Plaintiffs' Motion, which has by now been in the public domain for some four months and does not reach the question of whether Plaintiffs' Motion included confidential information that FedEx might have been entitled to seal from public disclosure.

FedEx failed to request redaction when Plaintiffs filed their motion on February 22, 2023 (Dkt. No. 298).  *See ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, No. 11 CIVL. 5697 JSR, 2012 WL 4840805, at *6 (S.D.N.Y. Sept. 25, 2012) ("If UPS was concerned about the disclosure of confidential information, it should have immediately moved the court to seal the

5

documents. . . . UPS admits, however, that it did not [request that ING seal the documents] until two months after the filing of the original complaint. By UPS's own admission, at this point, the 'cat was out of the bag,' and ING's failure to seal the documents was irrelevant."). Plaintiffs' Motion was on the public docket for about a month before FedEx requested redaction on March 20, 2023 (Dkt. No. 314). FedEx then attached Plaintiffs' Motion in unredacted form to its publicly-filed motion for redaction without first requesting redaction of the purportedly sensitive portions of Plaintiffs' Motion (Dkt. No. 314). *See* LR, D. Mass. 7.2(a), (c). Where Plaintiffs' Motion has remained publicly available for some four months, the cat is out of the bag and FedEx has waived its request for redaction of portions of the motion. *See Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, 18-CV-8188 (JMF), 2019 WL 3034866, at *2 (S.D.N.Y. July 11, 2019); *Optimize Tech. Sols., LLC. v. Staples, Inc.*, Case No. 14-mc-80095-LHK (HRL), 2014 WL 1477651, at *4 (N.D. Cal. Apr. 14, 2014).

      B.      <u>Exhibits E, F, I, O, P, and Q to Plaintiffs' Motion</u>

The exhibits to Plaintiffs' Motion show FedEx's responses to failures by the ISPs to comply with provisions in the agreements between FedEx and the ISPs that set requirements or standards for the ISPs and the delivery drivers they employ (Dkt. No. 55-7). Exhibit E consists of Business Discussion Records reflecting notices from FedEx to certain ISPs about customer delivery complaints and drivers' failures to comply with motor vehicle laws and wage and hour reporting requirements (Dkt. No. 314-4 at 3 ¶ 7, at 6-17). Exhibits F and I are samples of FedEx's notices to ISPs of the opportunity to cure and notices that address ISPs' failures to comply with their contractual obligations to treat drivers as employees, keep independent and accurate records of drivers' hours, comply with Massachusetts' paystub reporting requirements, and pay overtime (Dkt. No. 314-4 at 3 ¶ 8, at 19-32). Exhibits O and P are examples of

communications between FedEx and ISPs that include "personal and private information about individual drivers" who were disqualified by FedEx for failing to comply with laws or regulations (Dkt. No. 314-4 at 3 ¶ 9, at 34-43). Exhibit Q consists of examples of FedEx employees' reports about the results of their compliance investigations of ISPs (Dkt. No. 314-3 at 3-4 at ¶¶ 8, 9, at 6-18). FedEx argues that there is good cause for impoundment of these exhibits to Plaintiffs' Motion because the exhibits contain "confidential and proprietary information regarding the details of FedEx['s] . . . business operations and certain of its Service Providers" that was not shared with anyone outside FedEx (Dkt. No. 314-3 at 4 ¶ 9; Dkt. No. 314-4 at 4 ¶ 10).

Plaintiffs argue that FedEx waived its right to seal the exhibits when it filed them as unsealed attachments to its motion to seal and did not notify the court of its error for sixteen days (Dkt. No. 324 at 3-4). To the extent that the court declines to hold that FedEx's public filing constitutes a waiver, Plaintiffs rely on *Kalter v. Keyfactor, Inc.*, Case No.: 21-cv-1707-L-DDL, 2023 WL 1805866 (S.D. Cal. Feb. 7, 2023), and *United State[s] ex rel. Silver v. Omnicare, Inc.,* Civil No. 11-1236 (NLH/JS), 2016 WL 11807817 (D.N.J. Feb. 10, 2016), to support their argument that, with the exception of the drivers' names in Exhibits O and P, which they agree should be redacted, FedEx's reasons for impoundment fail to establish good cause for the documents to remain under seal (Dkt. No. 324 at 6-7 & n.4). In *Kalter,* the court found that the defendant's "unsubstantiated allegations of nonspecific harm" did not satisfy the good cause standard. *Kalter,* 2023 WL 1805866, at *1. In *Omnicare*, the court rejected the defendant's arguments that disclosure of its "'highly confidential'" business information would "materially harm defendant's business" as being "too broad and conclusory to make the particularized showing required to seal materials under the 'good cause' standard . . . ." *Omnicare, Inc.,* 2016

WL 11807817, at *2.  The court faulted the defendant for failing to provide "specific examples as to potential damage or articulat[e] a cogent theory about how the disclosure of the information could harm [it]."  *Id.*  Plaintiffs also cite *Chikel v. Steward Health Care Sys., LLC,* Civil Action No. 18-cv-10959-ADB, 2018 WL 11463444 (D. Mass. Nov. 7, 2018), where the court denied the self-represented plaintiff's request to seal her case because, *inter alia*, she did not "offer a sufficiently compelling justification for sealing her entire case."  *See id.* at *1-2.

      FedEx has not established good cause to seal the exhibits.  First, FedEx waived its claim of confidentiality by publicly filing the previously impounded exhibits and failing to correct its error for more than two weeks.  *See Optimize Tech. Sols., LLC,* 2014 WL 1477651, at *4.  Second, FedEx's assertions of the harm that it will suffer if the public has access to the exhibits are nonspecific and overbroad and, for this reason, fail to establish good cause the seal them.  *See Dunkin Donuts Franchised Rests., LLC,* 2008 WL 427290, at *1.  FedEx states that the exhibits contain "confidential and proprietary" information that "could irreparably harm FedEx . . . and the [ISPs] whose business information is discussed in them;" current and potential future ISPs "could obtain an unfair advantage" by using the information in the exhibits; ISPs "might use the information" against FedEx and other ISPs to their advantage; and FedEx will be prejudiced "if a competitor used [its] proprietary information to develop or refine their own operations, model, or strategy" (Dkt. No. 314-3 at 4 ¶¶ 9, 10, 11; Dkt. No. 314-4 at 4 ¶¶ 11, 12).

      Although FedEx asserts that the exhibits contain "confidential and proprietary" information (Dkt. No. 314-3 at 4 ¶ 9; Dkt. No. 314-4 at 4 ¶ 10), the exhibits do not include the kind of information that is commonly protected from public exposure.  *Compare Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*, 1:19-cv-010125 (ALC), 2020 WL 5819864, at *2 (S.D.N.Y. Sept. 30, 2020) ("All of these documents 'fall[ ] into categories commonly sealed[:]

those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like.' . . . Non-public data of this nature 'is sensitive and potentially damaging if shared with competitors.'") (first and second alterations in original) (citations omitted); *In re Qualcomm Litig.*, Case No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing "licensing terms, royalties paid or owed under license agreements, financial terms, details of confidential licensing negotiations, and business strategies, along with those exhibits that contain the various confidential business agreements executed among the parties" in order to "prevent competitors from gaining insight into the parties' business model and strategy."); *OpenTV, Inc. v. Apple, Inc.*, Case No. 14-cv-01622-HSG, 2015 WL 5714851, at *2 (N.D. Cal. Sept. 17, 2015) (finding good cause to seal the redacted portions of exhibits based on the plaintiff's claim that they contained "'information relating to [its] revenues, customers, and certain United States sales data,' and that this information 'is highly confidential and nonpublic information, disclosure of which to the public or competitors would cause [Plaintiff] commercial, competitive, and irreparable harm.'").

      In contrast, FedEx's assertions are speculative and do not explain how information in the exhibits about specific ISPs and their drivers will damage FedEx, give an advantage to one ISP over another, or give FedEx's competitors an advantage in the package delivery industry. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547-48 (7th Cir. 2002) ("Motions that simply assert a conclusion without the required reasoning . . . have no prospect of success."); *Omnicare, Inc.,* 2016 WL 11807817, at *2; *In re Ortiz Romany,* Bankruptcy No. 04-03074 (SEK), 2006 WL 3909778, at *3 (Bankr. D.P.R. June 16, 2006) ("conjecture, . . . without more, is not sufficient to warrant the protective order."). By way of example, FedEx has not explained how a document that describes an ISP's failure to comply with the wage and hour and tax laws would provide a

financial or competitive advantage to FedEx's competitors. FedEx's filing does not describe specific harm that will befall it if the exhibits remain on the public docket. It is well-established that broad and generic claims about confidentiality are insufficient to establish good cause for sealing. *See Tourangeau v. Nappi Distribs.*, No. 2:20-cv-00012-JAW, 2022 WL 768688, at *8 (D. Me. Mar. 14, 2022) (a broad assertion that company documents contain "'non-public, confidential and proprietary business and financial information, which [defendant] seeks to prevent their competitors from acquiring' [was] insufficient to invoke the proprietary information exception to the presumption of public access.") (citation omitted); *Smoothie King Franchises, Inc. v. Rock Island Venue, Inc.*, Civil Action No. 20-1284-EFM, 2020 WL 13111623, at *1 (D. Kan. Oct. 21, 2020) (denying plaintiff's request to seal the complaint and exhibits and rejecting its assertion that "its business materials, including operational manuals, training procedures, audits, and franchise agreements, constitute proprietary materials that should not be filed publicly [and that] public filing will harm its business and 'give competitors insight and a commercial advantage to compete against [it].' But beyond asserting that this harm will occur and its 'franchise system will be damaged,' plaintiff hasn't shown more than conclusory allegations to support these claims.") (footnote omitted)). Nor does FedEx's assertion that it did not share the information in the exhibits with anyone outside FedEx provide good cause for impoundment (Dkt. No. 314-3 at 4 ¶ 9; Dkt. No. 314-4 at 4 ¶ 10). *See Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98CIV8721 (LAK), 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001) ("But implicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public. If that were the criterion, the question whether the executive dining room serves bottled or tap water would be subject to confidential treatment whenever that fact was not previously a matter of public

record.  What is required is some showing that the disclosure of the information in question would cause some harm, either to the disclosing party or to someone else.").

IV. CONCLUSION

For the foregoing reasons, the court denies FedEx's Motion to Redact Plaintiff's Motion to Compel Filed February 22, 2023 (ECF 298) and to Maintain Documents Filed under Seal (Dkt. No. 314).  Because the parties are in agreement that the names of individual drivers in Exhibits O and P should be redacted, Plaintiffs are directed to submit substitute copies of Exhibits O and P to the Clerk's Office with the names of the individual drivers redacted.  These substitute exhibits must be submitted by USPS mail and must be placed in the mail by no later than July 7, 2023.

It is so ordered.

Dated:  June 26, 2023                        /s/ Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             United States Magistrate Judge