UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEMS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:17-cv-30116-KAR<br>)<br>)<br>)<br>)<br> |

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL FEDEX'S
PRODUCTION OF COMPLIANCE INVESTIGATION REPORTS AND ASSOCIATED
DOCUMENTS
(Dkt. No. 339)

ROBERTSON, U.S.M.J.

This Fair Labor Standards Act ("FLSA") collective action is before the court on the

motion of plaintiffs Jordan Roy and Justin Turnbull, on behalf of themselves and others similarly

situated ("Plaintiffs"), to compel production of Compliance Investigation Reports ("CIRs") and

associated documents that were created after June 2019 (Dkt. No. 339).  Defendant FedEx

Ground Package Systems, Inc. ("FedEx") asserts that the attorney-client privilege and the work

product doctrine protect the requested information (Dkt. No. 365).  Plaintiffs' motion is DENIED

for the reasons that follow.

I.      RELEVANT BACKGROUND

In August 2017, Plaintiffs, acting on behalf of themselves and other similarly situated

persons claiming they were jointly employed by FedEx and independent service providers

("ISPs"), brought a single claim against FedEx for unpaid overtime pursuant to the FLSA (Dkt.

No. 1).  *See Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 51-52 (D. Mass.

2018).  The court conditionally certified a collective of similarly situated individuals who delivered FedEx's packages in Massachusetts after February 19, 2015, using vehicles with gross weights of less than 10,001 pounds, who were paid by the ISPs to perform pickup and delivery services on FedEx's behalf, and who were not paid overtime compensation for all hours worked over forty each week.  *See id.* at 72.

FedEx contracts with the ISPs that employ drivers who pick up and deliver FedEx packages (Dkt. No. 339-1; Dkt. No. 339-2 ¶¶ 3, 4).  The terms of the contracts between FedEx and the ISPs ("ISP Agreements") include the ISPs' agreement to treat their drivers as employees, comply with federal and state laws that address recordkeeping, taxes, and wage and hour requirements, and respond to FedEx's requests for records that permit FedEx to assess the ISPs' compliance with their obligations under their agreements with FedEx (Dkt. No. 339-1 ¶ 6.2; Dkt. No. 339-2 ¶¶ 5, 6, 8; Dkt. No. 345 at 2).  Those assessments are conducted by compliance specialists who are members of FedEx's Legal Compliance and Ethics Group ("LCG") within its Legal Division and who report to LCG attorneys (Dkt. No. 339-2 ¶ 2; Dkt. No. 339-4 at 13-14; Dkt. No. 339-6).  An ISP may be chosen at random for an assessment or may be assessed because of a complaint (Dkt. No. 339-2 ¶¶ 6, 7).  FedEx's Electronic Compliance Assessment Overview instructs the compliance specialists on how to conduct compliance assessments (Dkt. No. 345).

At the conclusion of their investigations, the compliance specialists produce CIRs.  The reports follow a standard format:  a summary of the reason(s) for the investigation; a summary of the applicable laws; a description of the documentation that the ISP provided for the assessment; an analysis of whether the ISP is complying with the relevant wage and hour laws, maintaining accurate records of employee hours worked, paying overtime to qualified employees, and

treating drivers as employees for payroll, tax withholding, insurance and other purposes; whether the ISP provided e-verify documentation; and the compliance specialist's conclusion concerning the ISP's compliance with the laws (Dkt. No. 339-5).  The LCG uses a CIR as a basis for producing a notice of opportunity to cure, a notice of compliance concern, or terminating an ISP Agreement (Dkt. No. 339-1 ¶ 15.3; Dkt. No. 345 at 2).  The notices inform the ISPs of the results of the compliance assessments, including any failure by the ISP to comply with the laws, recordkeeping requirements, and the terms of the ISP Agreement, and direct the ISP to remedy violations (Dkt. No. 345-2).

Following the court's May 22, 2023 order on Plaintiffs' motion to compel, *see Roy v. FedEx Ground Package Sys., Inc.,* Case No. 3:17-cv-30116-KAR, 2023 WL 3587305, at *7 (D. Mass. May 22, 2023), FedEx produced CIRs that were issued before June 2019, the wage and hour records the ISPs provided to FedEx for the compliance assessments before and after that date, emails with the ISPs concerning compliance assessments, and the notices of opportunity to cure and notices of compliance concern that were issued before and after June 2019 (Dkt. No. 365 at 3, 4, 14).  FedEx withheld the CIRs and related back-up working analyses that were created after June 2019 on the basis that they were protected by the attorney-client privilege and the work product doctrine and listed the documents on a privilege log (Dkt. No. 339-6).[1] According to the declaration of Joseph P. McHugh, lead counsel in FedEx's in-house Litigation Group, in June 2019, the Litigation Group directed the LCG to gather facts concerning ISPs' potential wage and hour and labor law violations to assist the Litigation Group and outside

---

[1] The parties disagree about the number of CIRs and related analyses that FedEx has declined to produce.  Plaintiffs assert that FedEx withheld 103 CIRs and 147 associated documents while FedEx claims that 70 reports are at issue (Dkt. No. 339 at 6; Dkt. No. 365 at 4, 5).  This dispute is not relevant to the court's analysis.

litigation counsel (collectively, "Litigation Counsel") in defending against the Plaintiffs' claims (Dkt. No. 365-1 ¶ 10).  The Litigation Group further directed the LCG to treat the post-June 2019 Massachusetts CIRs as privileged and confidential (Dkt. No. 365-1 ¶ 10).  As a result of the Litigation Group's request for information, the LCG increased the number of compliance assessments that it conducted in Massachusetts after June 2019 (Dkt. No. 365-1 ¶ 10).  Mr. McHugh states that although the title and format of the CIRs remained the same after June 2019, the notices of opportunity to cure and notices of compliance concern that were issued to Massachusetts ISPs after June 2019 did not include the "legal advice, legal analyses, opinions, and mental impressions" related to Plaintiffs' claims that were included in the pre-June 2019 notices to ISPs (Dkt. No. 365-1 ¶¶ 12, 13, 14).

II.    LEGAL STANDARDS

Fed. R. Civ. P. 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "On a motion to compel, '[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance.'"  *Controlled Kinematics, Inc. v. Novanta Corp.*, Civil Action No. 17-cv-11029-ADB, 2019 WL 3082354, at *2 (D. Mass. July 15, 2019) (alteration in original) (quoting *Johansen v. Liberty Mut. Grp., Inc.*, Civil Action No. 15-cv-12920-ADB, 2017 WL 6045419, at *1 (D. Mass. Dec. 6, 2017)).  "At the discovery stage, relevance should be 'broadly construed,' and information should be deemed 'discoverable

if there is any possibility it might be relevant to the subject matter of the action.'" *Nosalek v. MLS Prop. Info. Network, Inc.*, CIVIL ACTION NO. 20-12244-PBS, 2022 WL 4815961, at *4 (D. Mass. Oct. 3, 2022) (quoting *Cherkaoui v. City of Quincy*, Civil Action No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015)). "'[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), *modified on reconsideration*, 160 F. Supp. 3d 431 (D. Mass. 2016) (citation omitted).

Federal common law governs the claims of privilege and protection in this case. *See Davine v. Golub Corp.*, Civil Case No. 3:14-30136-MGM, 2017 WL 517749, at *2 (D. Mass. Feb. 8, 2017) ("Where, as here, jurisdiction is premised on a federal question and the disputed documents constitute evidence related to the federal FLSA claims . . . federal common law, 'as interpreted by United States courts in the light of reason and experience' governs a claim of privilege.") (quoting Fed. R. Evid. 501). FedEx, as the party claiming privilege or protection, "bears the burden of establishing that it applies to the communications at issue and that it has not been waived." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). "Once a party claiming privilege has carried its initial burden of establishing grounds for asserting the privilege and that the privilege has not been waived, the burden shifts to the opposing party to establish any exceptions to the privilege." *Doe v. Lahey Health Sys., Inc.,* Civil Action No. 19-cv-11014-PBS, 2020 WL 13561720, at *2 (D. Mass. Aug. 12, 2020). *See United States v. Breton,* 740 F.3d 1, 9 (1st Cir. 2014).

III.     ANALYSIS

Two courts – this court, and a session of the United States District Court for the District of Western Pennsylvania, where mirror litigation is pending – have already ruled that the CIRs are relevant as relevance is defined for purposes of discovery and there is no reason to revisit this issue.  *See Roy*, 2023 WL 3587305, at *7 (citing *Claiborne v. FedEx Ground Package Sys., Inc.*, 2:18-cv-01698-RJC, 2022 WL 4537003, at *10 (W.D. Pa. Sept. 28, 2022)).  Accordingly, the court moves to FedEx's claims of work product protection and attorney-client privilege.

    A.    <u>The Attorney Work Product Doctrine</u>

"The work product doctrine protects (1) documents or other things, (2) prepared in anticipation of litigation, (3) by or for a party or a party's representative." *Lahey Health Sys., Inc.,* 2020 WL 13561720, at *2 (citing Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947)).  "'The work product doctrine is distinct from and broader than the attorney-client privilege . . . .  It is not designed to protect a confidential relationship, but rather to promote the adversary system by protecting the product of an attorney's work.'" *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 96 (D. Mass. 2002) (alteration in original) (quoting *Colonial Gas Co. v. Aetna Cas. & Sur. Co.,* 139 F.R.D. 269, 274 (D. Mass. 1991)).  "The underlying purpose of the work product doctrine is to protect the integrity of the adversarial process by creating a zone of privacy for those matters prepared by or for the party or the party's counsel in anticipation of litigation." *Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 190 F.R.D. 287, 290 (D. Mass. 2000).

A document is deemed to be prepared in anticipation of litigation if, "'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the . . . litigation.'" *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 68 (1st Cir. 2002) (quoting *United States v. Adlman*, 134 F.3d

1194, 1202 (2d Cir. 1998)).  "The 'because of' standard is intended to sweep in a broader universe of documents than simply those 'prepared primarily or exclusively to assist in litigation.'" *Lahey Health Sys., Inc.,* 2020 WL 13561720, at *3 (quoting *In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D. Mass. 2004)) (internal citation and quotation omitted).  The standard "does not protect from disclosure 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.'" *State of Maine*, 298 F.3d at 70 (quoting *Adlman,* 134 F.3d at 1202).  Even when documents or communications may serve a legal and a business purpose, however, they may be protected as work product when their dominant purpose was to aid in the defense of specifically identified litigation.  *See Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, Civil No. 15-5246(RBK/JS), 2019 WL 1864198, at *3 (D.N.J. Apr. 25, 2019).

If the work product doctrine applies, "[t]here are two categories of work product: opinion work product, which encompasses 'mental impressions, conclusions, opinions or legal theories of an attorney,' and fact or ordinary work product, which 'embrac[es] the residue.'" *Lahey Health Sys., Inc.,* 2020 WL 13561720, at *2 (second alteration in original) (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014 (1st Cir. 1988)).  *See* Fed. R. Civ. P. 26(b)(3)(B).  "Opinion work product . . . falls under a 'near absolute' protection from disclosure." *United States v. Cadden*, CRIMINAL ACTION NO. 14-10363-RGS, 2015 WL 5737144, at *2 (D. Mass. Sept. 30, 2015) (citation omitted).  In contrast, "[t]he production of fact work product may be compelled where a party demonstrates a 'substantial need' for the information and an 'undue hardship' should it not be produced." *Id.* (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1015).

The uncontested assertions in Mr. McHugh's declaration establish that the CIRs and related analyses that were produced after June 2019 were prepared in connection with on-going, specific litigation and are protected by the work product doctrine.  The instant case was filed in 2017 and was being actively litigated in June 2019 when counsel in FedEx's in-house Litigation Group directed the LCG to provide the Litigation Group with information concerning potential wage and hour and labor law violations in Massachusetts for the purpose of defending against Plaintiffs' claims (Dkt. No. 1; Dkt. No. 365-1 at ¶¶ 10, 14).  The LCG completed more compliance assessments of Massachusetts ISPs than it would have completed in the absence of the in-house Litigation Group's instruction (Dkt. No. 365-1 ¶ 10).  After conducting the assessments, the LCG prepared CIRs and communicated its analyses to Litigation Counsel for defense of Plaintiffs' claims (Dkt. No. 365-1 ¶ 12).  According to Mr. McHugh, the information in those CIRs and related analyses reflected the communication of legal advice, requests for legal advice, legal analyses of wage and hour laws and compliance with the laws, and opinions and mental impressions about Plaintiffs' claims (Dkt. No. Dkt. No. 365-1 ¶ 12).  While the post-June 2019 notices of opportunity to cure and notices of compliance concern that were issued to ISPs included information that was also included in the CIRs, the legal advice, analyses, opinions, and mental impressions were not included in the notices (Dkt. No. 365-1 ¶ 13).  FedEx has sufficiently shown that, after June 2019, it conducted compliance investigations and produced CIRs in aid of defending pending litigation.  Accordingly, the CIRs and related analyses qualify as work product.  *See In re Grand Jury Subpoena*, 220 F.R.D. at 146.

For their part, Plaintiffs argue that the CIRs at issue were not prepared for purposes of litigation, but, instead, were prepared in the ordinary course of FedEx's business.  They point out that the CIRs produced before and after June 2019 followed the same format and were used,

before and after June 2019, as a basis for compliance notices issued to ISPs (Dkt. No. 339 at 1-6, 12-14). However, the post-June 2019 documents "do[] not lose work product protection merely because [they were also used for a business purpose]" (Dkt. No. 365-1 ¶ 12). *Adlman,* 134 F.3d at 1195. *See Rockwell Automation*, 2019 WL 1864198, at *2 (the fact that plaintiff had conducted investigations for business purposes during the ten years before it undertook similar investigations in anticipation of litigation did not bar a finding of work product protection for the later material); *WM Mobile Bay Envtl. Ctr., Inc. v. City of Mobile Solid Waste Auth.,* CIVIL ACTION NO. 13-00434-KD-N, 2014 WL 12904992, at *7 (S.D. Ala. July 30, 2014) (the results of defendant's investigation that was performed in anticipation of litigation was protected work product notwithstanding the terms of the contract between plaintiff and defendant permitting defendant to perform an audit of the plaintiff's records); *Westernbank P.R. v. Kachkar*, Civil No. 07-1606 (ADC/BJM), 2009 WL 530131, at *5 (D.P.R. Feb. 9, 2009) ("[the accountant's] report was certainly prepared 'because of' pending litigation . . . and anticipated litigation . . . , and the [work product] protection it thus merits is not altered by the fact that [the accountant's] work may have also informed [plaintiff's] regulatory filings and financial statements.").

*Columbia Data Prods., Inc. v. Autonomy Corp.,* Civil Action No. 11-12077-NMG, 2012 WL 6212898 (D. Mass. Dec. 12, 2012), the case on which Plaintiffs rely, is distinguishable (Dkt. No. 339 at 13). In that case, approximately one year before it filed a lawsuit, the plaintiff, Columbia Data Prods., Inc. ("CDP"), exercised its right under the parties' license agreement to have an accounting firm, PriceWaterhouseCoopers ("PWC"), conduct an audit of the defendant's books and records to determine the amount of royalty fees the defendant owed CDP. *See Columbia Data Prods., Inc.,* 2012 WL 6212898, at *1. CDP gave a draft copy of the audit to the defendant and sought, unsuccessfully, to negotiate a resolution of the parties' royalty dispute.

*See id.* at *8.  After suit was filed, the defendant moved to compel CDP to produce documents related to PWC's audit.  *See id.* at *1.  The court found that the requested material was not protected by the work product doctrine because the record showed that CDP engaged the auditor to find out the facts about the defendant's use of its software, did not inform the defendant that it anticipated litigation when it requested an audit pursuant to the licensing agreement, represented PWC to the defendant as an independent auditor rather than an auditor retained for litigation purposes, and took advantage of the defendant's cooperation to perform the audit.  *See id.* at *12-13.  Here, in contrast, the litigation was well underway by June 2019 when, according to FedEx's uncontroverted evidence, its in-house Litigation Department directed the LCG to conduct additional compliance investigations to assist in its analysis of potential defenses to pending litigation (Dkt. No. 365-1 ¶¶ 10, 12).

Nor does the record support Plaintiffs' contentions that FedEx has waived work product protection.  To the extent some of the information in the CIRs that might be protected by the work product doctrine was disclosed to the ISPs in notices, "[w]ork product protection is not waived simply by disclosure to a third person." *Lahey Health Sys.*, *Inc.,* 2020 WL 13561720, at *2 (citing *Bryan v. ChemWerth, Inc.*, 296 F.R.D. 31, 40 (D. Mass 2013)).  Instead, it is waived "'when the documents are used in a manner contrary to the doctrine's purpose,' such as where disclosure is made to an adversary or potential adversary." *Id.* (quoting *Bryan,* 296 F.R.D. at 40).  FedEx issued the notices to the ISPs who were its contracting partners and there is no suggestion on this record that revealing the material to the ISPs "'increased the opportunities'" for disclosure of the CIRs to Plaintiffs. *Bryan*, 296 F.R.D. at 40 (quoting *In re Raytheon Secs. Litig.*, 218 F.R.D. 354, 360 (D. Mass. 2003)).  Consequently, Plaintiffs have not shown that FedEx waived work product protection through disclosure. *See Rockwell Automation, Inc.,* 2019 WL

10

1864198, at *3 (plaintiff did not waive the work product by sharing documents with its employees and distributors who were not adversaries). *Compare Columbia Data Prods., Inc.*, 2012 WL 6212898, at *16 (plaintiff waived protection of the audit report by disclosing it to defendants).

Plaintiffs further contend that FedEx impliedly waived its claim of work product protection for the post-June 2019 CIRS and related analyses by asserting an affirmative defense that places in issue its knowledge of an FLSA violation (Dkt. No. 49 at 13 ¶ 13; Dkt. No. 339 at 11-12, 17-19). The FLSA provides that "actions must be commenced within two years 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988) (quoting 61 Stat. 88, 29 U.S.C. § 255(a)). An employer acts willfully if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133. Plaintiffs claim that they need the information in the post-June 2019 CIRs to respond to FedEx's defense that it did not willfully violate the FLSA. The contention is not persuasive.

"An implied waiver occurs when the party asserting the privilege places protected information at issue for personal benefit through some affirmative act, and to protect against disclosure of that information would be unfair to the opposing party." *Traverse v. Gutierrez Co.*, Civil Action No. 18-10175-DJC, 2019 WL 12291347, at *6 (D. Mass. May 6, 2019) (citing *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d at 24).

> Generally, courts use a three-factor test in determining whether an at-issue waiver has occurred: (1) whether the proponent of the privilege took some affirmative step such as filing a pleading; (2) whether the affirmative act put the privileged information at issue by making it relevant to the case; and (3) whether upholding the privilege would deny the opposing party access to information vital to its case.

*Id.* (citing *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 276 (D. Mass. 2015)) (citations omitted).  In addition, the privilege holder must actually rely on the protected information to support a claim or defense.  *See id.* (citing *Trs. of Boston Univ. v. Everlight Elecs. Co.,* Civil Action Nos. 12-cv-11935-PBS, 12-cv-12326-PBS, 12-cv-12330-PBS, 2014 WL 5786532, at *4-5 (D. Mass. Sept. 24, 2014), *aff'd in relevant part and rev'd in part*, Civil Action Nos. 12-cv-11935-PBS, 12-cv-12326-PBS, 12-cv-12330-PBS, 2014 WL 5786532, 2015 WL 3407555 (D. Mass. May 27, 2015)).  "The same concerns for fairness that underlie the implied waiver of attorney-client privileged communications [apply] to waiver of work product information." *Columbia Data Prods., Inc.,* 2012 WL 6212898, at *17.

FedEx did not waive work product protection by asserting a lack of knowledge defense in its answer to the complaint.  "'A party does not lose the privilege to protect . . . communications from disclosure in discovery when his or her state of mind is put at issue in the action.'"  *Lahey Health Sys., Inc.,* 2020 WL 13561720, at *4 (quoting *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 864 (3d Cir. 1994)).  *See Bacchi,* 110 F. Supp. 3d at 275 ("Merely pleading a good faith defense does not by itself waive privilege.").  Moreover, the post-June 2019 CIRs are not relevant to proof of FedEx's prelitigation knowledge or state of mind.  *See Bryan Corp.,* 296 F.R.D. at 43; *see also In re Lantus Direct Purchaser Antitrust Litig.*, 578 F. Supp. 3d 211, 216 (D. Mass. 2021) ("The question of '[w]illfulness is determined by examining what the accused [infringer] knew or should have known at the time the complaint was filed.'") (alterations in original) (quoting *Alloc, Inc. v. Pergo, LLC*, No. 00-C-099, 2010 WL 3808977, at *5 (E.D. Wis. Sept. 23, 2010)).

Plaintiffs' final contention is that they are entitled to production of those portions of the CIRs and related analyses that set forth the facts FedEx elicits from the ISPs as opposed to legal

advice requested or given or mental impressions or legal analyses, and that the court should inspect the documents *in camera* to determine what portions of the CIRs and related documents are factual and should be produced in redacted form.  Based on the parties' submissions, it appears undisputed that the CIRs include factual information FedEx receives from the ISPs that it selects for compliance evaluations and that this factual information is the basis of legal analyses and opinions that are included in the CIRs.

The court acknowledges the general rule that "where a document contains both opinion and fact work product, the court must examine whether the factual matter may be disclosed without revealing the attorney's opinions."  *F.T.C. v. Boehringer Ingelheim Pharms. Inc.*, 778 F.3d 142, 198 (D.C. Cir. 2015).  If the CIRs were the only source from which relevant factual information provided to FedEx by the ISPs could be derived, Plaintiffs would be entitled, at the least, to the court's *in camera* review of the documents.  But a party is entitled to discovery of fact work product only when it "shows that it has substantial need for the material to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  FedEx represents that it has produced to Plaintiffs the factual information related to the wage and hour assessments, including pay and time records provided to FedEx by ISPs, FedEx's email communications with the ISPs related to compliance assessments, along with the notices of opportunity to cure and notices of compliance concern for the assessments it conducted before and after June 2019 (Dkt. No. 365 at 3, 4, 14).  Thus, FedEx has already produced to Plaintiffs the factual information received from the ISPs on which it bases its legal analyses, along with the conclusions resulting from those analyses and related communications.  Caselaw acknowledges that even factual material that is segregated from opinion work product is still likely to reveal some of an attorney's strategic thinking.  *See, e.g.,*

*Judicial Watch, Inc. v. United States Dep't of Justice*, 118 F. Supp. 3d 266, 272 (D.D.C. 2015).

Thus, a court should be cautious about ordering production of a document that includes core and

non-core work product.  Plaintiffs have not shown that they have substantial need for the factual

material in the post-June 2019 CIRs and related analyses.

        B.    <u>Attorney Client Privilege</u>

        FedEx also asserts that the attorney-client privilege shields the CIRs and associated

documents.  Because the court "finds that the challenged documents are protected from

disclosures under the work product doctrine . . . it is not necessary to determine whether the

documents also fall within the scope of the attorney-client privilege."  *Bryan Corp.,* 296 F.R.D.

at 34; *see also Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 608 n.12, 609 n.13

(D. Mass. 1992).

        IV.    Conclusion

        For the foregoing reasons, Plaintiffs' Motion to Compel FedEx's Production of

Compliance Investigation Reports and Associated Documents (Dkt. No. 339) is DENIED.

        It is so ordered.

Date:  October 27, 2023               /s/ Katherine A. Robertson_____
                                           KATHERINE A. ROBERTSON
                                           United States Magistrate Judge