UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-30116-KAR |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEMS, INC., | ) ) | |
| | ) | |
| Defendant. | | |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DECERTIFY
THE FLSA CONDITIONAL COLLECTIVE
(Dkt. No. 347)

ROBERTSON, U.S.M.J.

This Fair Labor Standards Act ("FLSA") collective action is before the court on the

motion of defendant FedEx Ground Package Systems, Inc. ("FedEx") to decertify the

conditionally certified collective.  The named plaintiffs in this putative collective action, Jordan

Roy and Justin Trumbull, who represent themselves and others who are allegedly similarly

situated (collectively, "Plaintiffs"), claim that Plaintiffs were jointly employed by FedEx and the

Plaintiffs' respective Independent Service Providers ("ISP") to deliver packages in

Massachusetts and that FedEx violated the FLSA by failing to compensate them for overtime.

Plaintiffs have opposed FedEx's motion for decertification (Dkt. No. 375).  The parties have

consented to this court's jurisdiction (Dkt. No. 9).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the reasons that follow, FedEx's motion is GRANTED.

I.      BACKGROUND

1

FedEx is a federally registered motor carrier that provides package pick-up and delivery services to business and residential customers throughout the United States (Dkt. No. 348-12 ¶¶ 4, 5).[1]  Under its current business model, FedEx contracts with ISPs who employ drivers to provide the last mile package pick-up and delivery services between FedEx stations and local residences or businesses (Dkt. No. 348-12 ¶ 5).

All ISPs operate under separate Independent Service Agreements ("Agreement") with FedEx (Dkt. No. 348-12 ¶ 8).  Each Agreement consists of the same base contract and various attachments, schedules, and amendments to the base contract that contain negotiated terms, including the amount FedEx will pay the ISP per stop, per pick-up, and per package, the daily service threshold, and the length of the Agreement (Dkt. No. 348-12 ¶¶ 8, 9; Dkt. No. 348-12 at 15-78; Dkt. No. 376-6 at 21).  FedEx and the ISPs also negotiate whether the ISPs will participate in FedEx's voluntary brand promotions programs and, if so, the amount the ISPs will receive as a bonus for their participation (Dkt. No. 348-12 ¶ 10).  In return for additional payments from FedEx, ISPs that join FedEx's brand promotion program display FedEx's logo on some or all of their vehicles and/or have their drivers wear FedEx-branded clothing (Dkt. No. 348-12 ¶ 10).

Each base contract states that the ISP is the drivers' employer and that the ISP "has discretion over how it operates its business and how it pays its employees with the caveat that the [ISP] must comply with federal, state, and local laws" concerning the payment of wages, required withholding, deductions, record keeping, and overtime (Dkt. No. 348-12 at 17 § 1.1(C), at 19 § 6.2, at 20 § 6.4; Dkt. No. 376-3 ¶ 5).  Under their contracts with FedEx, the ISPs agree to

---

[1] Citations to the page numbers in pleadings are to the numbers assigned by the court's ECF system except that deposition transcript pages are referenced by their transcript page numbers.

provide driver payroll and employment records on request to FedEx's compliance investigators who conduct random and targeted standardized assessments to determine whether the ISPs are complying with their obligations to follow the applicable wage and hour (and other) laws (Dkt. No. 348-12 ¶ 23; Dkt. No. 348-12 at 19 § 6.2(C) & (E); Dkt. No. 376-3 ¶¶ 6, 7, 8, 9; Dkt. No. 376-7 at 15).  Otherwise, FedEx does not possess or maintain payroll records for drivers working for ISPs (Dkt. No. 348-12 ¶ 24).

The compliance investigators produce a Compliance Investigation Report ("CIR") at the conclusion of the examination of an ISP if there is a concern about the ISP's compliance with the terms of the Agreement (Dkt. No. 376-7 at 26).  If an ISP fails to comply with the Agreement's wage and hour law requirements, including payment of overtime, or some other requirement in the Agreement, FedEx may issue a Notice of Compliance Concern or Notice of Opportunity to Cure (Pls. Ex. I).  FedEx can terminate an Agreement if an ISP fails to comply with its terms (Dkt. No. 348-12 at 19 § 6.2, at 27 § 15.3; Dkt. No. 376-5 at 101-02).

FedEx establishes the days of the week when the ISPs will perform package pick-up and delivery services according to an Agreement's detailed specifications (Dkt. No. 348-12 at 39 §§ 1, 2, at 43 §§ 1, 2, at 44-45 §§ 5, 6).  To provide the pick-up and delivery services, the ISPs agree that their drivers will use FedEx's "two-way cellular/satellite communication devices and certain associated equipment ('[s]canners') as the primary means of recording the Customer required signatures of recipients and tracking package location and status for Customers" (Dkt. No. 348-12 ¶ 27; Dkt. No. 348-12 at 25 § 9.2, at 45-46 § 8).  In addition to documenting the package delivery information for FedEx, as relevant here, the scanners record the following information ("scanner data") for each delivery driver: the date; the destination terminal; the vehicle number; the ISP's name; the on-duty (log-in) time; the dispatch or start time; the final stop time; the

return home time; and the off-duty (log-off) time (Dkt. No. 348-12 ¶ 29; Dkt. No. 376-38 ¶ 4).

The scanner data immediately uploads to servers maintained by FedEx (Dkt. No. 348-12 ¶ 28).

FedEx uses the drivers' on-duty and off-duty times to monitor compliance with the Department

of Transportation's hours of service regulations (Dkt. No. 348-12 ¶ 29). *See* 49 C.F.R. § 395.3.

A separate FedEx database, called the Vehicle Management System ("VMS"), contains the

vehicle numbers and the gross vehicle weight ratings ("GVWR") for the vehicles owned by

FedEx and the ISPs (Dkt. No. 348-9 ¶ 5; Dkt. No. 376-38 ¶ 8).

       In August 2017, named Plaintiffs, acting on behalf of themselves and other similarly

situated persons, brought a single claim against FedEx, their alleged joint employer, for unpaid

overtime pursuant to the FLSA (Dkt. No. 1). *See* 29 U.S.C. § 207(a)(1).  On November 27,

2018, this court conditionally certified a collective of similarly situated individuals who

delivered FedEx's packages in Massachusetts after February 19, 2015, using vehicles with

GVWRs of less than 10,001 pounds, who were paid by the ISPs to perform delivery services on

FedEx's behalf, and who were not paid overtime compensation for all hours worked over forty

each week. *See Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 72 (D. Mass.

2018).  The court authorized the issuance of notices to potential members of the proposed

collective. *See id.* at 76.  Approximately 554 opt-in plaintiffs submitted consent forms affirming

that they drove a vehicle with a GVWR under 10,001 pounds, worked more than forty hours per

week, but "to the best of [their] knowledge" were not paid overtime for the hours that exceeded

forty hours in a workweek (Dkt. Nos. 85-1, 87-1, 88-1, 89-1, 90-1, 91-1, 96-1).  Those opt-ins

were hired by approximately 160 ISPs and operated out of some twenty-four different FedEx

stations in Massachusetts (Dkt. No. 348-12 ¶ 7).  The parties agreed on the format and content of

a questionnaire that was completed by the named Plaintiffs and fifty opt-ins that FedEx selected

(Dkt. No. 118; Dkt. No. 121; Dkt. No. 375 at 27).  The named Plaintiffs and about twenty opt-ins were deposed (Dkt. No. 375 at 27).  As a result of the court's rulings and other previously filed motions, 434 opt-in plaintiffs remain in the collective (Dkt. No. 375 at 11 n.1).  FedEx now moves for decertification of the collective (Dkt. No. 347).

II.   LEGAL STANDARDS

A.   FLSA collective actions

Under the FLSA, "similarly situated employees may sue collectively for violations of the rule requiring employers to pay overtime compensation to employees who work more than 40 hours per week." *Venegas v. Glob. Aircraft Serv., Inc.,* 159 F. Supp. 3d 93, 106 (D. Me. 2016) (citing 29 U.S.C. §§ 207, 216(b)).  The parties agree that Plaintiffs have the burden of showing, by a preponderance of the evidence, that the members of the collective are similarly situated. *See id.*; *Scovil v. FedEx Ground Package Sys., Inc.,* 886 F. Supp. 2d 45, 57 (D. Me. 2012). Although "that term is neither defined by statute nor elucidated by precedent within this Circuit" district courts in the First Circuit generally have applied a three-factor test that considers: "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which plaintiffs may be subjected on an individual basis; and (3) the degree of fairness and procedural impact of decertification." *Venegas,* 159 F. Supp. 3d at 106.  "[T]he collective-action framework presumes that similarly situated employees are representative of each other and have the ability to proceed to trial collectively." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 409 (6th Cir. 2017).  The FLSA's standard for final certification is less stringent than Fed. R. Civ. P. 23's standard for certifying a class action. *See Roy,* 353 F. Supp. 3d at 60.  "[T]he [FLSA's] requirement is that the plaintiffs be 'similarly situated,' not identical." *Scovil,* 886 F. Supp. 2d at 57.  "If the [class members] are similarly situated, the district court allows the representative

action to proceed to trial.  If not, the district court decertifies the class, dismisses without

prejudice the opt-in plaintiffs, and allows the class representative[s] to proceed to trial on [their]

individual claims." *Arnold v. DirecTV, LLC,* Case No. 4:10-CV-352-JAR, 2017 WL 1251033, at

*2 (E.D. Mo. Mar. 31, 2017) (first alteration in original).  "'Generally . . . courts have found that

similarly situated employees have similar (not identical) job duties and pay provisions, and are

victims of a common policy or plan that violated the law.'"  *Venegas*, 159 F. Supp. 3d at 106

(alteration in original) (quoting *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me.

2010) (internal citations and quotations omitted)).

    B.    <u>The Motor Carrier Act exemption to the FLSA and the Technical
Corrections Act exception</u>

In addition to evidence that FedEx was a joint employer whose employees worked more

than forty hours in a workweek and were not adequately compensated, in the instant case,

FedEx's possible liability for an FLSA violation will depend on proof that the employees drove

vehicles with GVWRs of less than 10,001 pounds ("light vehicles").  *See Roy,* 353 F. Supp. 3d at

72.  This is because an employee who works more than forty hours a week but drives a vehicle

with a GVWR of more than 10,000 pounds ("heavy vehicles") is exempt from the FLSA's

overtime protection under the Motor Carrier Act ("MCA") exemption.  *See Carley v. Crest

Pumping Techs., LLC,* 890 F.3d 575, 579 (5th Cir. 2018).  To further complicate matters, the

SAFETEA-LU Technical Corrections Act of 2008 ("TCA") exception to the MCA exemption

provides that an employee is covered under the FLSA overtime provisions if the employee works

"in whole or in part" driving a light vehicle.  *See* SAFETEA-LU Technical Corrections Act of

2008, Pub. L. No. 110-244, § 306(a), (c), 122 Stat. 1572, 1621 (2008); *O'Brien v. Lifestyle

Transp., Inc.,* 956 F. Supp. 2d 300, 305 (D. Mass. 2013).  "'The phrase "in whole or in part"

included in the [TCA] means an employee who performs . . . duties involving [light] vehicles for

the entire week or part of the week must receive overtime pay for hours worked over 40 in that workweek.'" *Roche v. S-3 Pump Serv., Inc.*, 154 F. Supp. 3d 441, 446 (W.D. Tex. 2016) (citation omitted).  In addition, where an employer has a mixed fleet of vehicles, "in whole or in part" has been interpreted to mean that the TCA exception applies to an employee who operates vehicles with GVWRs of 10,001 pounds or less more than a *de minimis* amount of time during his tenure with that employer.  *See Berry v. Best Transp., Inc.,* Case No. 4:16-cv-00473-JAR, 2018 WL 6830097, at *6-7 (E.D. Mo. Dec. 17, 2018) (collecting cases); *Childress v. Ozark Delivery of Mo. LLC*, 95 F. Supp. 3d 1130, 1137 (W.D. Mo. 2015).

III.    DISCUSSION

FedEx moves for decertification on the grounds that there is no common policy or practice that has led to the same or similar law-violating wage practices of the ISPs that employ the plaintiff drivers and that liability and damages will have to be individually proved because Plaintiffs' hours, wages, and delivery vehicles varied depending on which of the ISPs employed them (Dkt. No. 347 at 49-56).  FedEx further claims that it is entitled to assert individualized defenses against each Plaintiff and that fairness and procedural considerations weigh against maintaining a collective action (Dkt. No. 347 at 56-66, 68-69).

Plaintiffs argue that whether FedEx is Plaintiffs' joint employer is an issue common to the collective that can be proved by common or representative evidence, and for this reason, FedEx's decertification motion should be denied so that the joint employer issue can be resolved on a collective basis (Dkt. No. 375 at 31-41).  Plaintiffs further contend that even if the court finds that the joint employer issue on its own is not sufficient to maintain the collective, there is representative evidence that can be used to show that all collective opt-ins were similarly situated in that they worked overtime for which they were not appropriately compensated, and that

FedEx's defenses to Plaintiffs' contentions are based on common evidence (Dkt. No. 375 at 42-49).

A.      The common issue of joint employer status does not warrant proceeding on a collective basis.

"The existence of the FLSA cause of action . . . is dependent on a threshold finding that [p]laintiffs are employees of [defendant] under the FLSA." *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 389 (D. Mass. 2016), *aff'd,* 879 F.3d 407 (1st Cir. 2018); 29 U.S.C. § 216(b).  As Plaintiffs point out, there are courts that have held, at least in part, that, when plaintiffs proceed on a joint employer theory, the threshold question of whether a defendant is a joint employer is a sufficient basis for proceeding with an FLSA action on a collective basis.

Plaintiffs' lead case standing for this proposition is *Harris v. Med. Transp. Mgmt, Inc.,* Case No. 17-cv-01371 (APM), 2021 WL 3472381 (D.D.C. Aug. 6, 2021), *remanded on other grounds,* 77 F.4th 746 (D.C. Cir. 2023), *cert. denied,* No. 23-658, 2024 WL 674822 (Feb. 20, 2024).  The defendant in *Harris*, Medical Transportation Management, Inc. ("MTM"), was a private business that contracted with the District of Columbia to "'manage and administer' non-emergency medical transportation ('NEMT') services for the District's Medicaid recipients."  *Id.* at *1.  "MTM [did] not employ drivers directly to deliver NEMT services; rather it contract[ed] with dozens of transportation service providers ('TSPs') that employ[ed] the drivers."  *Id.*  The named plaintiffs were drivers for various TSPs who brought a collective action under the FLSA to recover unpaid wages from MTM, which, they argued, was their joint employer.  *Id.*  On the facts, *Harris* is very similar to the instant case.

*Harris* adopted a test articulated by the Ninth Circuit in *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114-16 (9th Cir. 2018), for determining whether plaintiffs were similarly

situated for FLSA purposes.  *See Harris,* 2021 WL 3472381, at *4.  The *Campbell* court rejected the majority approach to the FLSA's similarly situated requirement, which has been called the ad hoc test, and which calls for "a flexible inquiry into the factual differences between the party plaintiffs and desirability of collective treatment."  *Campbell,* 903 F.3d at 1113.  While the First Circuit has not taken a position, district courts in this circuit have employed the so-called ad hoc test to decide whether FLSA plaintiffs are similarly situated.  *See, e.g., Roberts v. TJX Cos.*, Civil Action No. 13-cv-13142-ADB, 2017 WL 1217114, at *3 (D. Mass. Mar. 31, 2017) (quoting *Trezvant v. Fid. Emp'r Servs. Corp.* 434 F. Supp. 2d 40, 45 (D. Mass. 2006)).

Under *Campbell*, "in deciding whether to decertify, the court primarily asks whether plaintiffs are 'alike with regard to some material aspect of their litigation.'"  *Harris,* 2021 WL 3472381, at *4 (quoting *Scott v. Chipotle Mexican Grill, Inc.,* 954 F.3d 502, 516 (2d Cir. 2020); *Campbell,* 903 F.3d at 1114).  Applying the *Campbell* standard, the *Harris* trial court held that certification of the collective was appropriate because the plaintiffs were alike in seeking a ruling on whether MTM was their joint employer, and the question was material to the disposition of their claims.  *See id.* at *4-7.  The *Harris* trial court noted that if the collective was certified for purposes of resolving the joint employment issue and if the plaintiffs were unsuccessful, the case would end.  *See id.* at *5.  If the plaintiffs showed that MTM was the plaintiffs' joint employer, liability and damages would require "'trial individually or in small groups of plaintiffs.'"  *Id.* at *4.

Plaintiffs have also pointed to *Talarico v. Pub. P'ships, LLC,* CIVIL ACTION NO. 17-2165, 2022 WL 1524109 (E.D. Pa. May 12, 2022), and *Ludlow v. Flowers Foods, Inc.,* Case No.: 18cv1190-JO-JLB, 2023 WL 2534618 (S.D. Cal. Mar. 15, 2023), in which the courts also found that the question of joint employment could be proved or disproved with common

evidence and denied decertification on that basis, at least in part. *See Talarico*, 2022 WL 1524109 at *8; *Ludlow*, 2023 WL 2534618, at *4. In *Talarico*, the court also pointed to the fact that the defendant paid all of the plaintiffs under a uniform policy, *see Talarico*, 2022 WL 1524109, at *11-12; in *Ludlow*, the court also identified as a common material issue whether the plaintiffs were properly classified and paid as independent contractors. *See Ludlow*, 2023 WL 2534618, at *4-5.

The other cases on which Plaintiffs rely, *Espinal v. Bob's Discount Furniture, LLC,* Civil Action No. 17-2854 (JMV) (JBC), 2020 WL 6055123 (D.N.J. Oct. 14, 2020); and *Spencer v. FedEx Ground Package Sys., Inc.,* No. 14-2-30110-3 SEA, 2016 WL 11769800 (Wash. Super. Jan. 14, 2016), addressed the plaintiffs' requests for class certification under Federal Rule of Civil Procedure 23. In *Espinal*, the plaintiffs were paid by carriers who entered into agreements with defendant XPO Last Mile, Inc. ("XPO"). *Espinal,* 2020 WL 6055123, at *1. The plaintiffs claimed that they were joint employees of all of the defendants, were not independent contractors, and had not been paid overtime to which they were entitled under New Jersey law. *See id.* at *1-2. The defendants agreed that the plaintiffs were not independent contractors and that the relevant question was whether they were joint employers. *See id.* at *5. The court held that commonality was satisfied as to this question because the agreements between XPO and the carriers who paid the plaintiffs were virtually identical such that "Defendants [were] either joint employers of *all* potential class members, or they [were] not joint employers of any class member." *Id.* In *Spencer*, the plaintiffs delivered packages for FedEx but were paid by contracted service providers, each of which had entered into a standard operating agreement with FedEx. *Spencer*, 2016 WL 11769800, at *1. The plaintiffs, asserting claims under Washington state law, claimed that FedEx was their joint employer and that they had not been paid overtime

10

or been provided with meal and rest breaks required by state law.  *See id.*  The court found that

"the common joint employer issue predominates over any individualized issues" which could be

addressed through subclasses or other methods.  *Id.* at *4.

For its part, FedEx points to numerous cases, including recent cases involving FedEx, in

which courts have held that, in the absence of evidence of a common policy or practice that

resulted in the claimed FLSA violations, a proposed collective is not similarly situated for

purposes of the FLSA.  *See, e.g., Oglesby v. FedEx Ground Package Sys., Inc.*, Case No. 3:20-

cv-346, 2023 WL 4740160, at *4 (S.D. Ohio July 25, 2023) (declining to conditionally certify a

collective because the court found no evidence of a common FLSA-violating policy by FedEx or

that the drivers' overtime claims were unified by a common theory of FedEx's statutory

violations); *Nelson v. FedEx Ground Package Sys., Inc.*, Civil Action No. 18-cv-01378-RM-

NYW, 2018 WL 6715897, at *8 (D. Colo. Dec. 21, 2018), *Report & Recommendation adopted*,

2019 WL 14377675 (Feb. 8, 2019) (recommending against initial certification in an FLSA case

where the plaintiff's declarations did not show a single decision, policy, or plan affecting

Plaintiff's pay that was undertaken by FedEx); *see also, e.g., Emonds v. Amazon.com, Inc.*,

CASE NO. C19-1613JLR, 2020 WL 5993908, at *6 (W.D. Wash. Oct. 9, 2020) (applying the

*Campbell* test; declining to preliminarily certify an FLSA collective because the plaintiff had not

plausibly alleged a common plan or policy by Amazon.com that violated the FLSA); *Gibbs v.*

*MLK Express Servs., LLC*, Case No.: 2:18-cv-434-FtM-38MRM, 2019 WL 2635746, at *8, *10

(M.D. Fla. June 27, 2019) (denying conditional certification; "even if the [c]ourt ultimately

determined Amazon is a joint employer, it would still need to examine every DSP's payment

scheme individually for FLSA violations").

So far as this court has been able to determine, the *Harris* case is the only one in which a court has certified an FLSA collective solely on the question of whether the defendant was the plaintiffs' joint employer.  In each of the other cases cited by Plaintiffs, the court referred to some additional evidentiary basis, such as misclassification, a standard operating agreement, or some other uniform payroll policy or practice, that might support a finding that the alleged joint employer could be held responsible for an FLSA violation that affected all members of the proposed collective in a very similar, if not identical, fashion.

Other cases are to the same effect.  For example, in *Zavala v. Wal Mart Stores, Inc.,* 691 F.3d 527 (3d Cir. 2012), the Third Circuit stated that "[b]eing similarly situated . . . means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."  *Id.* at 538.  "'General allegations of an overarching employer policy "are insufficient, and plaintiffs are required to produce substantial evidence of a single decision, policy, or plan."'"  *White v. 14051 Manchester, Inc.,* 301 F.R.D. 368, 374 (E.D. Mo. 2014) (quoting *Martin v. Citizens Fin. Grp., Inc.,* Civil Action No. 10–260, 2013 WL 1234081, at *3 (E.D. Pa. Mar. 27, 2013)); *see also, e.g., Norceide v. Cambridge Health All.,* Civil Action No. 10-11729-NMG, 2014 WL 775453, at *4 (D. Mass. 2014) ("plaintiffs have not presented sufficient evidence of a corporate policy to require work without pay that would render class-wide resolution appropriate").  Indeed, in the *Campbell* case, in which the Ninth Circuit announced its similarly situated test, the court upheld the decertification decision because, while there was evidence, on an individual basis, that some plaintiffs had been discouraged from collecting overtime, the plaintiffs had failed to point to evidence that would show that the defendant fostered or tolerated "a uniform policy against reporting small amounts of overtime." *Campbell*, 903 F.3d at 1120-21.

Even if the evidence on which Plaintiffs rely might be sufficient to establish that some or all of them were denied some measure of overtime pay, it does not show a common policy or practice imposed or endorsed by FedEx that resulted in the alleged failures to pay overtime. There is no dispute that FedEx and the ISPs are distinct organizations and that the ISPs hired and paid the drivers. Plaintiffs have not pointed to evidence showing that FedEx controlled the choices ISPs made in how to compensate drivers.  As noted above, numerous courts have declined to conditionally certify FLSA collectives in the absence of such evidence.  *See, e.g., Nelson,* 2018 WL 6715897, at *5 ("Neither the [p]laintiff nor the court's independent research has identified an analogous situation that resulted in certification absent allegations establishing the defendant's participation in plaintiffs' compensation decisions, policies, or plans."); *see also Oglesby*, 2023 WL 4740160, at *4 ("Plaintiff[s] . . . , who according to their declarations worked directly for their ISPs, have presented no evidence that FedEx had any involvement in how the Ohio ISP delivery drivers were compensated or that any FedEx policy, plan or decision affected the drivers' alleged failure to receive overtime payments as required under the FLSA.").  The Agreements gave the ISP owners the discretion to determine driver hours and pay within the bounds of applicable laws (Dkt. No. 348-12 at 19-20, §§ 6.2 & 6.4).  ISP owners and authorized officers have indicated that FedEx was not involved in making their wage and hour decisions (*see, e.g.,* Dkt. No. 348 ¶¶ 1, 8; Dkt. No. 348-2 ¶¶ 1, 6; Dkt. No. 348-3 ¶¶ 1, 13, 14; Dkt. No. 348-10 ¶¶ 1, 10, 11).  *See Avila v. SLSCO, Ltd.*, Civil Action No. 3:18-cv-00426, 2022 WL 784062, at *10 (S.D. Tex. Mar. 15, 2022), *Report & Recommendation adopted,* CIV. ACTION NO. 3:18-cv-00426, 2022 WL 980273 (S.D. Tex. Mar. 31, 2022) ("Although there is certainly a common theme among the class members' allegation – that [defendant] and its subcontractors . . . failed to pay them – Plaintiffs have presented no evidence that [defendant] had any say in . . . its

subcontractors['] . . . pay practices."); *Nelson,* 2018 WL 6715897, at *7 (there is "no contractual provision in the [ISP agreements] that demonstrates that FedEx has a direct role in the compensation, decisions, policies, or plans of its ISPs leaving no factual basis . . . allowing this court to conclude that FedEx dictates the compensation scheme of their ISPs, even if it is consistent across those ISPs."). *Compare Ward v. Express Messenger Sys., Inc.,* Civil Action No. 17-cv-02005-NYW, 2018 WL 1604622, at *5-6 (D. Colo. Apr. 3, 2018) (defendants exercised direct control over employee pay); *Hose v. Henry Indus., Inc.,* 49 F. Supp. 3d 906, 918 (D. Kan. 2014) (allowing conditional certification where defendant, which used third party intermediaries to employ drivers, "maintain[ed] a uniform method for compensating drivers").

FedEx also points out that Fed. R. Civ. P. 23(c)(4) provides that when appropriate, an "action may be brought or maintained as a class action with respect to particular issues," while the FLSA does not include any comparable issue certification provision. There is some authority suggesting that a court should be cautious about certifying an FLSA collective with respect to a particular issue. *See Harris*, 77 F.4th at 765 (the decision on whether the certify an FLSA collective "is not an issue-specific action . . . . The collective action covers all identified FLSA issues as a group, not issue by issue"); *see also Arnold*, 2017 WL 1251033, at *7 (distinguishing a class action case from an FLSA case "[b]ecause there is no procedural mechanism under the FLSA to certify a class only as to particular issues").

Even if the *Campbell* test is the correct approach, and even if Plaintiffs can prevail on the joint employment question by representative or common evidence, they will only reach the "starting line," *Martinez v. FedEx Ground Package Sys., Inc.,* Civ. No. 20-1052 SCY/LF, 2023 WL 7114678, at *17 (D.N.M. Oct. 27, 2023), by showing that FedEx was their employer. Such evidence would not tend to show that members of the provisional collective are similarly situated

with respect to a consistent decision, policy, or practice that caused them to be deprived of overtime pay.  With all due respect, the court is persuaded by the superior weight of authority that is inconsistent with *Harris*.  Where Plaintiffs have not produced evidence of a consistent decision, policy, or practice resulting in an alleged FLSA violation, the contention of joint employer status capable of being proved by common evidence is not a sufficient basis for proceeding on a collective basis.  Accordingly, the court turns to Plaintiff's fall-back contentions.

      B.     Whether there is reliable common or representative evidence.

Plaintiffs further defend maintaining the provisional collective certification on the ground that they can rely on common evidence – the scanner data – to show when drivers worked overtime, along with testimony from a representative sample of Plaintiffs who will testify that they were denied overtime pay.  They say that FedEx's defenses to this evidence – essentially, that the evidence is so variable and unreliable that it is not sufficient to prove Plaintiff's claims – are themselves based on common evidence, and, finally, to the extent there are gaps in the record, those gaps must be held against FedEx, which, as an employer, was obligated to maintain accurate wage and hour records (Dkt. No. 375 at 42-48).  The court is not persuaded that Plaintiffs have met their burden of showing that Plaintiffs are similarly situated such that their claims can be tried by common or representative evidence.

Merely "asserting that [defendant's] failure to provide overtime compensation qualifies as a common theory of FLSA violations sweeps with too broad a stroke."  *Lockhart v. D&S Residential Servs., LP*, Case No. 2:18-cv-02586-JPM-cgc, 2020 WL 4717910, at *9 (W.D. Tenn. Aug. 13, 2020).

> The efficiencies gained by collective actions would . . . be lost if the [c]ourt were to allow all individuals who suffered FLSA violations at the hands of [a defendant] to join in a collective action on the sole basis that they were deprived

of overtime compensation; it would unnecessarily join together disparate
individual experiences under a common umbrella of FLSA violations.

*Id.  See Creely v. HCR ManorCare, Inc.,* 920 F. Supp. 2d 846, 856 (N.D. Ohio 2013) (individual

FLSA violations, alone, do not make plaintiffs similarly situated).

> 1.     Plaintiffs have not identified reliable common or representative
>        evidence of an FLSA violation.

As Plaintiffs acknowledge, if the court declines to affirm the collective solely on the

question of FedEx's status as a joint employer, then, to defeat FedEx's motion, Plaintiffs need to

show that representative evidence can be used to prove the elements of their claims (Dkt. No.

375 at 42), which are that they worked more than forty hours in a workweek, drove light vehicles

for the required amount of time, and were not paid at least 1.5 times their regular rate of pay

computed based on an hourly rate.  *See* 29 C.F.R. § 778.109.  In an FLSA case, "[i]t is well

established that not all employees need testify in order to prove the violations or to recoup back

wages.  Rather, the [plaintiff] can rely on testimony and evidence from representative employees

to meet the initial burden of proof requirement."  *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792

(1st Cir. 1991).  *See Falcon v. Starbucks Corp.,* 580 F. Supp. 2d 528, 540 (S.D. Tex. 2008)

("Courts have allowed the use of representative testimony in cases involving allegations of

unpaid overtime.") (collecting cases).  Representative evidence may take a variety of forms,

including, where appropriate, statistical analysis, testimony based on employee memories,

payroll or other time-keeping records, including informal or personal records, or estimates based

on the duties performed by employees.  "[A]ny method that enables the trier of fact to draw a

'just and reasonable' inference concerning the amount of time" opt-in employees worked will

suffice.  *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (citing *Urnikis-

Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 669 & N.2 (7th Cir. 2010)).

Perhaps because Plaintiffs have not identified a common policy or practice resulting in the alleged widespread failure to pay overtime, their claims of reliable representative evidence fall short.  Plaintiffs' testimony in discovery calls into question their ability to rely on scanner data as reliable or as representative.  The named Plaintiffs and some opt-ins testified that the scanner data did not accurately reflect their compensable time (Dkt. No. 348-16 at 135-38; Dkt. No. 349-7 at 160-61; Dkt. No. 349-11 at 127-28, 211-12; Dkt. No. 349-15 at 114, 223-25). According to some deponents, the data was purportedly inaccurate because entries were missing or log-in or log-off times were wrong (Dkt. No. 348-15 at 156-58, 168-69, 179; Dkt. No. 348-16 at 183-84, 187-88; Dkt. No. 348-19 at 105-07; Dkt. No. 349-7 at 176-77, 194-95; Dkt. No. 349-17 at 61), or because deposed Plaintiffs loaded their trucks before they logged onto their scanners and/or performed work tasks after they logged off their scanners (Dkt. No. 348-15 at 180-82; Dkt. No. 348-18 at 36, 45, 56-57, 71, 81; Dkt. No. 348-21 at 40; Dkt. No. 349 at 69-70; Dkt. No. 349-2 at 95; Dkt. No. 349-7 at 83-85; Dkt. No. 349-9 at 125-26; Dkt. No. 349-13 at 196-97).  In addition, comparing the scanner data to the time recorded on time sheets and other methods that ISPs used to record compensable time sometimes shows inconsistencies (*compare* FedEx Ex. 181-A & B (time sheets and pay stubs for March 1, 2020 to March 7, 2020 showing times in and times out and compensation for 71 hours) *with* scanner data at Dkt. No. 350-15 (scanner data at 29 showing different on-duty and off-duty times for the same period).

To the extent Plaintiffs claim that badge swipe data will fill in gaps and show that employees whose overtime hours are not confirmed by scanner data will be confirmed by badge swipe data (Dkt. No. 375 at 42), this contention is about evidence that is not before the court. Plaintiffs' reliance on such untested evidence tends to confirm that, after some five years of discovery, Plaintiffs have not been able to identify reliable representative evidence that could be

used to establish the fact or extent of liability for unpaid overtime across the collective on a reasonably reliable basis.  *See Martinez*, 2023 WL 7114678, at *9.  While Plaintiffs contend that "it is simple to determine from FedEx's own records when drivers worked overtime" (Dkt. No 375 at 42), they have not presented a method for doing so.

Plaintiffs' reliance on *Hargrove v. Sleepy's LLC,* No. 22-2040, 2023 WL 3943738 (3d Cir. June 12, 2023) *(Hargrove II),* to support their contention that the scanner data (or badge swipe data) is reliable common evidence of hours worked is misplaced (Dkt. No. 375 at 42-43). In *Hargrove II* the district court certified a class of drivers who proposed to prove that they worked uncompensated overtime by common evidence derived from gate logs, manifests, and scanner data showing the duration of drivers' routes, and class members' testimony about their hours.  *See id.* at *3.  There is no indication in *Hargrove II* that the driver-plaintiffs disputed the reliability of the scanner and related data on which they proposed to rely.  *See id.*  Moreover, the class certification was limited to the issue of liability on the common question of whether the defendant had misclassified the drivers, "leaving the assessment of damages for future individual proceedings."  *Id.* at *1.  Here, according to Plaintiffs, "there will be no need for individualized trials" (Dkt. No. 375 at 13).

Similarly, the evidence developed in discovery shows wide disparities in pay practices. The named Plaintiffs were paid per stop (Dkt. No. 349-11 at 74-75; Dkt. No. 349-15 at 133-34, 151).  Although some discovery opt-ins testified that they were paid per hour (Dkt. No. 348-23 at 68-69; Dkt. No. 349-8 at 62), others reported that they were paid per package (Dkt. No. 376-39 at 52 [Dep. page 27]; Dkt. No. 376-39 at 74-75 [Dep. pages 182-83]).  Some discovery opt-ins stated that they were paid a flat daily rate (Dkt. No. 350-1 at 9; Dkt. No. 350-14 at 4, 9), or a flat weekly rate (Dkt. No. 348-20 at 38-39; Dkt. No. 349-12 at 44), or a combination of those rates

(*see, e.g.,* Dkt. No. 352-18 at 4).  Some ISPs paid their drivers overtime (Dkt. No. 348-23 at 40;

Dkt. No. 349-8 at 60; Dkt. No. 349-12 at 109 (from 2019 to 2021); Dkt. No. 350-15 at 9), and

some paid bonuses (*see, e.g.,* Dkt. No. 348-24 at 173; Dkt. No. 349-18 at 4; Dkt. No. 350-17 at

4; Dkt. No. 351-3 at 4).  Opt-in Plaintiffs who were deposed testified that they lacked personal

knowledge of other drivers' pay and the different ISP pay practices (Dkt. No. 348-15 at 100-01;

Dkt. No. at 348-17 at 150; Dkt. No. 348-21 at 60; Dkt. No. 349-7 at 116; Dkt. No. 349-14 at 255;

Dkt. No. 349-15 at 63-64).  Plaintiffs have not sought to show that any particular pay practice

predominated, nor have they explained how they can overcome these disparities with reliable

evidence common to the collective to establish liability or damages.  *See Howard v. Securitas

Sec. Servs. USA, Inc.*, Nos. 08 C 2746, 09 C 3633, 2013 WL 1337150, at *4 (N.D. Ill. Mar. 28,

2013) (holding that evidence from an unrepresentative sample of a class cannot support an

inference about the pay rates of the larger group) (quoting *Espenscheid*, 705 F.3d at 775).

The FedEx CIRs appear to show that FedEx frequently identified potential FLSA

violations by ISPs, but, again, Plaintiffs have not shown how they would use this evidence at

trial to establish liability or damages across the collective (Dkt. No. 375 at 45).  The bald

assertion that an employer fails to provide overtime, without identifying either a unifying policy

or practice or common or representative evidence that can be relied on to establish liability and

damages to a reasonable degree of certainty, is not enough to justify proceeding on a collective

basis.  *See Lockhart*, 2020 WL 4717910 at *9; *Creeley*, 920 F. Supp. 2d at 856.

The MCA exemption and the TCS exception present a further hurdle to common or

representative evidence of an FLSA violation.  To invoke the MCA exemption as a defense,

FedEx would be required to show that Plaintiffs are exempt from the FLSA's overtime

requirements under the MCA because they drove heavy trucks.  *O'Brien,* 956 F. Supp. 2d at 304

19

(quoting *DeJesus-Rentas v. Baxter Pharmacy Servs. Corp.,* 400 F.3d 72, 74 (1st Cir. 2005)).  To

salvage FLSA claims of Plaintiffs to whom the MCA exemption applies, Plaintiffs would be

required to show that opt-ins who drove heavy trucks drove vehicles with GVWRs of less than

10,001 pounds during a workweek and, therefore, were covered by the TCA's small vehicle

exception to the MCA for at least part of the time.  *See Noll v. Flowers Foods Inc.*, 442 F. Supp.

3d 345, 362 (D. Me. 2020) ("Although [d]efendants have demonstrated application of the MCA

exemption on undisputed evidence, Plaintiffs may still avail themselves of relief under the FLSA

to the extent they can prove that a portion of their interstate transportation activity takes place in

personal[] vehicle[s] that weigh 10,000 pounds or less."); *Garcia v. Vasilia*, Civil Action H-17-

1601, 2019 WL 3500564, *2 (S.D. Tex. Aug. 1, 2019) (after the defendant satisfies its burden of

showing the MCA exemption applies, plaintiffs "bear the burden of proving that the [TCA]

applies to require overtime notwithstanding the MCA Exemption.").

Plaintiffs have attempted to resolve this issue by dismissing opt-ins who indisputably

drove light vehicles less than one percent of the time for their employers (Dkt. No. 375 at 27

n.33).  Evidence developed in discovery, however, shows meaningful disparities in the GVWRs

of the vehicles driven by remaining Plaintiffs.[2]  Some remaining Plaintiffs' data indicated that

they rarely, if ever, drove light vehicles (*see, e.g.,* Dkt. No. 352-21 at 3, 4, 8, 12, 16-33), while

others mostly drove light vehicles (*see, e.g.,* Dkt. No. 352-20 at 3, 4, 9-14).  Although the named

Plaintiffs always drove light vehicles while they were employed by a particular ISP (Dkt. No.

352-13 at 17 ¶¶ 2, 3, at 23-28; Dkt. No. 353 at 17-18 ¶¶ 2, 3, at 24-28), other Plaintiffs had short

---

[2] There is "summary data" for the opt-in Plaintiffs who participated in discovery.  The summary
data document combines the opt-in's scanner data, including log-in and log-off times, with the
GVWR data from the VMS showing the GVWR, if known, of the vehicles the opt-in drove on
specific dates (Dkt. No. 348-13 ¶ 6).

periods of consistent light vehicle use interspersed with long periods of heavy vehicle use while employed by the same ISP (*see, e.g.,* Dkt. No. 352-1 at 3, 4, 18-35 (light vehicle 20% of the time and heavy vehicle 80% of the time); Dkt. No. 352-14 at 3, 4 (light vehicle 45% of the time and heavy vehicle 55% of the time)).  Plaintiffs' use of light vehicles varied from ISP to ISP and within the same ISP.  Some ISP fleets had both light and heavy vehicles with a predominance of heavy vehicles (Dkt. No. 348-5 ¶ 6 (3 of 30 vehicles were light); Dkt. No. 348-10 ¶ 7 (4 of 37 vehicles were light)).  Some opt-ins who worked for ISPs with fleets of heavy and light vehicles indicated that they drove almost all light vehicles, while others stated that they drove almost all heavy vehicles (*compare* Dkt. No. 351-12 at 3, 4 *with* Dkt. No. 349-23 at 3, 4).

There are gaps in the GVWR data that further complicate resolution of the MCA-TCP issue based on representative evidence.  Because some ISPs did not own light vehicles, light vehicles their drivers used, if any, were rented (Dkt. No. 348-1 ¶ 17; Dkt. No. 348-7 ¶ 4; Dkt. No. 348-8 ¶ 4).  FedEx's VMS reports showed the GVWRs of the rental vehicles as "unknown" (Dkt. No. 348-9 ¶¶ 5, 6, 7).  Vehicles were listed in the VMS as having unknown weights if they were rented or if the ISP that owned the vehicle did not enter its GVWR in VMS (Dkt. No. 348-9 ¶¶ 6, 7; Dkt. No. 348-12 ¶ 32).  According to FedEx's VMS data, more than 90% of the opt-ins drove vehicles of unknown weights at some time (Dkt. No. 348-13 ¶¶ 9, 10, 11).  The collective includes drivers who drove trucks with an unknown weight based on Plaintiffs' assumption, justified on the basis of FedEx's burden of proof under the MCA, that trucks of unknown weight should be treated as light vehicles (Dkt. No. 375 at 27 n.33).

Regardless of who has the burden of proof, it appears from this record that there is no source of common or representative data to establish to whom the MCA defense applies and, if it applies, whether the FLSA's TCA exception applies for at least some period of time.  At least

one district court in this circuit has decertified an FLSA collective action on the ground that "[p]laintiff . . . failed to demonstrate that the TCA exception to the MCA defense – the issue for which [p]laintiff bears the burden – is anything other than thoroughly individualized." *Noll*, 478 F. Supp. 3d at 66–67.

The myriad differences among the opt-in Plaintiffs who participated in discovery, it is fair to assume, are replicated across the large group of opt-ins who were not designated by either party to participate in discovery. Plaintiffs, who have the burden of proof by a preponderance of the evidence, have not shown that they can present common or representative evidence to establish that they "worked more than forty hours per week (for liability purposes), how many hours over forty [P]laintiffs worked (for damages purposes), [or] how many drivers were paid (to show they were not paid overtime)." *Martinez*, 2023 WL 7114678, at *4.

 2. Shifting the burden of proof to FedEx.

Lacking representative proof on liability (and damages), Plaintiffs depend to a significant extent on the principle announced in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946), and on *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016), arguing that, if it is determined that FedEx is a joint employer of the drivers, then FedEx "cannot prevail or defeat certification based on its failure to keep accurate payroll records" (Dkt. No. 375 at 46).

*Mt. Clemens* states, in pertinent part, that a plaintiff:

 has carried out his burden if he proves that he has in fact performed work for
 which he was improperly compensated and if he produces sufficient evidence to
 show the amount and extent of that work as a matter of just and reasonable
 inference. The burden then shifts to the employer to come forward with evidence
 of the precise amount of work performed or with evidence to negative the
 reasonableness of the inference to be drawn from the employee's evidence. If the
 employer fails to produce such evidence, the court may then award damages to
 the employee, even though the result be only approximate.

*Mt. Clemens*, 328 U.S. at 687-88.  In *Tyson*, the plaintiffs worked in a pork processing plant and were not paid for the time it took to don and doff protective clothing.  *See Tyson*, 577 U.S. at 447.  Tyson had not kept records of donning and doffing time.  *See id.* at 450.  Relying on *Mt. Clemens*, the *Tyson* Court held that the trial court had not erred when it permitted the plaintiffs to rely on representative evidence, consisting of employee testimony, video recordings, and a statistical study performed by an industrial relations expert, to establish the damages owed to Tyson employees who had opted into an FLSA collective, including those who did not testify, as long as the evidence established that the non-testifying members of the class suffered the same harm as a result of the same unlawful decision.  *See id.* at 455-56.  In *DeSisto*, 929 F.2d at 789, the First Circuit held that the initial burden of the party seeking to establish the extent of unpaid overtime when an employer has failed to keep adequate employment records was "minimal," though "not nonexistent."  *Id.* at 793.  *See also Pineda v. Skinner Servs., Inc.*, Civil Action No. 16-12217-FDS, 2020 WL 5775160, at *16 (D. Mass. Sept. 28, 2020).  Nonetheless, as the *Tyson* Court observed, "[t]his is not to say that all inferences drawn from representative evidence in an FLSA case are 'just and reasonable.'  Representative evidence that is statistically inadequate or based on implausible assumptions could not lead to a fair or accurate estimate of the uncompensated hours an employee has worked."  *Tyson*, 577 U.S. at 459 (citation omitted).  In *Mt. Clemens* and in *Tyson*, the variance in the amount of overtime among workers was alleged to be in the neighborhood of ten minutes and the court observed, in *Tyson*, that "each employee worked at the same facility, did similar work, and was paid under the same policy."  *Tyson*, 577 U.S. at 456, 459.

Plaintiffs have not pointed to representative or common evidence in the instant action that is "sufficient . . . to show the amount and extent of [uncompensated overtime] as a matter of just

and reasonable inference." *Mt. Clemens*, 328 U.S. at 687.  Plaintiffs have not identified a statistical expert or explained how they can rely on other forms of representative evidence to approximate to a fair or reasonably accurate estimate the amount of overtime, either in terms of hours worked or an inadequate hourly rate, owed to 434 Plaintiffs, who did not work in the same facility, were not paid under the same pay policy, some of whom occasionally or often did not drive light trucks or who cannot be shown to have done so.  *See Martinez*, 2023 WL 7114678, at *8 (in a Rule 23(b) case, the court stated that "unlike the plaintiffs in *Tyson Foods*, the [p]laintiffs here did not offer an expert or explain how they would try this case with representative testimony").

Assuming that it would be appropriate to shift the burden of proof for purposes of certifying an FLSA collective action before any factfinder has determined that FedEx is a joint employer, *but see Martinez*, 2023 WL 7114678, at *14 ("The [c]ourt will not find [d]efendant owed an employer's duty while the question of whether [d]efendant was an employer remains in dispute."), Plaintiffs have not identified a case in which a court has shifted the burden to a defendant employer to fill in gaps the size of the gaps present here as to the extent of liability and damages.  The court is not persuaded that *Mt. Clemens* and *Tyson* can be read so broadly.  *See Harris v. Med. Transp. Mgmt., Inc.*, Case No. 17-cv-01371(APM), 2020 WL 5702085, at *11 (D.D.C. Sept. 24, 2020) (in a Rule 23(b)(3) case, the court rejected the plaintiff drivers' reliance on *Mt. Clemens* and *Tyson* "where differences in pay rates and hours between class members [was] particularly stark").

3. Plaintiffs have not satisfied their burden of proof.

The FLSA's collective provisions are designed for "the 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged' FLSA violation."

24

*Scott*, 954 F.3d at 516 (quoting *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

"This result – efficient resolution in one proceeding of common issues of law and fact arising

from the same alleged FLSA violation – can only be achieved to the extent that named plaintiffs

and opt-in plaintiffs share one or more issues of law or fact that are material to the disposition of

their FLSA claims." *Id.* Here, Plaintiffs identified as a common question of law whether FedEx

was a joint employer. For the reasons explained above, this court does not believe that this

single issue justifies proceeding on a collective basis.

The court acknowledges that its review of the evidence submitted by the parties may – as

Plaintiffs contend – appear to focus on "ways in which the plaintiffs are factually *disparate* and

the defenses are *individualized*." *Id.* at 517. In the absence of a common question of law or a

common practice alleged to have caused the alleged FLSA violations, the court has sought –

unsuccessfully – to identify common issues of fact that could be decided on a collective basis by

representative evidence. FedEx has argued persuasively that, in view of the disparities in the

record, it is entitled to defend Plaintiffs' claims individually. To be sure, FedEx "cannot be

expected to come up with 'representative' proof when the plaintiffs cannot reasonably be said to

be representative of each other." *Johnson v. Big Lots Stores, Inc.,* 561 F. Supp. 2d 567, 587

(E.D. La. 2008).

"The court recognizes that the FLSA is a remedial statute and that the purposes of

Section 216 weigh heavily in favor of allowing cases to proceed collectively." *Arnold*, 2017 WL

1251033, at *10 (citing *Roussell v. Brinker Int'l, Inc.*, Civil Action No. H-05-03733, 2008 WL

2714079, at *24 (S.D. Tex. July 9, 2008)). Collective actions lower costs to individual plaintiffs

and promote judicial efficiency. The court has attempted to envision how it might try this case

on a collective basis. When, however, Plaintiffs have not shown that they were similarly situated

because their evidence does not show that they were subjected to the same alleged FLSA violation that resulted in the failure to pay overtime, or that their claims can be proved by common or representative evidence as to liability or damages, procedural and fairness concerns weigh in favor of decertification. *See, e.g., Wright v. Waste Pro USA, Inc.*, Case No. 0:19-cv-62051-KMM, 2022 WL 377869, at *7-9 (S.D. Fla. Jan. 11, 2022); *Garcia*, 2019 WL 3555266, at *12; *cf. Merrill v. Pathway Leasing LLC*, Civil Action No. 16-cv-02242-KLM, 2019 WL 5078655, at *2-5 (D. Colo. Oct. 9, 2019) (decertifying an FLSA collective after a bench trial where evidence showed that decisions about the plaintiffs' claims needed to be made on an individualized basis). In the instant action, "the differences in Plaintiffs' factual and employment settings and the existence of numerous individualized defenses would render a collective trial untenable." *Wright*, 2022 WL 377869, at *9. "The jury would be required to engage in highly individualized inquiries such that maintenance of the collective would no longer align with the stated objectives of the FLSA." *Id.* (citing *Roberson v. Rest. Delivery Developers, LLC*, 320 F. Supp. 3d 1309, 1320 (M.D. Fla. 2018)).

IV.     CONCLUSION

For the foregoing reasons, FedEx's motion to decertify the FLSA conditional collective [Dkt. No. 347] is granted. The named Plaintiffs' claims will remain pending before this court, but the opt-in Plaintiffs' claims will be dismissed without prejudice. The Clerk is directed to schedule a status conference in the matter by no later than April 26, 2024.

It is so ordered.

Dated:  March 29, 2024                              /s/ Katherine A. Robertson____
                                                    KATHERINE A. ROBERTSON
                                                    United States Magistrate Judge