UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JORDAN ROY and JUSTIN TRUMBULL, on behalf of themselves and others similarly situated,<br><br>         Plaintiffs,<br><br>              v.<br><br>FEDEX GROUND PACKAGE SYSTEMS, INC.,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:17-cv-30116-KAR<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER CONCERNING DEFENDANT FEDEX GROUND'S
MOTION TO MAINTAIN UNDER SEAL DOCUMENTS ATTACHED TO PLAINTIFFS'
DECERTIFICATION OPPOSITION
(Dkt. No. 382)

I.   Introduction

On August 18, 2023, defendant FedEx Ground Package Systems, Inc. ("FedEx") filed its motion to decertify the collective provisionally certified by this court (Dkt. No. 347). Plaintiffs Jordan Roy and Justin Trumbull ("Plaintiffs") opposed the motion (Dkt. No. 375), supporting their opposition by exhibits some of which were provisionally sealed (Dkt. No. 376). On October 10, 2023, FedEx moved to maintain certain of Plaintiffs' exhibits under seal (Dkt. No. 382). Plaintiffs have opposed the motion (Dkt. No. 385). For the reasons set forth below, FedEx's motion is denied.

II.   Relevant Procedural and Factual Background

Familiarity with the facts and procedural history of this case are assumed. In summary, FedEx, a federally registered motor carrier, provides pick-up and delivery services to businesses and residential customers throughout the United States. FedEx contracts with independent

1

service providers ("ISPs") who employ drivers who provide the last mile pick-up and delivery services between FedEx service centers and local businesses and residences. All ISPs operate under separate Independent Service Agreements ("Agreement") with FedEx.

Under their Agreements with FedEx, the ISPs agree to provide driver payroll and employment records on request to FedEx's compliance investigators who conduct random and targeted standardized assessments to determine whether the ISPs are complying with their obligations to follow applicable wage and hour (and other) laws. The compliance investigators produce a Compliance Investigation Report ("CIR") at the conclusion of the examination if there is a concern about the ISP's compliance with the terms of the Agreement. If an ISP fails to comply with the Agreement's wage and hour law requirements, or some other requirement in the Agreement, FedEx may issue a Notice of Compliance Concern or Notice of Opportunity to Cure. FedEx can terminate an Agreement if an ISP fails to comply with its terms.

The named Plaintiffs, along with more than 400 other individuals who opted into this Fair Labor Standards Act ("FLSA") case, delivered FedEx packages in Massachusetts beginning in or around February 19, 2015. They contended that FedEx was a joint employer with the ISPs and that they were not paid overtime for the hours over forty when they worked more than forty hours in a week. The court authorized the issuances of notices to members of the proposed collective. Approximately 550 individuals submitted opt-in forms. By the time FedEx's motion for decertification was fully briefed, there were some 434 opt-ins remaining in the provisional collective. The court granted FedEx's motion to decertify on March 29, 2014 (Dkt. No. 408). *See Roy v. FedEx Ground Package Sys., Inc.,* Case No. 3:17-cv-30116-KAR, 2024 WL 1346999, at *1 (D. Mass. Mar. 29, 2024).

The documents that FedEx seeks to maintain as sealed can be divided into three categories.  First, FedEx wants to seal its Ground's Compliance Assessment Overview ("Compliance Manual") (Pls. Ex. H), and an excerpt from the Compliance Manual (Pls. Ex. N).  Second, FedEx wants to seal policies and procedures developed by FedEx for managers and employees who conduct compliance assessments (Pls. Ex. M, T, U, V, EE, and GG).  Third, FedEx seeks to seal information concerning the ISPs (Pls. Ex. K, L, and DD).

III.    Discussion

A.    Legal Standards

"'Courts have long recognized "that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system."'" *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013) (quoting *In re Providence Journal*, 293 F.3d 1, 9 (1st Cir. 2002)).  This public monitoring is assured by, among other things, a common law right of access to "'judicial documents.'"  *Id.*  "When considering whether the common law right of access applies, the cases turn on whether the documents that are sought constitute 'judicial records.'  Such records are those 'materials on which a court relies in determining the litigants' substantive rights.'"  *Id.* at 54 (quoting *In re Providence Journal*, 293 F.3d at 9-10).  While there is no common law right of public access to materials that are exchanged or procured by a party in civil discovery, *id.* at 55, "documents relevant to determination of the litigants' substantive rights that came to the attention of the district judge 'could fairly be assumed to play a role in the court's deliberations,'" *id.* at 58 (quoting *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987)), and are, therefore, considered judicial records.  In other words, when documents are filed in connection with a substantive motion, a court cannot freely seal documents even if the court did not actually rely on those documents to rule on the motion.  *See*

3

*Tourangeau v. Nappi Distribs.*, No. 2:20-cv-00012-JAW, 2022 WL 768688, at *4 (D. Me. Mar. 14, 2022). "Just as the public has a right to know the evidence the Court relied on in adjudicating a motion before it, the public also has a right to know what evidence the Court *did not* rely upon in resolving the issue." *Id.* Thus, all documents filed in connection with a motion that determines the substantive rights of the parties "are subject to the presumption of public access." *Id.* at *5. "To seal filings related to nondiscovery pretrial motions . . . 'the party seeking to overcome the presumption of public access must demonstrate significant countervailing interests, like the existence of trade secrets in the documents or confidential business information.'" *Id.* (quoting *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 448 (D. Mass. 2015)).

      B.     Plaintiffs' Exhibits are Judicial Records

Although FedEx acknowledges that judicial records are presumptively public, it contends that Plaintiffs' provisionally sealed exhibits "are not judicial records entitled to the presumption of accessibility" because its motion to decertify is a "procedural matter not related to the adjudication process" and, consequently, the court is not deciding substantive rights (Dkt. No. 382 at 4-6). The court recently held that a motion to decertify "affects the substantive rights of the parties." *Roy v. FedEx Ground Package Sys., Inc.,* Case No. 3:17-cv-30116-KAR, 2024 WL 1346478, at *3 (D. Mass. Mar. 29, 2024). Other courts have also held that exhibits that were before the court in connection with a motion to decertify are judicial records. *See Day v. GEICO Cas. Co.,* Case No. 21-cv-02103-BLF, 2024 WL 37060, at *1-2 (N.D. Cal. Jan. 2, 2024); *Butler v. DirectSAT USA, LLC,* 47 F. Supp. 3d 300, 315-18 (D. Md. 2014); *see also McCurley v. Royal Seas Cruises, Inc.*, Case No. 17-cv-00986-BAS-AGS, Case No. 17-cv-01988-BAS-AGS, 2018 WL 3629945, at *2 (S.D. Cal. July 31, 2018) ("A class certification motion 'generally involves

4

considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action,' which require a district court to engage in a 'rigorous analysis' that 'entail[s] some overlap with the merits of the plaintiff's underlying claims.'") (alteration in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 352 (2011)).

FedEx's fallback position is that, even if a motion to decertify determines substantive rights, the exhibits are not judicial records "unless the [c]ourt makes a determination that these confidential documents are important to its decision on decertification" (Dkt. No. 382 at 6). That contention fails under First Circuit law that is binding on this court. *See Kravetz*, 706 F.3d at 58. Plaintiffs asked the court to deny FedEx's motion for decertification and to resolve the question of whether FedEx qualified as Plaintiffs' joint employer, which, Plaintiffs asserted, was a common question that justified maintaining certification of the collective. *See Roy,* 2024 WL 1346999, at *4. Plaintiffs had persuasive authority for their position, *see Harris v. Med. Transp. Mgmt., Inc.,* Case No. 17-cv-01371 (APM), 2021 WL 3472381, at *5-6 (D.D.C. Aug. 6, 2021), *remanded on other grounds,* 77 F.4th 746 (D.C. Cir. 2023), *cert. denied,* 144 S. Ct. 818 (2024) (mem.), and they supported it by filing documents that, they argued, constituted representative evidence that could be used to decide whether FedEx and the ISPs jointly employed Plaintiffs. *See Roy*, 2024 WL 1346999, at *4; *Harris,* 2021 WL 3472381, at *5-6. Filing these documents was not an abuse of the litigation process, and the court does not understand FedEx to contend that it was. Because the court declined to certify the collective based on Plaintiff's joint employer contention, the documents were not referred to in the court's decision on FedEx's decertification motion, but they nonetheless qualify as judicial documents for purposes of this analysis because even documents on which a court does not rely when addressing the parties' substantive rights meet this definition. *See Tourangeau,* 2022 WL 768688, at *4. The court thus

turns to the question of whether, despite their status as judicial documents, the documents identified by FedEx should remain sealed.

C. FedEx's Compliance Manual

FedEx's Compliance Manual "describes the uniform methods FedEx's employees should use to assess an ISP's compliance with the terms of the . . . Agreement concerning overtime and recordkeeping, report the outcome of the assessment, and conduct any follow-up, including Business Discussions, Opportunities to Cure, or termination of the ISP Agreement for failure to comply with the terms concerning wages and record keeping." *Roy v. FedEx Ground Package Sys., Inc.*, 675 F. Supp. 3d 140, 146 (D. Mass. 2023). FedEx argues that the Compliance Manual "contains confidential and proprietary information including detailed descriptions of FedEx['s] business model and operations, strategies for maximizing compliance, and other closely-held proprietary business-related processes and practices" that are routinely placed under seal. According to FedEx, its disclosure will give competitors and ISPs an unfair advantage (Dkt. No. 362 at 3-4; Dkt. No. 382 at 7-8).[1]

The court declines to accede to FedEx's request to maintain impoundment of the Compliance Manual in part or in whole (Pls. Exs. H and N) because, to a significant extent, the procedures the Compliance Manual describes have already been publicly disclosed. *See Scalone-Finton v. Falmouth Pub. Sch.*, No. 1:21-cv -11792-JEK, 2024 WL 126002, at *2 (D. Mass. Jan. 11, 2024) (citing *Kravetz,* 706 F.3d at 63); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,* Civil Action No. 14-cv-14176-ADB, 2023 WL 3126414, at *5 (D. Mass. Apr. 27, 2023) (publication of material is a factor that weighs in favor of

---

[1] There is no dispute that select portions of the Handbook should remain redacted because they are protected by the attorney-client privilege and the work product doctrine (Dkt. No. 362 at 3 n.1).

unsealing). The form Agreement, which provides the framework for FedEx's business model of contracting with the ISPs who employ the delivery drivers, is on the public docket (*see, e.g.,* Dkt. No. 348-12 at 15-81). *See Roy,* 2024 WL 1346999, at *1. Section 6 of the Agreement requires the ISPs to produce, upon request, proof that they are complying with state and federal wage and hour laws and other requirements of being an employer (Dkt. No. 348-12 at 18-21). A FedEx employee gave a detailed description of the compliance assessment process including the documents that the ISPs produced and the forms they completed (Dkt. No. 376-3 ¶¶ 6-9). This court denied FedEx's request to seal the Business Discussion Records, CIRs, and Notices of Compliance Concern and Opportunity to Cure, which investigators generated while conducting compliance assessments. *See Roy v. FedEx Ground Package Sys., Inc.,* Case No. 3:17-cv-30116-KAR, 2023 WL 4186291, at *3-5 (D. Mass. June 26, 2023). Those documents, which are publicly available, discuss how the investigators conducted compliance assessments and the focus of their investigations (Dkt. No. 376, Pls. Ex. I, J, II; Dkt. No. 384). Because the Agreements and other compliance assessment materials already on the docket describe the substance of the Compliance Manual – the goals of the compliance assessments and the procedures that the investigators follow – FedEx has not sufficiently justified maintaining the Compliance Manual under seal. *See Smith v. U.S. Dist. Ct. for S. Dist. of Ill.*, 956 F.2d 647, 650 (7th Cir. 1992); *Gustafson v. Goodman Mfg. Co.,* No. CV-13-08274-PCT-JAT, 2016 WL 393640, at *3 (D. Ariz. Feb. 2, 2016) (denying request to unseal certain testimony because its gist had been publicly disclosed).

   Moreover, FedEx has not provided sufficiently specific or compelling reasons to continue impounding the Compliance Manual. "FedEx's filing does not describe specific harm that will befall it if the exhibits remain on the public docket. It is well-established that broad and generic

claims about confidentiality are insufficient to establish good cause for sealing." *Roy,* 2023 WL 4186291, at *4 (citing *Tourangeau,* 2022 WL 768688, at *8). This court was not persuaded by FedEx's assertion that disclosure of compliance assessment materials would put it at a disadvantage with ISPs that are the subject of compliance investigations (Dkt. No. 362 at 4). In declining to seal exhibits about specific ISPs and their drivers, the court stated, "FedEx's assertions are speculative and do not explain how [the] information . . . will damage FedEx, give an advantage to one ISP over another, or give FedEx's competitors an advantage in the package delivery industry." *Roy,* 2023 WL 4186291, at *4 (citing cases). That remains the case. *See Standard Fin. Mgmt. Corp.,* 830 F.2d at 412 (sealing of judicial documents "'must be based on a particular factual demonstration of potential harm, not on conclusory statements'") (quoting *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 7 (1st Cir. 1986)).

So much of FedEx's motion as seeks to seal Plaintiffs' Exhibit H (Compliance Manual) and Exhibit N (Compliance Manual excerpt) is denied except as to the redactions that Plaintiffs have not challenged.

        D.       FedEx's Internal Policies and Procedures

The analysis is much the same as to FedEx's internal documents related to its assessments of ISP and driver compliance with the Agreements and with federal transportation laws and regulations. FedEx maintains that its internal documents are confidential and their disclosure would give its competitors "proprietary information concerning [FedEx's] business operations, model, strategy, and other confidential business-related practices" (Dkt. No. 382 at 8-11; Dkt. No. 382-2 ¶¶ 6, 10, 14). Courts have agreed to seal business records that might provide an advantage to competitors. *See Tourangeau*, 2022 WL 768688 at *6 (citing *In re Gitto Glob. Corp.*, 422 F.3d 1, 6 (1st Cir. 2005)). "However, courts are generally unwilling to seal business

information where the parties fail to explain why the specific, urgent need for confidentiality overrides the public's right of access, or where the business records are outdated or limited in scope." *Id.* at *7. The FedEx documents include guidelines for evaluations as to ISP and driver compliance with the Agreement's terms concerning driver qualifications, grounds for driver disqualification, and compliance with federal transportation safety laws and regulations (Pls. Ex. T (procedure for conducting annual reviews of drivers' qualifications), Pls. Ex. U (process for verifying applicants' qualifications), Pls. Ex. V (guidelines for disqualifying drivers), and Pls. Ex. EE (procedure for ensuring that FedEx complies with federal safety regulations) (Dkt. No. 348-12 at 60-67; Dkt. No. 382-2 ¶¶ 6, 10). Much, if not all, of this information has already been unsealed (Pls. Ex. R, S, W, X, Y, Z and CC). *See Roy,* 2023 WL 4186291, at *4-5. And, again, FedEx's simple assertion that these categories of documents contain proprietary or confidential information is not sufficient (Dkt. No. 382 at 8-11; Dkt. No. 382-2 ¶¶ 6, 10, 14). *See Scalone-Finton*, 2024 WL 126002, at *1 ("conclusory statements, describing entire categories of documents, is insufficient to overcome the presumption of public access.") (quoting *Kravetz*, 706 F.3d at 60).

Plaintiffs' Exhibit M directs compliance investigators who issue Notices of Opportunity to Cure to the ISPs. Plaintiffs' Exhibit GG provides guidance to FedEx employees who have business discussions with ISPs. FedEx has not sufficiently explained how public disclosure of these documents will cause competitive harm where the Notices of Compliance Concern and Opportunity to Cure and documentation of business discussions are already in the public record (Dkt. No. 376, Pls. Ex. I and II). *See United States v. All Assets Held at Bank Julius Baer & Co.,* 520 F. Supp. 3d 71, 83 (D.D.C. 2020) (stating that the fact that "a considerable amount of information" in deposition excerpts was in the public domain weighed in favor of disclosure of

additional excerpts). FedEx fares no better with its contention that the exhibits are "intended for FedEx employees only" and are "maintained as confidential" (Dkt. No. 382-2 ¶¶ 6, 10). "[D]ocuments containing a company's internal policies and procedures are not inherently confidential." *Bolich v. Nelnet Servicing, LLC*, Case No: 8:21-cv-886-CEH-AEP, 2022 WL 17551824, at *2 (M.D. Fla. Dec. 9, 2022); *see also BMO Harris Bank, N.A. v. Richert Funding, LLC*, CIVIL ACTION NO. 1:15-cv-3886-AT, 2018 WL 6709545, at *1 (N.D. Ga. Jan. 5, 2018) ("'calling a document confidential does not make it so in the eyes of the court . . . .'") (citation omitted). To hold otherwise would defeat the public's right to access court records. *See Ward v. EZCORP, Inc.*, Case No: 6:15-cv-474-Orl-22DAB, 2016 WL 7666133, at *1 (M.D. Fla. Feb. 29, 2016).

    E.    ISP Exhibits

Finally, FedEx seeks to impound samples of the ISP annual compliance certification forms (Pls. Ex. K), compliance questionnaires (Pls. Ex. L), and safety and compliance program questionnaires and affirmation statements (Pls. Ex. DD). FedEx contends that they contain "confidential business information of non-party [ISPs]" and are protected under the confidentiality provision of its Agreements with the ISPs (Dkt. No. 382 at 11-12). While "'privacy rights of participants and third parties' are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records," *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411 (citation omitted), a court should only seal documents that contain information about third parties, "'based on a particular factual demonstration of potential harm, not on conclusory statements.'" *Ark. Teacher Ret. Sys. v. State St. Bank & Tr. Co.,* 523 F. Supp. 3d 181, 187 (D. Mass. 2018) (quoting *Kravetz,* 706 F.3d at 60). The court has already rejected FedEx's claim that information identifying FedEx's Massachusetts ISPs should remain

impounded because it was subject to the Agreement's confidentiality provision.  *See Roy,* 2024 WL 1346478, at *3.  "None of the ISPs has sought to intervene to assert a confidentiality interest in the information in the judicial documents before the court."  *Id.*  The court's previous ruling applies with equal force to these exhibits.

    IV.    Conclusion

For the foregoing reasons, Defendant FedEx Ground's Motion to Maintain Under Seal Documents Attached to Plaintiffs' Decertification Opposition [Dkt. No. 382] is denied. Plaintiffs are directed to file copies of the documents discussed herein within 21 days of issuance of this order.

It is so ordered.

                                                                  Katherine A. Robertson
                                                                   KATHERINE A. ROBERTSON
                                                                   U.S. MAGISTRATE JUDGE

Dated:  May 7, 2024